**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TERRAN BIOSCIENCES, INC., | : |
| *Plaintiff,* | : |
| v. | : |
| COMPASS PATHFINDER LIMITED (an England and Wales company), and DOES 1-10, | : |
| *Defendants.* | : |

Case Number _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Terran Biosciences, Inc. ("Terran"), by and through its undersigned counsel, and for and in support of its Complaint against Defendants Compass Pathfinder Limited and DOES 1-10 (together "Compass"), hereby avers as follows:

### Introduction

1.     This action arises out of Compass's misappropriation of highly confidential and sensitive, proprietary information that Terran and the University of Maryland, Baltimore ("UMB") spent years and substantial resources to develop.  In 2016, Scott Thompson, Ph.D., Professor and Chair of the Department of Physiology at the University of Maryland School of Medicine ("Thompson"), began working on the idea of co-administration of psilocybin with a 5-HT2A antagonist (including ketanserin) as a potential rapid, non-hallucinogenic antidepressant therapy. At the time, it was known that 5-HT2A antagonists like ketanserin reduce or eliminate the negative hallucinogenic effects of psilocybin.  Thompson theorized that psilocybin's antidepressant therapeutic effects are independent of significant 5-HT2A receptor activation that causes hallucinations and therefore psychedelic responses are not required for an antidepressant response

to psilocybin. Thompson spent the next several years researching and developing this idea into a potential therapeutic product.  His inventions with respect to this potential breakthrough treatment and results of his work were and are the "Psilocybin Trade Secrets."  Starting in August 2019, Thompson filed patent applications disclosing and claiming certain of his then-trade secret inventions related to his research into co-administration of the combination.  Before he filed his patent applications, Thompson kept his research confidential, he never disclosed it outside the scope of a confidentiality/non-disclosure agreement.

2.      In May 2019, Compass reached out to Thompson in Baltimore, Maryland to pursue a potential partnership ostensibly to further Thompson's psilocybin research.  Prior to any substantive discussions regarding Thompson's research, Compass Pathfinder Limited (then known as Compass Pathways Limited) sent Thompson a Mutual Non-Disclosure Agreement ("NDA"), which protected from misuse any confidential information disclosed by Thompson (or UMB) to Compass.  Thompson executed the NDA, and Compass confirmed receipt thereof.  For seven months, in reliance on the NDA, Thompson and Compass engaged in numerous substantive discussions and negotiations regarding a potential partnership between Compass and UMB via e-mail, Zoom, and in-person meetings.

3.      During these negotiations, Compass repeatedly emphasized that it was excited about the opportunity to work together with Thompson on his research ideas.  In turn, Thompson disclosed the Psilocybin Trade Secrets to Compass in confidence.  At that the outset of the discussions, Compass did not know about the idea that co-administration of psilocybin with a 5-HT2A antagonist might eliminate, attenuate, or shorten the duration of psilocybin-induced hallucinations while retaining its therapeutic benefits as an antidepressant.  Compass milked Thompson for all the information it could about his confidential research.

-2-

4.      Compass misappropriated the Psilocybin Trade Secrets for itself.  In August 2019, while Compass was stringing Thompson along, it secretly filed its own patent application claiming for the first time "[a] method of reducing the negative side effects associated with traumatic psychedelic experience in a patient undergoing treatment with psilocybin" by administering psilocybin and "one or more 5-HT2A specific antagonists," in other words, claiming Thompson's invention for itself.

5.      In November 2019, after it had learned the trade secrets, Compass abruptly ended negotiations and stated that it would not enter into a collaboration agreement with Thompson or UMB for psilocybin research.  On information and belief, Compass has misappropriated and continues to misappropriate the Psilocybin Trade Secrets for its own gain.

6.      In 2021, Terran Biosciences, Inc. ("Terran") entered into a licensing agreement with UMB under which UMB granted Terran an exclusive license to the Psilocybin Trade Secrets. Terran has the "first and primary right" to prosecute and control any action for misappropriation of the Psilocybin Trade Secrets.  Consequently, Terran brings this action for trade secret misappropriation seeking injunctive relief and to obtain damages and other relief arising from Compass's misconduct.

## The Parties

7.      Plaintiff Terran Biosciences, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 507 W 28th Street, PH 3A, New York, NY.

8.      Upon information and belief, Defendant Compass Pathfinder Limited is a company incorporated in England and Wales, with company number 10229259, whose registered office is at 3rd Floor, 1 Ashley Road, Altrincham, Cheshire WA14 2DT, United Kingdom.

