IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TERRAN BIOSCIENCES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> COMPASS PATHFINDER LIMITED (an England and Wales company), and DOES 1-10, <br><br> *Defendants.* | Civil Action No. 1:22-cv-01956-ELH <br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff Terran Biosciences, Inc. ("Terran"), by and through its undersigned counsel, and for and in support of its First Amended Complaint against Defendants Compass Pathfinder Limited and DOES 1-10 (together "Compass"), hereby avers as follows:

## Introduction

1.  This action arises out of Compass's misappropriation of highly confidential and sensitive, proprietary information that Terran and the University of Maryland, Baltimore ("UMB") spent years and substantial resources to develop. In 2016, Scott Thompson, Ph.D., Professor and Chair of the Department of Physiology at the University of Maryland School of Medicine ("Thompson"), began working on the idea of sequential co-administration of psilocybin with a 5-HT2A antagonist (including ketanserin) as a potential rapid, non-hallucinogenic antidepressant therapy. At the time, it was known that 5-HT2A antagonists like ketanserin reduce or eliminate the negative hallucinogenic effects of psilocybin. Thompson theorized that psilocybin's antidepressant therapeutic effects are independent of significant 5-HT2A receptor activation that causes hallucinations and therefore

psychedelic responses are not required for an antidepressant response to psilocybin. Thompson spent the next several years at UMB researching and developing this idea into a potential therapeutic product. His inventions with respect to this potential breakthrough treatment and results of his work were and are the "Psilocybin Trade Secrets." On August 13, 2019, Thompson filed a patent application, assigned to UMB, disclosing and claiming certain—but not all—of his then-trade secret inventions related to his research into co-administration of the combination. Before he filed this patent application, Thompson kept his research, development, and related information leading to the Psilocybin Trade Secrets confidential, and maintained a practice to never disclose any such information outside the scope of a confidentiality/non-disclosure agreement.

2.    In May 2019, Compass reached out to Thompson in Baltimore, Maryland to pursue a potential partnership with Thompson, in his capacity as a UMB researcher, to further progress his psilocybin research and explore "possible business arrangements between them and/or their Affiliates." Prior to any substantive discussions regarding Thompson's research or plans moving forward with the Psilocybin Trade Secrets, Compass Pathfinder Limited (then known as Compass Pathways Limited) and Thompson entered into a Mutual Non-Disclosure Agreement ("NDA"). The NDA precludes Compass from distributing, disclosing, or otherwise disseminating any confidential information and prohibits Compass from using this information for any purposes besides exploring a potential business relationship with Thompson and UMB. Thompson executed the NDA in his capacity as a UMB researcher and as an agent of UMB since UMB owned the confidential information protected by the NDA, and Compass confirmed receipt thereof. For seven months, in reliance on the NDA, the parties' ongoing negotiations to reach a collaboration agreement, and the understanding that all information concerning Thompson's inventions and the Psilocybin Trade Secrets exchanged between the parties was and would remain confidential, Thompson and Compass engaged in numerous

substantive discussions and negotiations regarding a potential partnership between Compass and UMB via e-mail, Zoom, and in-person meetings.

3. During these negotiations, Compass repeatedly emphasized its excitement about the opportunity to work with Thompson on his research ideas, which had been developed in Maryland. In turn, Thompson continued to disclose further proprietary information about the University's Psilocybin Trade Secrets to Compass in confidence, pursuant to the preemptive protections of the governing NDA. At that the outset of the discussions, Compass did not know about the idea that co-administration of psilocybin with a 5-HT2A antagonist might eliminate, attenuate, or shorten the duration of psilocybin-induced hallucinations while retaining its therapeutic benefits as an antidepressant. However, upon discovering the "considerable clinical value" arising from Thompson's research data—as "the first of its kind" and likely "the first direct evidence" of the functional requirements in the "antidepressant actions of psilocybin"—Compass milked him for all the information it could about his confidential research and Psilocybin Trade Secrets.

4. Compass misappropriated the Psilocybin Trade Secrets for itself. In August 2019, while Compass was stringing Thompson along, it secretly filed its own patent application claiming for the first time "[a] method of reducing the negative side effects associated with traumatic psychedelic experience in a patient undergoing treatment with psilocybin" through sequential administration of psilocybin and "one or more 5-HT2A specific antagonists"—in other words, claiming Thompson's invention for itself.

