IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRAN BIOSCIENCES, INC., and
SCOTT THOMPSON
    *Plaintiffs*,

        v.

COMPASS PATHFINDER
LIMITED, *et al.*,
    *Defendants*.

Civil Action No. ELH-22-1956

**MEMORANDUM OPINION**

Plaintiffs Terran Biosciences, Inc. ("Terran Biosciences" or the "Company"), a Delaware corporation, and Scott Thompson, Ph.D., formerly Professor of Physiology and Chair of the Department of Physiology at the University of Maryland School of Medicine (collectively, "Terran"), have filed suit against defendant Compass Pathfinder Limited ("Compass"), a company incorporated in England and Wales, and ten "John Doe" defendants (collectively, "Compass"). ECF 48 ("Second Amended Complaint" or "SAC"), ¶¶ 1, 9–11. In sum, plaintiffs allege that Compass defrauded them of trade secrets concerning the therapeutic application of the hallucinogenic compound psilocybin. *Id.* ¶ 1.

The original Complaint was filed solely by Terran Biosciences on August 5, 2022. ECF 1. It has twice been amended. ECF 34 ("First Amended Complaint"); ECF 48. Plaintiffs now seek leave to file a Third Amended Complaint, by which they would join the University of Maryland, Baltimore ("UMB"), a State entity, as a co-plaintiff, and add factual allegations pertinent to the

claims of fraud.  ECF 67 ("Motion for Leave" or "Motion").  The Motion for Leave is accompanied by 38 exhibits.  ECF 67-1 to ECF 67-39.[1]

The proposed Third Amended Complaint is docketed at ECF 67-1 ("Third Amended Complaint" or "TAC").  The redlined version is at ECF 67-29.  According to plaintiffs, adding UMB as a plaintiff will render moot Compass's contention that the case should be dismissed for failure to join UMB as a necessary party.  ECF 67 at 3; *see* ECF 53, ECF 53-1 at 12-13.  Compass opposes the Motion.  ECF 68 ("Opposition").  Terran has replied.  ECF 75 (sealed version); ECF 76 (redacted version).

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.      Background

The Complaint (ECF 1) asserted three counts:  misappropriation of trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* (Count I); misappropriation of trade secrets, in violation of the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code (2013 Repl. Vol., 2022 Supp.), § 11-1201 *et seq.* of the Commercial Law Article ("C.L.") (Count II); and breach of contract (Count III).  ECF 1, ¶¶ 31–65.  Compass filed a motion to dismiss the Complaint, arguing, *inter alia*, that this Court lacks personal jurisdiction as to Compass.  ECF 24.

On April 6, 2023, Terran Biosciences filed a motion for leave to amend the Complaint. ECF 32 ("First Leave Motion").  It sought to include "additional factual allegations relating to the [Company's] trade secret claims . . . in Counts I and II of the original Complaint" and to clarify

---

[1] ECF 67-1 to ECF 67-39 total over 1,200 pages.  Surprisingly, plaintiffs failed to include a table of contents for the exhibits.

"factual allegations relating to personal jurisdiction" concerning Compass.  *Id.* at 1.  I granted the First Leave Motion.  ECF 33.  The First Amended Complaint followed.  ECF 34.

Then, on May 19, 2023, the Company filed a motion for leave to file a Second Amended Complaint.  ECF 45 ("Second Leave Motion").  It sought to join Professor Thompson as a plaintiff with respect to Count II, allegedly because he is "the inventor of the Psilocybin Trade Secrets at issue in this action."  *Id.* at 2.  In addition, Terran Biosciences sought to add Count III, asserted jointly by the Company and Professor Thompson, alleging unfair competition under Maryland law.  *Id.*  "Counts IV through XI" of the proposed Second Amended Complaint were to be "brought solely by Professor Thompson, and include[d] claims for detrimental reliance, unjust enrichment, fraud, and breach of contract."  *Id.*  Although the Second Amended Complaint significantly altered the suit, adding a new party and several new claims, Compass did "not oppose [the] Second Motion for Leave."  ECF 46.  By Order of June 2, 2023, I granted the Second Leave Motion.  ECF 47.  The SAC followed.  ECF 48.

The Second Amended Complaint (ECF 48) is now the operative complaint.  It is accompanied by 25 exhibits.  ECF 45-4 to ECF 45-28.[2]  In the SAC, plaintiffs allege that Compass undertook a "malicious and intentional scheme to defraud the State of Maryland and misappropriate highly confidential and sensitive, proprietary information that Terran [Biosciences], Professor Thompson, and [UMB] spent years and substantial resources to develop."  ECF 48, ¶ 1.

---

[2] These documents are actually docketed as exhibits to the Company's Second Leave Motion, rather than as exhibits to the Second Amended Complaint.  *See* ECF 48.  Nonetheless, I understand the Second Amended Complaint to have incorporated by reference the exhibits attached to the Second Leave Motion.

According to plaintiffs, "[i]n November 2016, Professor Thompson came up with the idea of administering psilocybin in the presence of ketanserin (a 5-HT2A antagonist) as a potential rapid, non-hallucinogenic antidepressant therapy." *Id.* ¶ 24.  In particular, "Professor Thompson recognized that [this] combination would reduce or eliminate the hallucinatory effects of psilocybin, while retaining its antidepressant actions." *Id.*  Therefore, "[o]ver the next few years, Professor Thompson engaged in extensive research . . . related to the sequential administration of ketanserin (or other 5-HT2A antagonists) followed by psilocybin, in order to produce the optimal non-hallucinatory and anti-depressive effects." *Id.*  "Further research" conducted by Professor Thompson "related to the optimal time points, frequency, and dosing for the sequential administration of the two drugs in combination." *Id.*

"The inventions derived from, and the results of, this research constitute the Psilocybin Trade Secrets." *Id.* ¶ 25.  "By virtue of Professor Thompson's employment and invention assignment agreement with UMB, the Psilocybin Trade Secrets are owned by UMB, which in turn has exclusively licensed them to Terran [Biosciences]." *Id.*  Nonetheless, "pursuant to UMB's intellectual property policies and faculty agreements, Professor Thompson receives a portion of the revenues that UMB generates from his inventions, including a portion of the royalties UMB receives from licensing his patents and other inventions, including the Psilocybin Trade Secrets." *Id.*

"On August 13, 2019, Professor Thompson and UMB filed U.S. Provisional Patent Application No. 62/886,0[9]0 ('the '[9]0 Application'), entitled 'Combination Therapy with Broad Spectrum Serotonergic Agonists and Anti-Hallucinogenic Serotonergic Antagonists.'" *Id.* ¶ 27.[3]

---

[3]   Exhibit 15 to Terran's Second Amended Complaint is a patent application titled "Combination Therapy with Broad Spectrum Serotonergic Agonists and Anti-Hallucinogenic Serotonergic Antagonists."  *See* ECF 45-18.  Terran cites Exhibit 15 in support of its assertion that

Although the "'[9]0 Application generally disclosed co-administering psilocybin and an antagonist," it "did not go into detail about the specifics of the sequential administration of a 5-HT2A antagonist followed by psilocybin, or the optimal order, time points, frequency, or dosing for the therapy, all of which Professor Thompson maintained as trade secrets pending further experimental data." *Id.*

In May 2019, Ekaterina Malievskaia, M.D., MScPH, "the Co-Founder and Head of Research and Development of Compass," contacted Todd Gould, Professor of Psychiatry at the University of Maryland School of Medicine, regarding Compass's interest in "'developing psilocybin for treatment-resistant depression and . . . understand[ing] [the] molecular mechanisms of psilocybin.'" *Id.* ¶ 28 (quoting ECF 45-19). Professor Gould referred Dr. Malievskaia to Professor Thompson. ECF 48, ¶ 28. Thereafter, "Dr. Malievskaia solicited a call with Professor Thompson to discuss his research on the Psilocybin Trade Secrets." *Id.*

Compass "sent Professor Thompson a Mutual Non-Disclosure Agreement ('NDA')" on May 29, 2019, to be executed before his scheduled call with Dr. Malievskaia. *Id.* ¶ 29 (citing ECF 45-20). "By its terms, the NDA would prohibit Compass from using any information disclosed by Thompson or his colleagues other than 'in connection with exploring possible business arrangements between [Compass and Thompson] and/or their Affiliates.'" ECF 48, ¶ 29 (citing ECF 45-21) (alteration in SAC). Professor Thompson returned a signed copy of the NDA. ECF 48, ¶ 29. Although "Compass acknowledged receipt of [the] signed NDA on May 30, 2019," Compass did not countersign the NDA. *Id.* (citing ECF 24-1 at 18).

