**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

_____
:
TERRAN BIOSCIENCES, INC., *et al.*,       :     Civil Action No. ELH-22-1956
:
          *Plaintiffs,*       :
:
        v.               :     **PUBLIC REDACTED VERSION**
:
COMPASS PATHFINDER LIMITED,    :
*et al.*,                       :
:
          *Defendants.*   :
_____


**PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO COMPASS'S
<u>MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    COMPASS IS SUBJECT TO THIS COURT'S JURISDICTION ..................................... 2

      A.     Compass Is Subject To Personal Jurisdiction Under Maryland Code
            § 6-103(b)(1) Because It Purposefully Directed Activities At Maryland,
            Which Are The Activities That Give Rise To The Claims ..................................... 3

      B.     Compass Also Is Subject To Personal Jurisdiction Under Maryland Code
            § 6-103(b)(4) Because It Caused Tortious Injury in Maryland and Had A
            Persistent Course Of Conduct In Maryland ............................................................ 7

           1.     Compass's 2019 Contacts With Maryland Are Sufficient ......................... 8

           2.     The Court Can Consider Compass's 2020 To 2022 Contacts,
                 Which Also Establish Jurisdiction Under Section 6-103(b)(4) ............... 11

      C.     Compass Is Subject To Personal Jurisdiction Under Rule 4(k)(2) ...................... 14

      D.     The Exercise Of Personal Jurisdiction Is Consistent with Due Process ............... 19

      E.     As An Alternative To Potential Dismissal, The Court Should Order
            Jurisdictional Discovery ......................................................................................... 22

III.   PLAINTIFFS HAVE ADEQUATELY PLED THE INTERSTATE/FOREIGN
      COMMERCE REQUIREMENT OF THEIR DTSA CLAIM ......................................... 23

IV.    PLAINTIFFS' CONTRACT AND FRAUD CLAIMS ARE ADEQUATELY
      PLED………........................................................................................................... 25

      A.     Prof. Thompson and UMB's Claims Are Not Duplicative ................................... 25

      B.     Plaintiffs Adequately Pled Compass's Violation Of Tort Duties ......................... 28

V.     THE DOE DEFENDANTS ARE SUFFICIENTLY IDENTIFIED ................................. 30

VI.    CONCLUSION ......................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*200 N. Gilmor, LLC* v. *Cap. One, Nat. Ass'n*,
    863 F. Supp. 2d 480 (D. Md. 2012) ...................................................................26

*A Love of Food I, LLC* v. *Maoz Vegetarian USA, Inc.*,
    795 F. Supp. 2d 365 (D. Md. 2011) .....................................................................4

*Aether, LLC* v. *Unt Holdings, OÜ*,
    No. 2:21-CV-00313, 2022 WL 16554691 (C.D. Cal. Oct. 31, 2022)....................17

*Alternatives Unlimited, Inc.* v. *New Baltimore City Bd. of Sch. Comm'rs*,
    155 Md. App. 415 (2004) ...................................................................................28

*Androutsos* v. *Fairfax Hosp.*,
    323 Md. 634 (Md. 1991) .....................................................................................22

*Asahi Metal Indus. Co.* v. *Superior Ct. of Cal.*,
    480 U.S. 102 (1987)................................................................................20, 21, 22

*Bahn* v. *Chicago Motor Club Ins. Co.*,
    98 Md. App. 559 (1993) ........................................................................................7

*Bakery & Confectionery Union & Indus. Int'l Pension Fund* v. *Cont'l Food Prod.,*
    *Inc.*, No. CIV.A. 14-0380, 2014 WL 7240264 (D. Md. Dec. 16, 2014)..................30

*Baltimore Cnty.* v. *Cigna Healthcare*,
    238 Fed. Appx. 914, 923 (4th Cir. 2007)............................................................30

*Barnett* v. *Surefire Med., Inc.*,
    No. CV JFM-17-1332, 2017 WL 4279497 (D. Md. Sept. 25, 2017).....................11

*Botts* v. *Johns Hopkins Univ.*,
    No. CV 20-1335, 2021 WL 1561520 (D. Md. Apr. 21, 2021) ..............................28

*Bowman* v. *Jack Cooper Transp. Co. Inc.*,
    399 F. Supp. 3d 447 (D. Md. 2019) ....................................................................23

*Brown* v. *Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016)................................................................................13

*Burger King Corp.* v. *Rudzewicz*,
    471 U.S. 462 (1985)...............................................................................................7

*Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) ..............................................................................2, 4

*Chidi Njoku* v. *Unknown Special Unit Staff*,
217 F.3d 840 (4th Cir. 2000) .....................................................................................30

*Chubb & Son* v. *C & C Complete Services, LLC*,
919 F. Supp. 2d 666 (D. Md. 2013) ..........................................................................28

*Combs* v. *Bakker*,
886 F.2d 673 (4th Cir. 1989) .....................................................................................22

*Consulting Eng'rs Corp.* v. *Geometric Ltd.*,
561 F.3d 273 (4th Cir. 2009) ................................................................................2, 6

*CoStar Realty Info., Inc.* v. *Meissner*,
604 F. Supp. 2d 757 (D. Md. 2009) ............................................................................4

*Cricket Grp., Ltd.* v. *Highmark, Inc.*,
198 F. Supp. 3d 540 (D. Md. 2016) ............................................................................6

*CSS Antenna, Inc.* v. *Amphenol-Tuchel Elecs., GmbH*,
764 F. Supp. 2d 745 (D. Md. 2011) ............................................................................4

*Curtis Engine & Equip., Inc.* v. *Cummins Engine Co.*,
No. CIV. A. WMN-97-26, 1997 WL 835051 (D. Md. Oct. 30, 1997) ....................13

*Daimler AG* v. *Bauman*,
134 S. Ct. 746 (2014) .................................................................................................16

*Delval Equip. Corp., Inc.* v. *E. Coast Welding & Constr. Co.*,
No. CV 21-1244, 2022 WL 717046 (D. Md. Mar. 10, 2022) ...................................28

*Deprenyl Animal Health, Inc.* v. *Univ. of Toronto Innovations Found.*,
297 F.3d 1343 (Fed. Cir. 2002) .................................................................................15

*Dowling* v. *A.R.T. Inst. of Washington, Inc.*,
372 F. Supp. 3d 274 (D. Md. 2019) ..........................................................................27

*Doe* v. *Community College of Baltimore County*,
595 F. Supp. 3d 392 (D. Md. 2022) ..........................................................................25

*Dwoskin* v. *Bank of Am., N.A.*,
850 F. Supp. 2d 557 (D. Md. 2012) ..........................................................................30

*ePlus Tech., Inc.* v. *Aboud*,
313 F.3d 166 (4th Cir. 2002) ......................................................................................4

*Exec. Trim Constr., Inc.* v. *Gross*,
 525 F. Supp. 3d 357 (N.D.N.Y. 2021) ................................................................24

*Finley Alexander Wealth Management, LLC* v. *M&O Marketing, Inc.*,
 No. 19-1312, 2020 WL 1322948 (D. Md. Mar. 20, 2020) ..................................4, 29

*Ford Motor Co.* v. *Montana Eighth Judicial District Court*,
 141 S. Ct. 1017 (2021).............................................................................9, 10, 17, 19

*Freeplay Music, LLC* v. *Nian Infosolutions Priv. Ltd.*,
 No. 16-CIV-5883, 2018 WL 3639929 (S.D.N.Y. July 10, 2018)...........................18

*FrenchPorte IP, LLC* v. *Martin Door Mfg., Inc.*,
 No. CIV. A. 14-0295, 2014 WL 4094265 (D. Md. Aug. 14, 2014) .........................3

*Frozen Wheels, LLC* v. *Potomac Valley Home Med., Inc.*,
 No. CV 20-2479, 2021 WL 2226175 (D. Md. June 2, 2021) .................................26

*Gallman* v. *Sovereign Equity Group, Inc.*,
 No. AW-11-2750, 2012 WL 983937 (D. Md. Mar. 21, 2012). .................................6

*Giannaris* v. *Cheng*,
 219 F. Supp. 2d 687 (D. Md. 2002) .....................................................................4, 21

*Giant Food, Inc.* v. *Ice King, Inc.*,
 No. 754, 74 Md. App. 183 (Md. Spec. App. 1988) ...............................................29

*Gilman & Bedigian, LLC* v. *Sackett*,
 CCB-19-3471, 2021 WL 4417250 (D. Md. Sept. 27, 2021).  .................................6

*Grant Indus., Inc.* v. *Isaacman*,
 No. 21-CV-13094, 2022 WL 2358422 (D.N.J. June 30, 2022)..............................10

*Gray* v. *Riso Kagaku Corp.*,
 82 F.3d 410 (4th Cir. 1996) ...................................................................................20

*Grynberg* v. *BP P.L.C.*,
 855 F. Supp. 2d 625 (S.D. Tex. 2012), *aff'd*, 527 F. App'x 278 (5th Cir. 2013)....................19

*Gucci Am., Inc.* v. *Weixing Li*,
 135 F. Supp. 3d 87 (S.D.N.Y. 2015).....................................................................18

*Harlow* v. *Children's Hosp.*,
 432 F.3d 50 (1st Cir. 2005)....................................................................................13

*Hawkins* v. *i-TV Digitalis Tavkozlesi zrt.*,
 935 F.3d 211 (4th Cir. 2019) ...................................................................................8

-iv-

*Hosmane* v. *Univ. of Md.*,
   No. 354, 2019 WL 4567575 (Md. Ct. Spec. App. Sept. 20, 2019)........................................26

*Kraus USA, Inc.* v. *Magarik*,
   No. 17-CV-6541, 2020 WL 2415670 (S.D.N.Y. May 12, 2020) ...........................................24

