IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRAN BIOSCIENCES, INC., *et al.*

　　*Plaintiffs*,

　　v.

COMPASS PATHFINDER
LIMITED, *et al.*,

　　*Defendants*.

Civil Action No. ELH-22-1956

## MEMORANDUM OPINION

Terran Biosciences, Inc. ("Terran Biosciences"), a Delaware corporation; Scott Thompson, Ph.D., formerly Professor of Physiology and Chair of the Department of Physiology at the University of Maryland School of Medicine; and the University of Maryland, Baltimore ("University" or "UMB") (collectively, "Terran"), are plaintiffs in a suit against defendant Compass Pathfinder Limited, a company incorporated in England and Wales, and ten "John Doe" defendants (collectively, "Compass"). ECF 81 ("Third Amended Complaint"), ¶¶ 1, 9–13.[1] Plaintiffs claim that Compass defrauded them of trade secrets concerning the therapeutic application of the hallucinogenic compound psilocybin. *Id.* ¶ 1.

In several of the parties' respective submissions, the parties have referred to or quoted a "Master Licensing Agreement" ("MLA") between Terran Biosciences and the University. *See,*

---

[1] Thompson and the University were not plaintiffs to the original suit. *See* ECF 1. Thompson was added as a plaintiff in the Second Amended Complaint. ECF 47; ECF 48. Later, Terran Biosciences and Thompson sought leave to file a Third Amended Complaint. ECF 67. Among other things, they sought to join the University, a state entity, as a co-plaintiff. *See id.* I granted that request by Memorandum Opinion and Order of February 6, 2024. ECF 79; ECF 80.

*e.g.,* ECF 51-1; ECF 68; ECF 81; ECF 93-1.  In addition, Compass has filed the MLA, under temporary seal, as an exhibit to two of its submissions.  ECF 51-3; ECF 68-2.

According to Terran, the MLA contains commercially sensitive information and the competitive standing of Terran Biosciences would be damaged if it were made public.  ECF 83.  Therefore, Terran has moved to seal the MLA in its entirety or, alternatively, in part.  ECF 83 (the "Motion" or "Motion to Seal").  The Motion is supported by several exhibits.  *See* ECF 83-1 to ECF 83-3.  Terran has also asked the Court to "keep under seal the redacted portions of the motion papers that quote the MLA."  ECF 83 at 1.  Terran appears to identify the "motion papers" it seeks to seal as the submissions docketed at ECF 51-1, ECF 51-3, ECF 68, ECF 68-2, and ECF 75.[2]

In support of the Motion, Terran has submitted a "Declaration of Dustin Tetzl" (ECF 83-3, "Tetzl Declaration"), the Chief Business Officer at Terran Biosciences.  *Id.* ¶ 1.  Terran has also submitted a copy of the MLA that identifies, by yellow highlighting, "the most sensitive information" in the MLA, which Terran proposes to redact if the Court declines to seal the MLA in its entirety.  ECF 83 at 2 n.2; *see* ECF 83-1; ECF 84.  And, Terran has submitted a copy of the MLA that includes the proposed redactions.  ECF 83-2; ECF 85.  According to Terran, this version of the MLA "could be filed on the public docket if the Court denies [Terran's] request to seal the MLA in full."  ECF 83 at 2 n.2.  Terran has moved to temporarily seal the redacted and highlighted versions of the MLA (ECF 84; ECF 85), pending the Court's decision on the Motion to Seal.  *See* ECF 86 ("Terran's Motion for Temporary Seal").

Notably, Compass does not oppose the Motion to Seal.  ECF 87.  Terran has submitted a Reply.  ECF 92.

---

[2] Since Terran filed the Motion to Seal, the parties have filed several additional submissions under seal.  ECF 84; ECF 85; ECF 93; ECF 102; ECF 105.

After Terran filed the Motion to Seal, Compass filed a motion to dismiss the Third Amended Complaint.  ECF 93; ECF 93-1 to ECF 93-6 (collectively, "Third Motion to Dismiss"). Compass has asked the Court to temporarily seal portions of the Third Motion to Dismiss.  ECF 94 ("Compass's Motion for Temporary Seal").

No hearing is necessary to decide the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion to Seal (ECF 83), in part; deny, as moot, Terran's Motion for Temporary Seal (ECF 86); and grant Compass's Motion for Temporary Seal (ECF 94).

## I.      Background

Terran has amended its lawsuit three times.  *See* ECF 1 (original Complaint); ECF 34 (First Amended Complaint); ECF 48 (Second Amended Complaint); ECF 81 (Third Amended Complaint).  In each version of the suit, Terran has referred to and described certain provisions of the MLA that, in its view, establish the right of Terran to sue for misappropriation of the psilocybin trade secrets.  *See* ECF 1, ¶¶ 29–30; ECF 34, ¶¶ 35–36; ECF 48, ¶¶ 50–51; ECF 81, ¶¶ 52–53.

