IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRAN BIOSCIENCES, INC., *et al.*

    *Plaintiffs*,

v.

COMPASS PATHFINDER
LIMITED,

    *Defendant*.

Civil Action No. ELH-22-1956

**MEMORANDUM OPINION**

Plaintiffs Terran Biosciences, Inc. ("Terran"), a biotechnology company with its principal place of business in New York; the University of Maryland, Baltimore ("UMB"); and Scott Thompson, Ph.D., formerly Professor of Physiology and Chair of the Department of Physiology at the University of Maryland, Baltimore, School of Medicine, have filed suit against defendant Compass Pathfinder Limited ("Compass"), a biotechnology company incorporated in England and Wales. The Third Amended Complaint (ECF 81, "TAC"), filed in February 2024, is the operative pleading. In the TAC, plaintiffs allege, *inter alia*, that in 2019 Compass fraudulently misappropriated their "Psilocybin Trade Secrets," which, in general, pertain to a mechanism to reduce or eliminate the hallucinatory effects of psilocybin while retaining its antidepressant benefits. ECF 81, ¶¶ 1, 25, 26.

This Memorandum Opinion resolves plaintiffs' "Motion For Joinder Of Additional Parties And For Leave To File Fourth Amended Complaint," filed on May 19, 2025, pursuant to Fed. R. Civ. P. 20(a)(2). ECF 157 ("Motion"). They have also submitted the proposed Fourth Amended Complaint (ECF 157-1, "Proposed FAC") and a redlined copy (ECF 157-2).

1

In particular, plaintiffs seek to join two defendants: Ekaterina Malievskaia, M.D., MScPH, and her husband, George Goldsmith ("Proposed Defendants").  ECF 157 at 5.  They assert, *id.*: "Dr. Malievskaia and Goldsmith were directly involved in the theft and misappropriation of Plaintiffs' trade secrets alleged in the [TAC] and the proposed FAC."  Moreover, plaintiffs state, *id.* at 6: The TAC "already alleges numerous facts as to the Proposed Defendants, and the proposed amendments do not add any new causes of action or facts that are not already known to Defendants."  Plaintiffs also claim that joinder is appropriate because the claims all "arise out of the same transactions and occurrences, and share common questions of law and fact."  *Id.* at 5.

Compass opposes the Motion.  ECF 160 ("Opposition").  The Opposition is supported by one exhibit.  ECF 160-1.  In Compass's view, the proposed amendments are untimely, lodged in bad faith, and prejudicial to Compass.  Plaintiffs replied.  ECF 181 ("Reply").  They also filed a supplemental "Notice," advising that defendant's Rule 26(a)(1) disclosures list Dr. Malievskaia "as the first individual likely to have discoverable information on which Compass will rely . . . ." ECF 182 at 1.

Of import, the factual allegations in the Proposed FAC (ECF 157-1) are essentially the same as those in the TAC.  And, the claims remain the same, except that they are asserted against the Proposed Defendant as well as Compass.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

# I. Factual and Procedural Background

The parties are familiar with the facts, which have been summarized by the Court in several prior opinions. *See*, *e.g.*, ECF 79; ECF 112; ECF 128; ECF 161.[1]  I include here the facts pertinent to the Motion, drawn largely from the TAC.

## A.

Terran filed suit against Compass and ten "John Doe" defendants on August 5, 2022.  ECF 1.  The Complaint contained three counts: misappropriation of trade secrets, in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq*. (Count I); misappropriation of trade secrets, in violation of the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code (2013 Repl. Vol., 2022 Supp.), § 11-1201 *et seq*. of the Commercial Law Article ("C.L.") (Count II); and breach of contract (Count III).  ECF 1, ¶¶ 31–65.  Compass moved to dismiss the Complaint, arguing, *inter alia*, that this Court lacks personal jurisdiction over Compass.  ECF 24 ("First Motion").

On April 6, 2023, before the Court decided the First Motion, Terran moved to amend the Complaint.  ECF 32 ("First Motion to Amend").  Terran sought to remove its breach of contract claim (Count III) and to add factual allegations pertaining to personal jurisdiction and in support of its trade secrets claims.  *Id.* at 1.  I granted the First Motion to Amend by Order of April 7, 2023.  ECF 33.  The First Amended Complaint is docketed at ECF 34.

Then, on May 19, 2023, Terran moved to file a Second Amended Complaint.  ECF 45 ("Second Motion to Amend").  In particular, Terran sought to join Professor Thompson as a

---

[1] I incorporate the factual and procedural summary set forth in the Memorandum Opinion of April 1, 2025 (ECF 128), resolving Compass's motion to dismiss (ECF 93) the TAC (ECF 81). I also incorporate the factual and procedural summary set forth in the Memorandum Opinion of June 3, 2025 (ECF 161), resolving Compass's motion for trade secret identification (ECF 149).

plaintiff with respect to Count II, claiming he is "the inventor of the Psilocybin Trade Secrets at issue in this action." *Id.* at 2. In addition, Terran sought to add Count III, asserted jointly by Terran and Professor Thompson, alleging unfair competition under Maryland law. *Id.* Counts IV through XI of the proposed Second Amended Complaint were lodged solely by Professor Thompson, and included claims for detrimental reliance, unjust enrichment, fraud, and breach of contract. *Id.* Compass did not oppose the motion. ECF 46. By Order of June 2, 2023, I granted the Second Motion to Amend. ECF 47. It is docketed at ECF 48.

On January 4, 2024, Terran and Thompson moved to file a Third Amended Complaint, seeking to join UMB, a State entity, as a plaintiff, and to add factual allegations pertinent to the claims of fraud. ECF 67 ("Third Motion to Amend"). Compass opposed the proposed amendments as futile, untimely, and prejudicial. ECF 68. By Memorandum Opinion (ECF 79) and Order (ECF 80) of February 6, 2024, I granted the Third Motion to Amend. The TAC followed. ECF 81.

The TAC contains eleven counts, supported by twenty-seven exhibits. *See* ECF 67-2 through ECF 67-28.[2] Count I, lodged by Terran and UMB, asserts misappropriation of trade secrets, in violation of the DTSA.[3] Count II, brought by all plaintiffs, asserts misappropriation of trade secrets, in violation of the MUTSA. Count III, brought by all plaintiffs, alleges unfair competition. Counts IV through X are brought by UMB and Thompson. Count IV asserts

---

[2] These documents were included as exhibits to the Third Motion to Amend (ECF 67), rather than as exhibits to the TAC. *See id.* Nonetheless, I understand the TAC to incorporate the exhibits by reference.

[3] Based on the DTSA claim, subject matter jurisdiction is founded on 28 U.S.C. § 1331. ECF 81, ¶ 14. With regard to plaintiffs' State law claims, the Court may exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367. In any event, the Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), based on diversity of citizenship. ECF 81, ¶ 16.

"Detrimental Reliance/Promissory Estoppel"; Count V asserts unjust enrichment; Count VI asserts "Quantum Meruit/Implied-In-Fact Contract"; Count VII alleges fraudulent misrepresentation; Count VIII alleges negligent misrepresentation; Count IX asserts fraudulent concealment; and Count X alleges constructive fraud. Count XI is brought solely by Thompson and alleges breach of contract. I pause to note that, in the Proposed FAC, Counts I to X are unchanged, except that they are also lodged against the Proposed Defendants. Count XI remains completely unchanged.

