**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

|  |  |
|---|---|
| TERRAN BIOSCIENCES, INC., UNIVERSITY OF MARYLAND, BALTIMORE, and SCOTT THOMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> COMPASS PATHFINDER LIMITED (an England and Wales company), EKATERINA MALIEVSKAIA, M.D., and GEORGE GOLDSMITH <br><br> Defendants. | Civil Action No. 1:22-cv-01956-ELH <br><br> **JURY TRIAL DEMANDED** |

## COMPASS PATHFINDER LIMITED'S ANSWER TO FOURTH AMENDED COMPLAINT

Defendant Compass Pathfinder Limited ("Compass") hereby answers the Fourth Amended Complaint (the "Complaint") of Plaintiffs Terran Biosciences, Inc. ("Terran"), University of Maryland, Baltimore ("UMB"), and Scott Thompson ("Thompson" or "Dr. Thompson") (collectively, "Plaintiffs"). To the extent not expressly admitted herein, Compass denies the allegations of the Complaint. The headings employed by Plaintiffs throughout the Complaint are not assertions of law or fact, and therefore do not require a response. To the extent that the headings contained in the Complaint can be read to require a response, Compass denies the allegations.

## FOURTH AMENDED COMPLAINT[1]

The opening sentence of Plaintiffs' Complaint does not require a response. To the extent a response is required, Compass admits that Plaintiffs filed a Complaint against Compass.

---

[1] The headings used in Compass's Answer are those used in Plaintiffs' Complaint and are incorporated herein for the sole purpose of tracking the paragraphs in the Complaint.

## Introduction

1.    Compass admits that by 2016, it was known that 5-HT2A antagonists like ketanserin reduce or eliminate the negative hallucinogenic effects of psilocybin. Compass admits that by 2016, psilocybin's antidepressant therapeutic effects were also known. Compass denies the allegations in first sentence of paragraph 1. Compass is otherwise without information or knowledge sufficient to form a belief as to the truth of the allegations in the remainder of paragraph 1 and, therefore, denies such allegations.[2]

2.    Compass admits, based on publicly available information, that on August 13, 2019, Thompson filed a provisional patent application. Compass is without information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 2 and therefore, denies such allegations. Compass otherwise denies the allegations in paragraph 2, including, without limitation, that Thompson's work is a trade secret or otherwise protectable confidential information.

3.    Compass admits that in May 2019, Dr. Ekaterina Malievskaia was the Co-Founder and Head of Research of Compass. Compass admits that Jessica Rose Stuart provided Professor Thompson with a document titled Mutual Non-Disclosure Agreement at the direction of Dr. Malievskaia before Compass met with Professor Thompson. Compass admits that Professor Thompson returned a signed copy of the Mutual Non-Disclosure Agreement ("NDA") to Compass, and Compass confirmed receipt of the signed NDA. Compass admits it met with Professor Thompson remotely and in person. Compass otherwise denies the allegations in paragraph 3, including, without limitation, that Thompson's work is a trade secret or otherwise protectable confidential information.

---

[2] References to paragraphs are references to the paragraphs in Plaintiffs' Complaint.

4.      Compass denies the allegations in paragraph 4.

5.      Compass denies the allegations in paragraph 5.

6.      Compass denies the allegations in paragraph 6.

7.      Compass is without information or knowledge sufficient to form a belief as to the truth of whether Terran entered into a licensing agreement with UMB and on what terms, and therefore, denies such allegations. Compass otherwise denies the allegations in paragraph 7, including, without limitation, denies that Thompson's work is a trade secret or otherwise protectable confidential information.

8.      This paragraph does not require a response. To the extent a response is required, Compass admits that Plaintiffs filed a Complaint against Compass for multiple causes of action and seeking damages and other relief but Compass denies that Plaintiffs are entitled to damages or other relief.

### The Parties

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Compass admits that Dr. Malievskaia is an individual who is a resident and citizen of London, England, United Kingdom.  Compass admits that in June 2016, Dr. Malievskaia and Mr. Goldsmith formed Compass Pathways Technologies Limited.  Compass admits that in August 2020, Compass Pathways Limited was renamed Compass Pathfinder Limited.  Compass admits that Dr. Malievskaia serves as a member of Compass's board of directors until March 29, 2024. Compass admits that Dr. Malievskaia served as Compass's Head of Research and Development

from January 2019 to January 2020, as Compass's Chief Medical Officer from June 2017 to 2019, and as Compass's Chief Innovation Officer from January 2020 through June 2023.  Compass otherwise denies the allegations in paragraph 13.

14.     Compass admits Mr. Goldsmith is a resident and citizen of London, England, United Kingdom.  Compass admits that in June 2016, Dr. Malievskaia and Mr. Goldsmith formed Compass Pathways Technologies Limited.  Compass admits that in August 2020, Compass Pathways Limited was renamed Compass Pathfinder Limited.  Compass admits that Mr. Goldsmith served as Compass's Chief Executive Officer from its founding through August 1, 2022 and served as chairman of Compass' board of directors from its founding through March 29, 2024. Compass otherwise denies the allegations in paragraph 14.