9.      Defendants DOES 1-10 are presently unknown to Plaintiff.  Their identities can be uncovered through discovery into Defendant Compass Pathfinder Limited's misappropriation of the Psilocybin Trade Secrets.  Plaintiff will amend its complaint to identify the DOE defendants at an appropriate time.

## Jurisdiction and Venue

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c), as it arises under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

11.      This Court has supplemental jurisdiction over Plaintiff's state law claims under the Maryland Uniform Trade Secret Act, Md. Code Ann., Comm. Law § 11-1201, *et seq.* and for breach of contract pursuant to 28 U.S.C. § 1367(a) because Terran's state law claims are so closely related to its federal claim that they form part of the same case of controversy under Article III of the United States Constitution.

12.      This Court has personal jurisdiction over Compass under Fed. R. Civ. P. 4(k)(1)(A) and Md. Code Ann., Cts & Jud. Proc. § 6-103 because Compass reached out to Thompson and UMB in Baltimore, Maryland to pursue negotiations for a potential partnership between Compass and UMB.  By doing so and engaging in those discussions pursuant to a confidentiality/non-disclosure agreement, Compass purposefully availed itself of the benefits and privileges of the laws of Maryland.  Compass also purposefully availed itself of the benefits and privileges of the laws of Maryland by conducting clinical trials of its own therapeutic psilocybin product at the Sheppard Pratt Health System in Baltimore, Maryland and by establishing, funding, and operating a "Centre of Excellence" to "carry out new research in the use of psilocybin therapy" on Sheppard Pratt's Towson, Maryland campus.

13.     Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims asserted occurred in this District.

## Factual Background

### Psilocybin Trade Secrets and Confidential Information

14.     Dr. Scott Thompson, Professor and Chair of the Department of Physiology at the University of Maryland School of Medicine, is an expert in the potential use of psilocybin as an antidepressant and medication for other mental health disorders.  In November 2016, Thompson had the idea of studying a combination of psilocybin and ketanserin (a 5-HT2A antagonist) as a potential rapid, non-hallucinogenic antidepressant therapy.  Thompson theorized that the combination would reduce or eliminate the hallucinatory effects of psilocybin while retaining its antidepressant actions.  Over the next few years, Thompson engaged in research to test the potential of this idea.  The inventions derived from and the results of this research constitute the Psilocybin Trade Secrets.  By virtue of Thompson's employment and invention assignment agreement with UMB, the Psilocybin Trade Secrets belonged to UMB.

15.     At all relevant times, Thompson and UMB have held the Psilocybin Trade Secrets in strict confidence.  Information regarding the trade secrets was kept on secured devices in UMB's custody and control.  Until he filed patent applications related to the trade secrets beginning on August 13, 2019, Thompson did not disclose any of the Psilocybin Trade Secrets to anyone except those governed by non-disclosure agreements or other confidentiality obligations.

### Compass Reaches Out to UMB Regarding Thompson's Research

16.     On May 16, 2019, Dr. Ekaterina Malievskaia, the Co-Founder and Head of Research and Development of Compass, reached out to Dr. Todd Gould ("Gould"), a Psychiatry

Professor at the University of Maryland School of Medicine, because Compass was "developing psilocybin for treatment-resistant depression and trying to understand molecular mechanisms of psilocybin." Gould directed Malievskaia to Thompson. Malievskaia solicited a call with Thompson to discuss his research.

17.    On May 29, 2019, Compass Pathfinder Limited (then known as Compass Pathways Limited) sent Thompson a Mutual Non-Disclosure Agreement ("NDA"), to execute prior to the scheduled call. Thompson returned a signed copy of the Compass NDA that same day. Exhibit A (NDA). Compass acknowledged receipt of Thompson's signed NDA on May 30, 2019. The NDA prohibits Compass from using any information disclosed by Thompson or his colleagues other than "in connection with exploring possible business arrangements between [Compass and Thompson] and/or their Affiliates." "Affiliates" under the NDA include the University of Maryland and any "entity that directly or indirectly controls or is controlled by . . . a party to this Agreement."

18.    On May 31, 2019, Thompson, Gould, and Compass held a call to discuss the molecular mechanisms of psilocybin. The parties discussed Thompson and Gould's plans to test the co-administration of psilocybin and ketanserin, and Thompson's idea that ketanserin would reduce or eliminate psilocybin's unwanted hallucinatory side effects but not interrupt its antidepressant effects. On the call, Compass expressed significant interest in sponsoring further research, and Thompson's results.

19.    On June 12, 2019, Compass requested a research proposal from Thompson. The next day, Gould and Thompson sent Compass a scientific proposal and a proposed budget to study the combination of psilocybin and ketanserin, both of which were disclosed under the protection

of the NDA.  Compass confirmed receipt of the proposal and indicated that Compass would like to schedule a follow up call for the following week to continue discussion.