5. Even after it had applied for patents related to certain of the Psilocybin Trade Secrets, Compass continued to encourage further disclosures until several months later—in November 2019—when Compass abruptly ended the parties' negotiations, stating that it would not enter into a collaboration agreement with Thompson or UMB for psilocybin research. On information and belief,

Compass has misappropriated and continues to misappropriate the Psilocybin Trade Secrets for its own gain.

6.      In 2021, Terran Biosciences, Inc. ("Terran") entered into a licensing agreement with UMB under which UMB granted Terran an exclusive license to the Psilocybin Trade Secrets. Terran licensed the Psilocybin Trade Secrets so it could bring a groundbreaking rapid, non-hallucinogenic antidepressant therapy to market. The Psilocybin Trade Secrets relate to this therapy, which Terran has taken significant steps towards developing and commercializing in the United States and throughout the world. Terran has the "first and primary right" to prosecute and control any action for misappropriation of the Psilocybin Trade Secrets. Consequently, Terran brings this action for trade secret misappropriation seeking injunctive relief and to obtain damages and other relief arising from Compass's misconduct.

## The Parties

7.      Plaintiff Terran Biosciences, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 507 W 28th Street, PH 3A, New York, NY.

8.      Upon information and belief, Defendant Compass Pathfinder Limited is a company incorporated in England and Wales, with company number 10229259, whose registered office is at 3rd Floor, 1 Ashley Road, Altrincham, Cheshire, United Kingdom, WA14 2DT.

9.      Defendants DOES 1-10 are presently unknown to Plaintiff. Their identities can be uncovered through discovery into Defendant Compass Pathfinder Limited's misappropriation of the Psilocybin Trade Secrets. Plaintiff will amend its complaint to identify the DOE defendants at an appropriate time.

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c), as it arises under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

11. This Court has supplemental jurisdiction over Plaintiff's state law claims under the Maryland Uniform Trade Secret Act, Md. Code Ann., Comm. Law § 11-1201, *et seq.* pursuant to 28 U.S.C. § 1367(a) because Terran's state law claims are so closely related to its federal claim that they form part of the same case of controversy under Article III of the United States Constitution.

12. This Court has personal jurisdiction over Compass under Fed. R. Civ. P. 4(k)(1)(A) and Md. Code Ann., Cts & Jud. Proc. § 6-103(1) and (4). Compass reached out to multiple UMB professors, including Dr. Thompson in Baltimore, Maryland, to discuss his research and proposal related to the Psilocybin Trade Secrets. Compass entered into an NDA with UMB researcher Dr. Thompson for the purposes of exploring a business relationship with the University of Maryland. Compass sought and received proprietary information developed and held at the University of Maryland constituting the Psilocybin Trade Secrets under the pretense of a potential partnership between Compass and UMB. By doing so, by engaging in seven months of extensive negotiations with UMB professors, secretly filing patent applications in the midst of those negotiations, and then continuing to induce UMB professors to disclose further proprietary information under the guise of the preemptive protections of a NDA, Compass purposefully availed itself of the benefits and privileges of the laws of Maryland.

13. Compass also purposefully availed itself of the benefits and privileges of the laws of Maryland by conducting clinical trials of its own therapeutic psilocybin product at the Sheppard Pratt Health System in Baltimore, Maryland during the time it began misappropriating the alleged trade

secrets. For example, Compass conducted a clinical trial in part at the Sheppard Pratt Health System in Baltimore, Maryland titled "The Safety and Efficacy of Psilocybin in Participants With Treatment Resistant Depression (P-TRD)." Compass submitted this study to the FDA's database for clinical trials in December 2018, and reported that the first patient's first visit in the study occurred on January 3, 2019, and that the study completed on September 27, 2021. Compass also established, funds, and operates a "Centre of Excellence" to "carry out new research in the use of psilocybin therapy" on Sheppard Pratt's Towson, Maryland campus. Since 2021, Compass has conducted at least four additional clinical trials at Sheppard Pratt in Maryland.

14. Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims asserted occurred in this District.