---

"Professor Thompson and UMB filed U.S. Provisional Patent Application No. 62/886,080" on August 13, 2019. ECF 48, ¶ 27. However, the application filed as Exhibit 15 is an application numbered 62/886,090. ECF 45-18. I assume that Terran's reference to the "'80 Application" is a typographical error.

Professor Thompson, Professor Gould, and Compass held a telephone conference on May 31, 2019, "to discuss the molecular mechanisms of psilocybin." ECF 48, ¶ 30.  In particular, "[t]he parties discussed Professor Thompson's and Professor Gould's plans" to investigate the effects of administering psilocybin in the presence of sequentially-administered ketanserin.  *Id.*  "On the call, Compass expressed significant interest in Professor Thompson's research results, in sponsoring further research, and in the possibility of including ketanserin as part of the treatment regimen in Compass's impending clinical study."  *Id.*[4]

Thereafter, on June 12, 2019, "Compass requested a research proposal from Professor Thompson."  *Id.* ¶ 31 (citing ECF 45-23).  "The next day, Professor Thompson and Professor Gould sent Compass a scientific proposal and a proposed budget to study the administration of psilocybin in the presence of ketanserin." ECF 48, ¶ 31.  Professor Thompson and Professor Gould believed that this disclosure was protected by the NDA.  *Id.*

Compass resplied to Professor Thompson on June 18, 2019, stating "that they 'were excited to read about the interesting questions you'd like to explore using psilocybin' and asked additional . . . questions . . . about Professor Thompson's research."  *Id.* ¶ 32 (quoting ECF 45-23).  Professor Thompson responded to these questions and others posed "throughout the months thereafter." ECF 48, ¶ 33.  Meanwhile, "Compass and UMB worked on a draft collaboration agreement."  *Id.* ¶ 34.

On September 5, 2019, Compass asked Professor Thompson whether he had filed any patent applications regarding his research.  *Id.* ¶ 35.  Professor Thompson told Compass that he had filed the '090 Application.  *Id.*  "In response, Compass asked a flurry of questions about

---

[4] The SAC frequently refers to "Compass" without identifying the representative or representatives from Compass with whom Thompson or others interacted.

Professor Thompson's work," and sent "follow-up emails [requesting] more information, including additional requests for initial research data and an explanation of Professor Thompson's past and future plans relating to any psilocybin research." *Id.* (citing ECF 45-25).

At this point, Professor Thompson and Professor Gould recognized that "others in the scientific community were becoming interested in psilocybin's potential," and they became concerned that the parties had not yet reached a collaboration agreement. ECF 48, ¶ 36. "They therefore informed Compass that they wanted to move forward as fast as they could." *Id.* (citing ECF 45-25). Compass responded on September 24, 2019, by "asking even more questions about the studies, specifically to confirm that they had not started." ECF 48, ¶ 36 (citing ECF 45-25). "Compass also represented that it was hopeful that this would be 'the start of an open and productive collaboration' with UMB, which [might] include the testing of 'new compounds in the future.'" ECF 48, ¶ 36 (quoting ECF 45-25).

On October 20, 2019, "Compass sent UMB a heavily marked-up revision of a collaboration agreement, with particularly heavy redlines to the intellectual property provisions of the draft agreement." ECF 48, ¶ 37. Professor Thompson met with Compass the next day, at the annual meeting of the Society for Neuroscience. *Id.* ¶ 38. There, "Compass stated that it remained interested in working with UMB and Professor Thompson." *Id.* Nonetheless, "[o]n November 20, 2019, Compass e-mailed Professor Thompson saying that it was 'unable to proceed with the collaboration' and declined to fund Professor Thompson's experiments." *Id.* (quoting ECF 45-26).

Terran Biosciences later discovered that, "[o]n August 29, 2019, without telling Professor Thompson or UMB," Compass had filed "U.S. Provisional Parent Application No. 62/893,611 ('the '611 Application'), which included disclosure of, and draft claims covering, the sequential

administration of a 5-HT2A antagonist (expressly including ketanserin) followed by psilocybin to reduce [psilocybin's] negative side effects."  ECF 48, ¶ 40 (citing ECF 45-9).  According to plaintiffs, Compass filed this application even though, when it "first began talking with Professor Thompson and Professor Gould, it had not been researching the combination of psilocybin with a 5-HT2A antagonist, and had no knowledge about that subject."  ECF 48, ¶ 39.

The '611 Application "does not include any data regarding" the sequential administration of ketanserin followed by psilocybin.  *Id.* ¶ 40 (citing ECF 45-9).  Terran asserts:  "This is because Compass had none.  It stole the ideas for the '611 Application from Professor Thompson and disclosed them in its own patent application."  ECF 48, ¶ 40.

Certain parts of the '611 Application were "copied from an earlier, unrelated Compass application, U.S. Provisional Patent Application No. 62/893,110 ('the '110 Application')."  *Id.* ¶ 41.  The '110 Application, which Compass filed on August 28, 2019, "claims methods of reducing anxiety in a patient undergoing treatment with psilocybin by co-administering benzodiazepines." *Id.* (citing ECF 45-10).  It "lists seven inventors:  Drummond McCullough, Derek Londesbrough, Christopher Brown, Julian Northern, Gillian Moore, Hemant Patil, and David Nichols."  ECF 48, ¶ 41 (citing ECF 45-10).  The '611 Application lists the "same seven inventors, in the same order." ECF 48, ¶ 42 (citing ECF 45-9).  Moreover, "[i]ts text is essentially copied and pasted from the '110 Application, with references to co-administration with benzodiazepines changed to include certain of the Psilocybin Trade Secrets."  ECF 48, ¶ 42.  Indeed, in the '611 Application, the font and size of the text specific to Psilocybin Trade Secrets is different from the font and size of the text copied from the '110 Application.  *Id.* ¶ 43 (citing ECF 45-9 at 308–09; ECF 45-10 at 58–59). And, apparently by mistake, the '611 Application retains "references to the mechanism of action

for benzodiazepines ('GABAergic manipulation')," which is not relevant to 5-HT2A antagonists. ECF 48, ¶ 43 (citing ECF 45-9 at 309).