*Martens Chevrolet, Inc.* v. *Seney*,
   292 Md. 328 (1982) ...........................................................................................................26

*Maryland* v. *Exxon Mobil Corp.*,
   406 F. Supp. 3d 420 (D. Md. 2019)....................................................................................22

*Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..................................................................................................13

*Mia. Prods. & Chem. Co.* v. *Olin Corp.*,
   449 F. Supp. 3d 136 (2020) ..........................................................................................15, 16

*Monster Cable Prod., Inc.* v. *Euroflex S.R.L.*,
   642 F. Supp. 2d 1001 (N.D. Cal. 2009) ..............................................................................17

*Nat'l Patent Dev. Corp.* v. *T.J. Smith & Nephew Ltd.*,
   877 F.2d 1003 (D.C. Cir. 1989) (en banc) ..........................................................................15

*Nichols* v. *G.D. Searle & Co.*,
   783 F. Supp. 233 (D. Md. 1992), *aff'd*, 991 F.2d 1195 (4th Cir. 1993)...................................9

*Pecoraro* v. *Sky Ranch for Boys, Inc.*,
   340 F.3d 558 (8th Cir. 2003) ...............................................................................................13

*Perkins* v. *Benguet Consol. Min. Co.*,
   72 S. Ct. 413 (1952)............................................................................................................16

*Polar Commc'ns Corp.* v. *Oncor Commc'ns, Inc.*,
   927 F. Supp. 894 (D. Md. 1996) ..........................................................................................25

*Porina* v. *Marward Shipping Co.*,
   521 F.3d 122 (2d Cir. 2008)..................................................................................................19

*Revolution FMO, LLC,* v. *Mitchell*,
   2018 WL 2163651 (E.D. Mo. May 10, 2018) ......................................................................24

*Rhee* v. *Highland Dev. Corp.*,
   182 Md. App. 516 (2008) .....................................................................................................26

*Rossman* v. *State Farm Mut. Auto. Ins. Co.*,
   832 F.2d 282 (4th Cir.1987) ..........................................................................................12, 13

*Saudi* v. *Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2005) .................................................................17, 18, 19

*Seagen Inc.* v. *Daiichi Sankyo Co.*,
    546 F. Supp. 3d 515 (E.D. Tex. 2021) ...............................................................10

*Sec. & Exch. Commn.* v. *Receiver for Rex Ventures Grp., LLC*,
    730 F. App'x 133 (4th Cir. 2018) .........................................................................3

*Silver Ring Splint Co.* v. *Digisplint, Inc.*,
    508 F. Supp. 2d 508 (W.D. Va. 2007) ...............................................................17

*Stein* v. *Horwitz*,
    191 F.3d 448 (4th Cir. 1999) ........................................................................13, 14

*Strong Pharm. Lab'ys, LLC* v. *Trademark Cosms., Inc.*,
    No. CIV A. 05-3427, 2006 WL 2033138 (D. Md. July 17, 2006)...........................4

*Sunshine Distrib., Inc.* v. *Sports Auth. Michigan, Inc.*,
    157 F. Supp. 2d 779 (E.D. Mich. 2001)........................................................17, 20

*Swedish Civ. Aviation Admin.* v. *Project Mgmt. Enters. Inc.*,
    190 F. Supp. 2d 785 (D. Md. 2002) ...................................................................27

*Tobin* v. *Astra Pharm. Prod., Inc.*,
    993 F.2d 528 (6th Cir. 1993) .............................................................................17

*Topline Solutions, Inc.* v. *Sandler Systems, Inc.*,
    No. CV 09-3102, 2017 WL 1862445 (D. Md. May 8, 2017) ...........................25, 28

*Touchcom, Inc.* v. *Bereskin & Parr*,
    574 F.3d 1403 (Fed. Cir. 2009)..........................................................................15

*Trimble Inc.* v. *PerDiemCo LLC*,
    997 F.3d 1147 (Fed. Cir. 2021)..........................................................................10

*Tube-Mac Indus., Inc.* v. *Campbell*,
    No. 2:19-CV-01192, 2020 WL 1911464 (W.D. Pa. Apr. 20, 2020)......................16

*UMG Recordings, Inc.* v. *Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) .............................................................................14

*United States* v. *Aquatherm GmbH*,
    609 F. Supp. 3d 1163 (D. Or. 2022) ...................................................................17

*Van Leer* v. *Deutsche Bank Sec., Inc.*,
    479 F. App'x 475 (4th Cir. 2012).......................................................................28

*Vu Hoang* v. *Georgetown Contractors, Inc.*,
   No. 08:10- CV-2117, 2010 WL 4485729 (D. Md. Nov. 9, 2010) ..........................................28

*Yager* v. *Vignieri*,
   No. 16-CV-9367, 2017 WL 4574487 (S.D.N.Y. Oct. 12, 2017)..............................................24

*Zavian* v. *Foudy*,
   747 A.2d 764 (Md. Spec. App. 2000) .....................................................................................5

**Statutes**

Defend Trade Secrets Act .................................................................................................2, 18, 24

Maryland Code § 6-103(b)(1) ............................................................................................. *passim*

Maryland Code § 6-103(b)(4) ............................................................................................. *passim*

Fed. R. Civ. P. 4(k)(2).......................................................................................................... *passim*

**Other Authorities**

Todd David Peterson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L. Rev.
   101 (2010) ............................................................................................................................12

## I.    INTRODUCTION

This opposition memorandum is submitted jointly by Plaintiffs the University of Maryland, Baltimore ("UMB"), Terran Biosciences, Inc. ("Terran"), and Prof. Scott Thompson.

In May 2019, Defendant Compass Pathfinder Limited ("Compass") pursued contact with researchers at the National Institute of Health ("NIH") in Maryland, and then researchers at UMB, seeking to partner with them to fund research in Maryland relating to psilocybin therapies. Compass organized several meetings with Professors Gould and Thompson from UMB. Prof. Thompson signed and returned Compass's purported non-disclosure agreement ("NDA"), and, for the next six months, he shared with Compass trade secrets relating to his research (the "Psilocybin Trade Secrets"), reasonably believing that Compass held this information in confidence while the parties explored a further business relationship.

In August 2019, however, Compass secretly filed a patent application disclosing UMB's Psilocybin Trade Secrets and claiming Prof. Thompson's research as its own.  Three months later, Compass walked away from its prospective partners, but the damage it had done was lasting. Compass's improper use of the Psilocybin Trade Secrets—in Compass's patent applications from August 2019 through December 2022—has, for example, impaired Plaintiffs' ability to obtain important patent protection relating to those trade secrets, and thus has harmed their competitive position in development of psilocybin therapies.[1]  Plaintiffs' Third Amended Complaint ("TAC") (ECF No. 81) pleads claims to remedy these harms.

---

[1] Compass appears to misunderstand the facts in this case.  UMB and Prof. Thompson did *not* publish the Psilocybin Trade Secrets before Compass disclosed them in its own August 2019 application.  Because of Compass's improper first disclosure, Plaintiffs have been impaired in their ability to secure patent protection.  Compass is liable under federal and Maryland state law, and the amount of damage caused by Compass's conduct will be proved in the course of this case.

Given the straightforward facts, Compass's Motion to Dismiss primarily focuses on an attempt to evade the jurisdictional reach of Maryland and the federal judiciary.  Although Compass purposefully pursued contact with and defrauded a major Maryland state university and its faculty, and then filed patent applications at the United States Patent and Trademark Office ("USPTO") that included the misappropriated trade secrets, Compass now claims that there can be no legal recourse against them in Maryland or the United States.  That is untenable.  Maryland residents and institutions, harmed in Maryland, cannot be denied access to their own courts, and Compass's contacts with Maryland more than suffice for this Court to exercise jurisdiction.

Compass's other arguments also fail.  For example, Compass's argument that companies in the preclinical stage of drug development, like Terran, do not deserve the protection of federal trade secret law is unsupported by legal authority and flies in the face of the text and purpose of the federal Defend Trade Secrets Act ("DTSA").  Compass protests the number of claims brought against it, but pleading in the alternative is acceptable and commonplace.  Compass also argues that Plaintiffs fail to plead sufficient facts showing that Compass owed Prof. Thompson or UMB a duty of care with respect to the fraud claims, but Compass induced Prof. Thompson to disclose UMB's trade secrets to Compass based on its promise of confidentiality and a multi-month relationship during which it represented that it sought a business collaboration.  Such allegations more than suffice to support a duty of care.  Compass's Motion to Dismiss should be denied.

## II.    COMPASS IS SUBJECT TO THIS COURT'S JURISDICTION

Plaintiffs need only make "a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge," *Consulting Eng'rs Corp.* v. *Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009), and "the court must take all disputed facts and reasonable inferences in favor of the plaintiff[s]." *Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003).  Plaintiffs also have adduced facts sufficient to establish personal jurisdiction by

a preponderance of the evidence. *See Sec. & Exch. Commn.* v. *Receiver for Rex Ventures Grp., LLC*, 730 F. App'x 133, 136-37 (4th Cir. 2018) (preponderance standard applies if parties had "a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments").