Of relevance here, Compass moved to dismiss the Second Amended Complaint.  ECF 51; ECF 51-1 to ECF 51-8 (collectively, "Second Motion to Dismiss").  In the Second Motion to Dismiss, Compass cited certain provisions of the MLA in support of its arguments that the University, as "a co-owner" of the alleged trade secrets, was a necessary party under Fed. R. Civ. P. 19, ECF 51-1 at 31,[3] and that the putative trade secrets were not subject to reasonable measures of secrecy.  *Id.* at 34–35; *see also id.* at 10–11 (referring to the MLA in discussion of procedural history).  Compass also filed the MLA as an exhibit to the Second Motion to Dismiss.  ECF 51-3.

At Terran's request, Compass filed a "Motion to Seal Unredacted Memorandum of Law in Support of Compass['s] . . . Motion to Dismiss and Exhibit A Thereto."  ECF 52 ("First Motion to

---

[3] At the time, the University had not joined the lawsuit as a plaintiff.

Seal"). In the First Motion to Seal, Compass stated that it "intend[ed] to file a public version of its [Second] Motion to Dismiss from which the confidential information concerning the [MLA] has been redacted." *Id.* at 1–2. In addition, Compass "request[ed] that it be allowed to file," under seal, "the *unredacted* version of its Motion to Dismiss [ECF 51-1]" and the exhibit containing the MLA (ECF 51-3). ECF 52 at 2 (emphasis in ECF 52). The Court granted Compass's First Motion to Seal. ECF 54. Therefore, the unredacted version of the Second Motion to Dismiss, and the exhibit containing the MLA, were filed under seal. *See* ECF 51-1; ECF 51-3. And, the redacted version of the Second Motion to Dismiss was filed on the public docket at ECF 53-1.

Terran opposed the Second Motion to Dismiss. ECF 55; ECF 55-1 to ECF 55-7 ("Opposition to the Second Motion to Dismiss" or "Opposition"). In the Opposition, Terran quoted § 7.1.2 of the MLA, which provides, in part: "The Inventions . . . will be deemed both parties' Confidential Information regardless of the disclosing party and each party will owe confidentiality and non-use obligation [sic] to the other party hereunder." ECF 55-1 at 27 (quoting ECF 51-3 at 23). Terran also stated that the MLA "includes a development plan setting forth in extensive detail Terran [Biosciences's] intention to commercialize the Psilocybin Trade Secrets." ECF 55-1 at 29 n.7 (citing ECF 51-3 at 46–58). However, Terran did not provide any details of the plan to commercialize the psilocybin trade secrets. *See* ECF 55-1. Moreover, Terran did not redact the references to and descriptions of the MLA from its public filings.

Before the Court ruled on the Second Motion to Dismiss, Terran filed a "Motion for Leave to File Third Amended Complaint," seeking, *inter alia*, the joinder of UMB as a plaintiff. ECF 67 ("Motion for Leave"). Compass opposed the Motion for Leave. ECF 68 ("Leave Opposition"). In the Leave Opposition, Compass referred to and quoted the MLA in support of its contention that Terran Biosciences's request to join the University as a plaintiff was untimely. *Id.* at 16.

In particular, Compass argued that § 9.4.3 of the MLA, which allows the joinder of the University as a plaintiff only with the approval of the Maryland Attorney General, demonstrated that "Terran [Biosciences] was aware of the potentially-time consuming [sic] requirement of state approval in 2021," the year in which it agreed to the MLA. *Id.* at 17. "Therefore," according to Compass, "[p]laintiffs' contention that 'they came to learn' that they needed approval from the Maryland Attorney General in August 2023 [was] not credible." *Id.* at 16 (quoting ECF 67 at 7).

Compass filed the entire MLA as an exhibit to the Leave Opposition. ECF 68-2. But, at Terran's request, Compass filed a motion to seal the Leave Opposition and the exhibit containing the MLA. *See* ECF 69 ("Second Motion to Seal"). In the Second Motion to Seal, Compass stated that it did "not agree with Terran's designation of the entire MLA as confidential or that sealing the quoted portions is warranted." *Id.* at 2. Nonetheless, Compass "request[ed] that th[e] Court . . . seal[] the redacted portions of [the] Opposition [ECF 68] and Exhibit A thereto [ECF 68-2]." ECF 69 at 2.

The Court granted the Second Motion to Seal, "subject to further Order of the Court." ECF 72. Therefore, the unredacted version of the Opposition (ECF 68) and the MLA (ECF 68-2) were filed under seal. However, a redacted version of the Opposition was filed on the public docket at ECF 70.