Defendant moved to dismiss the TAC, pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6). ECF 93; ECF 93-1. Under Rule 12(b)(2), Compass contended that the Court lacks personal jurisdiction, both specific and general. ECF 93-1 at 11. Pursuant to Rule 12(b)(6), Compass also sought dismissal of the DTSA claim, as well as the claims for fraudulent misrepresentation, negligent misrepresentation, constructive fraud, and fraudulent concealment. *Id.* at 11, 12. In addition, pursuant to Rule 12(b)(6), Compass urged dismissal of the ten "John Does" named in the TAC, claiming the TAC fails to assert any factual allegations against them. *Id.* at 12. Moreover, Compass contended that certain counts in the TAC are duplicative and, on this basis, Compass asked the Court to dismiss some of those claims to "preserve resources." *Id.*

By Memorandum Opinion (ECF 122) and Order (ECF 123) of March 11, 2025, the Court dismissed the Doe Defendants, but otherwise denied the motion. ECF 128 (public, redacted version of the Memorandum Opinion). Compass filed an answer to the Third Amended Complaint on March 27, 2025. ECF 124.

Following a telephone conference with counsel on April 21, 2025 (*see* Docket), the Court issued a Scheduling Order on April 24, 2025. ECF 146. It sets a deadline of May 19, 2025, for joinder of parties and amendments of pleadings. *Id.* at 1. It also set a discovery deadline of October

10, 2025, and a dispositive pretrial motion deadline of November 7, 2025. *Id.* at 2. No trial date has been scheduled.

On April 28, 2025, consistent with discussions during the telephone conference of April 21, 2025, Compass moved to require disclosure of "Trade Secret Identification." ECF 149. Compass argued that the TAC did not provide Compass with adequate notice of the trade secrets at issue in this case. *Id.* at 7. Plaintiffs opposed the motion. ECF 153. By Memorandum Opinion (ECF 161) and Order (ECF 162) of June 3, 2025, I denied that motion (ECF 149).

### B.

Dr. Malievskaia and Goldsmith, the Proposed Defendants, are citizens of the United Kingdom. ECF 157-1, ¶¶ 13, 14. They co-founded Compass in 2016, and have held various roles in the company. *See id.* In particular, Goldsmith served as Compass's Chief Executive Officer ("CEO") from June 2016 through August 2022, and as chairman of Compass's board of directors from June 2016 to March 2024. *Id.* ¶ 14. Dr. Malievskaia served as (1) a member of Compass's board of directors from 2017 to March 2024; (2) Compass's Head of Research and Development from January 2019 to January 2020; (3) Compass's Chief Medical Officer from "June 2017 to 2019"; and (4) Compass's Chief Innovation Officer from January 2020 through June 2023. *Id.* ¶ 13.[4]

Dr. Malievskaia "stepped down as Chief Innovation Officer on June 16, 2023." ECF 181 at 6 n.5. And, on "March 28, 2024, Compass announced that Dr. Malievskaia and Mr. Goldsmith had resigned from the board of directors, effective the next day." *Id.* Both have "left Compass."

---

[4] In Dr. Malievskaia's Declaration of June 26, 2023 (ECF 93-3), filed as an exhibit to Compass's Motion to Dismiss the TAC (ECF 93), she stated: "I am currently Chief Innovation Officer of Compass Pathways plc, the parent company of Compass Pathfinder Limited ('Compass')." ECF 93-3, ¶ 2.

*Id.* at 12; *see* ECF 157 at 5. But, an exact date of departure from Compass has not been provided. Nor do plaintiffs indicate when they learned of the departure. Moreover, the Court has no information about whether the Proposed Defendants have a financial interest in Compass.

According to the TAC, in November 2016, while Dr. Thompson worked at UMB, he "began working on the idea of the administration of psilocybin in the presence of a 5-HT2A antagonist (including ketanserin) as a potential rapid, non-hallucinogenic antidepressant therapy." ECF 81, ¶ 1.[5] Plaintiffs concede that, "[a]t the time, it was known that 5-HT2A antagonists like ketanserin reduce or eliminate the negative hallucinogenic effects of psilocybin." *Id.* However, "Professor Thompson recognized that psilocybin's antidepressant therapeutic effects are independent of significant 5-HT2A receptor activation that causes hallucinations, and discovered that, through the sequential administration of ketanserin (or other 5-HT2A antagonists) followed by psilocybin, a patient could receive the antidepressant benefits of psilocybin, without being subject to the negative hallucinogenic effects." *Id.* Therefore, "[o]ver the next few years, Professor Thompson engaged in extensive research . . . related to the sequential administration of ketanserin (or other 5-HT2A antagonists) followed by psilocybin, in order to produce the optimal non-hallucinatory and anti-depressive effects." *Id.* ¶ 25. "Further research" conducted by Thompson "related to the optimal time points, frequency, and dosing for the sequential administration of the two drugs in combination." *Id.*

---

[5] Dr. Thompson is now a Professor of Psychiatry at the University of Colorado Anschutz School of Medicine. ECF 81, ¶ 11.

The TAC asserts, *id.* ¶ 26: "The inventions derived from, and the results of, this research constitute the Psilocybin Trade Secrets." Consistent with the TAC, I shall refer to the information outlined by plaintiffs in ECF 81, ¶¶ 25–27, as the "Psilocybin Trade Secrets."[6]

Based on UMB's employment contract with Dr. Thompson, UMB is the owner of the Psilocybin Trade Secrets. *Id.* ¶ 26. Dr. Thompson receives "a portion of the revenues that UMB generates from his inventions . . ., including the Psilocybin Trade Secrets." *Id.* (citing ECF 67-15 at 4–5). UMB, as owner of the Psilocybin Trade Secrets, entered into a Master License Agreement ("MLA") with Terran on May 7, 2021. ECF 81, ¶ 52. Pursuant to the MLA, UMB "exclusively licens[ed] to Terran" the Psilocybin Trade Secrets, *id.*, in order to "bring a groundbreaking rapid, non-hallucinogenic antidepressant therapy to market." *Id.* ¶ 7. Moreover, "the MLA grants Terran the right to institute any action for misappropriation of any Psilocybin Trade Secret that has existed at any period in time, including prior to the MLA." *Id.* ¶ 53.

On August 13, 2019, Thompson and UMB "filed U.S. Provisional Patent Application No. 62/886,080 ('the '080 Application'), entitled 'Combination Therapy with Broad Spectrum Serotonergic Agonists and Anti-Hallucinogenic Serotonergic Antagonists.'" *Id.* ¶ 28 (quoting ECF 67-16).[7] Although the "'080 Application generally disclosed co-administering psilocybin and an antagonist," it "did not go into detail about the specifics of the sequential administration of a 5-HT2A antagonist followed by psilocybin, or the optimal order, time points, frequency, or

---

[6] To be clear, I utilize the phrase "Psilocybin Trade Secrets" for convenience and consistency; the usage is not a ruling that the information does, in fact, constitute a trade secret.

[7] Plaintiffs cite Exhibit 15 to the Third Motion to Amend (ECF 67-16) in support of their assertion that "Professor Thompson and UMB filed U.S. Provisional Patent Application No. 62/886,0**80**" on August 13, 2019. ECF 81, ¶ 28 (boldface added). However, that patent application is numbered "62/886,0**90**." (Boldface added). The Court has identified this inconsistency on three earlier occasions. *See* ECF 79 at 4 n.3; ECF 128 at 6 n.4; ECF 161 at 6 n.7. Because plaintiffs continue to refer to the application as the "'080" application, I have done the same.

dosing for the therapy, all of which Professor Thompson maintained as trade secrets pending further experimental data."  ECF 81, ¶ 28.  Indeed, Thompson and UMB held the Psilocybin Trade Secrets in "strict confidence" and "did not disclose [them] to anyone except by non-disclosure agreements or other confidentiality obligations."  *Id.* ¶ 27.

In May 2019, Dr. Malievskaia, then-"Head of Research and Development of Compass," emailed Todd Gould, Professor of Psychiatry at UMB.  *See* ECF 67-17 at 3–4.  Malievskaia stated that Compass was "developing psilocybin for treatment-resistant depression" and requested a telephone call with Gould to discuss the "molecular mechanisms of psilocybin."  *Id.*  Gould, in turn, suggested the involvement of Thompson.  *Id.* at 2.  Malievskaia encouraged Gould to invite Thompson to participate in the telephone call.  ECF 67-20 at 2.