15.     Compass admits that Dr. Malievskaia and Mr. Goldsmith were involved in work related to Compass's clinical trials related to Compass's proprietary synethetic crystalline formulation of psilocybin, which include sites in Maryland.  Compass further admits that Dr. Malievskaia and Mr. Goldsmith were involved in work related to the establishment of Compass Centres of Excellence, including the Compass Centre of Excellence at the Sheppard Pratt Institute for Advanced Diagnostics and Therapeutics in Baltimore, Maryland, United States.  Compass otherwise denies the allegations in paragraph 15.

## Jurisdiction and Venue

16.     Paragraph 16 alleges a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations in paragraph 16.

17.     Paragraph 17 alleges a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations in paragraph 16.

18.     Paragraph 18 alleges a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations in paragraph 16.

19.    The first sentence of paragraph 19 alleges a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations set forth in the first sentence of paragraph 19. Compass otherwise denies the allegations in paragraph 19.

20.    Compass admits that it conducted a clinical trial titled, "The Safety and Efficacy of Psilocybin in Participants with Treatment Resistant Depression," and that the study was submitted to the FDA's database for clinical trials on March 1, 2019 and completed on September 27, 2021. Compass further admits that in January 2021, it established a "Centre of Excellence in collaboration with the Sheppard Pratt Institute for Advanced Diagnostics and Therapeutics" to "carry out new research in the use of psilocybin therapy . . . ." Compass further admits that it has conducted other clinical trials related to psilocybin. Compass otherwise denies the allegations in paragraph 20.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Compass denies it committed any fraudulent scheme giving rise to this lawsuit. Compass admits that on August 28, 2019, it filed U.S. Provisional Patent Application No. 62/893,110 and on August 29, 2019, it filed U.S. Provisional Patent Application No. 62/893,611. Compass further admits that it has filed non-provisional patent applications relating to psilocybin. Compass otherwise denies the remaining allegations in paragraph 25

25.    Admitted.

26.    Paragraph 26 alleges a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations in paragraph 26.

**Factual Background**

*Psilocybin Trade Secrets and Confidential Information*

27.     Compass admits, on information and belief and publicly available information, that Thompson was a Professor of Physiology at the University of Maryland School of Medicine and is currently a Professor of Psychiatry at the University of Colorado Anschutz School of Medicine. Compass is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27 and, therefore, denies such allegations.

28.     Compass denies the allegations in the first sentence of paragraph 26, including, without limitation, that Thompson's work is a trade secret or otherwise protectable confidential information. Compass is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations in paragraph 28, and, therefore, denies such allegations.

29.     Compass denies the allegations in paragraph 29.

30.     Compass admits, on information and belief and publicly available information, that Thompson and UMB filed U.S. Provisional Patent Application No. 62/886,090 (not No. 62/886,080), entitled "Combination Therapy with Broad Spectrum Serotonergic Agonists and Anti-Hallucinogenic Serotonergic Antagonists." Compass denies the remaining allegations in paragraph 30.

*Defendants Reach Out To UMB Regarding Professor Thompson's Research*

31.     Compass admits that on May 16, 2019, Dr. Malievskaia corresponded with Professor Todd Gould and that her email contains the language quoted in paragraph 31. Compass further admits that Professor Gould directed Dr. Malievskaia to Professor Thompson. Compass denies the remaining allegations in paragraph 31.

32.     Compass admits that on May 29, 2019, Jessica Rose Stuart sent Professor Thompson a document titled Mutual Non-Disclosure Agreement.  Compass further admits that the

NDA included a signature line for Mr. Goldsmith and listed him as "Executive Chairman, Co-founder" of Compass.  Compass further admits that Professor Thompson signed the NDA on May 29, 2019.  Compass further admits that on May 30, 2019, Manon Veraart acknowledged receipt of Professor Thompson's signed NDA.  The allegations relating to the obligations resulting from the NDA are legal conclusions that require no response.  To the extent a response is require, Compass denies them.  Compass denies the remaining allegations of paragraph 32.

33.     Compass is without information or knowledge sufficient to form a belief as to the truth of allegations in paragraph 33, and therefore denies the allegations.

34.     Compass admits that on June 12, 2019, Dr. Malievskaia emailed Professor Thompson to ask for a "very short version of the proposed studies and rough budget."  Compass further admits that on June 13, 2019, Professor Gould sent a scientific proposal and proposed budget to Dr. Malievskaia.  Compass further admits that Dr. Malievskaia confirmed receipt of the proposal and requested a follow-up call. Compass otherwise denies the allegations in paragraph 34.

35.     Compass admits that on June 18, 2019, Dr. Shaun Hurley, a Research Scientist at Compass, emailed Dr. Thompson stating that Compass was "excited to read about the interesting questions you'd like to explore using psilocybin" and "share[d] some questions" concerning Thompson's proposal.  Compass further admits that the message contained the language quoted in paragraph 35.  Compass otherwise denies the allegations in paragraph 33.

36.     Compass admits that Professor Thompson and Professor Gould responded to Compass's questions on June 21, 2019.  Compass denies the remaining allegations in paragraph 36.

37.    Compass admits that Compass and UMB worked on a draft collaboration agreement intermittently for several months. Compass denies the allegations in paragraph 37.

38.    Compass admits that Dr. Hurley and Professor Thompson (among others) joined a call on or around September 5, 2019. Compass also admits that Hurley and Thompson corresponded via email following the call. Compass denies the remaining allegations in paragraph 38.

39.    Compass admits that Hurley and Thompson (among others) corresponded via email and the messages contained the language quoted in paragraph 39. Compass otherwise denies the allegations in paragraph 39.