20.    On June 18, 2019, Compass responded to Thompson that they "were excited to read about the interesting questions you'd like to explore using psilocybin" and asked some additional pointed questions to elicit additional confidential information about Thompson's research. Believing they were protected by the NDA, Thompson and Gould responded to Compass's questions on June 21, 2019.

21.    For the next several months, the Compass and UMB worked on a draft collaboration agreement.  During this time, Compass continued to milk Gould and Thompson for trade secret information regarding their research and study plans.

22.    By the end of September 2019, the parties still had not reached a collaboration agreement.  Gould and Thompson were concerned about the delay.  At the time, others in the scientific community were becoming interested in psilocybin's potential, and Gould and Thompson did not want to be left behind.  They therefore informed Compass that they wanted to move forward as fast as they could.  In response, under the guise of being concerned about use of psilocybin, which is a Schedule 1 drug, Compass began asking even more questions about the studies, specifically to confirm that they had not started.

23.    Still Compass delayed sending a draft agreement.  Finally, on October 20, 2019, Compass sent UMB a heavily marked up revision of a collaboration agreement.

24.    The next day, at the Society for Neuroscience annual meeting, Thompson had a lunch meeting with Compass to further discuss a potential collaboration and stated that they remained interested in working with them.   Yet Compass would not agree to move forward with the deal, and kept Gould and Thompson in limbo.  On November 20, 2019, Compass e-mailed

Thompson saying that they are "unable to proceed with the collaboration" and declined to fund Thompson's experiments.

***Compass Files for Patent Applications Related to the Psilocybin Trade Secrets***

25.     That was because Compass was busy executing on its plan to steal the Psilocybin Trade Secrets for itself.  On information and belief, when Compass first began talking with Thompson and Gould, it had not been researching the combination of psilocybin with a 5-HT2A antagonist, and had no knowledge about that subject.  While Compass had previously filed patent applications related to use of psilocybin to treat various diseases, it had never identified or claimed the combination of psilocybin and a 5-HT2A antagonist in any of those applications.

26.     But on August 29, 2019, without telling Thompson, Compass filed a provisional patent application that, for the first time, claimed co-administration of 5-HT2A antagonists (including ketanserin) with psilocybin to reduce the negative side effects of psilocybin.  Tellingly, the provisional patent application does not include any data regarding this combination.  That is because Compass had none.  It stole the ideas for this patent application from Thompson and instead sought to patent them itself.

27.     Subsequently, on a September 5, 2019 phone call, Compass asked whether Thompson had filed any patent applications, hoping that it had filed before Thompson.  When Thompson informed Compass that he had filed his own patent on August 13, 2019, two weeks before Compass's filing, Compass became notably upset.  On information and belief, Compass was upset that Thompson had filed his patent application before Compass's which might put a dent in its plan of stealing Thompson's IP.

28.     Since 2019, Compass has filed at least three additional patent applications with disclosures related to "Co-Administration of Psilocybin and a 5-HT2A Specific Antagonist."

*Terran's Standing to Sue*

29.     On May 7, 2021, UMB and Terran entered into a Master License Agreement ("MLA") licensing to Terran certain of Thompson's Inventions ("Licensed Inventions") and related Confidential Information, including the Psilocybin Trade Secrets.

30.     The MLA grants Terran an exclusive license to the Licensed Inventions and Confidential Information and provides that Terran has the first and primary right to institute an action concerning infringement, which covers both patent infringement and misappropriation of the Licensed Inventions and Confidential Information.

**Count I**
**Misappropriation of Trade Secrets**
**Defend Trade Secrets Act (18 U.S.C. § 1831 et. seq.)**

31.     Terran re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 of this Complaint.

32.     As set forth above, Defendants misappropriated information regarding UMB's Psilocybin Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* UMB is the owner of these Psilocybin Trade Secrets. Terran has the requisite standing to sue under the Master License Agreement with UMB.

33.     The Psilocybin Trade Secrets are directed towards methods of treating depression and other mental health issues with psilocybin in combination with a 5-HT2A antagonist, which implicate the development, manufacturing, and sale of products and services used in, and intended for use in, interstate and foreign commerce.

34.     The Psilocybin Trade Secrets derive(d) independent economic value from not being generally known to the public, to Terran's competitors, or to other persons who can obtain economic value from the disclosure or use of the information.

35.    At the time of the misappropriation, the Psilocybin Trade Secrets were not readily ascertainable through proper means or from generally available, public sources.