## Factual Background

### *Psilocybin Trade Secrets and Confidential Information*

15. Dr. Scott Thompson, Professor and Chair of the Department of Physiology at the University of Maryland School of Medicine, is an expert in the potential use of psilocybin as an antidepressant and medication for other mental health disorders. In November 2016, Thompson had the idea of studying a combination of psilocybin and ketanserin (a 5-HT2A antagonist) as a potential rapid, non-hallucinogenic antidepressant therapy. Thompson theorized that the combination would reduce or eliminate the hallucinatory effects of psilocybin while retaining its antidepressant actions. Over the next few years, Thompson engaged in research during the course of his employ with UMB to test the potential of this idea. The inventions derived from and the results of this research constitute the Psilocybin Trade Secrets. By virtue of Thompson's employment and invention assignment agreement with UMB, the Psilocybin Trade Secrets belonged to UMB.

16. At all relevant times, Thompson and UMB have held the Psilocybin Trade Secrets in strict confidence. Information regarding the trade secrets was kept on secured devices in UMB's custody and control. Until he filed patent applications related to the trade secrets beginning on August 13, 2019, Thompson did not disclose any of the Psilocybin Trade Secrets to anyone except those governed by non-disclosure agreements or other confidentiality obligations.

**Compass Reaches Out to UMB Regarding Thompson's Research**

17. On May 16, 2019, in the course of considering whether to conduct a PK/biomarker study at the National Institute of Mental Health in North Bethesda, Maryland, Dr. Ekaterina Malievskaia, the Co-Founder and Head of Research and Development of Compass, reached out to Dr. Todd Gould ("Gould"), a Psychiatry Professor at the University of Maryland School of Medicine, because Compass was "developing psilocybin for treatment-resistant depression and trying to understand molecular mechanisms of psilocybin." Gould directed Malievskaia to Thompson. Malievskaia solicited a call with Thompson to discuss his research on the Psilocybin Trade Secrets but only after an NDA was in place.

18. On May 29, 2019, Compass Pathfinder Limited (then known as Compass Pathways Limited) sent Thompson a Mutual Non-Disclosure Agreement ("NDA") to execute prior to the scheduled call. Thompson returned a signed copy of the NDA that same day. Exhibit A (NDA). Compass acknowledged receipt of Thompson's signed NDA on May 30, 2019. The NDA prohibits Compass from using any information disclosed by Thompson or his colleagues other than "in connection with exploring possible business arrangements between [Compass and Thompson] and/or their Affiliates." "Affiliates" under the NDA include the University of Maryland and any "entity that directly or indirectly controls or is controlled by . . . a party to this Agreement."

19.     On May 31, 2019, Thompson, Gould, and Compass held a call to discuss the molecular mechanisms of psilocybin. The parties discussed Thompson's and Gould's plans to test the co-administration of psilocybin and ketanserin as well as Thompson's idea that ketanserin would reduce or eliminate psilocybin's unwanted hallucinatory side effects without disrupting its antidepressant effects. On the call, Compass expressed significant interest in sponsoring further research, Thompson's results, and the possibility of including ketanserin as part of the treatment regimen in Compass's impending clinical study.

20.     On June 12, 2019, Compass requested a research proposal from Thompson. The next day, Gould and Thompson sent Compass a scientific proposal and a proposed budget to study the combination of psilocybin and ketanserin, both of which were disclosed under the protection of the NDA. Compass confirmed receipt of the proposal and indicated that Compass would like to schedule a follow up call for the following week to continue discussion.

21.     On June 18, 2019, Compass responded to Thompson that they "were excited to read about the interesting questions you'd like to explore using psilocybin" and asked some additional pointed questions to elicit additional confidential information about Thompson's research. Compass acknowledged that Thompson's proposed studies "would provide the first direct evidence for the requirements (or not) of AMPAR and/or 5-HT2R function in the antidepressant actions of psylocibin." Compass was "especially excited by the potential to evaluate the efficacy of psilocybin in the presence of ketanserin, as clearly this information also has considerable clinical value." Compass even asked whether a study evaluating psilocybin and ketanserin could be "prioritized."

22.     Believing they were protected by the NDA, Thompson and Gould responded to Compass's questions on June 21, 2019 and throughout the months thereafter.

23. For the next several months, Compass and UMB worked on a draft collaboration agreement. During this time, Compass continued to milk Gould and Thompson for trade secret information regarding their research and study plans.