The '611 Application contained specific "disclosures regarding the sequential administration of a 5-HT2A antagonist followed by psilocybin . . . including ranges for the sequential order, time points, frequency[,] and dosing of such therapy." ECF 48, ¶ 44; *see id.* ¶ 45 (citing ECF 45-9 at 265). These disclosures were unsupported by any experimental data. ECF 48, ¶ 44. Moreover, "[a]s of August 29, 2019, Professor Thompson had not made any public disclosure of these aspects and details of his Psilocybin Trade Secrets." *Id.* ¶ 45. "[N]or did he disclose them in his August 13, 2019 provisional patent application." *Id.* On September 5, 2019, Compass learned that Professor Thompson "had filed his own patent application on the general co-administration of psilocybin and a 5-HT2A antagonist . . . two weeks before Compass's filing," and "Compass became noticeably upset." *Id.* ¶ 46.

"Since 2019, Compass has filed at least four additional United States patent applications . . . involving the sequential administration of a 5-HT2A antagonist followed by psilocybin." *Id.* ¶ 47. In particular, on October 18, 2021, "Compass filed U.S. Patent Application No. 17/604,610." *Id.* (citing ECF 45-27). This application included claims to "aspects of the Psilocybin Trade Secrets, including the sequential administration of a 5-HT2A antagonist followed by psilocybin." ECF 48, ¶ 47. However, on August 25, 2022, before the Patent Office took any action with respect to Application No. 17/604,610, Compass canceled its claims to aspects of the Psilocybin Trade Secrets. *Id.* (citing ECF 45-28 at 4). Terran asserts that "Compass canceled these claims because Compass's patent prosecution attorneys at Cooley LLP became aware of Compass's misconduct and the fact that no one at Compass actually invented the claimed subject matter." ECF 48, ¶ 47.

Also on October 18, 2021, "Compass filed two additional non-provisional applications . . . U.S. Patent Application Nos. 17/604,606 and 17/604,619, which included, in their specifications, aspects and details of the Psilocybin Trade Secrets." *Id.* ¶ 48.  And, on December 2, 2021, "Compass filed U.S. Patent Application No. 17/540,962, which likewise included aspects and details of the Psilocybin Trade Secrets in its specification." *Id.*  "That application issued as U.S. Patent No. 11,564,935." *Id.*  Compass has since "filed U.S. Patent Application No. 18/077,876, a continuation patent application with the same specification." *Id.*  In addition, Compass has "filed multiple international patent applications" that "disclose aspects and details of the Psilocybin Trade Secrets in their specifications." *Id.*  "Many of the inventors listed on these patent applications are the same Compass employees who were involved in the communications with Professor Thompson and Professor Gould starting in May 2019 . . . ." *Id.*  These listed inventors "were included on email correspondence, attended meetings with Professor Thompson and Professor Gould, and had access to the Psilocybin Trade Secrets." *Id.*

"On May 7, 2021, UMB and Terran [Biosciences] entered into a Master License Agreement ('MLA'), exclusively licensing to Terran [Biosciences] certain of Professor Thompson's [i]nventions ('Licensed Inventions') and related Confidential Information, including the Psilocybin Trade Secrets." *Id.* ¶ 50.  "[T]he MLA grants Terran [Biosciences] the right to institute any action for misappropriation of any Psilocybin Trade Secret that has existed at any period in time, including prior to the MLA." *Id.* ¶ 51.

Compass moved to dismiss the Second Amended Complaint on June 26, 2023.  ECF 51; ECF 51-1; ECF 53 ("Motion to Dismiss").  In that motion, Compass maintained that it is not subject to the Court's personal jurisdiction.  ECF 51 at 1. Compass also argued, *inter alia,* that the SAC failed to plead fraud with the requisite particularity required by Fed. R. Civ. P. 9(b), *id.* at 2,

or to join UMB, "a necessary party under Fed. R. Civ. P. 19," as a plaintiff, "necessitating joinder or dismissal of all counts." *Id.* at 1. Terran opposed the Motion to Dismiss. ECF 55. Compass replied. ECF 57.

On December 7, 2023, plaintiffs provided notice to the Court that, "[f]ollowing review and approval by the Office of the Maryland Attorney General ['OAG'], UMB has agreed to join this action as co-plaintiff . . . ." ECF 66 ("Joinder Notice"). According to Terran, "[t]he joinder of UMB moots Compass's necessary party argument." *Id.* Further, Terran stated: "Plaintiffs have notified Compass of this development, and Plaintiffs reached out to Defendant to discuss a process to address the third amended complaint and Compass's pending Motion to Dismiss, while eliminating—or at least minimizing—motion practice before the Court." *Id.* The Motion for Leave to file the Third Amended Complaint followed. ECF 67; ECF 67-1.

## II. Standard of Review

Fed. R. Civ. P. 15(a)(1) provides: "A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Notably, "[t]he court should freely give leave when justice so requires." *Id.*

As the Fourth Circuit has observed, "[t]he Supreme Court has emphasized that 'this mandate is to be heeded.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, it is the Fourth Circuit's "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (citing *Coral v. Gonse*, 330 F.2d 997, 998

(4th Cir. 1964)); *see also United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).   Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Oroweat*, 785 F.2d at 509 (citing *Foman*, 371 U.S. at 182); *see also Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019); *Scott v. Family Dollar Stores*, 733 F.3d 105, 121 (4th Cir. 2013); *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).

"This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006); *see also MedCom*, 42 F.4th at 197.   Ultimately, however, the decision whether to grant leave to amend falls within the sound discretion of the district court. *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993) (citing *Nat'l Bank v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988)).   "At bottom," this "is a standard of deference, where the trial judge 'will not be reversed simply because an appellate court disagrees.'" *MedCom*, 42 F.4th at 197 (quoting Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L. J. 747, 754 (1982)) (additional citation omitted).   "Put simply, an abuse of discretion is when the district judge is 'fundamentally wrong.'" *MedCom*, 42 F.4th at 198 (citing *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 957 (7th Cir. 2014)).

### III.   Discussion

### A.

Terran asserts that "the main catalyst" for the Motion for Leave was the State of Maryland's decision to approve the participation of UMB in the lawsuit as a co-plaintiff.   ECF 67 at 3.   In addition, Terran asserts that the Third Amended Complaint, which contains additional factual

allegations related to Compass's alleged fraud, is intended to "moot Compass's misguided argument that Professor Thompson failed to plead fraud with particularity." *Id.* According to Terran, the Court should allow the proposed amendments because they cause "no prejudice to Compass"; Terran "acted diligently and in good faith"; and "the amendments support clearly meritorious claims." *Id.* at 9.

With respect to prejudice, Terran argues that the Third Amended Complaint "is entirely responsive to arguments raised by Compass in its motion to dismiss" the Second Amended Complaint. *Id.* In particular, Terran asserts that the Third Amended Complaint will moot Compass's arguments that Terran failed to join UMB as a necessary party or plead fraud with particularity. *See id.* at 3–4. In Terran's view, "it [is] strange for Compass to refuse [consent to file the Third Amended Complaint] when it previously told the Court" in its Motion to Dismiss the Second Amended Complaint "that UMB '*must* be joined if the case proceeds.'" *Id.* at 4 (citing ECF 53-1 at 12–13 (emphasis in ECF 67)).

To support its position, Terran cites Judge Gallagher's statement in *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, SAG-18-3133, 2019 WL 5102674, at *4 (D. Md. Oct. 10, 2019) (quoting *Laber*, 438 F.3d at 427), that "a proposed amendment carries little prejudice 'if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.'" ECF 67 at 10. According to Terran, the factual allegations added to the Third Amended Complaint pertain to "essentially the same fraud claim as" the claim advanced in the Second Amended Complaint. ECF 67 at 10. Moreover, Terran maintains that the proposed amendments "will have no effect on the case schedule or Compass's ability to defend itself," because "Compass's motion to dismiss remains pending, Compass has not filed an answer, no discovery has occurred, and there is no trial date." *Id.*

With respect to the question of good faith, Terran asserts: "Plaintiffs and their counsel diligently pursued the joinder of UMB—who[] Compass insisted 'must be joined if the case proceeds' (ECF No. 53-1 at 12–13)—through the approval process required by the State, over which Plaintiffs[] had little control."  ECF 67 at 11.  Terran explains that "obtaining the State's approval was a lengthy process that required communications with the Governor of Maryland."  *Id.* at 3.