In summary, Compass is subject to personal jurisdiction under Md. Code, Cts. & Jud. Proc. §§ 6-103(b)(1) and (4), or, in the alternative, under Fed. R. Civ. P. 4(k)(2). As explained below, Compass contends that the Court can consider only Compass's contacts with Maryland (or the United States) through 2019. Plaintiffs disagree with that contention, but as explained below, the Court does not need to resolve that issue because the relevant jurisdictional tests are satisfied looking only at Compass's contacts with Maryland (or the United States) through 2019. However, in light of Compass's contention regarding timing, the below argument is structured as follows: (i) Sections II.A and II.B.1 explain why this Court can exercise jurisdiction under either Section 6-103(b)(1) or (4) based only on Compass's contacts with Maryland through 2019; (ii) Section II.B.2 explains why this Court can consider Compass's contacts with Maryland through 2022 and how those contacts further satisfy Section 6-103(b)(4); (iii) Section II.C explains why this Court can exercise jurisdiction under Rule 4(k)(2) based either on Compass's contacts with the United States through 2019 alone or contacts through 2022; and (iv) Section II.D explains why jurisdiction under any of those routes is consistent with due process.

### A. Compass Is Subject To Personal Jurisdiction Under Maryland Code § 6-103(b)(1) Because It Purposefully Directed Activities At Maryland, Which Are The Activities That Give Rise To The Claims

"Section 6-103(b)(1) confers personal jurisdiction over a defendant who '[t]ransacts any business' in Maryland. This is not a demanding standard." *FrenchPorte IP, LLC* v. *Martin Door Mfg., Inc.*, No. CIV. A. 14-0295, 2014 WL 4094265, at *11 (D. Md. Aug. 14, 2014). Notably, "the words 'transacts any business' in the Maryland long arm statute have been interpreted broadly to include not only acts of commerce or transactions for profit, but also acts which constitute a

purposeful activity within the state." *Strong Pharm. Lab'ys, LLC* v. *Trademark Cosms., Inc.*, No. CIV A. 05-3427, 2006 WL 2033138, at *5 (D. Md. July 17, 2006). Thus, the inquiry is not whether Compass sold products in Maryland, *see* ECF No. 93-1 ("MTD") at 11-12, but whether Compass purposefully directed activities at Maryland.

"Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact . . . ." *Carefirst*, 334 F.3d at 397. "In determining whether prior business negotiations in the forum state give rise to specific jurisdiction, the 'strongest factor' is 'whether the defendant initiated the business relationship in some way.'" *Giannaris* v. *Cheng*, 219 F. Supp. 2d 687, 692 (D. Md. 2002) (citation omitted); *CoStar Realty Info., Inc.* v. *Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009) (same); *CSS Antenna, Inc.* v. *Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 749 (D. Md. 2011) (same).

That is especially true when the claims arise from fraudulent statements made into the forum. For example, in *Finley Alexander Wealth Management, LLC* v. *M&O Marketing, Inc.*, the defendant "cold-called" the plaintiff in Maryland, and "this cold-call appears to have prompted a series of communications," including communications where the defendant made fraudulent representations. No. 19-1312, 2020 WL 1322948, at *6 (D. Md. Mar. 20, 2020); *see also ePlus Tech., Inc.* v. *Aboud*, 313 F.3d 166, 177 (4th Cir. 2002) (sending false information to the forum state was sufficient for fraud claims); *A Love of Food I, LLC* v. *Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 371-72 (D. Md. 2011) (telephonic communications can be purposeful availment).

Compass is subject to specific jurisdiction in Maryland because it targeted UMB and a UMB professor in a months-long fraudulent scheme involving a series of communications into Maryland. In particular, Compass: (i) pursued contact with the NIH in Maryland, who directed

Compass to researchers at UMB, (ii) pursued contact with Profs. Gould and Thompson at UMB;[2] (iii) fraudulently induced Prof. Thompson to share details of the Psilocybin Trade Secrets through communications purposefully directed into Maryland; (iii) extracted those trade secrets and other confidential information from him through a series of calls and other communications into Maryland over a six month period; and (iv) misappropriated those UMB-owned trade secrets by— among other things—disclosing them in U.S. patent applications as part of broader efforts by Compass to establish a permanent presence in Maryland and the United States. *See, e.g.*, TAC, ¶¶ 3-6, 17, 29-50; *id.*, Ex. 16. These allegations demonstrate that Compass transacted business in Maryland (out of which the claims in this case arise), which satisfies Section 6-103(b)(1).

Compass argues that "[m]erely contacting a plaintiff in Maryland is too attenuated an allegation to constitute transacting business for the purposes of the long-arm statue," MTD at 12, but the three cases it relies on are distinguishable. First, *Zavian* involved a Maryland agent (the plaintiff) who performed work on behalf of out-of-state principals, and the plaintiff tried to use plaintiffs' own contacts with Maryland to create jurisdiction over the principals. *See* 747 A.2d 764, 768-9 (Md. Spec. App. 2000). Here, Plaintiffs are not attempting to impute to Compass their own contacts with Maryland, whether through an agency argument or otherwise. Plaintiffs are relying on *Compass's own* contacts with Maryland.

---

[2] Compass has argued that it did not initiate contact with Prof. Thompson because "[a] mutual contact at the National Institutes of Health connected Compass not to Professor Thompson, but to Professor Todd Gould . . . . Then Gould, without direction from Compass, sent an email to Compass recommending that Thompson be included on the introductory call to discuss that research opportunity." ECF No. 57 at 2. But this elevates form far above substance. Compass's initial contacts were with the NIH *in Maryland* and Prof. Gould, like Prof. Thompson, was located *in Maryland*. *See* TAC, Ex. 16 at 2 (NIH contact introducing Compass to "Todd Gould at the University of Maryland"). Moreover, Compass purposefully pursued numerous communications with Prof. Thompson *in Maryland* after they were introduced to him. *See* TAC, Ex. 19; *id.*, ¶¶ 29-39. All of this is conduct that Compass purposefully directed *into Maryland*.

Second, in *Gallman*, Maryland-based plaintiffs sued a New York lawyer and her firm, and they premised their claims on representations made during a meeting in New York. *See* No. AW-11-2750, 2012 WL 983937, at *4 (D. Md. Mar. 21, 2012). The Court held those contacts insufficient because the plaintiffs "provide[d] no evidence or context as to the nature of any of Defendants' calls, e-mails, or money transfers and d[id] not contend that any of these contacts form[ed] the basis of Plaintiffs' claims." *Id.* The *Gallman* Court also explained there was no evidence that the lawyer sought to target Maryland-based investors nor that the lawyer knew at the time that plaintiffs were located in Maryland. *Id.* at 5. Here, Plaintiffs' claims arise from Compass's purposeful and knowing contacts with Maryland and Plaintiffs' complaint contains details about those contacts. *See*, *e.g.*, TAC, Exs. 16-23; *id.*, ¶¶ 29-39.

Finally, in *Gilman & Bedigian* the Court rejected plaintiffs' arguments that the contacts of defendants' third-party trademark licensee gave the court personal jurisdiction over the defendants. CCB-19-3471, 2021 WL 4417250, at *4-7 (D. Md. Sept. 27, 2021). That is irrelevant.[3] Here, Compass's own contacts with Maryland establish personal jurisdiction.[4]

Having no supporting precedent, Compass resorts to factual distinctions without a difference. Compass argues as a physical matter that it "never set foot in Maryland in connection

---

[3] *Consulting Engineers Corp.* also is inapposite. There, the Fourth Circuit held that the contacts with Virginia were too attenuated because the communications were centered on software design work to be performed in India, and the alleged harm was the hiring of an employee in India, to perform work in India. 561 F.3d at 276, 280.

[4] Compass's reliance on the choice of law clause in its NDA is misplaced. As Compass's cited cases explain, a choice of law provision is not determinative. *Cricket Grp., Ltd*. v. *Highmark, Inc*., 198 F. Supp. 3d 540, 544–45 (D. Md. 2016) ("[A] choice of law provision which opts away from the forum state, *when combined with other factors disfavoring the exercise of personal jurisdiction*, raises the negative implication that personal jurisdiction in the forum state was not contemplated" (emphasis added).). Here, Plaintiffs are not relying on the NDA alone to establish personal jurisdiction and, as explained above, other factors such as Compass's purposeful pursuit of contacts in Maryland *favor* the exercise of personal jurisdiction.

with the negotiations." MTD at 12. But nearly four decades ago, the Supreme Court recognized that a requirement that the defendant physically enter the forum was outdated. *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476 (1985). Maryland courts also have expressly noted that "[t]he defendant need never have been physically present in the state." *Bahn* v. *Chicago Motor Club Ins. Co.*, 98 Md. App. 559, 568 (1993). That was even truer in 2019 when most business was transacted remotely (and still truer in 2020-2022). It cannot be that wrongful acts committed against Maryland entities and individuals through modern means of communication cannot be remedied in Maryland courts merely because the perpetrator did not physically enter Maryland to commit the torts. Compass's 2019 contacts with the NIH, UMB, and UMB's faculty—out of which the claims in this case arise—alone satisfy Maryland Code Section 6-103(b)(1).

**B.      Compass Also Is Subject To Personal Jurisdiction Under Maryland Code § 6-103(b)(4) Because It Caused Tortious Injury in Maryland and Had A Persistent Course Of Conduct In Maryland**

The Court also has jurisdiction under Maryland Code Section 6-103(b)(4), which is satisfied when a defendant "[c]auses tortious injury in the State . . . by an act or omission outside the State if he . . . engages in any other persistent course of conduct in the State . . . ." Here, tortious injury occurred in Maryland, and Plaintiffs have alleged sufficient facts to establish Compass's persistent course of conduct in Maryland.

As noted above, Compass contends that the Court's analysis can consider only Compass's contacts with Maryland through 2019. MTD at 16, 18, 19 n.9. This argument thus has two parts. First, Plaintiffs explain why the jurisdictional test is satisfied looking only at 2019 contacts. Second, Plaintiffs explain why the Court can consider additional contacts in 2020-2022 and how those contacts further support the exercise of jurisdiction under Section 6-103(b)(4).