Terran filed a Reply, under seal, in support of the Motion for Leave. ECF 75. In the Reply, Terran briefly discussed §§ 9.4.3 and 9.5 of the MLA. *Id.* at 4–5. Terran redacted this discussion from the version of the Reply filed on the public docket. *See* ECF 76 at 4–5.

By Memorandum Opinion and Order of February 6, 2024 (ECF 79; ECF 80), the Court granted Terran's Motion for Leave (ECF 67) and denied the Second Motion to Dismiss (ECF 51), as moot. ECF 80. In the Memorandum Opinion, the Court quoted, in part, § 9.4.3 of the MLA.

ECF 79 at 30.  In particular, the Court wrote: "Section 9.4.3 provides, in part, that [the University] 'may agree to join in the suit or action as a nominal party, but only if,' *inter alia*, 'the joinder is approved by the Maryland Attorney General.'"  *Id.* (quoting ECF 68-2, § 9.4.3(b)).  The Court noted that, in light of this provision, "there is some reason to believe that Terran could have acted with greater diligence in pursuing the joinder of" the University.  ECF 79 at 31.

Nonetheless, the Court concluded "that the proposed amendments are not clearly futile, have not been made in bad faith, and do not unfairly prejudice Compass."  *Id.* at 35.  Therefore, the Court granted the Motion for Leave and approved the joinder of UMB.  *Id.*  The Court's Memorandum Opinion was filed on the public docket, without redaction.

As noted, Compass has moved to dismiss the Third Amended Complaint.  ECF 93; ECF 93-1 to ECF 93-6.  In the Third Motion to Dismiss, Compass refers to the MLA in its presentation of the case's procedural history and factual summary.  ECF 93-1 at 9, 14.   In addition, Compass quotes the MLA in support of its contention that the Third Amended Complaint does not adequately plead the interstate commerce element of Terran's claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831 *et seq.*  *Id.* at 30.  At Terran's request, *see* ECF 94, Compass redacted these descriptions and quotations of the MLA from the version of the Third Motion to Dismiss filed on the public docket.  ECF 95.  Compass also filed a motion asking the Court to temporarily seal the Third Motion to Dismiss, pending the Court's ruling on the Motion to Seal.  *See* ECF 94.

## II.    Legal Standard

"The right of public access [to judicial records and documents] derives from two independent sources: the First Amendment and the common law."  *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)

(citing *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)). "For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record.'" *In re Application*, 707 F.3d at 290. "[D]ocuments filed with [a] court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." *Id.* Thus, "judicially authored or created documents are judicial records," as are documents "filed with the objective of obtaining judicial action or relief." *Id.* On the other hand, "'the mere filing of a paper or document with [a] court is insufficient to render that paper a judicial document subject to the right of public access.'" *Id.* at 290 n. 6 (citation omitted).

The common law provides "a right of access [to] *all* judicial records and documents." *Id.* at 290 (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)) (additional citation omitted). However, this right can be defeated if "'the public's right of access is outweighed by competing interests.'" *In re Application*, 707 F.3d at 290 (quoting *In re Knight*, 743 F.2d at 235) (additional citation omitted); *see also Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that common law right of access may be abrogated in "unusual circumstances," when "countervailing interests heavily outweigh the public interests in access").

Therefore, "[a]t common law, a district judge must weigh the competing interests of the public's access to judicial proceedings and the interests of the individuals in keeping the information private and of the government in ensuring integrity in its processes." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 376 (4th Cir. 2021) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *United States v. Harris*, 890 F.3d 480, 491–92 (4th Cir. 2018)). "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and

whether the public has already had access to the information contained in the records.'" *Wash. Post*, 386 F.3d at 575 (quoting *In re Knight*, 743 F.2d at 235); *see Gonzalez*, 985 F.3d at 376.

"Ultimately, under the common law[,] the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court . . . .'" *Wash. Post*, 386 F.3d at 575 (quoting *Nixon*, 435 U.S. at 598–99) (alteration in *Wash. Post*). The Fourth Circuit "therefore review[s] a district court's decision concerning common law access for abuse of discretion." *Wash. Post*, 386 F.3d at 575.