Prior to the telephone discussion, and at the direction of Dr. Malievskaia, a Compass employee sent a nondisclosure agreement ("NDA") to Dr. Thompson for his signature.  *Id.*; ECF 124 (Compass's Answer to the TAC), ¶ 3 ("Compass admits that Jessica Rose Stuart provided Thompson with a document titled Mutual Non-Disclosure Agreement at the Direction of Dr. Ekaterina Malievskaia . . . ."); *see also* ECF 67-19 (NDA).  "By its terms, the NDA would prohibit Compass from using any information disclosed by Professor Thompson or his colleagues other than 'in connection with exploring possible business arrangements between [Compass and Professor Thompson] and/or their Affiliates.'"  ECF 81, ¶ 30 (quoting ECF 67-19 at 2) (alteration in TAC).

Notably, the NDA was prepared by Compass.  And, as depicted below, the NDA reflects that Goldsmith was to sign it on behalf of Compass.

COMPASS Pathways Limited

By:

Name:  George Goldsmith

Title: Executive Chairman, Co-Founder

Address:

120 New Cavendish Street

Office 301

London W1W 6XX, UK

Scott Thompson

By:

Name: Scott Thompson

Title: Professor and Chair

Address:

Department of Physiology

University of Maryland School of Medicine

655 W. Baltimore St.

Baltimore, MD 21201 USA

Thompson executed the NDA and sent it to Compass.  ECF 81, ¶ 3, 30; ECF 67-18 at 2.[8]

However, unknown to Dr. Thompson, Compass never countersigned the NDA.  ECF 81, ¶ 3, 30,

33, 110; *see also* ECF 24-1 at 13 n.2 (In its first motion to dismiss, Compass stated: "The NDA is

not signed by Compass."); *id.* at 26 ("If this case were to proceed, Compass would be forced

to . . . travel to Maryland to defend itself against claims arising from an NDA it did not sign . . . ");

ECF 51-1 at 14 n.3 (Compass's second motion to dismiss, stating that "[t]he NDA was only signed

by Thompson, not by Compass"); ECF 93-1 at 23 n.7 (Compass's third motion to dismiss, stating

that "the NDA was never signed.").  Indeed, as depicted above, the signature page of the NDA,

which features the typed name of George Goldsmith, is blank as to his signature.  *See* ECF 67-19

at 4.  And, according to the TAC, Dr. Malievskaia and Dr. Hurley, a research scientist at Compass,

fraudulently misrepresented to Dr. Thompson that Compass had signed the NDA.  ECF 81, ¶ 110.

On June 13, 2019, at Dr. Malievskaia's request, Dr. Thompson and Dr. Gould sent

Compass a "scientific proposal and a proposed budget to study the administration of psilocybin in

---

[8] Compass also sent Gould a NDA.  *See* ECF 67-20 at 2.  But, the TAC does not specify
whether Gould ever executed it.

the presence of ketanserin . . . ."  ECF 81, ¶ 32; *see* ECF 67-21 at 3–4.[9]  In response, Dr. Hurley

stated, ECF 67-22 at 2: "Overall, we believe that your proposal focuses on some very interesting

and important questions.  To our knowledge, these studies would provide the first direct evidence

for the requirements (or not) of AMPAR and for 5-HT2R function in the antidepressant actions of

psilocybin."  Dr. Hurley also stated, *id.* at 3: "We are especially excited by the potential to evaluate

the efficacy of psilocybin in the presence of ketanserin, as clearly this information also has

considerable clinical value."

Thereafter, for approximately six months, Compass, Gould, and Thompson engaged in

communications via email and telephone in supposed contemplation of a collaboration agreement.

ECF 81, ¶ 3.  During this time, Gould and Thompson received and answered substantive questions

posed by Dr. Hurley in regard to the research proposal.  *Id.* ¶ 33; ECF 67-21 at 2; ECF 67-22; ECF

67-23.  Notably, Dr. Malievskaia and Goldsmith were copied on at least some of these email

communications.  *See, e.g.*, ECF 67-23.  Moreover, "[d]uring the course of these communications,

Professor Thompson disclosed to Compass" certain details of the Psilocybin Trade Secrets.  ECF

81, ¶ 34.

In October 2019, Compass sent UMB a revised collaboration agreement.  *Id.* ¶ 38.[10]

However, on November 20, 2019, Hurley emailed Thompson, stating that "Compass was 'unable

to proceed with the collaboration' and declined to fund Professor Thompson's experiments."  *Id.*

¶ 39 (quoting ECF 67-24).  Dr. Malievskaia, among other Compass employees, was copied on the

email.  ECF 67-24 at 2.

---

[9] The Court was not provided with a copy of the proposal.

[10] The Court has not been provided with any drafts of a collaboration agreement.

Later, plaintiffs discovered that on August 29, 2019, Compass filed U.S. Provisional Patent Application No. 62/893,611 ("the '611 Application"), "without telling Professor Thompson or UMB." ECF 81, ¶ 41. Of import, the '611 Application is signed by Goldsmith, in his capacity as "Co-Founder" and "Chairman" of Compass. ECF 67-7 ('611 Application), at 5. The application included disclosure of "the sequential administration of a 5-HT2A antagonist (expressly including ketanserin) followed by psilocybin to reduce [psilocybin's] negative side effects . . . ." ECF 81, ¶ 41. In addition, the '611 Application contains specific "ranges for the sequential order, time points, frequency and dosing of such therapy . . . ." *Id.* ¶ 45; *see id.* ¶ 46 (citing ECF 67-7 at 265).

Plaintiffs allege, ECF 81, ¶ 46: "As of August 29, 2019, Professor Thompson had not made any public disclosure of these aspects and details of his Psilocybin Trade Secrets, nor did he disclose them in his August 13, 2019 provisional patent application . . . ." Plaintiffs posit that "the purpose" of these disclosures "in the '611 Application was to claim the Psilocybin Trade Secrets as Compass's own invention, and/or to preemptively block Professor Thompson and UMB from securing patent rights over the Psilocybin Trade Secrets . . . ." *Id.*

According to plaintiffs, Compass "stole the ideas for the '611 Application from Professor Thompson and disclosed them in its own patent application." *Id.* ¶ 41. In this regard, plaintiffs observe that Compass filed the '611 Application even though, when it "first began talking with Professor Thompson and Professor Gould, it had not been researching the combination of psilocybin with a 5-HT2A antagonist, and had no knowledge about that subject." *Id.* ¶ 40. Moreover, plaintiffs maintain that the '611 Application contains "glaring" indicators of the theft, including the speed with which it was filed. *Id.* ¶ 44.

Since 2019, Compass has filed at least four additional United States patent applications, "with specification disclosures involving the sequential administration of a 5-HT2A antagonist

followed by psilocybin." *Id.* ¶ 48.  In particular, on October 18, 2021, "Compass filed U.S. Patent Application No. 17/604,610" (the "'610 Application").  *Id.*  It included claims to "aspects of the Psilocybin Trade Secrets, including the sequential administration of a 5-HT2A antagonist followed by psilocybin." *Id.* (citing ECF 67-25 at 4).  However, on August 25, 2022, before the Patent Office took any action with respect to the '610 Application, Compass "cancelled" its claims to aspects of the Psilocybin Trade Secrets.  ECF 81, ¶ 48 (citing ECF 67-26 at 4).  Plaintiffs assert that Compass cancelled these claims "because Compass's patent prosecution attorneys at Cooley LLP became aware of Compass's misconduct and the fact that no one at Compass actually invented the claimed subject matter . . . ."  ECF 81, ¶ 48.