40.    Compass admits that it sent UMB a draft collaboration agreement on or around October 20, 2019. Compass otherwise denies the allegations in paragraph 40.

41.    Compass admits that on November 20, 2019, Hurley emailed Thompson and the message contained the language quoted in paragraph 41. Compass denies the remaining allegations in paragraph 41.

### Defendants File For Patent Applications Related To The Psilocybin Trade Secrets

42.    Compass denies the allegations in paragraph 42.

43.    Compass admits that, on August 29, 2019, Compass filed U.S. Provisional Patent Application No. 62/893,611 (the "'611 Application"). Compass otherwise denies the allegations in paragraph 43.

44.    Compass admits that, on August 28, 2019, Compass filed U.S. Provisional Patent Application No. 62/893,110 ("the '110 Application"). Compass otherwise denies the allegations in paragraph 44.

45.    Compass admits that the two patent applications list the same inventors. Compass otherwise denies the allegations in paragraph 45.

46.     Compass denies the allegations in paragraph 46.

47.     Compass denies the allegations in paragraph 47.

48.     Compass admits that the '611 application contains the language quoted in paragraph 48.  Compass otherwise denies the allegation in paragraph 48.

49.     Compass admits that Hurley and Thompson (among others) joined a call on or around September 5, 2019. Compass denies the allegations in paragraph 49.

50.     Compass admits that it filed U.S. Patent Application No. 17/604,610 on October 18, 2021.  Compass admits that on August 25, 2022, it cancelled 137 of the 162 originally presented claims in that application. Compass otherwise denies the allegations in paragraph 50.

51.     Compass admits that it filed U.S. Patent Application No. 17/604,606 on October 18, 2021, U.S. Patent Application No. 17/604,619 on October 18, 2021, U.S. Patent Application No. 17/540,962 on December 2, 2021, U.S. Patent Application 18/077,876 on December 7, 2022, PCT/IB2020/053688 on April 17, 2020, PCT/IB2020/053687 on April 17, 2020, and PCT/IB2020/053684 on April 17, 2020. Compass also admits that U.S. Patent Application No. 17/540,962 issued as U.S. Patent No. 11,564,935. Compass denies the remaining allegations in paragraph 49.

52.     Compass is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 50 and, therefore, denies such allegations.

### *Defendants Intentionally Developed and Executed their Fraudulent Scheme*

53.     Compass admits that paragraph 53 purports to quote from an article, which speaks for itself.  Compass denies the truth (and/or suggestions) of the contents of the article, and otherwise denies the allegations in paragraph 53.

*Terran Licenses Technology and Intellectual Property from UMB*

54.    Compass is without sufficient information or knowledge to form a belief as to the truth of the allegations in paragraph 54 and, therefore, denies such allegations.

55.    Compass is without sufficient information or knowledge to form a belief as to the truth of the allegations in paragraph 53 and, therefore, denies such allegations.

**Count I (By Terran and UMB; Against All Defendants)**
**Misappropriation of Trade Secrets**
**Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq.*)**

56.    Compass incorporates by reference its responses contained in paragraphs 1-55 above.

57.    Compass denies the allegations in paragraph 57.

58.    Compass denies the allegations in paragraph 58.

59.    Compass denies the allegations in paragraph 59.

60.    Compass denies the allegations in paragraph 60.

61.    Compass denies the allegations in paragraph 61.

62.    Compass denies the allegations in paragraph 62.

63.    Paragraph 63 states a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations in paragraph 63.

64.    Compass denies the allegations in paragraph 64.

65.    Compass denies the allegations in paragraph 65.

66.    Compass denies the allegations in paragraph 66.

67.    Compass denies the allegations in paragraph 67.

68.    Compass denies the allegations in paragraph 68.

69.    Compass denies the allegations in paragraph 69.

70.    Compass denies the allegations in paragraph 70.

71.     Compass denies the allegations in paragraph 71.

**Count II (By Terran, UMB, and Professor Thompson; Against All Defendants)**
**Misappropriation of Trade Secrets**
**Maryland Uniform Trade Secrets Act (Md. Code Ann. Com. Law § 11-1201 e*t seq.*)**

72.     Compass incorporates by reference its responses contained in paragraphs 1-71 above.

73.     The first sentence of paragraph 73 states a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations in paragraph 73. Compass is without sufficient information or knowledge to form a belief as to the truth of the allegations in remainder of paragraph 73 and, therefore, denies such allegations.

74.     Compass denies the allegations in paragraph 74.

75.     Compass denies the allegations in paragraph 75.

76.     Compass denies the allegations in paragraph 76.

77.     Compass denies the allegations in paragraph 77.

78.     Compass denies the allegations in paragraph 78.

79.     Paragraph 79 states a legal conclusion to which no response is required. To the extent a response is required, Compass denies the allegations in paragraph 79.

80.     Compass denies the allegations in paragraph 80.

81.     Compass denies the allegations in paragraph 81.

82.     Compass denies the allegations in paragraph 82.

83.     Compass denies the allegations in paragraph 83.

84.     Compass denies the allegations in paragraph 84.

85.     Compass denies the allegations in paragraph 85.

86.     Compass denies the allegations in paragraph 86.

87.     Compass denies the allegations in paragraph 87.

**Count III (By Terran, UMB, and Professor Thompson; Against All Defendants)**
**Unfair Competition**

88.    Compass incorporates by reference its responses contained in paragraphs 1-87

above.