36.    At all relevant times, Terran and UMB have made reasonable efforts to protect and preserve the secrecy of the Psilocybin Trade Secrets.

37.    Defendants misappropriated the Psilocybin Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by, *inter alia*, knowingly acquiring the Psilocybin Trade Secrets through improper means, and disclosing and/or using the Psilocybin Trade secrets without UMB's or Terran's express or implied consent.

38.    Defendants knew or had reason to know that, at the time it acquired information about the Psilocybin Trade Secrets, this information was acquired and obtained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use, and that they did not have UMB's or Terran's express or implied consent to do so.

39.    Defendants acquired the Psilocybin Trade Secrets by virtue of an NDA with UMB, not through their own independent research and efforts, in direct violation of their legal obligations to UMB.

40.    On information and belief, Defendants failed to fully delete or return the Psilocybin Trade Secrets that they misappropriated, and continue to use or disclose the Psilocybin Trade Secrets without UMB's or Terran's consent.

41.    On information and belief, Defendants have gained, or will gain, substantial benefit from their misappropriation of the Psilocybin Trade Secrets, to Terran's substantial detriment.

42.    As a result of Defendants' unlawful conduct, the Psilocybin Trade Secrets have been compromised, and Terran is substantially threatened by Defendants' further use and/or dissemination of that information.

43.    As a direct, proximate, and foreseeable result of Defendants' misappropriation of the Psilocybin Trade Secrets, Terran has been damaged in an amount not yet ascertained.

44.    Defendants' unlawful actions were willful and malicious, and with the deliberate intent to injure Terran's business, thereby entitling Terran to exemplary damages and/or attorneys' fees in an amount to be proven at trial pursuant to 18 U.S.C. § 1836(b)(3)(D).

45.    Terran is entitled to an order requiring Defendants, their agents, and all persons acting in concert with them, from using or disclosing, or threatening to use or disclose, the Psilocybin Trade Secrets, and restraining Defendants from obtaining any benefit from their wrongful possession and use of the Psilocybin Trade Secrets.  Unless enjoined by this Court, said misappropriation of the Psilocybin Trade Secrets, actual or threatened, will cause great and irreparable injury to Terran.  Terran has no adequate or other remedy at law for such acts and threatened acts.

**Count II**
**Misappropriation of Trade Secrets under the**
**Maryland Uniform Trade Secrets Act**
**(Md. Code Ann. Com. Law. § 11-1201 et seq.)**

46.    Terran re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 45 of this Complaint.

47.    As set forth above, Defendants misappropriated information regarding the Psilocybin Trade Secrets under the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann. Com. Law. § 11-1201 *et seq.*  UMB is the owner of these Psilocybin Trade Secrets.  Terran has the requisite standing to sue under the Master License Agreement and amendment thereto.

48.    The Psilocybin Trade Secrets are directed towards methods of treating depression and other mental health issues with psilocybin combined with a 5-HT2A antagonist.

49.     The Psilocybin Trade Secrets derive(d) independent economic value from not being generally known to the public, to Terran's competitors, or to other persons who can obtain economic value from the disclosure or use of the information.

50.     At the time of the misappropriation, the Psilocybin Trade Secrets were not readily ascertainable through proper means or from generally available, public sources.

51.     At all relevant times, Terran and UMB have made reasonable efforts to protect and preserve the secrecy of the Psilocybin Trade Secrets.

52.     Defendants misappropriated the Psilocybin Trade Secrets within the meaning of Md. Code Ann. Com. Law. § 11-1201 *et seq* by, *inter alia*, knowingly acquiring the Psilocybin Trade Secrets through improper means, and disclosing and/or using the Psilocybin Trade secrets without UMB's or Terran's express or implied consent.

53.     Defendants knew or had reason to know that, at the time they acquired information about the Psilocybin Trade Secrets, this information was acquired and obtained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use, and that they did not have UMB's or Terran's express or implied consent to do so.

54.     Defendants acquired the Psilocybin Trade Secrets by virtue of an NDA with UMB, not through their own independent research and efforts, in direct violation of their legal obligations to UMB.

55.     On information and belief, Defendants failed to fully delete or return the Psilocybin Trade Secrets that they misappropriated, and continue to use or disclose the Psilocybin Trade Secrets without UMB's or Terran's consent.

56.     On information and belief, Defendants have gained, or will gain, substantial benefit from its misappropriation of the Psilocybin Trade Secrets, to Terran's substantial detriment.

57.     As a result of Defendants' unlawful conduct, the Psilocybin Trade Secrets have been compromised, and Terran is substantially threatened by Defendants' further use and/or dissemination of that information.