24. By the end of September 2019, the parties still had not reached a collaboration agreement. Gould and Thompson were concerned about the delay. At the time, others in the scientific community were becoming interested in psilocybin's potential, and Gould and Thompson did not want to be left behind. They therefore informed Compass that they wanted to move forward as fast as they could. In response, under the guise of being concerned about use of psilocybin, which is a Schedule 1 drug, Compass began asking even more questions about the studies, specifically to confirm that they had not started.

25. Still Compass delayed sending a draft agreement. Finally, on October 20, 2019, Compass sent UMB a heavily marked up revision of a collaboration agreement.

26. The next day, at the Society for Neuroscience annual meeting, Thompson had a lunch meeting with Compass to further discuss a potential collaboration and stated that they remained interested in working with them. Yet Compass would not agree to move forward with the deal and kept Gould and Thompson in limbo. On November 20, 2019, Compass e-mailed Thompson saying that they are "unable to proceed with the collaboration" and declined to fund Thompson's experiments.

***Compass Files for Patent Applications Related to the Psilocybin Trade Secrets***

27. That was because Compass was busy executing on its plan to steal the Psilocybin Trade Secrets for itself. On information and belief, when Compass first began talking with Thompson and Gould, it had not been researching the combination of psilocybin with a 5-HT2A antagonist, and had no knowledge about that subject. While Compass had previously filed patent applications related to

use of psilocybin to treat various diseases, it had never identified or claimed the sequential co-administration of psilocybin and a 5-HT2A antagonist in any of those applications.

28.   But on August 29, 2019, without telling Thompson, Compass filed provisional patent application number 62/893,611 (the "'611 application") that, for the first time, claimed sequential co-administration of 5-HT2A antagonists (including ketanserin) with psilocybin to reduce the negative side effects of psilocybin.  Tellingly, the '611 application does not include any data regarding this combination.  That is because Compass had none.  It stole the ideas for the '611 application from Thompson and instead sought to patent them itself.

29.   Even more tellingly, on information and belief, the '611 application was copied from an earlier, unrelated Compass provisional patent application number 62/893,110 (the "'110 application").  On August 28, 2019, Compass filed the '110 application, which claims methods of reducing anxiety in a patient undergoing treatment with psilocybin by co-administering benzodiazepines.  That application includes backup materials suggesting that Compass had conducted some research into the co-administration of psilocybin and benzodiazepines, including a PowerPoint presentation regarding potential experiments to be conducted by Compass.  The '110 application lists seven inventors: (1) Drummond McCullogh, (2) Derek Londesbrough, (3) Christopher Brown, (4) Julian Northen, (5) Gillian Moore, (6) Hemant Patil, and (7) David Nichols.

30.   The '611 application lists the exact same seven inventors in the same order. Its text is essentially copied and pasted from the '110 application, with references to co-administration with benzodiazepines changed to include certain of the Psilocybin Trade Secrets, including references to sequential co-administration with 5-HT2A antagonists.  The following screenshot comparing the abstracts of the two applications is telling:

**ABSTRACT**

The disclosure provides methods for treating a patient in need thereof comprising co-administering to the patient a therapeutically-effective dose of psilocybin and one or more ~~benzodiazepines.~~ 5-HT$_{2A}$ specific antagonists and/or inverse agonists. The methods described herein may be used to reduce ~~anxiety~~ the negative side effects associated with a traumatic psychedelic experience in patients who are administered psilocybin during the treatment a variety of diseases, disorders, and conditions, such as, but not limited ~~todepressive~~ to depressive disorders (including depressive disorders due to another medical condition), anxiety disorders, somatic symptom and related disorders, trauma and stressor related disorders, obsessive compulsive disorder and related disorders, substance-related and addictive disorders, headache disorders, feeding and eating disorders, or disruptive and impulse-control and conduct disorders.

31. Indeed, the hasty copy-and-paste job, necessary so Compass could quickly file its own application claiming Thompson's trade secrets before it thought Thompson had, is so glaring that in certain instances, Compass forgot to normalize the font and size of the text of the '611 application—the text font and size in certain of the replaced sections is different from the rest of the application (as shown clearly in the screenshots below)—and mistakenly left in references to the mechanism of action for benzodiazepines ("GABAergic manipulation"), which is not applicable for 5-HT2A antagonists.