Dustin Guzior, counsel for Terran, has submitted a Declaration describing Terran's involvement and efforts with regard to the approval process.  ECF 67-30.  The Declaration is supported by nine exhibits.  ECF 67-31 to ECF 67-39.  These exhibits contain, *inter alia*, correspondence between counsel for Terran and the Maryland Office of the Attorney General ("OAG") regarding UMB's participation in the lawsuit.  *See* ECF 67-31 to ECF 67-36.

The Motion includes a "Statement of Facts Regarding Joinder of UMB."  ECF 67 at 6.  In Terran's view, these facts demonstrate its good faith.  I review these facts here.

Terran's current counsel is Sullivan & Cromwell LLP ("S&C").  According to Terran, "S&C replaced Plaintiffs' previous counsel in August 2023."  *Id.*  Terran asserts that, after beginning its representation of Terran, "S&C immediately" resumed "discussions regarding UMB joining this case, which were ongoing between previous counsel and the" OAG.  *Id.* (citing ECF 67-30, ¶¶ 2–3).  During "an introductory call with UMB and the OAG" on August 25, 2023, Terran "learn[ed] that[,] because UMB is a state entity, it was required to engage in a comprehensive approval process involving the OAG and the Office of the Governor of Maryland before it could join this litigation as a co-plaintiff."  ECF 67 at 7 (citing ECF 67-30, ¶ 3; ECF 67-31; ECF 67-32).  Terran remained in regular contact with the OAG in September and October of 2023.  ECF 67 at

14

7–8.  During this time Terran believed "that the approval process was close to resolution."  *Id.* at 7 (citing ECF 67-30, ¶ 5).

In early November of 2023, "the OAG informed S&C that alternative counsel would be needed to represent UMB in light of potential future conflicts."  ECF 67 at 7 (citing ECF 67-30, ¶ 7).  According to Terran, "S&C proposed that Plaintiffs' Maryland co-counsel at Silverman, Thompson, Slutkin & White ('Silverman Thompson') represent UMB."  ECF 67 at 8 (citing ECF 67-30, ¶ 5).  "Silverman Thompson and the OAG were then in contact several times for multiple weeks discussing this potential arrangement."  ECF 67 at 8 (citing ECF 67-30, ¶ 7).  However, on December 7, 2023, the OAG informed S&C that, because of potential conflicts of interest, the State could not engage Silverman Thomson to represent UMB.  ECF 67 at 8.  Nonetheless, the OAG informed S&C that it had appointed Steven Tiller of Whiteford, Taylor & Preston LLP as counsel to UMB.  *Id.* (citing ECF 67-30, ¶ 8; ECF 67-36).  On the same date, December 7, 2023, Terran filed the Joinder Notice.  ECF 66.  It also "emailed Compass a draft of its proposed" Third Amended Complaint.  ECF 67 at 8.

The parties met to discuss Terran's proposed Third Amended Complaint on December 11, 2023.  *Id.*  On December 12, 2023, Compass informed Terran that it would not consent to the filing of the Third Amended Complaint.  *Id.*

In Terran's view, its engagement with the OAG regarding the joinder of UMB as a co-plaintiff "is far from the carelessness that might evidence bad faith."  *Id.* at 12.  Terran also affirms that it "acted in good faith with respect to the amendments in the [Third Amended Complaint] relating to the fraud claim."  *Id.*  Terran explains, *id.*:

> Given that UMB—if and when it is joined as a co-plaintiff—would be asserting substantially the same fraud claim on behalf of the University . . . it was eminently sensible to wait to amend the fraud allegations until a decision was reached on whether UMB would join this litigation.  It would have wasted party and Court

resources to brief a motion for leave to amend with respect to Professor Thompson's fraud claim, and then later, raise the joinder of UMB and amendments UMB might want to make to join or add claims.

In sum, Terran asserts that "[t]he lack of any evidence of bad faith delay weighs in favor of granting" the Motion.  *Id.* at 13.

 With respect to futility, Terran argues that, although "the factual allegations in the [Second Amended Complaint] supporting Professor Thompson's fraud claim are already sufficiently specific," the proposed amendments "provide the details that Compass argues are missing with respect to" this fraud claim.  *Id.*   In particular, Terran asserts that the proposed amendments "identif[y] in the pleading itself the details that were already presented in the correspondence incorporated by reference into the SAC:  Dr. Ekaterina Malievskaia and Dr. Shaun Hurley are the specific Compass employees who perpetrated the fraud on Compass's behalf."  *Id.* at 14 (citing ECF 67-1, ¶¶ 3, 30–39).  And, Terran asserts that the Third Amended Complaint "identifies the specific statements and omissions of those individuals that were fraudulent."  ECF 67 at 14 (citing, *inter alia*, ECF 67-1, ¶¶ 30–37; 40–49).

Moreover, Terran contends that, even if its allegations of fraud in the Second Amended Complaint were insufficiently specific, "the proposed amendments in the TAC do nothing more than convert purportedly general allegations of fraud into more specific allegations."  ECF 67 at 14.  Terran asserts: "Courts in this district frequently permit a party to amend a complaint that contains only generalized allegations of fraud."  *Id.* (citing *Rosedale v. CarChez, LLC*, SAG-19-2780, at *6 (D. Md. Mar. 2, 2020); *Pasadena Boat Works v. Carolina Skiff, LLC*, JKB-20-1414, 2020 WL 4903884, at *3–4 (D. Md. Aug. 20, 2020)).  Terran concludes that, "[e]ven assuming *arguendo* that the SAC did not itself satisfy the particularity requirement of Rule 9(b) . . .

amendments that merely convert purportedly general allegations of fraud into more specifics [sic]

allegations . . . are not futile" and "should be allowed."  ECF 67 at 15.

In its Opposition (ECF 68), Compass argues that there are at least three grounds on which

to deny Terran's Motion.  *Id.* at 6.  First, Compass contends that Terran's "proposed amendments

are *futile* because they fail to remediate Compass's pending challenges to the fraud-type claims"

Terran advanced in its Second Amended Complaint.  *Id.* (emphasis in original).  Second, Compass

asserts that Terran "acted with *undue delay* in seeking to amend," because "every proposed

amendment in the TAC is predicated on alleged facts that were known and available to Plaintiffs

when the original Complaint was filed in 2022."  *Id.* (emphasis in original).  And third, Compass

claims that granting leave to amend "will cause undue *prejudice* . . . as Plaintiffs' serial

amendments drag out this case, cause unnecessary expense, and add scandalous allegations

seemingly designed to harass and embarrass Compass."  *Id.* (emphasis in original).  In sum,

Compass complains: "Plaintiffs have repeatedly employed the following strategy: file a complaint,

allow Compass to raise the complaint's deficiencies in a motion to dismiss, allow months to pass,

switch law firms, and file an amended complaint futilely responding to Compass's motion."  *Id.*

With respect to the alleged futility of Terran's proposed amendments, Compass

acknowledges that "[t]he addition of UMB as a plaintiff . . . is not futile," because "UMB is a

necessary party in this case."  *Id.* at 10 n.2.  Nonetheless, Compass asserts that the proposed

amendments are futile insofar as they "do nothing to rebut Compass's criticisms that the court

lacks personal jurisdiction over Compass, that Plaintiffs fail to state a trade secret claim, that

Plaintiffs' kitchen-sink approach to pleading is wasteful, or that the Doe defendants are not

properly identified."  *Id.* at 11.