### 1.    Compass's 2019 Contacts With Maryland Are Sufficient

As described in Section II.A, *supra*, Compass's 2019 contacts targeting the NIH, UMB, and Profs. Gould and Thompson in Maryland (*see, e.g.*, TAC, ¶¶ 3-6, 17, 29-50; *id.,* Ex. 16) alone establish jurisdiction under Section 6-103(b)(1).   In addition, Compass began a clinical study related to psilocybin therapies on March 1, 2019, and it did so at the Sheppard Pratt Health System in Baltimore, Maryland.  *See* TAC, Ex. 1; *id.*, ¶ 18.  In the aggregate, these 2019 contacts establish a persistent course of conduct that allows the Court to exercise jurisdiction over claims that seek to remedy a tortious injury that Compass caused in Maryland, pursuant to Section 6-103(b)(4).

Additionally, the Court should draw reasonable inferences in favor of Plaintiffs, and it is reasonable to infer that Compass had significant additional 2019 contacts with Maryland, which culminated in important business developments announced in 2020 and early 2021.  *See Hawkins* v. *i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019) (the Court should "draw all reasonable inferences in favor of the party asserting jurisdiction").   For example, it is reasonable to infer that Compass was in frequent contact with Sheppard Pratt Health System in Baltimore, Maryland, which was involved in six of Compass's clinical studies, starting in early 2019 and continuing through the present.  TAC, Ex. 2; *id.*, ¶¶ 18-19; Guzior Ex. 1.[5]  Similarly, it is at least reasonable to infer that Compass had significant 2019 contacts in connection with the establishment and opening of, and the activities at, Compass's Centre of Excellence in Baltimore, which Compass publicly announced at the beginning of January 2021.  *See* TAC, Ex. 3; *id.*, ¶ 18. In addition, it is at least reasonable to infer that Compass had substantial 2019 contacts in Maryland in connection with a collaboration, announced in 2020, with the Aquilino Cancer Center in Rockville, Maryland, to which Compass has "provided support, training and funding" for a

---

[5] Guzior Exhibits 1 to 9 are attached to the concurrently filed Declaration of Dustin F. Guzior.

psilocybin-related study and at which Compass helped to open the Bill Richards Center for Healing. *See* Guzior Exs. 2-3. These additional contacts with Maryland further establish a persistent course of conduct.

Compass wrongly tries to distance itself from its Maryland contacts by arguing that its Centre of Excellence and clinical trials have "no alleged connection to Plaintiffs' alleged Psilocybin Trade Secrets." MTD at 15. Preliminarily, when—as here—claims arise from tortious injury in Maryland, the requirements of Section 6-103(b)(4) are satisfied if the defendant has *any* persistent course of conduct in Maryland. There is no additional requirement that the asserted claims *arise **also** out of* the persistent conduct. *See Nichols* v. *G.D. Searle & Co.*, 783 F. Supp. 233, 236 (D. Md. 1992), *aff'd*, 991 F.2d 1195 (4th Cir. 1993) ("[S]ubsection (b)(4) does not require that a defendant's contacts bear any relationship to the alleged acts giving rise to the suit").

Although the degree of contact for establishing jurisdiction under Section 6-103(b)(4) is more demanding when the persistent conduct bears no relationship to the asserted claims, the standard is lower when, as here, the persistent conduct bears some relationship to the asserted claims. Here, Plaintiffs allege that Compass improperly disclosed the Psilocybin Trade Secrets, which purposefully impaired Plaintiffs' ability to compete in the development of psilocybin therapies (*e.g.*, by hindering Plaintiffs' ability to obtain its own patent protection), and Compass's persistent conduct in Maryland—its Centre for Excellence (set up only ten miles away from UMB, *see* Guzior Ex. 4), clinical trials (involving the very same psychedelic compound that is at the heart of the Psilocybin Trade Secrets), and other collaborations based in Maryland—bears at least some relationship to the competitive harm that this case seeks to remedy. The U.S. Supreme Court's decision in *Ford Motor Co.* v. *Montana Eighth Judicial District Court* supports this conclusion:

> None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." . . . The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing.

141 S. Ct. 1017, 1026 (2021) (emphasis in original).

Other courts have reached the same conclusion on similar facts. For example, one court, relying on *Ford*, held that clinical trials and other activities at hospitals "related to" plaintiff's claim for patent infringement because such activities were designed to foster connections with practitioners within the state. *Seagen Inc.* v. *Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 528 (E.D. Tex. 2021) ("DSC conducted clinical trials in Texas hospitals expecting to build trust with Texas doctors, who will look to their own institutions and colleagues as a measure of assurance."); *see also Trimble Inc.* v. *PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021) ("[T]he Supreme Court's recent decision in *Ford* has established that a broad set of a defendant's contacts with a forum are relevant to the minimum contacts analysis.").[6]

Moreover, even if the Court hypothetically did not agree that these clinical trials and other efforts relate to Plaintiffs' claims—and the Court applies a more stringent standard for persistent course of conduct under Section 6-103(b)(4)—Compass's establishment of physical research centers in Maryland and initiation and performance of continuous, multi-year clinical trials in

---

[6] Although Plaintiffs have not alleged that Compass is developing a therapy that incorporates the Psilocybin Trade Secrets, such an allegation is not necessary to Plaintiffs' claims. *See, e.g., Grant Indus., Inc.* v. *Isaacman*, No. 21-CV-13094, 2022 WL 2358422, at *10 (D.N.J. June 30, 2022) (defendants sent communications into the forum to gain access to confidential information, which "they then used for their own benefit in seeking patent protection . . . revealing [plaintiff's] confidential information publicly and potentially limiting the patent protection available to [plaintiff] and therefore its ability to compete with respect to the product."). Compass misappropriated the Psilocybin Trade Secrets in Maryland and used them to further its activities in Maryland and elsewhere in the United States.

Maryland qualify as "extensive, continuous, and systematic" conduct. *Barnett* v. *Surefire Med., Inc.*, No. CV JFM-17-1332, 2017 WL 4279497, at *3 (D. Md. Sept. 25, 2017). Even under the highest standard, this Court can exercise jurisdiction given Compass's substantial contacts.

Finally, Compass suggests that Plaintiffs have not explained how Compass's activities in Maryland differ from their business elsewhere. MTD at 18-19. But that is evident from the TAC. For example, Maryland is the only state that is home to a Compass Centre of Excellence, which, in Compass's own words, will work "as a research facility and innovation lab, it will generate evidence to shape therapy models in mental health care, train and certify therapists, conduct clinical trials including proof-of-concept studies, and prototype digital solutions to improve patient experience." TAC, Ex. 3 at 2. Furthermore, of Compass's fourteen clinical trials registered with the FDA, seven include one or more sites in Maryland. TAC, Ex. 2. *Maryland* is the focus of Compass's persistent research and development efforts into psilocybin therapies in the United States, and jurisdiction is proper under Section 6-103(b)(4).

### 2. The Court Can Consider Compass's 2020 To 2022 Contacts, Which Also Establish Jurisdiction Under Section 6-103(b)(4)

Even if the Court hypothetically decided that Compass's 2019 contacts with Maryland are insufficient, the Court should look beyond 2019 for at least two reasons.

*First*, the Court can consider Compass's additional contacts with Maryland from 2020 through the end of 2022 under Maryland Code Section 6-103(b)(4) because Plaintiffs asserted misappropriation claims that arose when Compass filed additional patent applications in 2021 and 2022, the last of which was filed on December 8, 2022. *See* TAC, ¶¶ 48-49; Guzior Ex. 4 at 2-3.

Each filing was an independent act of misappropriation—not merely continuation of the initial act—and this is a sound basis to consider Compass's contacts with Maryland through 2022.

Compass's contacts with Maryland from 2020 to 2022 include (i) the majority of its clinical trials in Maryland (seven trials in Maryland in total), *see* TAC, Ex. 2; *id.*, ¶ 18; (ii) the establishment and opening of, and the activities at, Compass's Centre of Excellence in Baltimore, *see* TAC, Ex. 3; *id.*, ¶ 18; and (iii) Compass's activities at the Aquilino Cancer Center in Rockville, Maryland, *see* Guzior Exs. 2-3. As explained above (*supra* Section II.B.1), all of these contacts bear at least some relationship to Plaintiffs' claims, and they should be considered in the jurisdictional analysis.

*Second*, although the Court ultimately does not need to reach this argument because it can exercise jurisdiction for any of multiple reasons explained above, Plaintiffs respectfully submit that, as a legal matter, jurisdiction under Section 6-103(b)(4) should be assessed based on contacts as of the filing of the complaint, which here is August 2022.

With regard to the law, the appropriate *timing* of contacts is not well-addressed in precedent, and among courts that have addressed this issue, many have done so without reasoning. *See* Todd David Peterson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L. Rev. 101 (2010). For example, the only two in-district cases that Compass cites do not explain why they imposed a timing cut-off at the date the claim arose. MTD at 16, 18 (citing *Hardnett* v. *Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) and *Janjua* v. *Cooper Tire & Rubber Co.*, No. CIV.A. WMN-12-2652, 2014 WL 2803741, at *4 (D. Md. June 19, 2014)). And both cases rely on a clear misreading of a single footnote in *Rossman* v. *State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282 (4th Cir. 1987). *Rossman* does not stand for the proposition that a Court never can consider

jurisdictional contacts after a claim arose; rather, it depends on the particular facts of the case.[7]
*See Metro. Life Ins. Co*. v. *Robertson-Ceco Corp*., 84 F.3d 560, 569 (2d Cir. 1996) ("The minimum
contacts inquiry is fact-intensive, and the appropriate period for evaluating a defendant's contacts
will vary in individual cases").