"In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Id.* (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). In *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986), the Fourth Circuit "h[e]ld that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearing themselves." And, in *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988), the Court held "that the more rigorous First Amendment standard . . . also appl[ies] to documents filed in connection with a summary judgment motion in a civil case." The Court reasoned that, "if the case had gone to trial and the documents were thereby submitted to the court as evidence, such documents would have been revealed to the public . . . ." *Id.* at 252. The Court concluded: "Because summary judgment adjudicates substantive rights and serves as a substitute for trial, we fail to see the difference between a trial and the situation [at summary judgment] before us now." *Id.*

However, in *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296 (table), 1995 WL 541623, at *3 (4th Cir. 1995), the Court "conclude[d] that the First Amendment guarantee of access should not,"

in general, "extend[] to documents filed in connection with a motion to dismiss."   The Court reasoned that, unlike documents in the summary judgment record, "documents [filed in relation to a motion to dismiss] are not" generally "considered by the court" and "do not serve as a substitute for [evidence presented at] a trial."   *Id.*

Although the "public's right to access documents under the First Amendment is narrower in scope" than the public's right under the common law, it is "stronger in force."   *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020).   Therefore, a "sealing involving judicial records and documents can be accomplished without violating First Amendment rights only if (1) [sealing] serves a compelling interest; (2) there is a substantial probability that, in the absence of [sealing], that compelling interest would be harmed; and (3) there are no alternatives to [sealing] that would adequately protect that compelling interest."   *Gonzalez*, 985 F.3d at 376–77 (citations and internal quotation marks omitted); *see also In re Application*, 707 F.3d at 290.   The Fourth Circuit "review[s] a district court's decision concerning access under the First Amendment de novo."   *Wash. Post*, 386 F.3d at 576 (citing *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990)).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements."   *Wash. Post*, 386 F.3d at 576.   "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because '[o]nly then can it accurately weigh the competing interests at stake.'"   *Id.* (quoting *Stone*, 855 F.2d at 181).   And, as to procedure, "the district court must (1) give the public adequate notice of a request to seal and a reasonable opportunity to challenge it, (2) consider less drastic alternatives to sealing, and (3) if it decides to seal, state the reasons, supported by specific findings, behind its decision and the reasons for rejecting alternatives to

sealing." *Gonzalez*, 985 F.3d at 376 (citing *In re Knight*, 743 F.2d at 235); *see also Wash. Post*, 386 F.3d at 576.

"The party seeking to overcome the presumption" in favor of public access "bears the burden of showing" that denial of access is consistent with the common law and the First Amendment. *Rushford*, 846 F.2d at 253.

### III.    Terran's Contentions

Citing the Tetzl Declaration (ECF 83-3), Terran describes the MLA as "a heavily negotiated license agreement between Terran [Biosciences] and [the University] under which the parties have agreed to certain commercially sensitive licensing terms, including terms related to payment of fees and expenses[;] consideration for licensing, including royalty rates[;] ownership interests associated with improvements to the licensed intellectual property[;] plans for commercialization of the licensed intellectual property[;] and conduct of patent prosecution and litigation." ECF 83 at 2; *see also id.* at 7.  According to Terran, there are two grounds on which to maintain the MLA under seal, in whole or in part. *Id.* at 4–11.

First, Terran contends that the MLA is not a "judicial record" and, therefore, is not subject to a presumption of public access. *Id.* at 5–6.  Terran asserts that, "for the right of public access 'to exist under either the First Amendment or the common law, the document must be a "judicial record."'" *Id.* at 4 (quoting *In re Application*, 707 F.3d at 290).  And, according to Terran, a document is not a judicial record if it "'do[es] not play any role in the adjudicative process.'"  ECF 83 at 6 (quoting *In re Pol'y Mgmt. Sys. Corp.*, 1995 WL 541623, at *4).

As Terran recognizes, Compass filed the MLA in connection with its Second Motion to Dismiss (ECF 51-1; ECF 51-3) and its Leave Opposition (ECF 68), and "cited . . . select portions of the MLA in its motion papers."  ECF 83 at 6.  But, according to Terran, "the MLA played no role in the adjudicative process" with respect to the Second Motion to Dismiss, because the Court

denied that motion as moot when, by Memorandum Opinion and Order of February 6, 2024 (ECF 79; ECF 80), it granted Terran's Motion for Leave (ECF 67).  Terran acknowledges that, in the Memorandum Opinion of February 6, 2024 (ECF 79), the Court quoted § 9.4.3 of the MLA, in part.  ECF 83 at 6 (citing ECF 79 at 30).  However, Terran asserts that "the balance of the MLA is not a 'judicial record' because it is tangential to the arguments raised by the parties in the Motion [for Leave], and thus, not necessary to the adjudicative process."  ECF 83 at 6.