Also on October 18, 2021, "Compass filed two additional non-provisional applications . . . U.S. Patent Application Nos. 17/604,606 and 17/604,619, which included, in their specifications, aspects and details of the Psilocybin Trade Secrets." *Id.* ¶ 49.  And, on December 2, 2021, "Compass filed U.S. Patent Application No. 17/540,962, which likewise included aspects and details of the Psilocybin Trade Secrets in its specification." *Id.*  "That application issued as U.S. Patent No. 11,564,935." *Id.* (citing ECF 67-9 at 132–33, 149–151).  Compass has since "filed U.S. Patent Application No. 18/077,876, a continuation patent application with the same specification."  ECF 81, ¶ 49.  In addition, Compass has "filed multiple international patent applications" that "disclose aspects and details of the Psilocybin Trade Secrets in their specifications." *Id.*  Plaintiffs allege, *id.*: "Many of the inventors listed on these patent applications are the same Compass employees who were involved in the communications with Professor Thompson and Professor Gould starting in May 2019" and "were included on email correspondence, attended meetings with Professor Thompson and Professor Gould, and had access to the Psilocybin Trade Secrets."  Notably, this includes Dr. Malievskaia and Goldsmith. *Id.*; *see*

*also, e.g.*, ECF 67-9 (U.S. Patent No. 11,564,935), at 1 (listing Dr. Malievskaia and Goldsmith, among other people, as inventors).

Further, plaintiffs allege that Dr. Malievskaia and Goldsmith "have been publicly accused of deceptive schemes similar to the one they executed against UMB and Professor Thompson." ECF 81, ¶ 51. Plaintiffs state, *id.*: "In those prior instances, Compass is alleged to have secured academics studying psilocybin by showering them with lavish gifts only to cut off contact after extracting the information they desired." Plaintiffs attached two articles to the TAC in support of their claim. ECF 67-27 (Olivia Goldhill, *A millionaire couple is threatening to create a magic mushroom monopoly*, QUARTZ, November 8, 2018); ECF 67-28 (Shelby Hartman, *Will psychedelics go corporate like cannabis?*, January 9, 2020).

## II. Legal Standards

In considering whether to grant a motion to amend to add additional defendants, a district court must consider "'both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a).'" *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) (quoting *Hinson v. Norwest Fin., S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001)); *see also Sakthivel v. Jaddou*, No. 21-1207, 2023 WL 2888565, at *5 (4th Cir. Apr. 11, 2023) (per curiam); *Mesmer v. Rezza*, DKC 10-1053, 2011 WL 582578, at *1 (D. Md. Feb. 9, 2011).

### A. Joinder of Parties

Fed. R. Civ. P. 20 is titled "Permissive Joinder of Parties." Fed. R. Civ. P. 20(a)(2) states:

(2) *Defendants*. Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:
    (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
    (B) any question of law or fact common to all defendants will arise in the action.

*See also Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021) (discussing Rule 20).

The standard for joinder is not demanding. Rule 20 "should be construed in light of its purpose, which 'is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citation omitted). The Supreme Court has explained: "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.[]" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Of relevance here, "'the transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts . . . and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy.'" *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 384 (D. Md. 2011) (quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed. 2011)). In other words, courts "liberally construe" the same transaction or occurrence requirement in Fed. R. Civ. P. 20(a)(2)(A). *Montessori Soc'y of Cent. Maryland, Inc. v. Hicks*, DKC 19-2358, 2019 WL 6117422, at *3 (D. Md. Nov. 18, 2019). Indeed, "'[a]bsolute identity of all events is unnecessary' for joinder." *Courthouse News Service*, 2 F. 4th at 325 (citation omitted; alteration in *Courthouse News Service*).

Moreover, the transaction or occurrence test of Rule 20(a)(2)(A) permits all "reasonably related claims . . . to be tried in a single proceeding." *Saval*, 710 F.2d at 1031 (quoting *Moseley v. Gen. Motors Corp.*, 497 F.2d 1300, 1333 (8th Cir. 1974)). "For this reason, two claims arise from the same transaction — and therefore can be joined in the same action — when there is a 'logical relationship' between them." *Courthouse News Service*, 2 F. 4th at 325 (citation omitted).

The common question of fact or law requirement of Fed. R. Civ. P. 20(a)(2)(B) "'does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common question of law *or* fact.'" *Stephens*, 807 F. Supp. 2d at 384 (citation omitted; emphasis in *Stephens*).

Rule 20 grants courts "wide discretion concerning the permissive joinder of parties." *Aleman*, 485 F.3d at 218 n.5. If joinder will result in prejudice, expense, or delay, the court has discretion to deny joinder. *Id.*

## B. Amendment of Pleadings

Fed. R. Civ. P. 15(a)(1) provides: "A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave [to amend] when justice so requires." *Id.* Indeed, it is the Fourth Circuit's "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (citing *Coral v. Gonse*, 330 F.2d 997, 998 (4th Cir. 1964)); *see also United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) ("*MedCom*"); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006); *see also MedCom*, 42 F.4th at 197. Therefore, "leave to amend a pleading should be denied

16

only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Oroweat Foods Co.*, 785 F.2d at 509 (citing *Foman*, 371 U.S. at 182); *see also Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019); *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018); *Scott v. Family Dollar Stores*, 733 F.3d 105, 121 (4th Cir. 2013); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012); *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.*, 985 F.2d 164, 168 (4th Cir. 1993).

Ultimately, the decision whether to grant leave to amend falls within the sound discretion of the district court. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010) ("By its terms, Rule 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading to add a party or a claim."); *see also Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993).  "Put simply, an abuse of discretion is when the district judge is 'fundamentally wrong.'" *MedCom*, 42 F.4th at 198 (citing *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 957 (7th Cir. 2014)).  But, the trial judge 'will not be reversed simply because an appellate court disagrees.'" *MedCom*, 42 F.4th at 197 (quoting Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L. J. 747, 754 (1982)) (additional citation omitted).

As indicated, leave to amend should be denied if the amendment would be prejudicial, futile, or there is bad faith.  These concepts are discussed below.

A pleading is futile "if the proposed amended [pleading] fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008))

(alterations added).  Put another way, "'[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards,'" such as Fed. R. Civ. P. 12(b)(2) or (6).  *Davison*, 912 F.3d at 690 (quoting *Katyle*, 637 F.3d at 471).

"Traditionally," the Fourth Circuit "held that a proposed amendment was 'futile' if it was 'clearly insufficient or frivolous on its face.'"  *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (quoting *Oroweat Foods Co.*, 785 F.2d at 510).  However, more recently, the Fourth Circuit has "made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny."  *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d at 750; *see also Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 262 (D. Md. 2022) (recognizing that the Fourth Circuit has "explicitly confirmed" that district courts have the authority to deny leave to amend if the amendments would not withstand a Rule 12(b)(6) challenge), *aff'd*, 97 F.4th 166 (4th Cir. 2024).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction."  *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *see Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).  In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction."  *Hawkins*, 935 F.3d at 226; *accord Sneha Media & Entm't, LLC. v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  But, "this court, and others, have declined to deny leave to amend on futility

grounds for lack of personal jurisdiction." *Pridgen v. Appen Butler Hill, Inc.*, JKB-18-61, 2019 WL 1048950, at *3 (D. Md. Mar. 5, 2019) (citing cases).[11]

Under Rule 15(a)(2), "prejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position."  61A AM. JUR. 2d, Pleading § 664 (May 2025 update).  Prejudice to the opposing party is "'often . . . determined by the nature of the amendment and its timing.'" *Adbul-Mumit*, 896 F.3d at 293 (quoting *Laber*, 438 F.3d at 427); *see also Doe v. Mercy High Sch., Inc.*, JJR-23-01184, 2024 WL 4443076, at *3 (D. Md. Oct. 8, 2024) (same).  Courts should "look to the 'particular circumstances' presented, including previous opportunities to amend and the reason for the amendment."  *Adbul-Mumit*, 896 F.3d at 293.  In general, "'[t]he further the case progressed before judgment was entered, the more likely it is that [subsequent] amendment will prejudice the defendant.'"  *Id.* (citation omitted; alterations in *Adbul-Mumit*); *see also Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, RWT 17-2261, 2018 WL 2762564, at *2 (D. Md. June 8, 2018) ("The closer a case progresses toward trial, the more likely the amendment will prejudice the defendant.").