89.    Compass denies the allegations in paragraph 89.

90.    Compass denies the allegations in paragraph 90.

91.    Compass denies the allegations in paragraph 91.

92.    Compass denies the allegations in paragraph 92.

93.    Compass denies the allegations in paragraph 93.

**Count IV (By UMB and Professor Thompson; Against All Defendants)**
**Detrimental Reliance/Promissory Estoppel**

94.    Compass incorporates by reference its responses contained in paragraphs 1-93

above.

95.    Compass denies the allegations in paragraph 95.

96.    Compass denies the allegations in paragraph 96.

97.    Compass denies the allegations in paragraph 97.

98.    Compass denies the allegations in paragraph 98.

99.    Compass denies the allegations in paragraph 99.

**Count V (By UMB and Professor Thompson; Against All Defendants)**
**Unjust Enrichment**

100.    Compass incorporates by reference its responses contained in paragraphs 1-99

above.

101.    Compass denies the allegations in paragraph 101

102.    Compass denies the allegations in paragraph 102.

103.    Compass denies the allegations in paragraph 103.

104.    Compass denies the allegations in paragraph 104.

**Count VI (By UMB and Professor Thompson; Against All Defendants)**
**Quantum Meruit/Implied-In-Fact Contract**

105.    Compass incorporates by reference its responses contained in paragraphs 1-104

above.

106.    Compass denies the allegations in paragraph 106.

107.    Compass denies the allegations in paragraph 107.

108.    Compass denies the allegations in paragraph 108.

109.    Compass denies the allegations in paragraph 109.

110.    Compass denies the allegations in paragraph 110.

**Count VII (By UMB and Professor Thompson; Against All Defendants)**
**Fraudulent Misrepresentation**

111.    Compass incorporates by reference its responses contained in paragraphs 1-111

above.

112.    Compass denies the allegations in paragraph 112.

113.    Compass denies the allegations in paragraph 113.

114.    Compass denies the allegations in paragraph 114.

115.    Compass denies the allegations in paragraph 115

116.    Compass denies the allegations in paragraph 116.

**Count VIII (By UMB and Professor Thompson; Against All Defendants)**
**Negligent Misrepresentation**

117.    Compass incorporates by reference its responses contained in paragraphs 1-117

above.

118.    Compass denies the allegations in paragraph 118.

119.    Compass denies the allegations in paragraph 119.

120.    Compass denies the allegations in paragraph 120.

121.    Compass denies the allegations in paragraph 121.

122.    Compass denies the allegations in paragraph 122.

123.    Compass denies the allegations in paragraph 123.

**Count IX (By UMB and Professor Thompson; Against All Defendants)**
**Fraudulent Concealment**

124.    Compass incorporates by reference its responses contained in paragraphs 1-124 above.

125.    Compass denies the allegations in paragraph 125.

126.    Compass denies the allegations in paragraph 126.

127.    Compass denies the allegations in paragraph 127.

128.    Compass denies the allegations in paragraph 128.

**Count X (By UMB and Professor Thompson; Against All Defendants)**
**Constructive Fraud**

129.    Compass incorporates by reference its responses contained in paragraphs 1-128 above.

130.    Compass denies the allegations in paragraph 130.

131.    Compass denies the allegations in paragraph 131.

132.    Compass denies the allegations in paragraph 132.

**Count XI (By Professor Thompson; Against Compass)**
**Breach of Contract**

133.    Compass incorporates by reference its responses contained in paragraphs 1-132 above.

134.    Compass denies the allegations in paragraph 134.

135.    Compass denies the allegations in paragraph 135.

136.    Compass denies the allegations in paragraph 136.

137.    Compass denies the allegations in paragraph 137.

138.    Compass denies the allegations in paragraph 138.

### Prayer for Relief

The Prayer for Relief section of the Complaint sets forth the relief requested by Plaintiffs, to which no further response is required. To the extent a response is required, Compass denies the allegations that Plaintiffs are entitled to any relief.

### Jury Demand

The Jury Demand section of the Complaint sets forth a demand for trial by jury, to which no response is required.

### DEFENSES AND AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise have under applicable law, Compass asserts the following defenses and affirmative defenses in response to Plaintiffs' Complaint. Compass incorporates by reference its responses above.

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, and/or laches. By way of example only, Thompson and UMB filed a provisional patent application on August 13, 2019, which disclosed the co-administration of psilocybin and 5-HT2A antagonists. By their own conduct, Plaintiffs publicized the alleged Psilocybin Trade Secrets making it no longer secret. *See* TAC ¶¶ 2, 28.

### Third Defense

Plaintiffs' claims are barred by the relevant statutes of limitations. Discovery will uncover that one or more of Plaintiffs knew or should have known the factual basis for each of their claims such that their claims are barred by the relevant statutes of limitations.

### Fourth Defense

Plaintiffs' claims are barred because Plaintiffs have not suffered any damage as a result of the allegations in the Complaint. In the alternative, if Plaintiffs have been harmed as alleged (and denied), the harm was caused in whole or in part by Plaintiffs' own actions or inactions, and therefore, Plaintiffs are not entitled to relief. By way of example only, Plaintiffs only claim that they desire to bring a "non-hallucinogenic antidepressant therapy to market." *See* TAC ¶ 7. Plaintiffs have not in fact brought a "non-hallucinogenic antidepressant therapy to market." Plaintiffs do not suggest any dollar amount or type of damages. Compass, for its part, does not currently sell any product, nor does it have any clinical trials, using the combination therapy of ketanserin and psilocybin. Therefore, Compass has not been unjustly enriched.