58.     As a direct, proximate, and foreseeable result of Defendants' misappropriation of the Psilocybin Trade Secrets, Terran has been damaged in an amount not yet ascertained.

59.     Defendants' unlawful actions were willful and malicious, and with the deliberate intent to injure Terran's business, thereby entitling Terran to exemplary damages and/or attorneys' fees in an amount to be proven at trial pursuant to Md. Code Ann. Com. Law. § 11-1203 and 1204.

60.     Terran is entitled to an order requiring Defendants, their agents, and all persons acting in concert with them, from using or disclosing, or threatening to use or disclose, the Psilocybin Trade Secrets, and restraining Defendants from obtaining any benefit from their wrongful possession and use of the Psilocybin Trade Secrets.  Unless enjoined by this Court, said misappropriation of the Psilocybin Trade Secrets, actual or threatened, will cause great and irreparable injury to Terran.  Terran has no adequate or other remedy at law for such acts and threatened acts.

**Count III**
**Breach of Contract**

61.     Terran re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 60 of this Complaint.

62.     As a condition of the disclosure of the Psilocybin Trade Secrets, Thompson executed Defendant Compass Pathfinder Limited's (then known as Compass Pathways Limited) proffered NDA, which prohibited Defendants from, among other things, using or disclosing the Psilocybin Trade Secrets.

63.     Thompson, and his successor Terran, have fully complied with and fulfilled their obligations under the NDA.

64.     Defendants breached the NDA by, without authorization or any legitimate business purpose, using and disseminating the confidential information it received under the NDA, including by filing patent applications using that information.

65.     Terran has sustained and will sustain damages as a direct and proximate result of Defendants' breach of contract.

## Prayer for Relief

WHEREFORE, Plaintiff Terran prays for judgment in its favor and against Defendants, inclusive as follows:

1.     Granting permanent injunctive relief against Defendants, and any persons in active concert or participation with them: (i) enjoining Defendants from obtaining, retaining, using, transmitting, disseminating, or disclosing the Psilocybin Trade Secrets; (ii) ordering Defendants to identify, and turn over, any property in their possession, custody, or control containing or reflecting the Psilocybin Trade Secrets, including hard copy documents or any form of electronic storage media; (iv) ordering Defendants to identify any other persons, entities, or locations not within their possession, custody, or control, to which Defendant has transmitted, disseminated, disclosed, or stored any Psilocybin Trade Secrets; (v) requiring Defendants to assign to Plaintiff any rights to patent applications or other intellectual property that incorporates the Psilocybin Trade Secrets; and (vi) any other appropriate injunctive relief;

2.     Awarding compensatory damages in an amount to be determined at trial;

3.     Awarding exemplary damages in an amount to be determined at trial;

4.     Awarding interest at the maximum legal rate on all sums awarded;

5.      Awarding reasonable attorneys' fees as permitted by law;

6.      Awarding all costs of suit herein; and

7.      Awarding such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Terran demands a jury trial on all triable issues.

Dated:  August 5, 2022                              Respectfully submitted,


                                                   */s/ Ramsay M. Whitworth*_____
                                                   Ramsay M. Whitworth (Fed. Bar #26251)
                                                   rwhitworth@silvermanthompson.com
                                                   Andrew M. Harvey (Fed. Bar # 21925)
                                                   aharvey@silvermanthompson.com
                                                   Silverman, Thompson, Slutkin & White
                                                   400 East Pratt Street, Suite 900
                                                   Baltimore, MD 21202
                                                   (410) 385-2225
                                                   (410) 547-2432 (f)

                                                   and


                                                   */s/ John P. Flynn*_____
                                                   John P. Flynn (*pro hac vice* pending – to be filed)
                                                   jlflynn@wsgr.com
                                                   Charles T. Graves (*pro hac vice* pending – to be
                                                   filed)
                                                   tgraves@wsgr.com
                                                   Joshua Baskin (*pro hac vice* pending – to be filed)
                                                   jbaskin@wsgr.com
                                                   WILSON, SONSINI, GOODRICH & ROSATI
                                                   Professional Corporation
                                                   One Market Plaza
                                                   Spear Tower, Suite 3300
                                                   San Francisco, CA 94105
                                                   (415) 947-2000
                                                   (415) 947-2099 (f)

                                                   and

-15-

Stephanie C. Cheng (*pro hac vice* pending – to be filed)
Stephanie.cheng@wsgr.com
WILSON, SONSINI, GOODRICH & ROSATI
633 West Fifth Street,
Suite 1550
Los Angeles, CA 90071
(323) 210-2900
(866) 974-7329 (f)

*Attorneys for Plaintiff Terran Biosciences Inc.*