'110 Application

> **Example 4: Co-administration of psilocybin and a benzodiazepine**
>
> The following examples 4A and 4B provide details of studies that will be used to determine the effects of low and high dose benzodiazepine (e.g., alprazolam or diazepam) on the acute psilocybin experience in healthy volunteers. The purpose of these studies is to provide an evidence base for the use of benzodiazepines to control
>
> 42
> 210464130 v1
>
> ---
>
> Attorney Docket No: COPA-019/00US
>
> psychedelic anxiety, which may be used to inform future dose and drug selection. This study also seeks to show the dimension of the psychedelic experience affected by GABAergic manipulation, including subjective (11D-ASC) and neurological (fMRI), to help develop an understanding of which aspects are important therapeutically.

'611 Application

> **Example 4: Co-administration of psilocybin and a 5-HT$_{2A}$ inverse agonist**
>
> The following example provides details of a study used to determine the effects of low and high dose of pimavanserin, a 5-HT$_{2A}$ inverse agonist on the acute psilocybin experience in healthy volunteers. The purpose of this study is to provide an evidence base for the use of 5-HT$_{2A}$ inverse agonists to control the negative side effects associated with
>
> 45
> 210539852 v1
>
> ---
>
> Attorney Docket No: COPA-020/00US
>
> a traumatic psychedelic experience, which may be used to inform future dose and drug selection. This study also seeks to show the dimension of the psychedelic experience affected by GABAergic manipulation, including subjective (11D-ASC) and neurological (fMRA), to help develop an understanding of which aspects are important therapeutically.

32. Unlike the '110 application filed the day prior, Compass did not include in the '611 application any supporting data. This is further evidence that Compass misappropriated Thompson's ideas, the Psilocybin Trade Secrets.

33. On a September 5, 2019 phone call, Compass asked whether Thompson had filed any patent applications, hoping that it had filed before Thompson. When Thompson informed Compass that he had filed his own patent application on August 13, 2019, two weeks before Compass's filing, Compass became noticeably upset. On information and belief, Compass was upset that Thompson was the first to file, putting a dent in Compass's plan to claim UMB's proprietary and trade secret information as its own.

34. Since 2019, Compass has filed at least three additional United States patent applications with disclosures related to Co-Administration of Psilocybin and a 5-HT2A Specific Antagonist. On October 18, 2021, Compass filed U.S. Patent Application No. 17/604,610, which claims some of the Psilocybin Trade Secrets as its inventions. That same day, Compass filed U.S. Patent Application No. 17/604,619, which details, in its specification, some of the Psilocybin Trade Secrets in the written description of Compass's claimed invention. On December 2, 2021, Compass filed U.S. Patent Application No. 17/540,962, which likewise included certain of the Psilocybin Trade Secrets in its specification. Compass has also filed multiple international patent applications, including PCT/IB2020/053688, PCT/IB2020/053687, and PCT/IB2020/053684, that include the Psilocybin Trade Secrets. Many of the inventors listed on these patent applications are the same Compass employees who were involved in the negotiation communications with Thompson and Gould—they were included on email correspondence, attended meetings with Thompson and Gould, and had access to the Psilocybin Trade Secrets.

*Terran's Standing to Sue*

35. On May 7, 2021, UMB and Terran entered into a Master License Agreement ("MLA") licensing to Terran certain of Thompson's Inventions ("Licensed Inventions") and related Confidential Information, including the Psilocybin Trade Secrets. Before this date, Terran had already entered into a confidentiality agreement with UMB and obtained an option to license the inventions from UMB.

36. The MLA grants Terran an exclusive license to the Licensed Inventions and Confidential Information and provides that Terran has the first and primary right to institute an action concerning infringement, which covers both patent infringement and misappropriation of the Licensed Inventions and Confidential Information, whether or not the trade secrets were in existence before or after May 7, 2021. In other words, the MLA grants Terran the right to institute any action for misappropriation of any Psilocybin Trade Secret that has existed at any period in time, including prior to the MLA.

**Count I**
**Misappropriation of Trade Secrets**
**Defend Trade Secrets Act (18 U.S.C. § 1831 et. seq.)**

37. Terran re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 of this Complaint.

38. As set forth above, Defendants misappropriated information regarding UMB's Psilocybin Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* UMB is the owner of these Psilocybin Trade Secrets. Terran has the requisite standing to sue under the Master License Agreement with UMB.

39. The Psilocybin Trade Secrets are directed towards methods of treating depression and other mental health issues with psilocybin in combination with a 5-HT2A antagonist, which implicate

the development, manufacturing, and sale of products and services used in, and intended for use in, interstate and foreign commerce.