Compass also argues that the proposed amendments fail to rectify "the pleading deficiencies" in the "four fraud-related claims" advanced in the Second Amended Complaint: "fraudulent misrepresentation (Count VII), negligent misrepresentation (Count VIII), fraudulent concealment (Count IX), and constructive fraud (Count X)." *Id.* at 12.   In particular, Compass contends that, even assuming that the Third Amended Complaint "addresses and moots" Compass's argument that Terran did not plead fraud with particularity, the "proposed amendments are nonetheless futile because they do not address two additional pleading requirements of fraud-type claims:  justifiable reliance and a tort duty." *Id.* at 13.

Citing, *inter alia*, *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 673 (D. Md. 2013), Compass asserts that, "[t]o plausibly assert fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment," plaintiffs "must show that they justifiably relied on an alleged Compass misrepresentation or concealment."  ECF 68 at 14.   And, according to Compass, any such justifiable reliance was foreclosed by the NDA executed by Professor Thompson, which provided, in part:  "'Neither this Agreement nor any action taken prior to or in connection with this Agreement will give rise to any obligation on the part of either party to engage in discussions or negotiations with the other party.'" *Id.* at 14 (quoting ECF 16, ¶ 8).

Compass argues that the Third Amended Complaint's claims of fraud are also deficient because they are unsupported by allegations "show[ing] that Compass owed Thompson (or UMB) a tort duty, a required element of the claims for negligent misrepresentation, fraudulent concealment, and constructive fraud."  ECF 68 at 14 (citing *J.G. Wentworth Originations, LLC v. Mobley*, ELH-11-1406, 2012 WL 4922862, at *9 (D. Md. Oct. 12, 2012); *Topline Sols., Inc. v. Sandler Sys., Inc.*, ELH-09-3102, 2017 WL 1862445, at *35 (D. Md. May 8, 2017); *Donalds v. Ethicon, Inc.*, GLR-20-1659, 2021 WL 6126297, at *11–12 (D. Md. Dec. 28, 2021)).   Compass

18

observes that the NDA provides, in part: "'The parties do not intend that any agency or partnership relationship be created between them by this Agreement.'"  ECF 68 at 15 (quoting ECF 16, ¶ 8). According to Compass, this provision precludes the existence of any "tort duty" between plaintiffs and Compass.  ECF 68 at 15.

With respect to undue delay, Compass asserts that Terran Biosciences "knew [that] UMB was a necessary party at the time the Complaint was filed in August 2022," but failed to pursue UMB's joinder diligently until August 2023.  *Id.* at 16–17.  Compass notes that the MLA, which Terran executed in May 2021, "specifically requires that 'the joinder [of UMB must be] approved by the Maryland Attorney General.'"  *Id.* at 16 (quoting ECF 68-2, § 9.4.3(b)) (alteration in ECF 68).  "Therefore," asserts Compass, "Plaintiffs' contention that they 'came to learn' that they needed approval from the Maryland Attorney General in August 2023 is not credible."  ECF 68 at 16 (quoting ECF 67 at 7).  Moreover, according to Compass, "Terran was aware of the potentially time-consuming requirement of state approval in 2021, and should have engaged in the process of obtaining the approval prior to filing this lawsuit in August 2022."  ECF 68 at 17.

Compass also disputes Terran's contention that it was "'eminently sensible to wait to amend the fraud allegations until a decision was reached on whether UMB would join this litigation.'"  *Id.* at 18 (quoting ECF 67 at 12).  According to Compass, Terran's explanation for the delay is "illogical," because Terran's "amendments directed toward the Rule 9(b) particularity requirement are not at all specific to UMB, and therefore could have been added at any time."  ECF 68 at 18.

Further, Compass argues that it would be prejudiced by Terran's proposed amendments in at least three ways.  *Id.* at 18–20.  First, Compass asserts that "Plaintiffs' undue delay in filing their motion" has forced Compass to endure "'[e]xpense, delay, and wear and tear.'"  *Id.* at 18 (quoting

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 11-CV-0030 AWI SMS, 2013 WL 398664, at *6 (E.D. Cal. Jan. 31, 2013)).  Compass insists that the fact that discovery has not yet begun is not dispositive.  Instead, according to Compass, prejudice from undue delay "'can occur even when discovery has not yet begun,' particularly when 'the fact that discovery has not yet begun is illustrative of the prejudice [defendant] has already suffered.'"  ECF 68 at 19 (quoting *Synopsys, Inc. v. Library Techs., Inc.*, CRB-20-7014, 2022 WL 2356819, at *2 (N.D. Cal. June 30, 2022)).

Second, Compass argues that, by "serially amending the Complaint," Terran has contravened the principle that "[p]laintiffs should not be permitted to 'use prior . . . Motions to Dismiss as a road map to cure deficiencies in [their] pleadings.'"  ECF 68 at 19 (quoting *Palacios v. U.S. Bank Nat'l Ass'n*, ELH-15-2081, 2016 WL 3440124, at *18 (D. Md. June 23, 2016)).[5]  And, third, Compass claims that it would be prejudiced by the addition of paragraph 51 of the Third Amended Complaint, which, according to Compass, "adds scandalous allegations from unsubstantiated internet articles."  ECF 68 at 19.

In its Reply (ECF 75; ECF 76), Terran argues, first, that it did not unduly delay moving for leave to file the Third Amended Complaint.  ECF 75 at 4–5.  According to Terran, the MLA's provisions were not sufficiently clear to put it on notice of the need to obtain the State's approval for joinder of UMB as a co-plaintiff.  In particular, Terran states that Section 9.4.3 of the MLA requires the OAG's approval of UMB's joinder only if "the parties or a court determines that UMB is a necessary party, which did not happen" in this case.  *Id.* at 4.  Moreover, Terran observes that

---

[5] Compass's complaint about serial amendments flies in the face of its claim that Terran could have added, at any time, amendments pertaining to Fed. R. Civ. P. 9(b)'s particularity requirement.  If Terran had done so, the Court could now be considering a Fourth Amendment Complaint.

"Compass itself did not raise the necessary party argument until *June 2023*." *Id.* (emphasis in original). And, with respect to Compass's claim that Terran unduly delayed providing specificity regarding Compass's alleged fraud, Terran asserts that the proposed amendments simply "incorporate into the body of the TAC the details from e-mails" already "attached to the SAC," and thus part of it. *Id.* at 5.

With regard to Compass's claim of prejudice, Terran asserts "that nothing has happened in this case beyond a motion to dismiss, which the Court has not yet ruled on." *Id.* at 6. According to Terran, the early stage of this litigation is important, because courts "almost uniformly allow amendments if leave is sought" prior to the commencement of discovery. *Id.* (citing *Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*, LKG-20-0891, 2023 WL 8004886, at *9 (D. Md. Nov. 16, 2023); *Future Field Sols., LLC v. Erik Van Norstrand*, DKC-23-1301, 2023 WL 8934021, at *3 (D. Md. Dec. 27, 2023)). Terran also emphasizes that the proposed Third Amended Complaint does not introduce any new claims "that would . . . require[] the defendant to expend additional time and resources to respond." ECF 75 at 6. At most, according to Terran, the proposed Third Amended Complaint "add[s] detail to existing claims." *Id.* at 7.