In 1999, the Fourth Circuit correctly interpreted Maryland Code Section 6-103(b)(4) to
allow consideration of jurisdictional contacts through the time the lawsuit "was filed." *Stein* v.
*Horwitz*, 191 F.3d 448 (4th Cir. 1999).[8] However, the Court misapplied *Rossman* to hold that
Maryland's long-arm statute and the demands of due process are "slightly different," and "[a]s to
the due process considerations" the Court was required to assess the defendant's contacts in
Maryland "at the time of the accident." *Id.* at 448 n.2. But, again, *Rossman* did not establish a
general rule for all cases, and persuasive authority from other Circuits shows that, in appropriate
cases, a court should consider jurisdictional contacts through the filing of the complaint.[9] Plaintiffs
respectfully submit that when there is a tortious injury that indisputably arose in Maryland—as is
the case here—the separate question of whether a defendant had a persistent course of conduct in
Maryland (for purposes of Section 6-103(b)(4)) can and should be evaluated as of the date of the
filing of the complaint, which almost always will be a reasonable time period between the

---

[7] In *Rossman*, the post-accident contacts were aimed at investigating liability and effecting a
settlement. The Court held that "a party's investigation of possible legal liability after an accident
creates *in personam* jurisdiction that would not otherwise exist. If it did, insurers would be
discouraged from legitimate investigation …." *Id.* at 287 n.2.

[8] *See also Curtis Engine & Equip., Inc.* v. *Cummins Engine Co*., No. CIV. A. WMN-97-26, 1997
WL 835051, at *3 (D. Md. Oct. 30, 1997).

[9] *See*, *e.g.*, *Harlow* v. *Children's Hosp*., 432 F.3d 50, 65 (1st Cir. 2005); *Pecoraro* v. *Sky Ranch
for Boys, Inc*., 340 F.3d 558, 562 (8th Cir. 2003); *Metropolitan Life Ins. Co*. v. *Robertson-Ceco
Corp*., 84 F.3d 560, 569–570 (2d Cir. 1996); *Brown* v. *Lockheed Martin Corp*., 814 F.3d 619, 628
n.8 (2d Cir. 2016).

occurrence of the tortious injury and the expiration of a foreseeable period of limitation to assert the claim.[10]  That is how the Fourth Circuit correctly interpreted the statute, and due process does not require modification.  This is an additional and independent reason for the Court to consider Compass's substantial additional contacts with Maryland through 2022, and those contacts establish jurisdiction for the reasons explained above.

### C.    Compass Is Subject To Personal Jurisdiction Under Rule 4(k)(2)

Compass also is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2), which measures Compass's contacts with the United States as a whole.  As described in the TAC and below, Compass has extensive contacts with the United States that support an exercise of either specific or general jurisdiction under Rule 4(k)(2).  TAC, ¶¶ 17-23.

Those contacts span many years, and, in addition to the Maryland contacts described above, they include running fourteen clinical trials (with seven of them being in Maryland) (*see supra* Section II.B.1; TAC, Ex. 2; *id.*, ¶ 18); attending conferences in the United States (MTD at 11 n.4, Ex. B); establishing offices in New York and San Francisco (with key executives located in the United States) (MTD, Ex. C at 3-4; Guzior Exs. 6, 8); successfully applying for Breakthrough Therapy designation with the U.S. FDA to develop a drug for sale throughout the United States (TAC, Ex. 3); and filing at least forty-two patent and trademark applications with the USPTO (TAC, Exs. 6-13; *id.*, ¶¶ 22-23).  All of Compass's contacts with the U.S. are relevant to and

---

[10] Plaintiffs appreciate that the Court might feel constrained by the Fourth Circuit's decision in *Stein*, but Plaintiffs at least make this argument in good faith for correction of the law.  Moreover, in at least one other case, the Fourth Circuit has recognized that "relevant contacts" for the specific jurisdiction due process analysis can include contacts up to (and past) the date the action was filed. *See UMG Recordings, Inc.* v. *Kurbanov*, 963 F.3d 344, 353 (4th Cir. 2020) (considering website traffic originating from Virginia between October 2017 and September 2018 to assess Defendant's contacts with Virginia in copyright action commenced on August 8, 2018).

support the exercise of personal jurisdiction, and several of them warrant more specific explanation:

*First*, Compass's patent filings are persuasive evidence of Compass's purposeful availment of the laws and privileges of the United States. The Federal Circuit has held that "[i]t stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States." *Touchcom, Inc.* v. *Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009); *Deprenyl Animal Health, Inc.* v. *Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1353 (Fed. Cir. 2002); *see also Nat'l Patent Dev. Corp.* v. *T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1009 (D.C. Cir. 1989) (en banc). Compass has filed at least *thirty-four* patent applications with the USPTO—twenty-one before the end of 2019. TAC, ¶ 22, Exs. 6-10. Compass has noted that these patents "are a critical milestone" in developing a therapy to bring to market in the United States.[11] *Id.*, Ex. 10 at 2. Furthermore, during the prosecution of one of those applications, U.S. App. No. 17/604,610, in 2021, Compass expressly tried to claim the Psilocybin Trade Secrets, before canceling those claims, presumably due to Compass's prosecution counsel becoming aware of Compass's misconduct. *Id.*, ¶ 48, Exs. 24-25.

The cases that Compass cited do not undermine the importance of its patent filings. In *Mia. Prods. & Chem. Co.*, the Court declined to assert Rule 4(k)(2) jurisdiction over claims of price fixing because those allegations "bear no relation to patents." 449 F. Supp. 3d 136, 179 n.10 (2020).[12] Here, the allegations in the Third Amended Complaint relate to Compass's patents. As

---

[11] Compass incorrectly states that only one application (the '611 Application: TAC, Ex. 6) incorporates the Psilocybin Trade Secrets (MTD at 20)—at least five additional patent applications were filed containing aspects of the Psilocybin Trade Secrets in their specifications, through December 8, 2022. *See*, *e.g.*, TAC, ¶ 49, Ex. 8; Guzior Ex. 5.

[12] Compass wrongly suggests that *Mia. Prods. & Chem. Co.* stands for the proposition that a patent application can only permit Rule 4(k)(2) jurisdiction if the claim asserted is one for patent

noted above, at least six of Compass's patents incorporate the Psilocybin Trade Secrets.  Compass also cites to *Tube-Mac Indus., Inc.*, in which a Pennsylvania court declined to apply Rule 4(k)(2) jurisdiction premised on a single patent because the parties agreed that jurisdiction would be proper in Virginia (which is not the case here).  No. 2:19-CV-01192, 2020 WL 1911464, at *11 (W.D. Pa. Apr. 20, 2020).  It does not stand for the general principle that patent filings are to be disregarded under the Rule 4(k)(2) analysis.

*Second*, Compass's CEO, Kabir Nath, is based in the U.S.  *See* Guzior Ex. 7 at 1.  Mr. Nath entered into an employment agreement with Compass on August 1, 2022, that specified his "principal place of employment shall be in the United States."  *Id.* at 7.  This strongly supports the exercise of jurisdiction under Rule 4(k)(2).  *See Perkins* v. *Benguet Consol. Min. Co.*, 72 S. Ct. 413, 419 (1952) (no violation of federal due process for a court to exercise jurisdiction over a foreign company when the company's president resided in and carried out job duties from within the U.S.); *see also Daimler AG* v. *Bauman*, 134 S. Ct. 746, 755-56 (2014) ("[The Court's] 1952 decision in [*Perkins*] remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum").

*Third*, one of the named inventors on the relevant Compass U.S. patent applications and then General Counsel and Chief Legal Officer of Compass's wholly-owned U.S. subsidiary at the relevant time, Nathan Poulsen, was based in the U.S.  Guzior Ex. 8.  Specifically, Mr. Poulsen was named as an inventor on Compass's '611 Application, in which Compass improperly disclosed UMB's trade secrets, TAC, Ex. 6, as well as Compass's '610 patent application, in which Compass improperly tried to claim the Psilocybin Trade Secrets as its own, *id.*, ¶ 48, Exs. 24-25.  Mr.

---

infringement.  MTD at 20.  Not so.  The relevant inquiry is whether the allegations in a complaint bear any relation to patents.  *See Mia. Prods. & Chem. Co.* at 179 n.10 (2020).

Poulsen also was included on all of the correspondence between Compass and Prof. Thompson beginning in June 2019. *See, id.*, Exs. 20, 22-23.

*Third*, Compass's trademark applications are also properly considered, as courts regularly find jurisdiction to be proper based on even a single trademark application. *See, e.g.*, *Sunshine Distrib., Inc.* v. *Sports Auth. Michigan, Inc.*, 157 F. Supp. 2d 779, 789-90 (E.D. Mich. 2001); *Monster Cable Prod., Inc.* v. *Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009); *United States* v. *Aquatherm GmbH*, 609 F. Supp. 3d 1163, 1172 (D. Or. 2022); *Aether, LLC* v. *Unt Holdings, OÜ*, No. 2:21-CV-00313, 2022 WL 16554691, at *9 (C.D. Cal. Oct. 31, 2022).

*Finally*, Compass's regulatory activities, which include clinical trials and receiving a breakthrough therapy designation by the U.S. FDA, indicate that it is reasonable for Compass to litigate in the U.S. *See* TAC, Ex. 3 at 2 ("COMP360 has been designated a Breakthrough Therapy by the US Food and Drug Administration (FDA)"); *Tobin* v. *Astra Pharm. Prod., Inc.*, 993 F.2d 528, 545 (6th Cir. 1993) ("Duphar has shown its familiarity with the United States administrative and legal process by undergoing the formidable task of obtaining FDA approval for ritodrine."); *Silver Ring Splint Co.* v. *Digisplint, Inc.*, 508 F. Supp. 2d 508, 515 (W.D. Va. 2007).