In particular, Terran argues that "the terms of the MLA that deal with payment obligations, royalty rates, patent prosecution and litigation, and the specific details of Terran's plans to commercialize the licensed intellectual property had no bearing on the Court's decision to grant the" Motion for Leave.  *Id.*  Therefore, Terran concludes that "the MLA as a whole should not be considered a judicial record to which a presumptive right of public access exists, and as such, the entire MLA—or, at a minimum, the most sensitive portions of it—should remain under seal."  *Id.*

Terran's second proposed ground for maintaining the seal on the MLA is that the potential harm to Terran Biosciences caused by public disclosure of the MLA substantially outweighs the public's interest in accessing the MLA.  *Id.* at 6–11.  As noted, Terran asserts that the MLA "includes specific commercially sensitive terms related to (i) payment of fees and expenses, (ii) the consideration paid and to be paid for licensing, including royalty rates, (iii) ownership interests associated with improvements to the licensed intellectual property, (iv) plans for commercialization of the licensed intellectual property, and (v) conduct of patent prosecution and other litigation related to the licensed intellectual property."  *Id.* at 7.

Citing the Tetzl Declaration (ECF 83-3), Terran identifies several ways in which public disclosure of the MLA would, in its view, harm Terran Biosciences.  ECF 83 at 7–8.  Terran explains that Terran Biosciences "regularly enters into licensing agreements and associated

negotiations with other third parties." *Id.* at 7 (citing ECF 83-3, ¶ 4).  And, Terran asserts that, if the MLA were made public, "other potential counterparties could use [its contents] to identify terms in the MLA they consider advantageous and use the MLA as a negotiating tool to extract similar concessions." ECF 83 at 8 (citing ECF 83-3, ¶ 4).  Moreover, Terran states that, "[i]f the MLA is disclosed publicly, Terran[] [Biosciences's] competitors could use" the MLA's terms "to better position themselves against Terran [Biosciences] by . . . proposing terms that would appear more attractive to counterparties."  ECF 83 at 8 (citing ECF 83-3, ¶ 5).  Finally, Terran asserts that the MLA "contains terms related to [Terran Biosciences's] plan to commercialize the licensed intellectual property."  ECF 83 at 8 (citing ECF 83-3, ¶ 6).  Terran states that, "[i]f competitors were to have access to [Terran Biosciences's] plans, they could . . . appropriate portions of those plans into their own business," and "structure their own milestones, plans, or products to undercut Terran's competitive advantage."  ECF 83 at 8.

According to Terran, "[c]ourts have recognized that a strong interest exists in preserving the confidentiality of proprietary or trade secret information that justifies sealing."  *Id.* at 9 (citing *Doe v. Pub. Citizen*, 749 F.3d 246, 269–70 (4th Cir. 2014); *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 95 F. Supp. 3d, 860, 885 (D. Md. 2015), *aff'd* 885 F.3d 271 (4th Cir. 2018)).  Terran contends that "[t]he balance in favor of sealing the entirety of the MLA is underscored by the fact that the commercially sensitive terms in the MLA are not central to the merits of the issues in dispute in the" Motion for Leave (ECF 67).  ECF 83 at 10.  In particular, Terran posits that, "[b]ecause . . . the most [commercially] sensitive terms . . . in the MLA did not play a substantial role in the Court's decision to grant" the Motion for Leave, "'the precise language in those portions would do little to enhance the public's understanding of the basis for this court's decision.'"  *Id.*

at 10–11 (quoting *Hammons v. Univ. of Maryland Med. Sys. Corp.*, DKC-20-2088, 2023 WL 2213686, at *2 (D. Md. Feb. 24, 2023)).

## IV.    Discussion

There are three components to the question of whether and to what extent the Court should seal the MLA.  First, the Court must determine whether the MLA is a "judicial record."  *See In re Application*, 707 F.3d at 290 ("For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record.'").  Second, if the MLA is a "judicial record," the Court "must determine the source of the [public's] right of access with respect to" it.  *See Wash. Post*, 386 F.3d at 576 (citation and internal quotation marks omitted).  And, third, the Court must "weigh the competing interests at stake," according to the applicable common law or First Amendment standard.  *Id.* (citation and internal quotation marks omitted).

### A.

As an initial matter, I am unpersuaded by Terran's argument that the MLA is not a judicial record and, therefore, is not subject to any presumption of public access under either the common law or the First Amendment.

"[D]ocuments filed with [a] court are 'judicial records' if they play a role in the adjudicative process . . . ."  *In re Application*, 707 F.3d at 290.  In the Memorandum Opinion of February 6, 2024 (ECF 79), I noted that, "'in deciding whether to grant leave to amend under Rule 15(a),'" the Court could "'consider a movant's 'undue delay' or 'dilatory motive.'"  ECF 79 at 32 (quoting *Krupski v. Costa Crociere, S.P.A.*, 560 U.S. 538, 553 (2010)) (additional citation and internal quotation marks omitted).  And, in assessing the timeliness of Terran's request for the joinder of the University, the Court quoted § 9.4.3 of the MLA.  ECF 79 at 30.  On the basis of the quoted provision, the Court determined that "there [was] some reason to believe that Terran could have acted with greater diligence in pursuing the joinder of" the University.  *Id.* at 31.  In other

words, § 9.4.3 of the MLA informed the Court's assessment of the Motion for Leave's timeliness, which was one of several factors the Court considered "in deciding whether to grant leave to amend." Therefore, I am satisfied that § 9.4.3 of the MLA has "play[ed] a role in the adjudicative process." *In re Application*, 707 F.3d at 290.