A court may find undue prejudice sufficient to justify denying leave to amend if a new claim or defense would force the non-moving party to "expend significant additional resources to conduct discovery and prepare for trial"; it would "significantly delay the resolution of the dispute"; or it would "prevent the plaintiff from bringing a timely action in another jurisdiction." 61A AM. JUR. 2d, Pleading § 664; *see also Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009) (concluding that amendment "may prejudice the non-moving party when the

---

[11]  At this juncture, I cannot forecast the result of possible Rule 12(b)(2) motion by the Proposed Defendants.

motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery").  The Fourth Circuit explained in *Laber*, 438 F.3d at 427: "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'"  (Citation omitted; alteration in *Laber*).

"An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* (citing *Davis v. Piper Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. denied*, 448 U.S. 911 (1980)); *see also Ramnarine*, 2018 WL 2762564, at *2.  Moreover, "the time, effort, and money . . . expended in litigating [a] case" do not constitute "substantial prejudice." *Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc.*, 4:05-CV-0033, 2006 WL 1289545, at *3 (M.D. Pa. May 9, 2006); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (concluding that the time, effort, and money expended by the plaintiffs in litigating the case did not amount to substantial prejudice).

To be sure, "a court may consider a movant's 'undue delay' or 'dilatory motive' in deciding whether to grant leave to amend under Rule 15(a)." *Krupski*, 560 U.S. at 553 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  But, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *see also MedCom*, 42 F.4th at 197 ("Delay alone is not enough to deny leave to amend, though it is often evidence that goes to prove bad faith and prejudice."); *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) ("Delay alone, without prejudice, does not support the denial of a motion for leave to amend."); *Davis*, 615 F.2d at 613 ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial.").  "Rather,

the delay must be accompanied by prejudice, bad faith, or futility." *Edwards*, 178 F.3d at 242; *see also Mayfield*, 674 F.3d at 379 (stating that "a request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'") (citation omitted); *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) ("In fact, such leave 'should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'") (citation omitted) (emphasis in *Franks*).  And, "[p]rejudice is the weightiest factor, the absence thereof, 'though not alone determinative, will normally warrant granting leave to amend.'"  *Oliver v. Dep't of Public Safety and Correctional Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018) (Blake, J.) (quoting *Davis*, 615 F.2d at 613); *see V.E. v. Univ. of Md. Balt. Cty.*, JRR-22-02338, 2023 WL 5153650, at *2 (D. Md. Aug. 10, 2023), *aff'd*, 2024 WL 4563857 (4th Cir. Oct. 24, 2024).

The Fourth Circuit has said that it "cannot provide a comprehensive definition of a term like bad faith; in truth, it is a difficult term to define without retreating to circular reasoning or just listing examples." *MedCom*, 42 F.4th at 198.  But, Black's Law Dictionary defines "bad faith" as "'[d]ishonesty of belief or purpose.'" *Id.* (citation omitted).  The Court added, *id.*: "To act with a dishonesty of purpose is to act for the wrong reasons.  It may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules—you can imagine cases where a party just wants to cause chaos—or it might be something as mundane as noticing someone's mistake and saying nothing about it."  And, although "not always" evidence of bad faith, "when a party withholds evidence for an extended period, it is not unreasonable for a district court to presume bad faith, at least where no satisfactory explanation is given for the delay." *Id.* at 199.

### III. Discussion

### A. Joinder of Parties

As noted, Fed. R. Civ. P. 20(a)(2) permits a plaintiff to join parties in a single action if (A) a right to relief is asserted against the defendants "jointly, severally, or in the alternative" with respect to the same transaction, occurrence, or series of transactions or occurrences; and (B) the action implicates a common question of law or fact. Fed. R. Civ. P. 20(a)(2).

According to plaintiffs, the Proposed Defendants should be joined in this action pursuant to Fed. R. Civ. P. 20(a)(2), because "they were directly involved in the theft and misappropriation of Plaintiffs' trade secrets alleged in the current complaint and the proposed FAC." ECF 157 at 5. As to the requirements of Rule 20(a)(2)(A), plaintiffs state, *id.* at 9: "The claims against Dr. Malievskaia and Goldsmith arise from the same transactions or occurrences that give rise to the claims against Compass—the inducement of Professor Thompson to disclose the Psilocybin Trade Secrets under the guise of an NDA sent by Compass and subsequent misappropriation of those trade secrets through disclosure in patent applications." And, as to the requirements of Rule 20(a)(2)(B), plaintiffs state, *id.* at 9–10: "There is substantial commonality in the claims against Compass and the Proposed Defendants and Proposed Defendants are already inextricably connected to the fact discovery underlying the claims against Compass." For these reasons, plaintiffs contend that the requirements of Rule 20 are satisfied and "joinder will advance the objectives of an efficient and full resolution of this case . . . ." *Id.* at 10.

Compass did not respond to plaintiffs' argument. *See* ECF 160. This is understandable; plaintiffs have not added new claims or new facts. Rather, plaintiffs seek to hold Compass and the Proposed Defendants "jointly and severally" liable for all damages on the basis of facts and claims that were previously set forth. ECF 157-1 (Proposed FAC), at 43.

In other words, the claims against the Proposed Defendants are predicated on the same allegations lodged against Compass. The allegations are replete with references to the conduct of Dr. Malievskaia and Goldsmith, including that, at the direction of Dr. Malievskaia, Compass provided Dr. Thompson with an NDA to facilitate collaboration between the parties; Compass failed to countersign the NDA, which features Goldsmith's name below the blank signature block, despite representing to Dr. Thompson that Compass did so; Compass had communications with Dr. Thompson, including through Dr. Malievskaia, where Compass induced Dr. Thompson to disclose the Psilocybin Trade Secrets to Compass; and Compass filed the '611 Application, signed by Goldsmith, among other patent applications disclosing aspects of the Psilocybin Trade Secrets.

In light of the foregoing, I am readily satisfied that the Proposed Defendants are proper parties under Fed. R. Civ. P. 20(a)(2). Nonetheless, as discussed, the Court has discretion to deny joinder if joinder will result in prejudice, expense, or delay. *Aleman*, 485 F.3d at 218 n.5. Because those criteria overlap with the standard for leave to amend, I conduct the analysis in that context.

## B.  Leave to Amend

Compass urges the Court to deny the Motion, so as to avoid delay in resolution of the case, which would cause prejudice to Compass. ECF 160 at 5. Defendant also argues that plaintiffs acted in bad faith, because they cannot justify the near three-year delay in seeking to join the Proposed Defendants as parties. *Id.* at 6, 8. However, Compass has not raised futility as a ground to deny the Motion. *See* ECF 160.

It is undisputed that in August 2022, when Terran filed suit, Terran knew of the facts giving rise to the claims against Dr. Malievskaia and Goldsmith, because those facts are set forth in the original Complaint. Yet, Terran chose not to name Dr. Malievskaia and Goldsmith as defendants. However, Thompson and UMB were not parties at that time, and cannot be faulted. As noted,

Thompson did not seek to become a plaintiff until May 2023. ECF 45. And, UMB was not added as a plaintiff until February 2024. ECF 80. Still, the fact is that three amended complaints were filed, without adding Dr. Malievskaia and Goldsmith as defendants. *See Deasy*, 833 F.2d at 41 ("[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.").