### Fifth Defense

Plaintiffs' claims are barred because Compass was privileged or justified in doing the acts alleged. By way of example only, Compass was permitted by law to conduct the complained-of acts.

### Sixth Defense

The misappropriation of trade secrets claims fail because the alleged trade secrets do not qualify for protection and/or are not trade secrets. Plaintiffs' own conduct confirms the information of the type alleged to have been misappropriated does not qualify for trade secret protection. By way of example only, Plaintiffs acknowledged that, by 2016, it was already "known that 5-HT2A

antagonists like ketanserin reduce or eliminate the negative hallucinogenic effects of psilocybin." TAC ¶ 1.

### Seventh Defense

Plaintiffs' claims for damages are barred and/or reduced to the extent Plaintiffs failed to mitigate its damages.

### Eighth Defense

Plaintiffs' claims are barred under the doctrine of unclean hands, estoppel, and or in *pari delicto*. By way of example only, Thompson and UMB filed a provisional patent application on August 13, 2019 which disclosed the co-administration of psilocybin and 5-HT2A antagonists. By their own conduct, Plaintiffs publicized the alleged Psilocybin Trade Secrets making it no longer secret. *See* TAC ¶¶ 2, 28.

### Ninth Defense

A permanent injunction would be improper because, among other things, Plaintiffs have not suffered any irreparable harm, and the balance of hardships and public interest do not favor an injunction in this case. As mentioned above, Plaintiffs have not suffered any damage.

### Reservation of Rights

Compass reserves the right to assert additional defenses and/or to amend these defenses.

### COMPASS PATHFINDER LIMITED'S COUNTERCLAIMS

Counterclaim-Plaintiff Compass Pathfinder Limited ("Compass" or "Counterclaim-Plaintiff") asserts the following counterclaims against Counterclaim-Defendants Terran Biosciences, Inc. ("Terran"), University of Maryland, Baltimore ("UMB"), and Scott Thompson ("Thompson" or "Dr. Thompson") (collectively, "Counterclaim-Defendants"). Compass reserves the right to assert any additional counterclaims as they become known during the course of this action.

**The Parties**

1.     Compass is a company incorporated in England and Wales, registered at 3rd Floor, 1 Ashley Road, Altrincham, Cheshire, United Kingdom, WA14 2DT.

2.     On information and belief, based on Plaintiffs' Complaint, Counterclaim-Defendant Terran is a corporation organized and existing under the laws of Delaware, with its principal place of business at 507 W 28th Street, PH 3A, New York, NY.

3.     On information and belief, based on Plaintiffs' Complaint, Counterclaim-Defendant UMB is a public university in Baltimore, Maryland.

4.     On information and belief, based on Plaintiffs' Complaint, Counterclaim-Defendant Dr. Scott Thompson is currently a Professor of Psychiatry at the University of Colorado Anschutz School of Medicine.  On information and belief, based on Plaintiffs' Complaint, Counterclaim-Defendant Dr. Scott Thompson was, from 1998 to 2022, a Professor of Physiology at the University of Maryland, Baltimore, School of Medicine.

**Jurisdiction and Venue**

5.     This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C.§ 1332(a), because there is complete diversity and the amount in controversy is at least $75,000.

6.     Pursuant to 28 U.S.C. § 1367(a), this Court also has supplemental subject matter jurisdiction over these Counterclaims because they derive from a common nucleus of operative facts as Terran's, Dr. Thompson's, and UMB's claims.

7.     All Counterclaim-Defendants have submitted to personal jurisdiction in this Court by filing their Complaint against Compass in this Court.  Counterclaim-Defendant UMB is also subject to this Court's personal jurisdiction because UMB is a public university in Baltimore, Maryland.  Counterclaim-Defendant Scott Thompson is also subject to this Court's personal

jurisdiction because, Counterclaim-Defendant Dr. Scott Thompson was at all relevant times a resident of Maryland and an employee of the University of Maryland, Baltimore School of Medicine.

8.      All Counterclaim-Defendants have submitted to venue in in the United States District Court for the District of Maryland by filing their Complaint against Compass here.  Venue is also Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims asserted occurred in this District.

**Factual Background**

9.      In May of 2019, Compass had been in discussions with Dr. Carlos Zarate at the National Institute of Mental Health about sponsoring preclinical research relating to the pharmacokinetics of psilocybin.  On May 16, 2019, Dr. Zarate put Dr. Ekaterina Malievskaia in contact with Professor Todd Gould of the University of Maryland, Baltimore ("UMB") to explore preclinical studies regarding the mechanisms of action of psilocybin.  Professor Gould recommended that Compass also include Professor Scott Thompson in the discussions and introduced Professor Thompson to Compass.

10.     Compass and Professors Thompson and Gould discussed various preclinical experiments related to the mechanisms of action of psilocybin.  Among those experiments was a proposed experiment to be conducted in Professor Thompson's lab relating to the sequential administration of ketanserin and psilocybin in rodents (the "Ketanserin Research").  On June 13, 2019, Professor Gould emailed to Compass a list of proposed experiments that included the Ketanserin Research to be carried out in Professor Thompson's lab.