40. The Psilocybin Trade Secrets are related to a potential treatment for neuropsychiatric disorders that has been continually under development by Thompson, UMB, and Terran since 2016 and is intended for use throughout the United States and the world.

41. The Psilocybin Trade Secrets derive(d) independent economic value from not being generally known to the public, to Terran's competitors, or to other persons who can obtain economic value from the disclosure or use of the information.

42. At the time of the misappropriation, the Psilocybin Trade Secrets were not readily ascertainable through proper means or from generally available, public sources.

43. At all relevant times, Terran and UMB have made reasonable efforts to protect and preserve the secrecy of the Psilocybin Trade Secrets.

44. Defendants misappropriated the Psilocybin Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by, *inter alia*, knowingly acquiring the Psilocybin Trade Secrets through improper means, and disclosing and/or using the Psilocybin Trade secrets without UMB's or Terran's express or implied consent.

45. Defendants knew or had reason to know that, at the time it acquired information about the Psilocybin Trade Secrets, this information was acquired and obtained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use, and that they did not have UMB's or Terran's express or implied consent to do so.

46. Defendants acquired the Psilocybin Trade Secrets by virtue of an NDA with UMB, not through their own independent research and efforts, in direct violation of their legal obligations to UMB.

47. On information and belief, Defendants failed to fully delete or return the Psilocybin Trade Secrets that they misappropriated, and continue to use or disclose the Psilocybin Trade Secrets without UMB's or Terran's consent.

48. On information and belief, Defendants have gained, or will gain, substantial benefit from their misappropriation of the Psilocybin Trade Secrets, to Terran's substantial detriment.

49. As a result of Defendants' unlawful conduct, the Psilocybin Trade Secrets have been compromised, and Terran is substantially threatened by Defendants' further use and/or dissemination of that information.

50. As a direct, proximate, and foreseeable result of Defendants' misappropriation of the Psilocybin Trade Secrets, Terran has been damaged in an amount not yet ascertained.

51. Defendants' unlawful actions were willful and malicious, and with the deliberate intent to injure Terran's business, thereby entitling Terran to exemplary damages and/or attorneys' fees in an amount to be proven at trial pursuant to 18 U.S.C. § 1836(b)(3)(D).

52. Terran is entitled to an order requiring Defendants, their agents, and all persons acting in concert with them, from using or disclosing, or threatening to use or disclose, the Psilocybin Trade Secrets, and restraining Defendants from obtaining any benefit from their wrongful possession and use of the Psilocybin Trade Secrets. Unless enjoined by this Court, said misappropriation of the Psilocybin Trade Secrets, actual or threatened, will cause great and irreparable injury to Terran. Terran has no adequate or other remedy at law for such acts and threatened acts.

**Count II**
**Misappropriation of Trade Secrets under the**
**Maryland Uniform Trade Secrets Act**
**(Md. Code Ann. Com. Law. § 11-1201 et seq.)**

53. Terran re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 45 of this Complaint.

54. As set forth above, Defendants misappropriated information regarding the Psilocybin Trade Secrets under the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann. Com. Law. § 11-1201 *et seq.* UMB is the owner of these Psilocybin Trade Secrets. Terran has the requisite standing to sue under the Master License Agreement, and amendments thereto.

55. The Psilocybin Trade Secrets are directed towards methods of treating depression and other mental health issues with psilocybin combined with a 5-HT2A antagonist.

56. The Psilocybin Trade Secrets derive(d) independent economic value from not being generally known to the public, to Terran's competitors, or to other persons who can obtain economic value from the disclosure or use of the information.

57. At the time of the misappropriation, the Psilocybin Trade Secrets were not readily ascertainable through proper means or from generally available, public sources.

58. At all relevant times, Terran and UMB have made reasonable efforts to protect and preserve the secrecy of the Psilocybin Trade Secrets.

59. Defendants misappropriated the Psilocybin Trade Secrets within the meaning of Md. Code Ann. Com. Law. § 11-1201 *et seq* by, *inter alia*, knowingly acquiring the Psilocybin Trade Secrets through improper means, and disclosing and/or using the Psilocybin Trade secrets without UMB's or Terran's express or implied consent.