Finally, with respect to Compass's argument that the proposed amendments are futile, Terran asserts that "the proposed amendments are not futile insofar as they eliminate two of the bases upon which Compass asked the Court to dismiss the case"—namely, failure to join UMB, and failure to allege fraud with particularity. *Id.* at 8. In Terran's view, Compass has conceded that the proposed amendments moot Compass's arguments that dismissal is appropriate because Terran failed to join UMB or to allege fraud with particularity. *Id.* (citing ECF 68 at 10 n.2, 13). Indeed, Terran asserts that "Compass's futility arguments focus instead on the other issues raised in its pending motion to dismiss, predominantly personal jurisdiction." ECF 75 at 8.

According to Terran, "Compass argues that the Court should deny leave to amend because Compass should prevail on its pending motion to dismiss as to those other issues." *Id.* But, Terran states that "[t]he futility standard is a lower bar" than the standard applied on a motion to dismiss, because a court assessing futility "ask[s] only if a claim is 'clearly insufficient or frivolous on its face.'" *Id.* (quoting *Bioiberica*, 2019 WL 5102674, at *4). Nonetheless, in the interest of efficiency, Terran invites the Court to "resolve all issues in the motion for leave and pending motion to dismiss on the existing briefs," by treating the pending Motion to Dismiss as if it addresses the Third Amended Complaint. ECF 75 at 9 (citing *Malik v. Centennial Med. Grp., LLC*, RDB-22-3356, 2023 WL 7089934, at *5 (D. Md. Oct. 26, 2023)).

## B.

I shall first address Compass's contention that the Court should deny leave to amend because the proposed amendments are futile.

"Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Oroweat*, 785 F.2d at 510 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. dismissed*, 448 U.S. 911 (1980); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 695 (8th Cir. 1981)). "'Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards.'" *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)). "Accordingly, [a defendant's] proposed amendment [is] futile if the new claim would not . . . survive[] a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Davison*, 912 F.3d at 690.

However, "it does not follow that every plaintiff seeking leave to amend [a] claim[] must demonstrate that [the] claim[] can withstand a Rule 12(b)(6) motion." *Bioiberica*, 2019 WL

5102674, at *3.  Indeed, "[s]uch a requirement would render superfluous the Fourth Circuit's definition of a futile claim as one that is '*clearly insufficient or frivolous on its face.*'"  *Id.* (quoting *Oroweat*, 785 F.2d at 510) (emphasis in *Bioiberica*); *see also Aura Light US Inc. v. LTF Int'l LLC*, GLR-15-3198, GLR-15-3200, 2017 WL 2506127, at *5 (D. Md. June 8, 2017).

Compass concedes that the proposed joinder of UMB would moot its argument that Terran's failure to join UMB as a co-plaintiff necessitates dismissal of the case.  ECF 68 at 11.  And, Compass does not appear to contest that the proposed Third Amended Complaint would obviate Compass's concern with regard to the sufficiency of the fraud allegations.  *Id.* at 13.  Nevertheless, Compass suggests that the proposed amendments are futile because they do not "cure" the other purported deficiencies identified by Compass in its pending Motion to Dismiss.  *Id.* at 11; *see* ECF 51.  In particular, according to Compass, the Third Amended Complaint "do[es] nothing to rebut Compass's criticisms [in the Motion to Dismiss] that the court lacks personal jurisdiction over Compass, that Plaintiffs fail to state a trade secret claim, that Plaintiffs' kitchen-sink approach to pleading is wasteful, or that the Doe defendants are not properly identified."  ECF 68 at 11.

Therefore, as Terran observes in its Reply, *see* ECF 75 at 8–9, Compass rests its request for denial of leave to amend on the arguments advanced in its Motion to Dismiss.  And, it asks the Court to assess the viability of Terran's proposed amendments by providing what is, in substance and effect, a ruling on that Motion to Dismiss.  *See* ECF 68 at 11.

The fact that the Third Amended Complaint does not address every objection presented by Compass in its Motion to Dismiss is not, by itself, a ground to deny the Motion for Leave.  The Court has not yet determined whether the grounds for dismissal asserted by Compass do, indeed, warrant dismissal.  To be sure, if the Court had so ruled, an amended pleading that failed to cure

23

these defects would indeed be "clearly insufficient or frivolous on its face." *Oroweat,* 785 F.2d at 510 (citation omitted). But, given the posture of the case, there are no pleading "deficiencies" that have been established by a Court ruling, which Terran is obligated to "cure" as a condition of obtaining leave to amend. ECF 68 at 11.

Of course, the fact that the Court has not previously ruled that Terran's pleadings are deficient in a certain respect does not mean that it cannot so rule now. As noted, it is just such a ruling that Compass appears to request from the Court.

However, I do not believe that I must construe Compass's Opposition as a mere restatement of its pending Motion to Dismiss. To do so would not be consistent with the Fourth Circuit's admonition that "[l]eave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Oroweat*, 785 F.2d at 510 (citation omitted). As other judges of this Court have recognized, this admonition suggests that there is a meaningful difference between the inquiry a judge undertakes when ruling on a motion to dismiss and the inquiry a judge undertakes when deciding whether to grant leave to amend a pleading. *See Bioiberica*, 2019 WL 5102674, at *3; *Aura Light,* 2017 WL 2506127, at *5.

Therefore, I decline to decide the question of futility by providing the equivalent of a ruling on Compass's pending Motion to Dismiss. Instead, I undertake the "much less demanding" inquiry proper to the assessment of a motion for leave to amend: "whether 'the proposed amendment is clearly insufficient or frivolous on its face.'" *Aura Light*, 2017 WL 2506127, at *5 (quoting *Oroweat*, 785 F.2d at 510). I readily conclude that the proposed Third Amended Complaint is not clearly insufficient or frivolous on its face.

The ground for dismissal most vigorously pressed by Compass is that Compass is not subject to this Court's personal jurisdiction. "[T]o assert personal jurisdiction over a nonresident

24

defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (2003) (citing *Christian Sci. Bd. of Dirs. Of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)).

Maryland's long-arm statute is codified at Md. Code (2020 Repl. Vol., 2022 Supp.), § 6-103(b) of the Courts and Judicial Proceedings Article.  It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits business, engages in an other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to be insured or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

"[T]he limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause. . . ." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996).  Therefore, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Id.*; *see also Beyond*

25

*Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) ("[O]ur statutory inquiry merges with our constitutional examination.").

As the Supreme Court made clear in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. ___ , 141 S.Ct. 1017, 1024 (2021), "[t]he canonical decision" interpreting the constitutional limits on a state court's "power to exercise jurisdiction over a defendant . . . remains *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)." In *International Shoe*, "the Court held that a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316–17). "In giving content to that formulation, the Court has long focused on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024 (internal quotation marks and citation omitted).

That focus has led the Court to "recognize[] two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers*, 582 U.S. at 262 (citing *Goodyear*, 564 U.S. at 919). But, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In particular, with respect to "'an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. . . .'" *Id.* (quoting *Goodyear*, 564 U.S. at 924). And, with respect to "'a corporation, it is an equivalent place, one in which the corporation is fairly

regarded as at home.'" *Daimler*, 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 924). "[T]he place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction" over a corporation. *Daimler*, 571 U.S. at 137 (internal quotation marks and citation omitted) (alteration in *Daimler*).

"Specific jurisdiction is very different." *Bristol-Myers*, 582 U.S. at 262. "In order for a state to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (quoting *Daimler*, 571 U.S. at 127) (alterations and emphasis in *Daimler*). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co.*, 141 S.Ct. at 1024 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). These "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). In other words, the contacts must "show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S.Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (alterations in *Ford Moto Co.*).