Although it does so less clearly with respect to Rule 4(k)(2), Compass appears to repeat its arguments regarding (i) a purported lack of connection between its U.S. contacts and Plaintiffs' claims, and (ii) the timing of those U.S. contacts. *See* MTD at 19-21. With respect to the first issue, under *Ford*—as explained above (*supra* Section II.B.1)—Compass's contacts with the United States sufficiently relate to the claims in this case to be considered in the jurisdictional analysis.[13] *See supra* Section II.B.1. Additionally, as a legal matter, Compass's U.S. contacts

---

[13] Compass's reliance on *Saudi* v. *Northrop Grumman Corp.*, 427 F.3d 271 (4th Cir. 2005) is misplaced. There, the plaintiff argued that Rule 4(k)(2) was satisfied by the fact that the ship he was injured on was refurbished in Singapore by a New Jersey corporation five years earlier, and

need not relate to the claims in this action to support general jurisdiction under Rule 4(k)(2). The Court can exercise general jurisdiction over Compass because all of Compass's contacts with the U.S. described above taken together are sufficiently "continuous and systematic." *Saudi* v. *Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

With respect to timing, as explained above (*supra* Sections II.A and II.B.1), Compass's contacts with the United States through 2019 are sufficient to establish specific jurisdiction under Rule 4(k)(2).[14] Although these contacts alone are sufficient, the Court also can consider Compass's 2020-2022 contacts with the United States, including Compass's contacts with Maryland, described above in Section II.B.2, because alleged acts of misappropriation also occurred through December 2022. *See supra* Section II.B.2.

Moreover, when it comes to the timing of contacts for general jurisdiction under Rule 4(k)(2), precedent does not prohibit this Court from looking at Compass's contacts through the August 2022 filing of the original complaint.[15] Persuasive analyses from other Circuits

---

that a subsidiary of the defendant owned a shipyard in Texas. *Id.* at 276. The Fourth Circuit disagreed because the plaintiff's "cause of action arises from [defendant's] alleged misconduct either in Singapore or on the high seas," not the U.S. *Id.* In contrast, Terran's DTSA claim clearly arises from Compass's misconduct in the U.S., including the theft of UMB's trade secrets and secretly filing U.S. patent applications claiming those same trade secrets as its own inventions. Here, "the United States has a substantial interest in enforcing its citizens' intellectual property rights." *Freeplay Music, LLC* v. *Nian Infosolutions Priv. Ltd.*, No. 16-CIV-5883, 2018 WL 3639929, at *16 (S.D.N.Y. July 10, 2018); *see also Gucci Am., Inc.* v. *Weixing Li*, 135 F. Supp. 3d 87, 100 (S.D.N.Y. 2015).

[14] Compass's 2019 contacts with Maryland, described above in Section II.B.1, include Compass's August 2019 filing of the '611 patent with the USPTO claiming Prof. Thompson and UMB's Psilocybin Trade Secrets for itself, Compass's employment of Nathan Poulsen as its New York-based General Counsel and Chief Legal Officer, and Compass's clinical trial in furtherance of development of a competing psilocybin therapy which began in March 2019 in eight different locations in the U.S. and was submitted by Compass to the FDA in December 2018—all of which are related to this action. TAC, ¶¶ 3-6, 17-18, 21-22; 29-49; *id.*, Exs. 1, 2, 16; Guzior Ex. 8.

[15] The Fourth Circuit's decision in *Saudi* v. *Northrop Grumman Corp.*, 427 F.3d 271, 276–77 (4th Cir. 2005), at least suggests that the Court should look beyond the point in time when the claim

conclude that the general jurisdiction analysis—including under Rule 4(k)(2)—should "examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed." *Porina* v. *Marward Shipping Co*., 521 F.3d 122, 128 (2d Cir. 2008); *see also Grynberg* v. *BP P.L.C.*, 855 F. Supp. 2d 625, 646–47 (S.D. Tex. 2012), *aff'd*, 527 F. App'x 278 (5th Cir. 2013); *supra* at 13 n.9. Although it is not necessary for the Court to reach the timing issue under Rule 4(k)(2)—because the Court can exercise jurisdiction for any of the multiple reasons provided above—if the Court were to disagree, the Court should conclude that legally it can consider Compass's contacts with the United States through the filing of the complaint in August 2022, and Compass's extensive contacts with the United States through that time more than satisfy the jurisdictional test under Rule 4(k)(2).

### D.    The Exercise Of Personal Jurisdiction Is Consistent with Due Process

This Court's exercise of personal jurisdiction over Compass under either Maryland's long-arm statute or Rule 4(k)(2) is consistent with due process. For specific personal jurisdiction, due process requires the Court to consider the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; whether plaintiff's claims relate to those contacts; and whether the exercise of personal jurisdiction would be constitutionally reasonable. *See Ford*, 141 S. Ct. at 1024-25.[16] For the reasons explained above, the first two requirements are satisfied here. With respect to the third, exercising jurisdiction here would be reasonable, and

---

arose. *See*, *e.g.*, *id.* at 267 (district court lacked general jurisdiction in part because plaintiff "provides virtually no evidence that Keppel *maintains* [present tense] a continuous presence in the United States, and instead offers only isolated contacts with Texas and New Jersey").

[16] As explained in Section II.B.2 and Section II.C above, Compass's contacts with Maryland and the U.S. as a whole are continuous and systemic, and thus meet the due process requirement for general jurisdiction. *Saudi*, 427 F.3d at 276 (4th Cir. 2005).

Compass's argument, MTD at 16-17, based on *Asahi Metal Indus. Co.* v. *Superior Ct. of Cal.*, 480 U.S. 102 (1987) is misguided. A comparison of *Asahi* to the facts here shows why.

In *Asahi*, a California motorcyclist crashed and sued the Taiwanese motorcycle tube manufacturer in California court. *Id.* at 105-06. In turn, the Taiwanese company filed a cross-complaint against the Japanese manufacturer of the tube assembly for indemnification, while the motorcyclist's claims were settled and dismissed. *Id.* at 106. With the indemnification claim as the only claim remaining, the Japanese manufacturer moved to quash the summons, arguing that the exercise of personal jurisdiction would be unfair. *Id.* The Supreme Court found the exercise of jurisdiction would be unreasonable for three reasons, none of which are applicable here.

*First*, the Court found that "the burden on the defendant in this case is severe" and that there would be "unique burdens placed upon one who must defend oneself in a foreign legal system." *Id.* at 114. However, as explained further in Section II.D, *infra*, Compass is already intimately familiar with the United States legal process. TAC, ¶¶ 22-23; *id.*, Exs. 6-13; *see Sunshine Distrib.*, 157 F. Supp. 2d at 789-90. Compass cannot seek protection of United States laws, *including by claiming U.S. patent ownership of the very trade secrets at issue*, and then claim that it is unfamiliar with the U.S. legal process. Furthermore, as explained above, Compass should have expected to face a lawsuit in Maryland when it reached out to and defrauded Prof. Thompson and UMB, as opposed to *Asahi*, where "[t]he transaction on which the indemnification claim is based took place in Taiwan[, and] Asahi's components were shipped from Japan to Taiwan." 480 U.S. at 114.[17]

---

[17] The unpublished decision *Gray* v. *Riso Kagaku Corp.* is similarly unavailing. 82 F.3d 410 (4th Cir. 1996). There, the plaintiff had an agreement with an American company, and when relations went sour, sued both the American company and its Japanese parent. *Id.* at *2. In addition to holding that the subsidiary's actions did not give rise to personal jurisdiction over the parent corporation, the Fourth Circuit noted that asserting personal jurisdiction against the Japanese

*Second*, the *Asahi* Court held that the plaintiff had minimal interest in the dispute being heard in the forum. 480 U.S. at 114-16. The sole remaining claim was between a Japanese corporation and a Taiwanese corporation, and there was no reason why it would be more convenient for the plaintiff to litigate "in California rather than in Taiwan or Japan," *id*. at 114— the opposite was true. Here, it is more convenient for Plaintiffs to litigate this case in Maryland as opposed to overseas in the United Kingdom. UMB, which is unquestionably interested in this Court's jurisdiction, has joined this litigation as a plaintiff. TAC at 1. Furthermore, Prof. Thompson was still a Maryland resident during the time he was communicating with Compass in 2019 and during the period Compass was filing patent applications from 2019 to 2021 (only leaving Maryland to accept a position at the University of Colorado in July 2022). Moving after 24 years does not extinguish his interest in seeking resolution of his claims in his former home state, in the courthouse located less than a mile from where he worked. TAC, ¶ 25; Guzior Ex. 9.

*Third*, the *Asahi* Court noted that California's "legitimate interests in the dispute have considerably diminished" as a result of the California plaintiff exiting the case. 480 U.S. at 114. Because the action was "primarily about indemnification rather than safety standards," California did not have an interest in protecting its residents from harm. *Id*. This case is centered on Compass's theft of trade secrets developed in Maryland, at a public Maryland university, by a Maryland resident and state employee. Maryland unquestionably has an interest in protecting its state university professors and its educational institutions from being taken advantage of by foreign corporations. Indeed, the Governor of the State of Maryland had to approve UMB joining this

---

corporation would be unfair due to "language and cultural barriers." *Id*. at *3-4. Here, Compass is based in the UK, and thus there should be no language or relevant cultural barriers, particularly in light of Compass's establishment of a Centre of Excellence in Maryland. *See Giannaris*, 219 F. Supp. 2d at 693 & n.4 (distinguishing *Asahi*, and noting that there was "little merit" in Defendants' protestations when they owned and operated a restaurant in Maryland).

case as a co-plaintiff, as explained in prior briefing. *See* ECF No. 67-32 at 2. Furthermore, the dispute in *Asahi* would likely not involve questions of California law. *Id.* Here, ten of the eleven claims undisputedly implicate Maryland or U.S. law, with the only possible exception being the breach of contract claim (in the alternative), regarding an NDA that Compass has consistently denied ever signing or being enforceable.