Nonetheless, Compass suggests that the Court should not treat "the balance of the MLA"— that is, all sections of the MLA other than § 9.4.3—as a judicial record, because the remainder of the MLA "is tangential to the arguments raised by the parties in the Motion [for Leave], and thus, not necessary to the adjudicative process." ECF 83 at 6. Compass does not provide any authority for its assertion. In any event, I do not see any basis for Compass's assertion in the relevant Fourth Circuit authorities, which suggest that the relevant unit for purposes of assessing public access is a "document"—not a "page," "section," or "provision." *See In Application*, 707 F.3d at 290 ("[*D*]*ocuments* filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights.") (emphasis added); *In re Pol'y Mgmt. Sys. Corp.*, 2024 WL 541623, at *4 ("[A] *document* must play a relevant and useful role in the adjudication process in order for the common law right of public access to attach.") (emphasis added).

Therefore, I shall treat the MLA in its entirety—and not just the several words quoted by the Court in the Memorandum Opinion of February 6, 2024 (ECF 79 at 30)—as a judicial record subject to a presumption of public access.

## B.

I turn to consider "the source of the [public's] right of access with respect to" the MLA. *See Wash. Post*, 386 F.3d at 576 (citation and internal quotation marks omitted).

"[T]he common law presumes a right to access *all* judicial records and documents . . . ." *In re Application*, 707 F.3d at 290.  Having determined that the MLA is a "judicial record," I readily conclude that it is subject to a presumption of public access under the common law.

In contrast to the common law, "the First Amendment provides a right of access only to *particular* judicial records and documents . . . ." *Id.*  As noted, the Fourth Circuit has held that the First Amendment right of access applies "to documents filed in connection with a summary judgment motion in a civil case, " *Rushford*, 846 F.2d at 253, because "summary judgment adjudicates substantive rights and serves as a substitute for trial." *Id.* at 252.  But, the Court has also "conclude[d] that the First Amendment guarantee of access should not," in general, "extend[] to documents filed in connection with a motion to dismiss," because such  "documents are not [in general] considered by the court" and "do not serve as a substitute for [evidence presented at] a trial." *In re Pol'y Mgmt. Corp.*, 1995 WL 541623, at *3.

As noted, Compass cited the MLA in the Second Motion to Dismiss (ECF 51-1), quoted the MLA in the Leave Opposition (ECF 68), and attached a copy of the MLA to both submissions. *See* ECF 51-3; ECF 68-2.  Compass also refers to and quotes the MLA in its Third Motion to Dismiss, which remains pending.  ECF 93-1 at 9, 14, 30.  For its part, Terran quoted the MLA in its Opposition to the Second Motion to Dismiss.  *See* ECF 55-1 at 27.  In addition, it has referred to the MLA in each of its four complaints.  *See* ECF 1, ¶¶ 29–30; ECF 34, ¶¶ 35–36; ECF 48, ¶¶ 50–51; ECF 81, ¶¶ 52–53.

In my view, the public's right of access to the MLA is protected by both the common law and the First Amendment.  Although not a decision on summary judgment, the Court's disposition of the Motion for Leave was tantamount to an "adjudicat[ion] of substantive rights," because it determined the University's entitlement to join the lawsuit.  *Rushford*, 846 F.2d at 252.  As one

court in this district has observed, "[a]lthough the Fourth Circuit . . . has not explicitly held that a First Amendment right of access exists with regard to non-dispositive civil motions," there "is no reason to assume that the First Amendment protection does not apply even more broadly, to non-dispositive motions and materials, such as those" submitted in connection with a motion for protective order. *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009). Indeed, "the precedent strongly favors that view." *Id.* (discussing cases). Given the importance to the litigation of the Court's decision with respect to the Motion for Leave, I believe the public's First Amendment right of access attaches to all materials upon which that decision depended.

It is also relevant that the Court's future adjudication of Compass's pending Third Motion to Dismiss will likely involve reference, in some fashion, to the MLA. *See, e.g.,* ECF 93-1 at 14, 30. For example, Compass asserts in the Third Motion to Dismiss that §§ 3.2.1–2 of the MLA indicate that the University did not use or intend to use the psilocybin trade secrets in interstate commerce. *Id.* at 30. For that reason, Compass asserts that Terran has failed to plead the interstate commerce element of its claim under the DTSA, 18 U.S.C. §§ 1831 *et seq.* ECF 93-1 at 30. The Court's assessment of this argument will necessarily involve reference to the MLA.