Compass's frustration with plaintiffs' delay is understandable. However, delay alone is an insufficient reason to deny leave to amend. *MedCom*, 42 F.4th at 197; *Edwards*, 178 F.3d at 242; *Davis*, 615 F.2d at 613. That said, undue "delay has generally been considered a factor in determining whether a proposed amendment would be prejudicial or is sought in bad faith." *Daulatzai*, 606 F. Supp. 3d at 262. The question, then, is whether the delay here is "undue", *i.e.*, whether plaintiffs have provided a justification for the delay. *See, e.g.*, *Naden v. Saga Software, Inc.*, 11 F. App'x 381, 383 (4th Cir. 2001) (per curiam) (stating that "undue delay can be inferred from the absence of explanation for the delay"); *Daulatzai*, 606 F. Supp. 3d at 262 (considering whether there was an explanation for the delay to determine whether the delay was undue).

Plaintiffs essentially make two arguments to justify the delay. First, plaintiffs seek to justify the delay, at least in part, based on this Court's dismissal of the Doe Defendants. *See* ECF 157 at 6, 7, 12.[12] Second, plaintiffs argue that, between the time Compass moved to dismiss the TAC and the issuance of this Court's Memorandum Opinion resolving that motion, Dr. Malievskaia and Goldsmith left Compass. ECF 157 at 5; ECF 181 at 12–13.

Plaintiffs alleged that the identities of the Doe Defendants were unknown. The TAC states, ECF 81, ¶ 13 (emphasis added): "Defendants DOES 1-10 *are presently unknown* to Plaintiffs.

---

[12] As noted, I dismissed the Doe Defendants because plaintiffs asserted no factual allegations against them. ECF 128 at 112.

They include, for example, any Compass entities, executives, employees, agents, or other affiliates who were active participants in the scheme to defraud Professor Thompson and/or misappropriate the Psilocybin Trade Secrets." Plaintiffs added: "*Their exact identities* and actions *can be uncovered through discovery* into [Compass's] misappropriation of the Psilocybin Trade Secrets and the other causes of action. Plaintiffs will amend its complaint to identify the DOE defendants at an appropriate time." *Id.* (emphasis added). And, in their opposition to Compass's motion to dismiss the TAC (ECF 93), plaintiffs argued, ECF 102 at 38: "'John Doe pleading is appropriate when a plaintiff knows a defendant exists, but *cannot identify that defendant by name*.'" (Quoting *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Cont'l Food Prod., Inc*., TDC-14-0380, 2014 WL 7240264, at *2 (D. Md. Dec. 16, 2014)) (emphasis added).

The Proposed Defendants did not fall into the category of Doe Defendants. It is clear that plaintiffs knew the identities of the Proposed Defendants at the outset of the litigation, yet chose not to name them as defendants. ECF 128 at 112–14. In my ruling as to the TAC, I said, *id.* at 114: "By virtue of the allegations in the TAC, it is evident that plaintiffs know the identities of Dr. Hurley, Dr. Malievskaia, and Goldsmith, among others. Plaintiffs chose not to name them as defendants. But, there is no basis to permit the suit as to the Doe Defendants. Those [Doe] defendants shall be dismissed."

To the extent that plaintiffs intended to use the Doe Defendants as a place holder for Dr. Malievskaia and Goldsmith, plaintiffs have yet to direct the Court to any authority that would have permitted them to do so. Designation of a Doe Defendant "is appropriate *only* when the *identity of the alleged defendant is not known at the time the complaint is filed* and the plaintiff is likely to be able to identify the defendant after further discovery." *Chidi Njoku v. Unknown Special Unit Staff*, No. 99-7644, 2000 WL 903896, *1 (4th Cir. July 7, 2000) (per curiam) (citing *Roper v.*

*Grayson*, 81 F.3d 124, 126 (10th Cir. 1996); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (emphasis added); *see Schiff v. Kennedy*, 691 F.2d 196, 197–98 (4th Cir. 1982) (permitting designation of Doe Defendant where the plaintiff knew the defendant existed but could not identify the defendant by name); *Defendant*, Black's Law Dictionary (12th ed. 2024) (explaining that a "John Doe defendant" is an "anonymous defendant labeled 'John Doe' *because the plaintiff does not, at the time of filing suit, know the person's name*.") (emphasis added).

Dismissal of the Doe Defendants is a specious reason to justify the request to join Dr. Malievskaia and Goldsmith as defendants. However, it is undisputed that the Proposed Defendants are no longer at Compass. Plaintiffs express concern that, as a result, Dr. Malievskaia and Goldsmith may not "participate" in the lawsuit. *See* ECF 181 at 12.[13]

Plaintiffs explain that, until the Proposed Defendants left Compass in March 2024, they "had no reason to question whether the two would participate in this litigation." *Id.* at 13. Indeed, Dr. Malievskaia actively participated in this litigation from its inception; she submitted several declarations in support of Compass's various motions to dismiss. *See* ECF 24-5; ECF 53-4; ECF 93-5. According to plaintiffs, they filed the Motion "so that [the Proposed Defendants] would be individually responsible for their wrongdoing and compelled to participate fully in this litigation (which plainly Compass's counsel suggests they will not)." ECF 181 at 13.

---

[13] Plaintiffs suggest that Dr. Malievskaia is still represented by Compass's counsel. ECF 182 at 1. In ECF 182-1 (Compass's Rule 26(a)(1)(A) Initial Disclosures), Compass identified Dr. Malievskaia as an individual "likely to have discoverable information that Compass may use to support its claims or defenses." *Id.* at 2. Notably, "Compass does not consent to or authorize any communications with the individuals listed [in its Rule 26 Disclosure] that are otherwise prohibited by the applicable rules of professional conduct and/or the Federal Rules of Civil Procedure." *Id.* at 5. The Disclosure also states that Dr. Malievskaia should be contacted "through Compass's counsel of record[.]" *Id.* at 3.

In my view, it would have been reasonable for plaintiffs to assume that Dr. Malievskaia and Goldsmith would appear and participate in the lawsuit, given that they are co-founders of Compass and held important positions at the Company. As stated, Goldsmith was the CEO of the company from June 2016 through August 2022, and the chairman of Compass's board of directors from June 2016 to March 2024. ECF 157-1, ¶ 14. And, Dr. Malievskaia has served in numerous roles at Compass, including as a member of its board of directors from 2017 to March 2024. *Id.* ¶ 13.

Based on the Proposed Defendants' involvement in and association with Compass, as well as their key roles at Compass, it also would have been reasonable for plaintiffs to assume that Compass's interests aligned with the interests of the Proposed Defendants. In other words, Compass would facilitate their participation in the litigation. But, now that the Proposed Defendants have left Compass, it cannot be said with any certainty that Compass will assure their participation or even that the interests of Compass align with those of the Proposed Defendants.

Put simply, the departure of Malievskaia and Goldsmith from Compass is a significant change of circumstance that was not readily foreseeable to plaintiffs, and gives rise to a legitimate reason now to join them as parties. For example, at trial, Compass could attempt to distance itself from the Proposed Defendants by painting Dr. Malievskaia and Goldsmith as former employees who went rogue. In their absence, a jury could conclude that if there is wrongdoing, it is attributable only to the missing persons (*i.e.*, the Proposed Defendants), and not Compass as the sole defendant.

It is noteworthy that Compass does not point to any specific bad faith motive on plaintiffs' part with respect to the delay. Nor does it appear that plaintiffs had any strategic reason to delay moving for joinder of the Proposed Defendants. In other words, this is not a matter of

gamesmanship.  It is also significant that the Motion was timely filed, in accordance with the Scheduling Order.  *See* ECF 146.