11.     Professors Thompson and Gould represented to Compass that they needed Compass to provide funding and psilocybin—a Schedule I drug—for the Ketanserin Research. The discussions between Professors Thompson and Gould and Compass contemplated Compass

providing psilocybin and funding, at no cost, to Dr. Thompson or UMB for the experiments including the Ketanserin Research. On June 13, 2019, Professor Gould provided a proposed budget asking Compass for $450,000 two years of research.

12.    Between May and November 2019, Compass invested significant resources exploring the Ketanserin Research with Professor Thompson and negotiating an agreement with UMB. Compass scientists evaluated the scientific value of the proposed experiments while Compass attorneys negotiated the Sponsored Research Agreement ("SRA") with UMB.

13.    On August 28, 2019, an abstract for a poster from Professor Thompson's lab, scheduled to be presented at the Society for Neuroscience's annual meeting, was published. The abstract stated, contrary to Professor Thompson's clear representations to Compass, that, "Using 10-21 days of CMS, we induced an anhedonic phenotype in rodents, as assessed by loss of sucrose preference. Sucrose preference was restored within 48 hours of a single acute dose of psilocybin (1mg/kg). ***Experiments with psilocybin and ketanserin are in progress***." *See* Ex. 1 (emphasis added). The submission deadline for poster abstracts for the Society for Neuroscience's annual meeting was May 3, 2019, two weeks before Compass was put in contact with Professor Gould.[3] This means that Professor Thompson and his lab began conducting the Ketanserin Research before Professor Thompson and Compass were ever in contact.

14.    Compass was surprised to discover that the research that it had proposed sponsoring was already underway, and it was concerned that if it continued to pursue the SRA with Professor Thompson that he may use the psilocybin Compass provided for purposes other than what Compass had intended. Psilocybin is a Schedule I drug and its distribution is heavily regulated.

---

[3]    https://www.sfn.org/Meetings/Neuroscience-2019/General-Information/Dates-and-Deadlines ("May 3 Extended deadline for abstract submissions, noon EDT)

Distributing psilocybin to someone for unknown reasons and research could have significant legal consequences for Compass.

15.    Compass requested a call with Professor Thompson to discuss whether the research had in fact been completed.  Professor Thompson and Compass continued to correspond over email on the progress of Professor Thompson's research.  On September 24, 2019, Compass asked Professor Thompson to confirm that he had "not yet started the ketanserin experiment."  Professor Thompson knew that if Compass knew that his lab had already started the Ketanserin Research, Compass would not want to continue pursuing the SRA, and Professor Thompson would lose access to the funding and psilocybin that Compass would provide.  So Professor Thompson intentionally misrepresented the situation to Compass by stating that he could "unequivocally confirm" that the Ketanserin Research had not been started.

16.    Compass continued to expend resources to negotiate the SRA with UMB and discuss the potential research with Professor Thompson.  On October 21, 2019, at the Society for Neuroscience meeting, Dr. Shaun Hurley of Compass met with Professor Thompson in person to discuss the research.  On October 23, 2019, Professor Thompson presented on his research regarding the use of ketanserin with psilocybin.  The discussions in person with Professor Thompson as well as his presentation proved to Compass that Professor Thompson had intentionally misrepresented the situation, and Compass withdrew from negotiations of the SRA without having ever provided psilocybin in any form to Professor Thompson or UMB.

17.    On August 5, 2022, Terran Biosciences, Inc. ("Terran") filed this lawsuit, accusing Compass of various torts related to trade secret misappropriation.  UMB and Professor Thompson have subsequently joined as Plaintiffs.

18.     Terran, UMB, and Professor Thompson allege that Compass misappropriated trade secrets related to the sequential administration of a 5-HT2A antagonist, such as ketanserin, and psilocybin that Professor Thompson supposedly developed prior to and disclosed during discussions with Compass in 2019.  In this litigation Terran, UMB, and Professor Thompson have alleged that their "Psilocybin Trade Secrets" are "the specifics of the sequential administration of a 5-HT2A antagonist followed by psilocybin, including the optimal timing, dosing, and frequency for the therapy."

19.     Terran, UMB, and Professor Thompson are and have at all times during this litigation been aware that Professor Thompson had not conducted any human studies using the sequential administration of a 5-HT2A antagonist and psilocybin prior to or during Professor Thompson's discussions with Compass in 2019.

20.     Though Compass is now aware that Professor Thompson intentionally misrepresented the situation about his progress on the Ketanserin Research, Professor Thompson had denied performing even rodent studies on the sequential administration of ketanserin with psilocybin.

21.     Terran, UMB, and Professor Thompson are and have been aware that the results from rodent studies are not directly translatable to humans.  The optimal dosage as determined by a rodent studies would not be the optimal dosage for therapy in humans.

22.     Accordingly, Terran, UMB, and Professor Thompson are and have been aware that Professor Thompson could not have possibly known during his discussions with Compass the "*optimal* timing, dosing, and frequency," for therapy using the sequential administration of a 5-HT2A antagonist with psilocybin.  On information and belief, Terran, UMB, and Professor

Thompson do not to this day know the "optimal timing, dosing, and frequency," for therapy using the sequential administration of a 5-HT2A antagonist with psilocybin.

23.     Terran, UMB, and Professor Thompson are aware that Professor Thompson could not have disclosed to Compass their alleged "Psilocybin Trade Secrets" because Professor Thompson did not possess them at least by the time he stopped communicating with Compass.