60. Defendants knew or had reason to know that, at the time they acquired information about the Psilocybin Trade Secrets, this information was acquired and obtained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use, and that they did not have UMB's or Terran's express or implied consent to do so.

61. Defendants acquired the Psilocybin Trade Secrets by virtue of an NDA with UMB, not through their own independent research and efforts, in direct violation of their legal obligations to UMB.

62. On information and belief, Defendants failed to fully delete or return the Psilocybin Trade Secrets that they misappropriated, and continue to use or disclose the Psilocybin Trade Secrets without UMB's or Terran's consent.

63. On information and belief, Defendants have gained, or will gain, substantial benefit from its misappropriation of the Psilocybin Trade Secrets, to Terran's substantial detriment.

64. As a result of Defendants' unlawful conduct, the Psilocybin Trade Secrets have been compromised, and Terran is substantially threatened by Defendants' further use and/or dissemination of that information.

65. As a direct, proximate, and foreseeable result of Defendants' misappropriation of the Psilocybin Trade Secrets, Terran has been damaged in an amount not yet ascertained.

66. Defendants' unlawful actions were willful and malicious, and with the deliberate intent to injure Terran's business, thereby entitling Terran to exemplary damages and/or attorneys' fees in an amount to be proven at trial pursuant to Md. Code Ann. Com. Law. §§ 11-1203 and 11-1204.

67. Terran is entitled to an order requiring Defendants, their agents, and all persons acting in concert with them, from using or disclosing, or threatening to use or disclose, the Psilocybin Trade Secrets, and restraining Defendants from obtaining any benefit from their wrongful possession and

use of the Psilocybin Trade Secrets. Unless enjoined by this Court, said misappropriation of the Psilocybin Trade Secrets, actual or threatened, will cause great and irreparable injury to Terran. Terran has no adequate or other remedy at law for such acts and threatened acts.

### Prayer for Relief

WHEREFORE, Plaintiff Terran prays for judgment in its favor and against Defendants, inclusive as follows:

1. Granting permanent injunctive relief against Defendants, and any persons in active concert or participation with them: (i) enjoining Defendants from obtaining, retaining, using, transmitting, disseminating, or disclosing the Psilocybin Trade Secrets; (ii) ordering Defendants to identify, and turn over, any property in their possession, custody, or control containing or reflecting the Psilocybin Trade Secrets, including hard copy documents or any form of electronic storage media; (iv) ordering Defendants to identify any other persons, entities, or locations not within their possession, custody, or control, to which Defendant has transmitted, disseminated, disclosed, or stored any Psilocybin Trade Secrets; (v) requiring Defendants to assign to Plaintiff any rights to patents, patent applications, or other intellectual property that incorporates the Psilocybin Trade Secrets or to correct inventorship on any patents or patent applications that incorporate the Psilocybin Trade Secrets; and (vi) any other appropriate injunctive relief;

2. Awarding compensatory damages in an amount to be determined at trial;

3. Awarding exemplary damages in an amount to be determined at trial;

4. Awarding interest at the maximum legal rate on all sums awarded;

5. Awarding reasonable attorneys' fees as permitted by law;

6. Awarding all costs of suit herein; and

7. Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Terran demands a jury trial on all triable issues.

Dated: April 6, 2022

Respectfully submitted,

/s/ Ramsay M. Whitworth
Ramsay M. Whitworth (Fed. Bar #26251)
rwhitworth@silvermanthompson.com
Andrew M. Harvey (Fed. Bar # 21925)
aharvey@silvermanthompson.com
Silverman, Thompson, Slutkin & White
400 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 385-2225
(410) 547-2432 (f)

and

/s/ Joshua Baskin

John P. Flynn (admitted *pro hac vice*)
Email: jlflynn@wsgr.com
Charles T. Graves (admitted *pro hac vice*)
Email: tgraves@wsgr.com
Joshua Baskin (admitted *pro hac vice*)
Email: jbaskin@wsgr.com
WILSON, SONSINI, GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Stephanie C. Cheng (admitted *pro hac vice*)
WILSON, SONSINI, GOODRICH & ROSATI
633 West Fifth Street,
Suite 1550
Los Angeles, CA 90071
Telephone: (323)- 210-2900
Facsimile: (866) 974-7329
Email: stephanie.cheng@wsgr.com

*Attorneys for Plaintiff Terran Biosciences Inc.*