In the proposed Third Amended Complaint, Terran alleges that Compass is subject to this Court's personal jurisdiction because it "engag[ed] in seven months of extensive negotiations with UMB professors" who were located in Maryland, ECF 67-1, ¶ 17; "induce[d] [those] professors to disclose further proprietary information under the guise of the preemptive protections of an NDA," *id.*; "conduct[ed] clinical trials of its own therapeutic psilocybin product at the Sheppard Pratt Health System in Baltimore, Maryland during the time it [was] misappropriating the alleged trade secrets," *id.* ¶ 18; and "established, funds, and operates a 'Centre of Excellence' to 'carry out new research in the use of psilocybin therapy' on Sheppard Pratt's Towson, Maryland campus."

*Id.*  Moreover, Terran argues that, "[t]o the extent specific jurisdiction is not proper in Maryland . . .  Compass is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2), as a foreign defendant who is not subject to any state's court of general jurisdiction."  ECF 67-1, ¶ 19.

For its part, Compass vigorously denies in its motion to dismiss that it is subject to the Court's personal jurisdiction.  ECF 51-1 at 21–30.  Compass's argument in this regard is thoughtfully presented and supported by citations to pertinent authority.  Terran, in response, has advanced well-considered arguments of its own.  ECF 55-1.  "The complexity of the arguments advanced by counsel on both sides indicates that the issue" of personal jurisdiction "is not obviously frivolous."  *Oroweat*, 785 F.2d at 511.

Moreover, if the Court were to "address[] the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," it would be bound to "take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff."  *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).  On the other hand, to the extent that there exists any factual dispute relating to personal jurisdiction, such a dispute would provide an additional reason to defer a jurisdictional ruling.  As the Fourth Circuit said in *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989):  "If the existence of jurisdiction turns on disputed factual questions, the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."

With these principles in mind, I am satisfied that Terran's assertion that this Court has personal jurisdiction over Compass is not "clearly insufficient or frivolous on its face."  *Oroweat*, 785 F.2d at 510.

As noted, Compass also argues that the proposed amendments are futile because "they do not address two . . . pleading requirements of fraud-type claims: justifiable reliance and a tort duty."  ECF 68 at 13.  Again, I am unpersuaded that Compass has identified clear pleading deficiencies that render Terran's proposed amendments futile.

With regard to justifiable reliance, I disagree with Compass that justifiable reliance is clearly foreclosed by the NDA, which states, in part:  "'Neither this Agreement nor any action taken prior to or in connection with this Agreement will give rise to any obligation on the part of either party to engage in discussions or negotiations with the other party.'"  *Id.* at 14 (quoting ECF 16, ¶ 8).  To be sure, this provision appears to disclaim any obligation *to engage in discussions or negotiations* with the other party.  But, the text quoted by Compass says nothing about obligations that arise *once the parties have begun* discussions or negotiations.

In addition, I do not agree with Compass's assertion that Terran's fraud allegations are "clearly insufficient," *Oroweat*, 785 F.2d at 510, insofar as they do not allege the existence of a "tort duty."  *See* ECF 68 at 14.  As an initial matter, the term "tort duty" does not appear in any of the three opinions Compass cites in support of this assertion.  *See id.* at 14–15 (citing *J.G. Wentworth*, 2012 WL 4922862, at *25; *Topline Sols., Inc.*, 2017 WL 1862445, at *35; *Ethicon*, 2021 WL 6126297, at *11–12).  In fact, in *J.G. Wentworth*, the Court wrote, 2012 WL 4922862, at *25:  "In a claim for negligent misrepresentation where . . . the alleged injury is economic loss, Maryland requires an 'intimate nexus' between the parties.  This intimate nexus is satisfied by contractual privity or its equivalent."  (Citations and internal quotation marks omitted).  Notably, the proposed Third Amended Complaint appears to allege "contractual privity or its equivalent" insofar it advances claims of "Detrimental Reliance/Promissory Estoppel" (Count IV), ECF 67-1, ¶¶ 92–97; "Unjust Enrichment" (Count V), *id.* ¶¶ 98–102; and "Quantum Meruit/Implied-in-Fact

Contract" (Count VI).  *Id.* ¶ 103–108.  Without deciding whether any or all of these theories of obligation, if proved, would establish the "tort duty" Compass claims is missing, I conclude that Terran's fraud allegations are not "clearly insufficient."  *Oroweat*, 785 F.2d at 510.

In sum, I do not consider Terran's proposed amendments to be so clearly insufficient or frivolous that denial of leave to amend is appropriate.

## C.

Compass also argues that denial of leave is warranted because Terran unduly delayed seeking the joinder of UMB as a co-plaintiff.  ECF 68 at 16.  As noted, Compass asserts that Terran was on notice of the need to seek the State's approval for UMB's joinder as early as May of 2021, when Terran Biosciences signed the MLA.  *Id.*

Section 9.4.3 of the MLA provides, in part, that UMB "may agree to join in the suit or action as a nominal party, but only if," *inter alia*, "the joinder is approved by the Maryland Attorney General."  ECF 68-2, § 9.4.3(b).  In Compass's view, the delay between Terran Biosciences's initiation of suit on August 5, 2022 (ECF 1), and the time at which Terran arguably began diligently pursuing the joinder of UMB—August of 2023—is sufficiently long and unjustified to warrant denial of leave to amend.  ECF 68 at 17.

Compass also objects to Terran's assertion that it was "'eminently sensible to wait to amend the fraud allegations until a decision was reached on whether UMB would join this litigation.'"  *Id.* at 18 (quoting ECF 67 at 12).  In particular, according to Compass, the proposed amendments to Terran's fraud allegations are not specific to UMB, and therefore could have been added well before Terran secured UMB's joinder as co-plaintiff.  ECF 68 at 18.

Terran's current counsel has provided a detailed account of Terran's efforts, beginning in August of 2023, to obtain the State's permission for the joinder of UMB as a co-plaintiff.  *See* ECF

67 at 11–13; ECF 67-30.  However, as Compass observes, by August of 2023, more than a year had elapsed since the filing of suit, during which time Terran could have sought and received the State's permission for the joinder of UMB.  Terran's account of its efforts as of August of 2023 to obtain the State's permission to join UMB as a co-plaintiff does not describe what attempts at securing UMB's joinder, if any, it had made in the preceding year.  *See* ECF 67 at 11–12.  Therefore, there is some reason to believe that Terran could have acted with greater diligence in pursuing the joinder of UMB.

Nonetheless, as Terran observes, *see* ECF 75 at 5, Compass itself did not assert the necessity of joining UMB until June of 2023, when it filed its Motion to Dismiss.  *See* ECF 45.  This is so even though the original Complaint alleged that UMB "spent years and substantial resources to develop" the Psilocybin Trade Secrets," ECF 1, ¶ 1, and stated that UMB licensed them to Terran pursuant to the MLA.  *Id.* ¶¶ 29–30.  In view of Compass's own apparent failure to perceive the necessity of joining UMB, the delay in joining UMB seems less a consequence of Terran's culpable neglect than it does an understandable result of the complexity of the relationship between Terran, Professor Thompson, and UMB.

In addition, I consider Terran to have provided a reasonable explanation of its decision to wait to amend the fraud allegations until the joinder status of UMB could be ascertained.  It may be true, as Compass asserts, that the proposed amendments are not specific to UMB, and therefore could have been added at any time.  But, Terran could not have known in advance whether or in what way UMB might seek to supplement or amend the allegations of fraud.  Moreover, as Compass suggests, serial amendments are not favored.  *See* ECF 68 at 19.  In my view, it was not unreasonable for Terran to wait until UMB's joinder was accomplished to amend the fraud allegations.