In short, exercising jurisdiction under Maryland's long-arm statute, or exercising federal jurisdiction under Rule 4(k)(2), would not remotely offend traditional notions of fair play and substantial justice. The opposite is true—sending UMB, Prof. Thompson, and Terran to courts in the United Kingdom to remedy a fraud that occurred through Compass's intentional contacts with Maryland and its filing of U.S. patent applications is not remotely fair or just.

### E.    As An Alternative To Potential Dismissal, The Court Should Order Jurisdictional Discovery

Compass had extensive contacts with Maryland and the United States from 2019 to the present, and the claims in this case specifically arise out of contacts with Maryland that Compass chose to initiate in 2019 and relate to all of Compass's contacts with Maryland and the United States as a whole. The Court can and should conclude at this stage of the case that it can exercise personal jurisdiction over Compass. However, if the Court were to disagree, the Court should not dismiss this case and instead should order jurisdictional discovery. *See Maryland* v. *Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 448 (D. Md. 2019) ("In some cases, where the record suggests some indicia of personal jurisdiction, limited jurisdictional discovery may be warranted to ascertain more facts."); *Combs* v. *Bakker*, 886 F.2d 673, 676–77 (4th Cir. 1989); *Androutsos* v. *Fairfax Hosp.*, 323 Md. 634, 639–40 (Md. 1991).

Most notably, as explained above in Section II.B.1, it is at least reasonable to infer that Compass had significant additional contacts with Maryland in 2019 in preparation for clinical

trials, collaborations, and facilities opening in Maryland, which were announced in 2020 and early 2021. If the Court were not satisfied to rely on the known contacts through 2019, or on those reasonable inferences of likely additional contacts through 2019, Plaintiffs respectfully submit that jurisdictional discovery would provide a more complete record. To be clear, given Compass's overwhelming contacts with Maryland, Plaintiffs do not believe that the delay and cost of jurisdictional discovery is necessary in this case—the Court can and should conclude now that it is sufficiently satisfied with the jurisdictional showing to proceed with the case in full—but, again, if the Court were to disagree, jurisdictional discovery would be the appropriate next step.

## III.    PLAINTIFFS HAVE ADEQUATELY PLED THE INTERSTATE/FOREIGN COMMERCE REQUIREMENT OF THEIR DTSA CLAIM

Compass asserts that Terran and UMB's DTSA claims should be dismissed for failure to adequately plead that the Psilocybin Trade Secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce. MTD at 21-23. Compass wrongly states that Terran does not allege that it "plan[s] to sell [] a psilocybin/ketanserin therapeutic product," *id.* at 22, but the TAC clearly pleads that Terran is developing and planning to commercialize throughout the United States—and the world—an antidepressant therapy relating to the Psilocybin Trade Secrets, TAC, ¶ 7 ("Terran licensed the Psilocybin Trade Secrets so it could bring a groundbreaking rapid, non-hallucinogenic antidepressant therapy to market. The Psilocybin Trade Secrets relate to this therapy, which Terran has taken significant steps towards developing and commercializing in the United States and throughout the world."); *see also id.*, ¶¶ 56-57.[18] These

---

[18] The MLA that Compass attached to its previous motion to dismiss as a document "integral to the complaint" includes a development plan setting forth in extensive detail Terran's intention to commercialize the Psilocybin Trade Secrets. ECF No. 51-1 at 9; ECF No. 51-3 at 46-57. The Court can rely on the MLA in denying Compass's Motion. *See, e.g.*, *Bowman* v. *Jack Cooper Transp. Co. Inc*., 399 F. Supp. 3d 447, 451 (D. Md. 2019).

allegations are sufficient, and Compass's mischaracterization of the pleadings should be rejected. *See, e.g.*, *Kraus USA, Inc.* v. *Magarik*, No. 17-CV-6541, 2020 WL 2415670, at *7 (S.D.N.Y. May 12, 2020); *Yager* v. *Vignieri*, No. 16-CV-9367, 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017); *Revolution FMO*, *LLC*, v. *Mitchell*, 2018 WL 2163651, at *5 (E.D. Mo. May 10, 2018).

Compass also argues that *UMB's* DTSA claim is deficient because it "contains no allegations that UMB . . . would be involved in any business venture related to a product embodying the Psilocybin Trade Secrets, let alone the commercialization of any product used in interstate commerce." MTD Br. at 22. This argument also fails. The TAC pleads that (i) UMB licensed the Psilocybin Trade Secrets to Terran (a Delaware company with its principal place of business in New York) via the Master Licensing Agreement ("MLA"); (ii) the licensed Psilocybin Trade Secrets are related to a potential treatment for neuropsychiatric disorders; and (iii) Terran is using the licensed Psilocybin Trade Secrets in developing such an antidepressant therapy for commercialization. *See*, *e.g.*, TAC, ¶¶ 7, 9-10, 26, 52, 56-57. The MLA includes a development plan setting forth in extensive detail Terran's intention to commercialize the Psilocybin Trade Secrets, and ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████ These allegations are more than sufficient to satisfy the DTSA's interstate commerce requirement with respect to UMB, and it is telling that Compass relies solely on cases (readily distinguished) where the plaintiffs failed to allege interstate commerce at all or alleged only *intrastate* commerce. MTD at 22-23 (citing cases). The pleadings with respect to Terran and UMB are sufficient to satisfy the interstate commerce requirement. *See Exec. Trim Constr., Inc.* v. *Gross*, 525 F. Supp. 3d 357, 381 (N.D.N.Y. 2021) (finding interstate commerce allegations adequate for pleading purposes and denying motion to dismiss).

## IV.    PLAINTIFFS' CONTRACT AND FRAUD CLAIMS ARE ADEQUATELY PLED

### A.    Prof. Thompson and UMB's Claims Are Not Duplicative

Compass also complains that the TAC contains too many causes of action.  MTD at 23-25. But the law is clear that "[p]arties may plead alternative theories of liability, indeed as many theories as the facts will fit."  *Polar Commc'ns Corp.* v. *Oncor Commc'ns, Inc.*, 927 F. Supp. 894, 896 (D. Md. 1996) (citing Fed. R. Civ. P. 8(e) (2)).  That is what Plaintiffs have done here.

Compass incorrectly relies on *Topline Solutions* for the proposition that Prof. Thompson and UMB's fraud claims should be denied as "piling on."  MTD at 25 (quoting *Topline Solutions, Inc.* v. *Sandler Systems, Inc.*, No. CV 09-3102, 2017 WL 1862445, at *34 (D. Md. May 8, 2017)). But, in *Topline*, this Court denied two fraud counterclaims due to failures of the defendant to plead essential elements of the claims.  *Id.*, at *34, 36.  The Court denied leave to amend because the claims were contradicted by the record, "coupled with the impending trial date and the age of this case."  *Id.* at *36; *see also id.* at *1 (the defendant filed the counterclaims "nearly seven years after suit was filed"); *id.* *10 n.12 (trial was four months away).  *Topline* does not stand for the proposition that well-supported fraud claims should be dismissed merely because a defendant characterizes them as "piling on."[19]

Compass also argues that "this Court regularly dismisses negligent misrepresentation claims that sound in fraud."  MTD at 24.  However, as Compass's cited cases demonstrate, this is only when the negligent misrepresentation claim is based on "promises of future conduct," in

---

[19] Compass also incorrectly relies on *Doe* v. *Community College of Baltimore County*, in which this Court dismissed a claim as duplicative because two claims, both for negligence, "stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available."  595 F. Supp. 3d 392, 417-18 (D. Md. 2022) (citation omitted).  Prof. Thompson and UMB's claims are not "overlapping and indistinguishable," as Compass contends.  MTD at 24. They are independent claims under Maryland law, governed by separate legal standards.

which event it merges into (and becomes wholly redundant with) a fraudulent misrepresentation claim. *Frozen Wheels, LLC* v. *Potomac Valley Home Med., Inc.*, No. CV 20-2479, 2021 WL 2226175, at *4 (D. Md. June 2, 2021); *200 N. Gilmor, LLC* v. *Cap. One, Nat. Ass'n*, 863 F. Supp. 2d 480, 492-93 (D. Md. 2012) (similar). Here, Count VIII is not premised solely on future conduct. For example, the TAC pleads that Compass negligently represented "that there was a signed NDA in place between Compass and Prof. Thompson" and that Compass negligently "continued requests for information even after secretly filing a patent application covering the Psilocybin Trade Secrets and other confidential information." TAC, ¶ 116. Thus, the claims are not duplicative. Compass would be liable regardless of whether its false representations were intentional or negligent. "Nothing prohibits a plaintiff from pleading both deceit and negligent misrepresentation in one declaration and then relying on the same nucleus of facts in an attempt to satisfy the differing burdens of proof on these alternative claims." *Martens Chevrolet, Inc.* v. *Seney*, 292 Md. 328, 337 (1982).