I am mindful that the Fourth Circuit in *In re Pol'y Mgmt. Corp.* "conclude[d] that the First Amendment guarantee of access should not," in general, "extend[] to documents filed in connection with a motion to dismiss." 1995 WL 541623, at *3. However, I do not understand the Court in *In re Pol'y Mgmt. Corp.* to have adopted a categorical rule that exhibits to a motion to dismiss are, in every case, excluded from the First Amendment's right of access.

The Fourth Circuit explained that the First Amendment right does not attach to documents filed in relation to a motion to dismiss when such "documents are not considered by the court." *Id.* Of course, it is well established that, in some circumstances, a court may consider documents

16

beyond the complaint without converting the motion to dismiss to one for summary judgment. *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016). I do not interpret *In re Pol'y Mgmt. Corp.* to withhold the protection of the First Amendment from a document that a court properly considers in relation to a motion to dismiss.

In sum, I conclude that the public's right of access to the MLA is protected by the First Amendment as well as by the common law. Therefore, I must evaluate Terran's request for sealing according to the standard provided by the First Amendment, rather than the less searching common law standard.

## C.

A "sealing involving judicial records and documents can be accomplished without violating First Amendment rights only if (1) [sealing] serves a compelling interest; (2) there is a substantial probability that, in the absence of [sealing], that compelling interest would be harmed; and (3) there are no alternatives to [sealing] that would adequately protect that compelling interest." *Gonzalez*, 985 F.3d at 376–77 (citations and internal quotation marks omitted).

Terran claims that sealing the MLA in whole or in part is necessary to preserve the confidentiality of certain commercially sensitive information. *See* ECF 83 at 7. Courts in this district have recognized that a litigant's interest in protecting "business information" is compelling, provided that the information is a "trade secret," which is "broad[ly] defin[ed]" as a "formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to gain an advantage over competitors . . . ." *In re Smith & Nephew Birmingham Hip Resurfacing Prods. Liability Litig.*, CCB-17-2775, 2024 WL 1050925, at *5 (D. Md. Mar. 11, 2024) (citations and internal quotation marks omitted) (third alteration in *Smith &*

*Nephew*); *see Marks v. Licul*, DKC-13-0347, 2013 WL 6014026, at *7 (D. Md. Nov. 7, 2023) (finding proposed redaction of "commercially sensitive information" justified under "the more rigorous First Amendment standard," when "[r]elease . . . would disadvantage [the sealing proponent] relative to its competitors") (citation omitted); *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 690 (D. Md. 2012) (finding that the "materials at issue merit protection . . . under the more stringent First Amendment" standard because they afforded "an advantage over competitors and therefore may be considered to be trade secrets that provide the requisite compelling government interest") (citation and internal quotation marks omitted).

In his Declaration (ECF 83-3), Dustin Tetzl, the Chief Business Officer at Terran Biosciences, states, *id.* ¶ 7:

> Although I believe that the MLA in full is a confidential document that contains competitively sensitive information, I also have identified provisions throughout the MLA that, in my experience, are most sensitive. . . . The highlighted terms include provisions related to payment of fees and expenses; consideration for licensing, including royalty rates; ownership interests associated with improvements to the licensed intellectual property; commercialization plans; conduct of patent prosecution and litigation; and other provisions that reflect unique and particular terms agreed to by Terran" Biosciences and the University.

The Court has reviewed the terms identified by Tetzl and sees no reason to doubt his assessment that, if disclosed, the disclosure could cause competitive injury to Terran Biosciences. *See* ECF 84.  Put another way, the information Terran proposes to redact from the MLA "gives [Terran Biosciences] an opportunity to gain an advantage over competitors."  *Smith & Nephew*, 2024 WL 1050925, at *5 (citations and internal quotation marks omitted).  Therefore, it qualifies as a "trade secret" meriting protection, notwithstanding the public's right of access under the First Amendment.  In my view, it is appropriate to maintain under permanent seal the unredacted copies of the MLA filed at ECF 51-3, ECF 68-2, and ECF 84.

However, consistent with the Court's obligation to "consider less drastic alternatives to sealing," *Gonzalez*, 985 F.3d at 376 (citation omitted), the Court does not agree that every term in the MLA is so "competitively sensitive" that it is appropriate to seal "the MLA in full." ECF 83-3, ¶ 7.  The non-highlighted terms appear standard and non-specific to the parties.  The Court considers the filing of the redacted version of the MLA (ECF 85) on the public docket a measure narrowly tailored to the compelling interest in preserving the confidentiality of the contract terms that, in Tetzl's judgment, "are most sensitive."  ECF 83-3, ¶ 7.