Compass's primary argument is that it will be prejudiced by the proposed FAC because it will delay the progress of the case.  It contends that if the Court grants the Motion, "it will entirely upend the schedule ordered by this Court" and will therefore delay resolution of the suit.  ECF 160 at 8.

To constitute prejudice, the amendment must "*significantly* delay the resolution of the dispute."  61A AM. JUR. 2d, Pleading § 664 (emphasis added).  In general, "the time, effort, and money . . . expended in litigating [a] case" do not constitute "substantial prejudice."  *Nat'l Recovery Agency, Inc.*, 2006 WL 1289545, at *3; *see also Block*, 988 F.2d at 351 (concluding that the time, effort, and money expended by the plaintiffs in litigating the case did not amount to substantial prejudice).

Several cases have considered the prospect of delay from an amendment of suit as a basis for finding prejudice.  *See, e.g.*, *Consumer Fin. Prot. Bureau v. Access Funding, LLC*, ELH-16-3759, 2019 WL 6324532, at *14 (D. Md. Nov. 25, 2019) (explaining that the proposed amendment "will prolong the litigation, which has been pending for years, and that itself is a burden to the litigants."); *Beckman v. Montgomery Cnty. Hous. Opportunities Comm'n*, TJS-16-4090, 2019 WL 13254576, at *2 (D. Md. Feb. 1, 2019) (amendment would be prejudicial because, *inter alia*, it would cause an "additional delay in resolving the case."); *Alexander v. Marriott Int'l, Inc.*, RWT-09-2402, 2011 WL 1231029, at *11 (D. Md. Mar. 29, 2011) (amendment "would prejudice Defendants by extending this already protracted litigation.").  But, the courts in the cases above did not deny motions to amend solely on the basis of the potential for delayed resolution of the suit.

For example, in *Access Funding, LLC*, 2019 WL 6324532, at *14, the plaintiff sought to add new legal claims and factual allegations *after* discovery had closed. Moreover, the motion to amend was filed nearly one year after the deadline for amendment of pleadings, which implicated the heightened good cause standard to amend the scheduling order under Fed. R. Civ. P. 16(b), as opposed to the more liberal leave to amend standard under Rule 15. *Id.* I also observed that, if the amendment were permitted, additional discovery would "likely" be necessary. *Id.* Here, discovery has just begun. And, the Proposed FAC does not violate the Scheduling Order.

The cases cited by Compass to support its claim of prejudice based on delay in resolution of the case are distinguishable. For example, in *Mayfield*, 674 F.3d 369, the Fourth Circuit affirmed the district court's denial of the plaintiff's motion to amend after the district court granted judgment on the pleadings. Among other things, the plaintiff sought to add new defamation allegations and additional tort claims. *Id.* at 379. The Court explained that the conduct giving rise to the lawsuit occurred almost three years earlier; the complaint was filed over two and a half years earlier; the plaintiff had "ample time to make any amendments before the district court granted judgment on the pleadings"; and "there was no new evidence that could not have been previously discovered." *Id.* The Court also explained that "a significant amount of discovery had already been conducted" and "the new allegations and causes of action asserted by the Appellants arise out of 'an entirely new event and nucleus of facts.'" *Id.* at 380–81. The Court concluded: The "'amendment—coming so belatedly—would change the nature of the litigation and, would therefore, prejudice'" the appellees. *Id.* at 380 (citation omitted).

In this case, the proposed amendment would not "'change the nature of the litigation . . . .'" *Id.* The Proposed FAC merely seeks to hold the Proposed Defendants jointly liable with

Compass for the same claims that plaintiffs have alleged, based on the same conduct already alleged.

To be sure, some delay may ensue if the FAC is filed.  To illustrate, I do not know whether the Proposed Defendants will waive service,[14] or whether the Proposed Defendants will file an answer or instead a motion to dismiss.  But, given that identical causes of action are asserted against Compass and the Proposed Defendants, and the Proposed FAC does not meaningfully alter the factual allegations, some of the issues that the Proposed Defendants might raise in a motion to dismiss will overlap significantly with issues that I have already considered.

*Daulatzai*, 606 F. Supp. 3d 252, another case cited by Compass, involved the plaintiff's alleged unlawful removal from an airplane.  Judge Bredar granted the defendants' motion to

---

[14] Fed. R. Civ. P. 4(f), titled "Serving an Individual in a Foreign Country," states:

Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:
  (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
  (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
    (C) unless prohibited by the foreign country's law, by:
      (i) delivering a copy of the summons and of the complaint to the individual personally; or
      (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
  (3) by other means not prohibited by international agreement, as the court orders.

dismiss the second amended complaint after the plaintiff did not file an opposition.  *Id.* at 259.
The plaintiff appealed.  *Id.*  While the appeal was pending, the plaintiff filed, *inter alia*, a motion
for leave to file a third amended complaint.  *Id.*  Judge Bredar denied the plaintiff's motion,
reasoning that, among other things, there was an undue delay in seeking the amendment; the
amendment would prejudice the defendants; and the amendment was sought in bad faith.

Specifically, the court found no justification for the three-month delay between dismissal
of the second amended complaint and the plaintiff's motion for leave to file a third amended
complaint.  *Id.* at 262.  In addition, the factual allegations sought to be added were "not based on
recent developments" and the plaintiff "articulated no reason why they could not have been
included in an earlier pleading." *Id.*  Also, the plaintiff's proposed third amended complaint
"significantly revise[d] her factual and legal claims."  *Id.* at 265.  And, some of the facts alleged
in the proposed third amended complaint were "inconsistent" with facts alleged in prior pleadings.
*Id.* at 263.  In the court's view, the plaintiff was engaged in "gamesmanship" and, therefore, acting
in bad faith.  *Id.* at 265.  And, the court stated that the plaintiff's "repeated failure to cure threshold
legal flaws in her pleadings and the costs imposed thereby on Defendants have been sufficiently
prejudicial to warrant denying" the motion.  *Id.* at 266.

In contrast, plaintiffs have provided justification for the delay; the proposed amendments
do not "significantly" revise the lawsuit; the proposed amendments are not inconsistent with the
allegations of the TAC; there has been a significant change of circumstances with regard to the
employment status of the Proposed Defendants; and there is no evidence that plaintiffs are engaged
in gamesmanship or have acted in bad faith.

Even if the Court permits the filing of the Proposed FAC, and a motion to dismiss follows, I agree with plaintiffs (ECF 181 at 9–10) that discovery need not be stayed. This is relevant to the matter of delay due to joinder.

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Butts v. Berkeley Med. Ctr.*, No. 3:16-CV-71, 2017 WL 11309735, at *1 (N.D.W. Va. Jan. 20, 2017) (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011)). Although it is "not uncommon for courts to stay discovery pending resolution of dispositive motions," such stays "typically are not granted if . . . 'resolution of the motion will not dispose of the entire case.'" *Ellicott Dredges, LLC v. C.J. Mahan Constr. Co., LLC*, ELH-14-3557, 2015 WL 13840884, at *2 (D. Md. Oct. 22, 2015) (Coulson, J.) (quoting *Wymes v. Lustbader*, WDQ-10-1629, 2012 WL 1819836, at *4 n.9 (D. Md. May 16, 2012)); *see also Butts*, 2017 WL 11309735, at *1 (A "'request to stay all discovery pending resolution of a motion is rarely appropriate where resolution of the motion will not dispose of the entire case.'") (quoting *Simpson v. Specialty Reatil Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988)).

Therefore, even if the Proposed Defendants move to dismiss, it need not result in a stay of discovery. This is because the scope of discovery will essentially be the same whether or not the Proposed Defendants are joined as parties to this action. Even if the Proposed Defendants are not parties, plaintiffs are entitled to explore their conduct. And, even if the Court grants the Proposed Defendants' motion to dismiss, it would not dispose of the entire case.