24.     Despite knowing that their trade secret allegations are objectively baseless, Counterclaim-Defendants have continued to litigate this case against Compass.

25.     Upon information and belief, Counterclaim-Defendants' purpose in bringing and continuing to litigating this case is and has not been for legitimate purposes.

26.     Upon information and belief, Counterclaim-Defendants brought and have continued to litigate this case against Compass to damage Compass's business, harm its competitive standing, and to discover Compass's own confidential trade secrets.

27.     Terran in particular has a reputation for pursuing intellectual property that it does not actually possess.  Terran has been publicly accused of filing patents in response to the public announcements of other companies, including Compass, rather than investing in and developing its own intellectual property:

> "What's more, much of the company's IP portfolio appears to line-up temporally and thematically with the development plans of psychedelic drug developers across the board, as we will show in this article. Today, Terran's IP portfolio features compounds that are competitive with, or found in the pipelines of, companies such as Delix Therapeutics, COMPASS Pathways, Transcend Therapeutics, Reunion Neurosciences, and many others. In some cases, Terran filed patent applications

just days after psychedelic drug developers' lead candidates were first divulged publicly.

Given that the company presumably lacks the immense resources needed to develop such a vast portfolio of assets, one might wonder what Terran's strategy is. The least forgiving observer might characterise the company as a patent troll—filing on a swathe of technologies and compounds without genuine intent to develop, in the hopes of collecting revenue from licensing said IP.

\*\*\*

Yet, it remains unclear whether Terran has initiated, or will imminently initiate, a clinical development program for any of the psychedelic assets it claims. When Psychedelic Alpha asked Terran about this they reminded us that the company is currently running a Phase 1 clinical trial of idazoxan (licensed from Pierre Fabre) in healthy participants. The company also told us that it has "sponsored multiple clinical biomarker trials in the US and Canada", and reminded us of their partnerships with Sanofi and Pierre Fabre. In the case of these in-licensed assets from Sanofi and Pierre Fabre, they're not psychedelic; so the question stands."[4]

28.     Compass has been significantly harmed by Counterclaim-Defendants' initiation and continued litigation in this case.  This is at least seen by the decrease in Compass's stock price, which closed at a value of $20.07 on August 5, 2022, the day this lawsuit was filed, and closed at a value of $18.36 on August 12, 2022, only a week later.  At no time since the filing of this lawsuit has Compass's stock price exceeded $18.36.

---

[4] https://psychedelicalpha.com/news/analysis-patent-applications-provide-hints-at-terran-biosciences-strategy

**Count I: Fraudulent Misrepresentation (Against UMB and Thompson)**

29.     Compass incorporates Paragraphs 1–28 herein by reference.

30.     Dr. Thompson and UMB, acting at least through Dr. Thompson, knowingly made fraudulent representations to Compass from May to November of 2019, under the guise of seeking to collaborate with Compass.  False statements made by Dr. Thompson and UMB, acting at least through Dr. Thompson include at least, requesting funding for the Ketanserin Research and "unequivocally confirming" that the research had not begun.

31.     Dr. Thompson and UMB, acting at least through Dr. Thompson, knew that the statements above were false, or at the very least the statements were made with such a reckless indifference to the truth as to be equivalent to actual knowledge.

32.     The purpose of the misrepresentations was to defraud Compass, including by fraudulently attempting to acquire supplies of Psilocybin—a Schedule I drug—and fraudulently attempting to acquire funding for the Ketanserin Research that was already underway.

33.     Compass relied upon Dr. Thompson and UMB's statements.  Compass believed that Dr. Thompson and UMB were discussing a collaborative effort in good faith, that the Ketanserin Research was not yet underway, and that Dr. Thompson and UMB did not have Psilocybin or funding for the Ketanserin Research.  Had Compass known that Dr. Thompson and UMB were defrauding it, or that the Ketanserin Research was already underway, or that Dr. Thompson and UMB already had Psilocybin and/or funding for the Ketanserin Research, Compass would not have spent five months planning and negotiating a collaboration and collaboration agreement, nor would it have spent the monetary and human resources required to do so. Furthermore, Compass could have instead devoted those wasted resources to developing a productive collaboration on other research with another partner.

34.     As a direct, proximate, and foreseeable result of Dr. Thompson's and UMB's fraudulent misrepresentations leading to the expenditure of Compass's monetary and human resources, Compass has been damaged in an amount not yet ascertained.

### Count II: Unfair Competition (Against UMB and Thompson)

35.     Compass incorporates Paragraphs 1–34 herein by reference.

36.     On information and belief, Dr. Thompson and UMB did not conduct their interactions with Compass with honesty and fairness, and instead continually sought to deceive and defraud them.  That included Dr. Thompson and UMB, acting at least through Dr. Thompson, in bad faith: representing to Compass that the Ketanserin Research was not yet underway; representing to Compass that they needed psilocybin for the Ketanserin Research; representing to Compass that they needed funding for the Ketanserin Research; based on those representations, attempting to procure psilocybin from Compass at no cost; based on those representations, attempting to procure funding from Compass; and continuing to cause Compass to expend monetary and human resources to negotiate and plan a collaboration and collaboration agreement for research that was already underway.