To be sure, "a court may consider a movant's 'undue delay' or 'dilatory motive' in deciding whether to grant leave to amend under Rule 15(a)." *Krupski v. Costa Crociere, S.P.A.*, 560 U.S. 538, 553 (2010) (quoting *Foman*, 371 U.S. at 182).  But, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *see also Davis*, 615 F.2d at 613 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as a reason for denial."); *MedCom*, 42 F.4th at 197.  "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards*, 178 F.3d at 242.

I have already concluded that the proposed amendments are not futile.  And, I do not discern in the delays attributed to Terran any indicia of bad faith.  In fact, Compass does not appear to argue that the delays it complains of were the result of Terran's bad faith.  *See* ECF 68 at 15–18.  Instead, in Section II.B of its Opposition, Compass appears to suggest that a possibly unjustified delay is, by itself, sufficient cause to deny leave to amend. *See id.* at 10–13.  I decline to apply such an unforgiving rule, which, in my view, "would run contrary to the Fourth Circuit's well-established 'policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a).'" *Bioiberica*, 2019 WL 5102674, at *3 (quoting *Galustian*, 591 F.3d at 729).

As indicated, Compass does assert, in a separate section of its Opposition, Section II.C, that it will be prejudiced by the amendments.  ECF 68 at 18.[6]  Compass's claim of prejudice is, in essence, that it has incurred needless expense responding to Terran's serially amended

---

[6] Curiously, Terran asserts that Compass does not oppose the Motion based on prejudice. ECF 67 at 9-10; *id.* at 9 n.6.

complaints.[7]  However, in general, "the time, effort, and money . . . expended in litigating [a] case" do not constitute "substantial prejudice."  *Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc.*, 4:05-CV-0033, 2006 WL 1289545, at *3 (M.D. Pa. May 9, 2006); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (concluding that the time, effort, and money expended by the plaintiffs in litigating the case did not amount to substantial prejudice).

"Prejudice is the weightiest factor, the absence thereof, 'though not alone determinative, will normally warrant granting leave to amend.'"  *Oliver v. Dep't of Public Safety and Correctional Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018) (Blake, J.) (quoting *Davis*, 615 F.2d at 613); *see V.E. v. Univ. of Md. Balt. Cty.*, JRR-22-02338, 2023 WL 5153650, at *2 (D. Md. Aug. 10, 2023).

To be sure, expense incurred in responding to an adversary's *bad faith* litigation tactics would likely constitute prejudice sufficient to justify denial of leave to amend.  Here, however, the Court has no basis to conclude that the amendments effected by Terran were made in bad faith. Therefore, the fact that Compass has had to expend significant resources in defending this complex, multi-party lawsuit is not, by itself, reason to deny Terran leave to amend.

Compass also challenges the allegations in paragraph 51 of the proposed Third Amended Complaint, asserting that they must be excluded as unfairly prejudicial.  Paragraph 51 is captioned: "Compass Intentionally Developed and Executed its Fraudulent Scheme."  ECF 67-1, ¶ 51.  It includes the following excerpt from a news article about Compass, which describes interactions between Compass's co-founders and other psilocybin researchers, *id.* (quoting ECF 67-27 at 9–10):

> These academics described behavioral patterns that undermined their trust in the couple.  They detailed how Goldsmith and Malievskaia lavished them with attention—invitations to their home, expensive dinners, and all-expenses-paid trips

---

[7] Again, Compass cannot have it both ways—complaining that Terran could have amended the fraud allegations earlier yet asserting prejudice because of the number of amendments.

to the Isle of Man, a self-governing British Isles island in the Irish Sea—only to go abruptly quiet once they'd seemingly gathered the information they needed. Quartz [the news publication] has seen documents that support these allegations. Compass, Goldsmith, and Malievskaia did not respond to requests for comment about these trips. . . .

"It felt seductive. It was very flattering, but there was something odd about it," says one of the psilocybin researchers, who requested anonymity out of concern for potential repercussions for speaking about Compass.

According to Compass, these allegations are unfairly prejudicial because they are "entirely irrelevant to any claim, [insofar] as they refer to Compass's interactions with researchers who are not parties to this case." ECF 68 at 19–20.

As I understand it, the "prejudice" asserted by Compass arises from the *content* of the allegations in paragraph 51, not from the fact that they were presented in an allegedly untimely manner. Therefore, Compass's objection to paragraph 51 is, in essence, a request that the Court strike the allegations as "immaterial, impertinent, or scandalous" under Fed. R. Civ. P. 12(f).

Requests to strike an allegation from a complaint are disfavored and "generally will [not] be . . . granted unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party." *Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 117 (D. Md. 2020). I cannot conclude that paragraph 51 of the proposed Third Amended Complaint has "no possible or logical connection to the subject matter of the controversy." *Id.*

Fed. R. Evid. 404(b)(1) provides: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But, Fed. R. Evid. 404(b)(2) states: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Therefore, the allegations in

34

paragraph 51 that Compass defrauded other psilocybin researchers who are not parties to this case have, at least, a "possible . . . connection to the subject matter of the controversy" in this case: namely, whether Compass defrauded Terran of trade secrets regarding the therapeutic application of psilocybin. *Sackett*, 337 F.R.D. at 117.

Compass's frustration with what it characterizes as Terran's "serial amendments," ECF 68 at 6, is understandable. Nevertheless, at this juncture, the number of amendments is not dispositive. Moreover, Terran's delay in moving for leave to file the proposed amendments is not, by itself, sufficient cause to deny leave to amend. And, I am satisfied that the proposed amendments are not clearly futile, have not been made in bad faith, and do not unfairly prejudice Compass. Therefore, I shall allow Terran leave to file its Third Amended Complaint.

Pursuant to Local Rule 103.6(A), the Third Amended Complaint "shall be deemed to have been served, for the purpose of determining the time for response under Fed. R. Civ. P. 15(a), on the date that the Court grants leave for its filing."

**D**.

As mentioned, Compass has filed a Motion to Dismiss the Second Amended Complaint (ECF 51; ECF 53), which is pending. However, the Third Amended Complaint supersedes the Second Amended Complaint. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021); *Young v. City of Mt. Rainier*, 238 F.3d 567, 573 (4th Cir. 2001). In general, it is appropriate to deny, as moot, a motion to dismiss that is addressed to a superseded complaint.

Nonetheless, Terran urges the Court to treat the Motion to Dismiss, which is addressed to the Second Amended Complaint, as if it were addressed to the Third Amended Complaint. *See* ECF 75 at 9 (citing *Malik*, 2023 WL 7089934, at *5). In support of its request, Terran observes

that, in opposing the Motion for Leave, Compass has largely rested on the arguments advanced in the Motion to Dismiss.  ECF 75 at 8–9; *see* ECF 68 at 11.

I decline to construe the Motion to Dismiss, addressed to the SAC, as if it were directed to the TAC.  Because Compass's Motion to Dismiss seeks dismissal of the Second Amended Complaint, which shall be superseded, I shall deny the Motion to Dismiss, as moot.  However, this denial is without prejudice to the right of defendants to move to dismiss the Third Amended Complaint, if appropriate, due by **March 5, 2024**.

### IV.    Conclusion

For the foregoing reasons, I shall grant the Motion for Leave.  ECF 67.  And, I shall deny the Motion to Dismiss, as moot.  ECF 51; ECF 53.  Moreover, the Clerk is directed to docket the Third Amended Complaint (ECF 67-1).

An Order follows, consistent with this Memorandum Opinion.


Date: February 6, 2024                                    _____/s/_____

                                                         Ellen Lipton Hollander
                                                         United States District Judge