Moreover, Compass only cites cases relating to dismissal of negligent misrepresentation claims as duplicative, yet also seeks the dismissal of Counts IX (fraudulent concealment) and X (constructive fraud). MTD at 25.[20] Compass has failed to argue that these counts are duplicative, and they are not. Fraudulent concealment is based on a failure to disclose a material fact—here, for example, Compass's failure to disclose that it filed a patent application claiming Prof. Thompson's work. *See, e.g.*, TAC, ¶¶ 17, 41-45, 125; *Rhee* v. *Highland Dev. Corp.*, 182 Md. App. 516, 524 (2008). On the other hand, "[c]onstructive fraud occurs when the Defendant breaches 'a

---

[20] Compass's cite to *Hosmane* v. *Univ. of Md.*, No. 354, 2019 WL 4567575 (Md. Ct. Spec. App. Sept. 20, 2019) is inapposite. *Hosmane* did not affirm dismissal of the negligent misrepresentation, fraudulent misrepresentation, and constructive fraud claims because they were duplicative. The Court found that the allegations were "legally insufficient to support the claims" and there was "no genuine issue of material fact as to any of them." *Id.* at *5.

legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Dowling* v. *A.R.T. Inst. of Washington, Inc.*, 372 F. Supp. 3d 274, 295 (D. Md. 2019) (citation omitted).    Compass's actions, including deceiving Prof. Thompson and passing his research off as Compass's own inventions in U.S. patent applications, constitute a violation of the public confidence and an injury to public interests.

Compass also wrongly accuses Plaintiffs of "purposefully equivocat[ing]" as to whether the NDA is an enforceable contract.  MTD at 23.  Compass ignores the fact that Prof. Thompson and UMB brought claims involving quasi-contract enforcement of the NDA because Compass, in its own briefing, has both vehemently denied and hedged over whether it actually signed the NDA, presumably in an attempt to avoid facing a breach of contract claim.  *See* ECF No. 24-1 at 5 n.2 ("The NDA is not signed by Compass.  By filing this Motion, Compass does not admit that it executed the NDA; rather, even if it did, the Complaint fails as a matter of law."), 18 (Compass referring to it as "an NDA it did not sign"); *see also* ECF No. 51-1 at 5 n.3 ("The NDA was only signed by Thompson, not by Compass"), 26 ("Thompson and UMB knew that Compass did not return, and thus may not have signed, the NDA"); MTD at 15 n.7 ("Compass presumes, for purposes of this motion, that a contract was entered.  Compass, however, reserves the right to argue otherwise, given that the NDA was never signed").  Compass's own dissembling about the NDA prompted pleading contract and quasi-contract claims in the alternative.

Regardless, a plaintiff is allowed to plead theories in the alternative, particularly in a situation like this where the existence of a contract is in dispute.  *See Swedish Civ*. *Aviation Admin.* v. *Project Mgmt. Enters.  Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) ("[A]lthough SCAA may not recover under both contract and quasi-contract theories, it is not barred from pleading these

theories in the alternative where the existence of a contract concerning the subject matter is in dispute."); *Botts* v. *Johns Hopkins Univ*., No. CV 20-1335, 2021 WL 1561520, at *18 (D. Md. Apr. 21, 2021) (similar) (collecting cases); *Vu Hoang* v. *Georgetown Contractors, Inc.*, No. 08:10-CV-2117, 2010 WL 4485729, at *3 (D. Md. Nov. 9, 2010).  And, a plaintiff may also plead a quantum meruit claim in the alternative.  *Alternatives Unlimited, Inc.* v. *New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 482 (2004) ("Procedurally, [quantum meruit] is often pleaded, as it was in this case, as an alternative claim in a breach-of-contract case so that the plaintiff might still recover even if the contract claim itself should fail.").[21]

### B.    Plaintiffs Adequately Pled Compass's Violation Of Tort Duties

Compass incorrectly states that Compass did not owe Prof. Thompson or UMB a duty of care, *i.e.*, a duty not to defraud them.  Besides *Topline* (which, as described above, involved significant pleading failures by the counter-plaintiff), every case Compass relies upon involves financial institutions, such as banks and insurance agencies.  MTD at 26-27.  For example, in *Chubb & Son* v. *C & C Complete Services, LLC*, the Court noted that "the principal players in the transactions underlying Plaintiffs' claims are all commercial entities," and that the parties conducted an arm's-length negotiation through a non-party broker.  919 F. Supp. 2d 666, 675 (D. Md. 2013).  Thus, the negotiations involving insurance services were "insufficiently intimate." *Id*.; *see also Van Leer* v. *Deutsche Bank Sec., Inc*., 479 F. App'x 475, 481 (4th Cir. 2012) (explaining the unique nature of dealings between banks and their customers).

---

[21] Although the TAC mistakenly references an "implied-in-law" contract at one point, TAC ¶ 104, Count VI is titled correctly, and accurately pleads all of the elements of an implied-in-fact contract, *id.*, ¶¶ 103-108; *see, e.g.*, *Delval Equip. Corp., Inc.* v. *E. Coast Welding & Constr. Co*., No. CV 21-1244, 2022 WL 717046, at *24 (D. Md. Mar. 10, 2022) (describing the elements of an implied-in-fact contract).

Here, the relationship between Prof. Thompson and Compass was significantly more intimate than two companies negotiating insurance coverage through a broker or routine transactions with a bank.  Compass induced Prof. Thompson, who was a UMB professor at the time, to disclose UMB's trade secrets to Compass based on Compass's promise of confidentiality and representations that it sought a potential collaboration.  *See*, *e.g.*, TAC, ¶¶ 3, 29-39.  Those allegations more than suffice to support a duty of care at the pleading stage.  "Patently, the duty to furnish the correct information arises when the relationship is of the nature that one party has the right to rely upon the other for information.  The precise degree of the relationship that must exist before recovery will be allowed is a question that defies generalization."  *Giant Food, Inc.* v. *Ice King, Inc.*, No. 754, 74 Md. App. 183, 189 (Md. Spec. App. 1988).  For example, in *Finley Alexander Wealth Management, LLC* v. *M&O Marketing, Inc.*, the Court held that a "business relationship is intimate enough to find a duty on behalf of Defendants where the business relationship was intended to be mutually beneficial," and that "[t]he intimate nexus is further illustrated by virtue of their communications and interactions over a period of several months."  No. 19-1312, 2023 WL 2163176, at *11 (D. Md. Feb. 21, 2023).  And in *Giant Food*, the Court determined that it was "clear that a 'special relationship'" existed between the parties because of "communications that extended over a period of seven months" regarding the possibility of defendant supplying ice to the plaintiff.  74 Md. App. at 190-91.

Here, Prof. Thompson and Compass communicated for six months in what he hoped was going to be a mutually beneficial arrangement for him and UMB through a collaboration.  TAC, ¶¶ 3, 29-39.  Prof. Thompson divulged trade secrets and other confidential information to Compass, a sophisticated business entity who took advantage of his mistaken trust that the company would not misuse or disclose his research.  *Id.*, ¶¶ 40-49.  Compass violated that

confidence, and should be held liable for defrauding an academic seeking funding for his research. Prof. Thompson and UMB have plausibly alleged in the TAC that there was a duty of care, which is all that is required at this stage.  *See Baltimore Cnty.* v. *Cigna Healthcare*, 238 Fed. Appx. 914, 923 (4th Cir. 2007) (plaintiff had the possibility of establishing that it had a special relationship with the defendant); *Dwoskin* v. *Bank of Am., N.A.*, 850 F. Supp. 2d 557, 571-72 (D. Md. 2012) (citing cases where courts found circumstances giving rise to a duty to give correct information).

## V.    THE DOE DEFENDANTS ARE SUFFICIENTLY IDENTIFIED

Finally, Compass briefly argues that the Doe defendants should be dismissed.  MTD at 27-28.  However, the sole case Compass relies on notes that "the Fourth Circuit has clarified that the device of a John Doe pleading is appropriate when a plaintiff knows a defendant exists, but cannot identify that defendant by name." *Bakery & Confectionery Union & Indus. Int'l Pension Fund* v. *Cont'l Food Prod., Inc.*, No. CIV.A. 14-0380, 2014 WL 7240264, at *2 (D. Md. Dec. 16, 2014). The Fourth Circuit allows Doe defendants "when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery."  *Chidi Njoku* v. *Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000).

Here, the TAC alleges, the Doe defendants include, for example, any Compass executives who actively participated in the scheme to defraud Prof. Thompson.  TAC, ¶ 13.  The Doe defendants are properly pled, and discovery will allow Plaintiffs to uncover the full extent of Compass's malfeasance and, if appropriate, bring suit against all individuals and/or entities who orchestrated Compass's misconduct.

## VI.    CONCLUSION

Compass should not be able to avoid legal accountability in a Maryland federal court for the harm it has caused to Maryland entities and individuals.  Plaintiffs respectfully request that the motion to dismiss be denied.

Dated: March 19, 2024

Respectfully submitted,

*/s/ Ramsay M. Whitworth*
Ramsay M. Whitworth (Fed. Bar #26251)
Email: rwhitworth@silvermanthompson.com
Andrew M. Harvey (Fed. Bar #21925)
Email: aharvey@silvermanthompson.com
Silverman, Thompson, Slutkin & White
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Fax: (410) 547-2432

-and-

*/s/ Andrei Iancu*
Andrei Iancu (admitted *pro hac vice*)
Email: iancua@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

Dustin F. Guzior (admitted *pro hac vice*)
Email: guziord@sullcrom.com
Kirandeep K. Mahal (admitted *pro hac vice*)
Email: mahalk@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Plaintiffs Terran Biosciences Inc. and Professor Scott Thompson*

*/s/ Steven E. Tiller*
Steven E. Tiller (Bar #11085)
Email: stiller@whitefordlaw.com
Whiteford, Taylor & Preston LLP
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9425
Fax: (410) 223-4325

*Attorney for Plaintiff University of Maryland, Baltimore*

-31-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 19th day of March, 2024, a copy of *Plaintiffs' Joint Memorandum in Opposition to Compass's Motion to Dismiss the Third Amended Complaint* was served via CM/ECF on all counsel of record.

/s/ Ramsay M. Whitworth
Ramsay M. Whitworth