In addition, the Court cannot readily perceive a basis on which to grant Terran's request to "keep under seal the redacted portions of the motion papers that quote the MLA."  ECF 83 at 1; *see* ECF 51-1 at 10–12; 31; 34–35; ECF 68 at 16; ECF 75 at 4; ECF 93-1 at 30.  The redacted portions of the parties' submissions appear to discuss or quote terms of the MLA that are not subject to redaction in the version of the MLA to be filed on the public docket.  ECF 85.  Nonetheless, before ordering the unsealing of the redacted portions of the motion papers, the Court shall afford Terran an opportunity to explain why unsealing of these redactions would be inappropriate.

### D.

Before ruling on a request for sealing, a court must "give the public adequate notice of [the] request . . . and a reasonable opportunity to challenge it."  *Gonzalez*, 985 F.3d at 376 (citation omitted).  Courts in this district have recognized that the public docketing of a request to seal provides sufficient notice to the public.  *Smith & Nephew*, 2024 WL 1050925, at *3 n.1; *Minter*, 258 F.R.D. at 122; *Under Armour, Inc. v. Body Armor Nutrition, LLC*, JKB-12-1283, 2013 WL 5923757, at *1 (D. Md. Nov. 1, 2013).  Moreover, Local Rule 105.11 provides:  "The Court will not rule upon [a sealing] motion until at least fourteen (14) days after it is entered on the public

docket to permit the filing of objections by interested parties."  Terran filed the Motion to Seal on February 9, 2024,  ECF 83, and no objections to sealing have been filed.  *See* Docket.  I am satisfied that there has been sufficient notice to the public of Terran's request for sealing.

### E.

Both Terran and Compass have submitted a motion to temporarily seal certain of their filings.  In particular, in Terran's Motion for Temporary Seal (ECF 86), it seeks to temporarily seal the highlighted and redacted versions of the MLA.  *See* ECF 84; ECF 85.  And, in Compass's Motion for Temporary Seal (ECF 94), it seeks to temporarily seal an unredacted version of the Third Motion to Dismiss.  *See* ECF 93.

I determined, *supra*, that Terran Biosciences's interest in maintaining the confidentiality of certain commercially sensitive terms in the MLA justifies the permanent sealing of the *unredacted* copies of the MLA docketed at ECF 51-3, ECF 68-2, and ECF 84.  But, I also determined that the First Amendment requires the unsealing of the *redacted* version of the MLA docketed at ECF 85.  Because these determinations address the subject matter of Terran's Motion for Temporary Seal, I shall deny that motion, as moot.

I also decided, *supra*, to defer ruling on Terran's request to "keep under seal the redacted portions of the motion papers that quote the MLA" until Terran has had an opportunity to provide further justification for its request.  ECF 83 at 1.  The Third Motion to Dismiss, which is the subject of Compass's Motion for Temporary Seal, is one "of the motion papers that quote the MLA."  *See* ECF 93-1 at 30.  It is currently under seal.  In my view, it is appropriate to maintain the Third Motion to Dismiss under seal, pending resolution of Terran's request to "keep under seal the redacted portions of the motion papers that quote the MLA."  ECF 83-1.  Therefore, I shall grant Compass's Motion for Temporary Seal.

## V.    Conclusion

For the foregoing reasons, I shall grant the Motion, in part.  ECF 83.  In particular, I shall order the unsealing of the redacted version of the MLA (ECF 85).  But, I shall direct the Clerk to maintain under seal the unredacted versions of the MLA filed at ECF 51-3, ECF 68-2, and ECF 84.  And, I shall deny, as moot, Terran's Motion for Temporary Seal.  ECF 86.

In addition, I shall defer ruling on Terran's request to "keep under seal the redacted portions of the motion papers that quote the MLA."  ECF 83 at 1.  Within fourteen days of the date of entry of the accompanying Order, Terran shall file a submission identifying by ECF number the documents currently under seal that quote or discuss the MLA, with respect to which Terran asks the Court to continue the seal.  The submission must set forth the basis for Terran's request(s), consistent with Local Rule 105.11.  The Court shall assume that Terran consents to the unsealing of any currently sealed documents not identified in its forthcoming submission.

I shall also grant Compass's Motion for Temporary Seal.  ECF 94.  Therefore, pending the Court's resolution of Terran's request to "keep under seal the redacted portions of the motion papers that quote the MLA," ECF 83-1, the Clerk is directed to maintain the unredacted version of the Third Motion to Dismiss (ECF 93) under seal, subject to further Order of the Court.

An Order follows, consistent with this Memorandum Opinion.

Date: May 2, 2024                                    _____/s/_____

                                                     Ellen Lipton Hollander
                                                     United States District Judge