Compass also states that, "with Dr. Malievskaia and Mr. Goldsmith's foreign residence, lengthy Hague procedures may be required for discovery . . . ." ECF 160 at 9 n.4. Compass

suggests that this is another reason that joinder of the Proposed Defendants will delay resolution of this case. *Id.* at 9.

> Under the Hague Evidence Convention,
>
> (a) each contracting state is required to designate a Central Authority to which letters of request for assistance in obtaining evidence for use in civil or commercial litigation may be addressed by courts of other contracting states, and the Central Authority must direct that any letter of request meeting the requirements of the Convention be executed expeditiously, in accordance with the procedures, including measures of compulsion, for obtaining evidence for use in the requested state's courts;
> (b) a contracting state may determine the conditions for taking evidence in its territory, without compulsion, by diplomatic or consular officers, or by commissioners designated by a court in another contracting state, for use in civil or commercial litigation pending in that state.

Restatement (Third) of Foreign Relations Law § 473(2) (1987) (October 2024 update).  There is no dispute that the United States and United Kingdom are parties to the Hague Evidence Convention. *See* ECF 160-1.

To Compass's point, discovery under the Hague Evidence Convention is "slower and more costly" than discovery under the Federal Rules of Civil Procedure.  Tony Abdollahi, *The Hague Convention: A Medium for International Discovery*, 40 N.C. J. Int'l L. 771, 778 (2015); *see also* Joseph M. Makalusky, *Hague Convention On The Taking Of Evidence Abroad In Civil Or Commercial Matters*, Mass. Bar. Ass'n, available at https://perma.cc/V2BN-NWAN (recognizing that the procedures of the Hague Evidence Convention "are time-consuming,[]" and a letter of request may "linger for some six months to a year before execution.[]").  The Supreme Court has said: "In many situations the Letter of Request procedure authorized by the [Hague Evidence] Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules.[]" *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 542 (1987).  And, according to

the United States Department of State's website: "Execution of letters rogatory may take a year or

more." *Preparation of Letters Rogatory*, U.S. DEP'T STATE, available at https://perma.cc/AJC9-

JL6E.

Nevertheless, Compass's suggestion of prejudice based on the Hague Evidence

Convention is curious. Given the central roles of the Proposed Defendants in the alleged fraudulent

conduct, plaintiffs will surely seek to depose Dr. Malievskaia and Goldsmith, whether or not

defendants. And, that may well implicate the cumbersome procedures of the Hague Evidence

Convention, as the Convention applies to foreign parties and foreign non-parties alike. *See, e.g.*,

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 541

(1987) (concluding that the Hague Evidence Convention applies to foreign parties); *In re Urethane*

*Antitrust Litig.*, 267 F.R.D. 361, 364 (D. Kan. 2010) (collecting cases and recognizing that "[r]esort

to using the procedures of the Hague Convention is particularly appropriate when, as here, a

litigant seeks to depose a foreign non-party who is not subject to the court's jurisdiction."); *Tulip*

*Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) ("Resort

to the Hague Evidence Convention in this instance is appropriate since both Mr. Duynisveld and

Mr. Dietz are not parties to the lawsuit, have not voluntarily subjected themselves to discovery,

are citizens of the Netherlands, and are not otherwise subject to the jurisdiction of the Court.");

*Orlich v. Helm Bros.*, 160 A.D.2d 135, 143 (N.Y. App. Div. 1990) ("When discovery is sought

from a nonparty in a foreign jurisdiction, application of the Hague Convention, which encompasses

principles of international comity, is virtually compulsory.").[15]

---

[15] For example, on July 3, 2025, plaintiffs filed a "Motion For Issuance Of Letter Of Request Pursuant To The Hague Convention On The Taking Of Evidence Abroad In Civil Or Commercial Matters Dated March 18, 1970." ECF 187. In the motion, plaintiffs sought the issuance of a letter of request to the appropriate judicial authority of Denmark to require Drummond McCulloch, a non-party citizen of Denmark and former employee of Compass, to

As I see it, several factors weigh against a finding of prejudice. It is undisputed that the Proposed FAC does not materially alter the suit. The Proposed FAC adds no new causes of action, nor does it meaningfully alter the factual allegations. Although the FAC would add two new defendants, each has been central to the allegations in this suit, dating to the filing of the original Complaint in August 2022. *See Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 770 (D. Md. 2010) ("[T]here is little risk of prejudice to Defendants, as the proposed amendment merely adds an additional defendant in the case based on the same facts alleged in Plaintiffs' Second Amended Complaint. Because of the interrelationship of personnel operations and the management team, no further discovery will be required."); *cf. Laber*, 438 F.3d at 427 ("An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred."). Clearly, Malievskaia has long been aware of the allegations, given the number of declarations that she previously submitted. Compass has also known for years that plaintiffs accused Dr. Malievskaia and Goldsmith of wrongdoing.

In addition, despite the age of this case, it is in its early stages. *Ramnarine*, 2018 WL 2762564, at *2 ("The closer a case progresses toward trial, the more likely the amendment will prejudice the defendant."). Notably, the proposed amendment was filed within the time provided by the Scheduling Order. *See* ECF 146. Discovery has just begun, and no trial date has yet been set. *See Scott*, 733 F.3d at 118 ("Because the parties were still in discovery, and many steps removed from trial, the purported undue prejudice to [the defendant] is overstated."); *Kalos v. Law Offs. of Eugene A. Seidel, P.A.*, No. JCC-09-833, 2009 WL 4683551, at *3 (E.D. Va. Dec. 3, 2009)

---

appear for deposition. *See* ECF 187-3 at 6. I granted the motion and issued a letter of request. ECF 195.

("Because the trial date is not yet set and no discovery has been taken, the Court finds that allowing leave to amend the Amended Complaint would not be unduly prejudicial to Defendants."); *cf.* *Johnson*, 785 F.2d at 510 (although prejudice can result where a new legal theory is alleged if it would entail additional discovery and evidentiary burdens on the part of the opposing party, this "basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial.").

Moreover, the Proposed FAC does not substantively alter the factual allegations or lodge new claims, including as to Compass. Therefore, the amendment will not require Compass to conduct any discovery that it otherwise would not conduct. *See Laber*, 438 F.3d at 427 ("A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'") (citation omitted; alteration in *Laber*); *ISG Tech., Inc. v. Secure Data Techs., Inc.*, No. 20-CV-03345-SRB, 2021 WL 537095, at *3 (W.D. Mo. Feb. 12, 2021) ("Given the similarity of [the plaintiff's] proposed claims against [the proposed defendants] to the current action and the likely substantial overlap in terms of common facts, witnesses, and written discovery, the Court finds Defendants will not suffer undue prejudice.").

## V. Conclusion

To be sure, this case was filed in August 2022, and has already been amended several times. Delays have ensued largely because of the filing of several pretrial motions. But, there is no categorical bar to amending a complaint after a certain period of time. *See Scott*, 733 F.3d at 118–19 (permitting amendment three years after suit was filed).

The "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has emphasized that "this mandate is to be heeded." *Foman*, 371

U.S. at 182.  And, the Fourth Circuit has repeatedly stated that its policy is to "liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)."  *Galustian*, 591 F.3d at 729; *see also Scott*, 733 F.3d at 112.[16]

For the foregoing reasons, I shall grant the Motion (ECF 157).  An Order follows.


Date:    July 11, 2025                                    _____/s/_____
                                                                          Ellen Lipton Hollander
                                                                          United States District Judge

---

[16] Although Compass suggests in passing that the Proposed Defendants may move to dismiss the Fourth Amended Complaint on personal jurisdiction grounds (ECF 160 at 9 n.4), Compass makes no futility argument in the Opposition.  *See generally* ECF 160.  And, as discussed, "this court, and others, have declined to deny leave to amend on futility grounds for lack of personal jurisdiction."  *Pridgen*, 2019 WL 1048950, at *3 (citing cases).