37.     The conduct of Dr. Thompson and UMB, acting at least through Dr. Thompson, damaged or jeopardized Compass's business at least by causing Compass to continue to expend monetary and human resources to negotiate and plan a collaboration and collaboration agreement for research that was already underway.  That damage or jeopardization of Compass's business was due to the fraud, deceit, trickery or unfair methods of Dr. Thompson and UMB, acting at least through Dr. Thompson.  Dr. Thompson's and UMB's behavior conflicts with accepted principles of public policy, and should not be condoned.

38.     As a direct, proximate, and foreseeable result of Dr. Thompson's and UMB's conduct, Compass been damaged in an amount not yet ascertained.

## **Count III: Unfair Competition (Against All Counterclaim-Defendants)**

39.    Compass incorporates Paragraphs 1–38 herein by reference.

40.    On information and belief, the Counterclaim-Defendants have not brought this lawsuit against Compass with honesty and fairness, and instead continually sought to deceive and defraud them.  That included the Counterclaim-Defendants litigating this case claiming they possessed trade secrets related to the optimal timing, dosing, and frequency to treat depression with the sequential administration of a 5-HT2A antagonist and psilocybin despite knowing that by the time Professor Thompson and Compass has stopped discussing the proposed collaboration: Professor Thompson had not conducted any human studies on the combination; Professor Thompson claimed he had not even begun rodent studies on the combination; rodent studies would not even directly translate to human dosing, timing, and frequency; and therefore that Professor Thompson did not know—indeed, could not have known—the optimal dosing, timing, and frequency for the combination.

41.    The conduct of the Counterclaim-Defendants damaged or jeopardized Compass's business at least by harming Compass's reputation and reducing Compass's stock price.  That damage or jeopardization of Compass's business was due to the fraud, deceit, trickery or unfair methods of the Counterclaim-Defendants.  The Counterclaim-Defendants' behavior conflicts with accepted principles of public policy, and should not be condoned.

42.    As a direct, proximate, and foreseeable result of the Counterclaim-Defendants' conduct, Compass been damaged in an amount not yet ascertained.

## **Count IV: Tortious Interference with Business Relationships (Against All Counterclaim-Defendants)**

43.    Compass incorporates Paragraphs 1–42 herein by reference.

44.    Compass had business relationships with shareholders and investors.

45.    Counterclaim-Defendants were aware of Compass's business relationships with its shareholders and investors.

46.    Counterclaim-Defendants intentionally, unjustifiably, and improperly interfered with Compass's relationships with its shareholders and investors.  For example, Counterclaim-Defendants intentionally and willfully acted in bringing this lawsuit against Compass even though the Counterclaim-Defendants knew that Professor Thompson did not possess the alleged Psilocybin Trade secrets at the time Professor Thompson met with Compass in 2019.  The Counterclaim-Defendants were aware at all times when they litigated this case that by the time Professor Thompson and Compass has stopped discussing the proposed collaboration: Professor Thompson had not conducted any human studies on the combination; Professor Thompson claimed he had not even begun rodent studies on the combination; rodent studies would not even directly translate to human dosing, timing, and frequency; and therefore that Professor Thompson did not know the optimal dosing, timing, and frequency for the combination.

47.    Counterclaim-Defendants' actions were calculated to cause Compass damage and loss and were done with the unlawful and malicious purpose to cause such damage by inducing Compass's shareholders and investors to end their business relationships with Compass.

48.    As a result of Counterclaim-Defendants' actions, Compass has suffered damages in an amount to be proven at trial

**Demand for Jury Trial**

49.    Compass respectfully demands a jury trial on all issues so triable.

**Prayer for Relief**

50.    Compass prays for relief as follows:

A.    Awarding compensatory damages in an amount to be determined at trial;

B.    Awarding exemplary damages in an amount to be determined at trial;

C.     Awarding interest at the maximum legal rate on all sums awarded;

D.     Awarding reasonable attorneys' fees, as permitted by law;

E.     Awarding all costs of suit herein; and

F.     Awarding such other and further relief as the Court deems just and proper.

Dated: July 25, 2025

OF COUNSEL:

John M. Desmarais (admitted *pro hac vice*)
Steven M. Balcof (admitted *pro hac vice*)
Joze Welsh (admitted *pro hac vice*)
Asim Zaidi (admitted *pro hac vice*)
Gillian Moore (admitted *pro hac vice*)
Davis A. Gonsalves-DeDobbelaere (admitted
*pro hac vice*)
DESMARAIS LLP
230 Park Ave., 26th Fl. New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
JDesmarais@desmaraisllp.com
SBalcof@desmaraisllp.com
JWelsh@desmaraisllp.com
AZaidi@desmaraisllp.com
GMoore@desmaraisllp.com
DGgonsalves-dedobbelaere@desmaraisllp.com

By:     /s/_____
        Jean E. Lewis (Bar No. 27562)
        Justin A. Redd (Bar No. 18614)
        KRAMON & GRAHAM, P.A.
        750 East Pratt Street, Suite 1100
        Baltimore, MD 21202
        Telephone: (410) 752-6030
        Facsimile: (410) 539-1269
        jlewis@kg-law.com
        jredd@kg-law.com

        *Attorneys for Defendant*
        *Compass Pathfinder Limited*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-102(1)(c) on July 25, 2025.  A paper copy of this document will be delivered to the Court pursuant to Local Rule CV-105(1)(a).

*/s/*_____
Justin A. Redd
