**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| TERRAN BIOSCIENCES, INC., UNIVERSITY OF MARYLAND, BALTIMORE, and SCOTT THOMPSON,  :  :  :  :  :  : | |
| *Plaintiffs,*  : | Civil Action No. 1:22-cv-01956-ELH |
| v.  : | |
| COMPASS PATHFINDER LIMITED, EKATERINA MALIEVSKAIA, M.D., and GEORGE GOLDSMITH,  :  :  :  : | |
| *Defendants.*  : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE AND DISMISS COMPASS'S COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT. ...................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL POSTURE.................................................3

LEGAL STANDARDS ...............................................................................................................6

ARGUMENT ...............................................................................................................................7

I.     COMPASS'S COUNTERCLAIMS SHOULD BE STRUCK AS
       PROCEDURALLY DEFICIENT AND UNDULY PREJUDICIAL................................7

       A.     Compass Was Required To Seek Leave Before Filing These
              Counterclaims ....................................................................................................7

       B.     Even If Compass Had Sought Leave, It Lacked Good Cause To Amend ..............9

II.    COMPASS'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE
       TO STATE A CLAIM. ...............................................................................................13

       A.     Counterclaim Counts I and II Are Barred by Maryland's Three-Year
              Statute of Limitations........................................................................................13

       B.     Counterclaim Counts III and IV Are Barred as a Matter of Law by the
              Noerr-Pennington Doctrine................................................................................16

CONCLUSION...........................................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

*4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*,
No. 19-cv-01504, 2020 WL 13200228 (E.D. Va. July 10, 2020)............................................12

*Activevideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
No. 10-cv-248, 2011 WL 13113382 (E.D. Va. Mar. 1, 2011)..................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................7

*Bausch v. Philatelic Leasing, Ltd.*,
No. 93-cv-1685, 1994 WL 446758 (4th Cir. Aug. 19, 1994) (unpublished)...........................15

*Concordia Pharms. Inc. SARL v. Lazarus Pharms. Inc.*,
No. 18-cv-01658-HMH-JDA, 2019 WL 2502212 (D.S.C. May 17, 2019)...............................8

*Cook v. Howard*,
484 F. App'x 805 (4th Cir. 2012) (unpublished).....................................................................10

*Elite Ent., Inc. v. Khela Bros. Ent.*,
227 F.R.D. 444 (E.D. Va. 2005) ..........................................................................................7, 8

*Evergreen Sports, LLC v. SC Christmas, Inc.*,
No. 12-cv-911-HEH, 2013 WL 12432890 (E.D. Va. Sept. 11, 2013).....................................9

*First Nat'l. Bank v. First Nat'l. Bank of the S.*,
No. 07-cv-2182-HMH, 2008 WL 3166010 (D.S.C. Aug. 4, 2008)....................................8, 11

*Ground Zero Museum Workshop v. Wilson*,
813 F. Supp. 2d 678 (D. Md. 2011) ...................................................................................9, 10

*Herbert Core Drill, LLC v. Bros. Mech., Inc.*,
No. 24-cv-169, 2024 WL 4955281 (D. Md. Dec. 3, 2024) ....................................................15

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
335 F.3d 303 (4th Cir. 2003) ............................................................................................16, 17

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ...............................................................................................12

*Lee v. Safeway, Inc.*,
No. 13-3476-RDB, 2014 WL 4926183 (D. Md. Sept. 30, 2014) .........................................6, 7

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
    43 F.3d 922 (4th Cir. 1995) ............................................................................13

*Marcum v. Zimmer*,
    163 F.R.D. 250 (S.D.W.Va. 1995)..................................................................10

*Maxtena, Inc. v. Marks*,
    No. 11-cv-0945, 2013 WL 5964488 (D. Md. Nov. 7, 2013) ............................10

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    948 F. Supp. 2d 538 (D. Md. 2013)................................................................17

*Newport News Holdings Corp. v. Virtual City Vision, Inc.*,
    650 F.3d 423 (4th Cir. 2011) ..........................................................................12

*Nourison Rug Corp. v. Parvizian*,
    535 F.3d 295 (4th Cir. 2008) ..........................................................................10

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)..........................................................................................16

*RE/MAX LLC v. M.L. Jones & Assocs., Ltd.*,
    No. 12-cv-768-D, 2013 WL 4647517 (E.D.N.C. Aug. 29, 2013) .........................17

*State Ctr., LLC v. Lexington Charles Ltd. P'ship*,
    438 Md. 451 (2014) ........................................................................................17

*Tate v. Am. Gen. Life Ins. Co.*,
    627 F. Supp. 3d 480 (D. Md. 2022)................................................................14

*Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*,
    No. 11-cv-00025, 2013 WL 791313 (W.D. Va. Mar. 4, 2013) .........................12, 13

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*,
    728 F.3d 354 (4th Cir. 2013) ......................................................................17, 18

## <u>Rules/Statutes</u>

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 2, 6, 13

Fed. R. Civ. P. 12(f) ..............................................................................................1, 7

Fed. R. Civ. P. 15(a) ....................................................................................9, 10, 11

Fed. R. Civ. P. 15(a)(2)..........................................................................................2, 11

Fed. R. Civ. P. 16(b) ..................................................................................2, 9, 10, 11

*Md. Code Ann., Cts. & Jud. Proc. § 5-101* (West 2014) ................................................................14

Pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, Plaintiffs Terran Biosciences, Inc. ("Terran"), University of Maryland, Baltimore ("UMB") and Scott Thompson ("Thompson") (collectively, "Plaintiffs" or "Counterclaim Defendants") respectfully submit this brief in support of their Motion to Strike and Dismiss Compass's Counterclaims.

## PRELIMINARY STATEMENT.

Three years into this case and well after the applicable deadline, Compass Pathfinder Limited ("Compass") filed—without seeking leave—four new counterclaims. *See* ECF No. 208, Answer & Counterclaims ("Counterclaims"). Compass had multiple opportunities to assert counterclaims over the past three years, but did not do so. None of the new Counterclaims rely upon facts or evidence uncovered recently in discovery. Instead, these claims are based on information Compass had in hand since this dispute began, and certainly had in hand when Compass filed its Answer on March 27, 2025. Compass's belated assertion of these claims—***filing them after the deadline for amending pleadings***, after the deadline for substantial completion of discovery, and shortly before expert reports were due—threatens to disrupt the carefully crafted case schedule and delay resolution of this case. There is no reason for Compass's delay. Its amendments are not related to the addition of Dr. Malievskaia and Mr. Goldsmith as parties; the new Counterclaims are not being asserted by the new parties, and there is no reason why their addition justifies changing the scope of this long pending matter, or justifies Compass adding new claims long after its Answer was filed. Compass should not be permitted to derail this litigation. The Counterclaims are procedurally deficient, meritless and should be struck or dismissed.

*First*, Compass was required to seek leave to assert these claims but did not do so, and the Court can strike the Counterclaims for that reason. Compass purported to file the new claims as a response to the Fourth Amended Complaint ("FAC"). But that new complaint contained no new allegations or claims against Compass. The only changes in the FAC were to add two new

defendants. Every allegation in the FAC involving Compass already had been set out on February 6, 2024, in the Third Amended Complaint ("TAC") and was ***already answered*** by Compass on March 27, 2025 in its Answer (ECF No. 124). In these circumstances, Compass was required to seek leave for these new Counterclaims, and its failure to do so warrants striking the new unauthorized amendment of its pleading to add Counterclaims.

*Second*, even if Compass had sought leave, there is no basis to permit these amendments now. Compass's Counterclaims were raised ***after*** the Scheduling Order's May 19, 2025 deadline to amend pleadings, and ***after*** the Court-ordered July 23, 2025 deadline for substantial completion of document discovery. ECF Nos. 146, 184. Compass has no good cause, under either Rule 16(b) or under Rule 15(a)(2), for its long delay in asserting these claims. Introducing four new theories of liability *after* substantial completion of initial document production[1] is not only unduly prejudicial—it is indicative of an effort to delay the case, as it would necessarily prolong discovery.

*Third*, the amendments would be futile: Compass's Counterclaims fail to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Counts I and Count II are entirely based upon conduct that occurred in 2019 and are barred by Maryland's three-year statute of limitations. Counts III and IV each are predicated on the filing of this lawsuit and are barred as a matter of law by the *Noerr-Pennington* doctrine; Compass does not and cannot establish that the claims are objectively meritless "sham" litigation, particularly where this Court already has explained that

---

[1] The Court ordered July 23, 2025 as the deadline for substantial completion of document production. *See* ECF No. 184. In early July, the parties met and conferred regarding Compass's ability to meet the substantial completion deadline. Compass indicated that it could not meet the July 23, 2025 deadline for certain additional search terms, including documents relevant to damages and Plaintiffs' expert reports. The parties agreed that July 23, 2025 would remain the substantial completion deadline for the initial search terms and substantial completion of document production related to any additional terms would be extended to July 31, 2025. Due to this delay in document production, the parties requested to modify the deadlines for expert reports, which the Court approved on July 24, 2025. ECF No. 207.

Plaintiffs' Complaint stated an objectively plausible basis for the suit. *See* ECF No. 122. Because the new Counterclaims are both untimely and contrary to law, they should be dismissed or struck.

For all the reasons explained here, this Court should grant Plaintiffs' Motion to Strike and Dismiss Compass's Counterclaims.

## **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Three years ago Plaintiffs initiated this litigation against Compass for misappropriation of trade secrets and breach of contract claims. ECF No. 1. Compass moved to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction and failure to state a claim. ECF No. 24. Prior to any decision on the motion to dismiss, Plaintiffs filed an Amended Complaint, which was granted on April 7, 2023. ECF No. 33. Shortly thereafter, Plaintiffs moved to file a Second Amended Complaint on May 19, 2023, which added Thompson as a Plaintiff and asserted Count III, for unfair competition, and Counts IV-XI, which included common law claims for unjust enrichment, detrimental reliance, fraud and breach of contract. *See* ECF No. 45. Compass did not oppose the Second Amended Complaint (ECF No. 46), and this Court granted leave to file on June 2, 2023. ECF No. 47.

On January 4, 2024, Plaintiffs moved for leave to file the Third Amended Complaint, which added UMB as a plaintiff in the action and did not otherwise change the causes of action asserted from the Second Amended Complaint. ECF No. 67. Although Compass opposed the amendment, the Court granted leave to amend on February 6, 2024. ECF Nos. 79-80.  Compass filed its motion to dismiss the Third Amended Complaint on March 5, 2024. ECF No. 93. This Court denied that motion on March 11, 2025. *See* ECF No. 122. In its thorough decision, the Court rejected Compass's challenges to Plaintiffs' trade secret allegations and found that Plaintiffs had plausibly alleged the basis for their common law tort claims of fraudulent and negligent misrepresentation, fraudulent concealment and constructive fraud (Counts VII-X). *See id.* Compass subsequently filed

its answer to the Third Amended Complaint on March 27, 2025, which ***asserted no counterclaims***. ECF No. 124. This Court subsequently issued a Scheduling Order on April 24, 2025, which provided May 19, 2025, as the last date for amendment of pleadings or joinder of parties. ECF No. 146.

In compliance with this Court's Scheduling Order, on May 19, 2025, Plaintiffs moved for leave to file the FAC for the limited purpose of joining two defendants, Ekaterina Malievskaia, M.D., and George Goldsmith. ECF No. 157. Compass opposed the motion (ECF No. 160) arguing that "Plaintiffs' Motion comes after significant delay, which it cannot justify and, if granted, will upend the schedule ordered by this Court and significantly prejudice Compass."[2] *Id.* at 6. Specifically, Compass argued that the FAC was untimely and prejudicial because "Plaintiffs waited for over two and a half years, after filing four complaints, ***and*** after the Court entered a scheduling order" to file the FAC. *Id.* at 5. Although Compass opposed the motion (ECF No. 160), this Court permitted the amendment on July 11, 2025, concluding that "the factual allegations in the Proposed FAC (ECF 157-1) are ***essentially the same*** as those in the [Third Amended Complaint]" and as "***the claims remain the same***," the FAC would not alter the nature of the litigation. *See* ECF No. 197 at 2, 35 (emphases added).

On July 25, 2025, Compass filed an amended Answer and asserted its four new Counterclaims: Count I (fraudulent misrepresentation against UMB and Thompson), Count II (unfair competition against UMB and Thompson), Count III (unfair competition against all

---

[2] It is ironic that Compass argued that it would be prejudiced by Plaintiffs adding two parties who already were involved in the case (ECF No. 160), but apparently do not believe adding four substantive claims after initial substantial completion of discovery on July 23, 2025 would prejudice Plaintiffs.

Counterclaim Defendants) and Count IV (tortious interference with business relations against all Counterclaim Defendants). ECF No. 208.

In its factual allegations, Compass sets forth allegations that all relate to conduct that occurred in 2019:

(i) <u>Discussions Concerning Sponsoring Thompson's Ketanserin Research</u>: Compass alleges that beginning in May 2019, it began discussions concerning "sponsoring preclinical research relating to the pharmacokinetics of psilocybin" with Professor Todd Gould at UMB, who introduced Compass to Thompson. Specifically, Thompson proposed an experiment relating to the "sequential administration of ketanserin and psilocybin in rodents (the 'Ketanserin Research')." In these discussions, Thompson and Gould allegedly represented to Compass that they needed Compass to provide funding and psilocybin, a Schedule I drug, for the Ketanserin Research. Compass allegedly invested "significant resources" in negotiating a proposed agreement with UMB to sponsor this research between May and November 2019. *See* ECF No. 208 ¶¶ 9-12.

(ii) <u>Discovery of Alleged Misrepresentations</u>: Compass alleges that beginning on August 28, 2019, an abstract for Thompson's presentation at the Society for Neuroscience's annual meeting was published which indicated that experiments with psilocybin and ketanserin were already in progress. Compass alleges that it was at that time "surprised to discover" that the alleged research it had proposed sponsoring was already underway and requested calls with Thompson to verify if he had started experimentation. According to Compass, Thompson, "unequivocally confirm[ed]" that the Ketanserin Research had not started. Compass alleges it continued to engage in negotiations for sponsoring the potential research until Thompson presented on his research that was the basis for the August 2019 abstract on October 23, 2019. Compass alleges that its discussions with Thompson as well as the presentation "proved to Compass that Professor

Thompson had intentionally misrepresented" the situation concerning the Ketanserin Research. Compass claims it withdrew from any further negotiations based upon those alleged misrepresentations. *See* ECF No. 208 ¶¶ 13-16.

Based upon these allegations from 2019, Compass asserts Counts I and Count II against UMB and Thompson predicated on, among other things, (1) alleged fraudulent misrepresentations concerning the status of the Ketanserin Research in 2019, (2) a purported intention to deceive Compass in supplying psilocybin and funding the Ketanserin Research in 2019, and (3) damage from the allegedly lost time and energy spent negotiating the failed collaboration agreement in 2019. *See* ECF No. 208 ¶¶ 29-38.

Compass's factual allegations in Counts III and IV focus on Plaintiffs' filing of this lawsuit, asserting that Plaintiffs filed the suit in bad faith. *See id.* ¶¶ 17-26. Compass claims that Thompson could not have disclosed any trade secrets during discussions on proposed research funding, because Thompson supposedly did not possess trade secrets. *See id.* ¶¶ 18-24. These allegations are largely repackaged versions of arguments in Compass's prior motion to dismiss, attacking the Complaint's well-pleaded claims regarding Compass's misappropriation. *See* ECF No. 93. They echo Compass's claim that the trade secrets are not trade secrets at all because they were previously in the public domain—claims that have been denied by this Court. *See e.g.,* ECF Nos. 122, 161. Compass offers "information and belief" assertions to allege that Plaintiffs were not in possession of the Psilocybin Trade Secrets during the period in 2019 at issue. *See* ECF No. 208 ¶¶ 25-26, 40.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a counterclaim that fails to state a claim upon which relief can be granted. When ruling on a motion to dismiss, the court accepts the [counterclaim's] factual allegations as true and takes facts in the light most favorable to the plaintiff. *Lee v. Safeway, Inc.*, No. 13-cv-3476-RDB, 2014 WL 4926183, at *4 (D. Md. Sept.

30, 2014). The court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to plead a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court will not ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Lee*, 2014 WL 4926183, at *8 (dismissing a claim "[d]ue to Plaintiff's failure to allege any facts related to" elements of the cause of action). Under Federal Rule of Civil Procedure 12(f), the Court also has the discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## ARGUMENT

### I.    COMPASS'S COUNTERCLAIMS SHOULD BE STRUCK AS PROCEDURALLY DEFICIENT AND UNDULY PREJUDICIAL

#### A.    Compass Was Required To Seek Leave Before Filing These Counterclaims

*First*, Compass's Counterclaims should be struck because Compass did not request and obtain leave to amend to add its new Counterclaims. Courts in the Fourth Circuit determine whether counterclaims filed in response to an amended complaint can be filed as of right, or instead requires leave of court, by applying a common-sense "moderate approach," such that "an amended response may be ***filed without leave only when***" two conditions hold: (1) "the ***amended complaint changes the theory or scope of the case***," such that the response is needed to address a new scope of the case; and even then, (2) filing without leave requires that the amended response is proportional to the amendments in the complaint being responded to; "***the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint.***" *Elite Ent., Inc. v. Khela Bros. Ent.*, 227 F.R.D. 444, 446 (E.D. Va. 2005) (emphases added). Neither is true here.

The Counterclaims advance four new theories of liability that would change the scope and theory of the case. Prior to filing the Counterclaims on July 25, 2025, Compass never claimed that Thompson and UMB had made false statements concerning the Ketanserin Research with an intent to defraud Compass and damage Compass's business. Nor has Compass ever contended that the entire litigation was a sham. Courts in this Circuit routinely conclude that counterclaims filed in response to amended pleadings which expand the scope of the litigation and assert new theories of liability in comparison to minimal changes in the amended complaint, are not permitted to be raised without leave to amend.[3] For that reason alone, the Counterclaims should be struck.

Even if the Counterclaims did not change the scope of the case, Compass would still need leave to amend under the "proportionality" prong, because the amendments in the Counterclaims are not proportional to the amendments in Plaintiffs' FAC. The FAC did not change the theory or scope of the case ***at all*** regarding Compass; indeed, in allowing Plaintiffs' motion for leave to file the FAC, this Court determined that the "factual allegations in the [FAC] are ***essentially the same***

---

[3] *See, e.g., Elite Ent., Inc.,* 227 F.R.D. at 447-48 (striking defendants' amended counterclaims filed without leave that added six new claims because ***plaintiff's fourth amended complaint did not add any new claims or expand the scope or theory of the case*** and further denying leave to amend because no new facts supported introduction of new theories) (emphases added); *see also Concordia Pharms. Inc. SARL v. Lazarus Pharms. Inc.*, No. 18-cv-01658-HMH-JDA, 2019 WL 2502212, at *5, 8 (D.S.C. May 17, 2019), (granting motion to strike and dismiss amended counterclaims filed without leave because the amended complaint only added two defendants and made minor additions to claims and the changes in defendants' responsive pleadings which included three counterclaims that were not alleged in the original answer were much greater in scope and "bear no relation to the changes in Amended Complaint") *report and recommendation adopted sub nom. Concordia Pharms. Inc., S.A.R.L. v. Lazarus Pharms., Inc.*, No. 18-cv-1658-HMH, 2019 WL 2502189 (D.S.C. June 17, 2019); *First Nat'l. Bank v. First Nat'l. Bank of the S.*, No. 07-cv-2182-HMH, 2008 WL 3166010, at *2 (D.S.C. Aug. 4, 2008) (striking counterclaims and concluding that defendants were required to obtain leave from the court before including additional counterclaims in the amended answer and counterclaim, "[b]ecause the addition of these three counterclaims to the [d]efendants' responsive pleading far exceeded the scope and nature of the changes made in the amended complaint" "none of which altered the scope or nature of the litigation").

as those in the [Third Amended Complaint]," and "***the claims remain the same***" other than adding

two defendants. *See* ECF No. 197 at 2. Leave to amend was granted specifically because the FAC

***did not "meaningfully alter* the factual allegations"** from the Third Amended Complaint and

***would not "change the nature of the litigation." *See id.*** at 29-30 (emphases added). By stark

contrast, Compass's Counterclaims add four new theories of liability that were never before part

of the case and are disproportionate to the FAC's minimal changes.  *See Evergreen Sports, LLC v.*

*SC Christmas, Inc.*, No. 12-cv-911-HEH, 2013 WL 12432890, at *2 (E.D. Va. Sept. 11, 2013)

(concluding under the moderate approach that because "[d]efendants' [c]ounterclaim is not

coextensive in breadth with the changes in the amended complaint, defendants may not file their

[c]ounterclaim without leave of Court" and otherwise denying leave to amend); *Activevideo*

*Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 10-cv-248, 2011 WL 13113382, at *3 (E.D. Va.

Mar. 1, 2011) (concluding that the addition of the new counterclaim was procedurally faulty and

leave to amend was required because "the breadth of the changes in [plaintiff's] amended

counterclaims should have mirrored the changes in [defendant's] First Amended Counterclaims").

### B. Even If Compass Had Sought Leave, It Lacked Good Cause To Amend

Compass's Counterclaims should be dismissed for the independent reason that there is no

good cause to amend its existing answer to add the Counterclaims, particularly because

amendment now would be unduly prejudicial to Plaintiffs. "Motions for leave to amend

counterclaims are subject to the same standards as all motions for leave to amend pleadings."

*Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706 (D. Md. 2011). Amendment

of the pleadings after the deadline for amendment has passed implicates both Federal Rule of Civil

Procedure 15(a), governing amendments to pleadings, and Rule 16(b), governing scheduling

orders. *See id.* The Fourth Circuit determined that when the deadline for amendment set in the

scheduling order has passed, as is the case here, the good cause standard under Federal Rule of

Civil Procedure 16(b) "must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). In determining "good cause," Rule 16(b)'s "standard focuses on the timeliness of the amendment and the reasons for the tardy filing." *Maxtena, Inc. v. Marks*, No. 11-cv-0945, 2013 WL 5964488, at *11 (D. Md. Nov. 7, 2013). The primary consideration is whether the party displayed diligence, or a lack thereof, in pursuing and amending their claims. *Ground Zero Museum Workshop*, 813 F. Supp. 2d at 707; *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (unpublished) (noting that "'[g]ood cause' requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence," and "the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief [or that party's attorney] has not acted diligently in compliance with the schedule") (alteration in original) (citation omitted); *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D.W.Va. 1995) (discussing that "the touchstone of 'good cause' under Rule 16(b) is diligence"). Only once the "good cause" standard is satisfied, can the Court assess whether amendment should be permitted under the more lenient standard of Rule 15(a). *See Maxtena, Inc.*, 2013 WL 5964488, at *11 (noting that "[i]f a party fails to show good cause, the court's inquiry ends, and it need not consider whether the moving party meets the requirements of Rule 15(a)").

Here, Compass cannot meet the "good cause" standard pursuant to Rule 16(b). On April 24, 2025, the Court set a Scheduling Order which required all amendments to pleadings be filed by May 19, 2025. ECF No. 146 at 1. The Scheduling Order said this clearly, in bold: "**the schedule will not be changed except for good cause**." *See id.* (emphasis in original). Consistent with that schedule, Plaintiffs timely moved for leave to file the FAC on May 19, 2025, (ECF No. 157) which the Court granted on July 11, 2025 (ECF No. 197). Compass opposed the motion for leave to file the FAC, arguing that "Plaintiffs' Motion comes after significant delay, which it cannot justify

and, if granted, will upend the schedule ordered by this Court and significantly prejudice Compass." ECF No. 160 at 6. Specifically, Compass argued that the motion should be denied because "Plaintiffs waited for over two and a half years, after filing four complaints, **and** after the Court entered a scheduling order," Plaintiffs' "complete lack of justification highlights the improperly dilatory nature of Plaintiffs' actions here," and the "proposed amendment will only serve to upend the schedule ordered by this Court" and "render that schedule essentially impossible." *Id.* at 5, 8. Compass further argued that Plaintiffs' motion for leave was indicative of Plaintiffs' lack of diligence and bad faith because Compass is "entitled to resolution of the allegations against it in a timely manner, without last-minute and unjustified upheaval of the schedule that will draw the case out for an unknown amount of time." *Id.* at 9. Despite these arguments, Compass filed its answer along with the Counterclaims on July 25, 2025, more than two months **after** the deadline for amendment. *See* ECF No. 208. Compass never moved for any amendment of the Scheduling Order to submit its Counterclaims, and never even told Plaintiffs or the Court that any counterclaims were coming. Compass provides no explanation for its delay in filing Counterclaims that are not based upon any new facts uncovered in discovery and could have been added earlier in this litigation. As Compass has had three years to assert these claims, it cannot establish that it has acted with diligence in pursuing its claims to satisfy the good cause standard under Rule 16(b) and the Counterclaims should be stricken. *See First Nat'l. Bank*, 2008 WL 3166010, at *3 (denying leave to amend to add counterclaims that went beyond scope of amended complaint because defendants failed to demonstrate good cause warranting a modification of the scheduling order to permit the proposed amendment).

Compass also cannot satisfy the more lenient Rule 15(a)(2) standard for amendment of pleadings. Pursuant to Rule 15(a), "[a] district court has the discretion to deny leave to amend to

add a counterclaim based upon a balancing of the equities, including whether . . . additional discovery [would] be required." *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 440 (4th Cir. 2011) (internal quotation marks and citation omitted) (affirming denial of leave to amend to add counterclaim because defendant provided no good cause for delay in seeking to add counterclaim that would have necessitated additional discovery in the later stages of the case). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. . .[T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." *Id.* at 439 (alteration in original) (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)). Here, Plaintiffs will unquestionably be prejudiced by the addition of four new theories of liability, as it will necessitate expanded discovery from Terran, Thompson and UMB to Compass.[4] The deadline for initial substantial completion for discovery already passed on July 23, 2025, the parties have diligently been engaged in discovery and Compass's new Counterclaims will expand the scope of discovery and alter the nature of the litigation. *See 4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*, No. 19-cv-01504-AJTIDD, 2020 WL 13200228, at *2 (E.D. Va. July 10, 2020) (concluding that the newly added counterclaim, premised on a new theory of liability, was untimely and prejudicial because it "raises a range of factual and legal issues not within the scope of [defendant's] other claims, which had, to date, framed the scope of discovery"); *Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*, No. 11-cv-00025, 2013 WL

---

[4] Adding these Counterclaims now would require, as an example, substantial new discovery by Plaintiffs to Compass to defend against these claims—including Compass's purported reliance upon the alleged misrepresentations (Count I) and party and third-party discovery on the economic relationships and contracts that Compass alleges were interfered with (Count IV), as well as discovery on what actually caused any business interruptions or harm to whatever Compass contracts and economic relationships are at issue for that claim.

791313, at *3 (W.D. Va. Mar. 4, 2013) (denying leave to amend to add counterclaims in a case pending for more than two years, and holding that plaintiffs would suffer prejudice because even though no trial date has been set and discovery is not complete, "substantial efforts have already been expended by the parties to advance toward trial" and the parties "have crafted their discovery requests so far based on the claims already in the case").

Further, Compass's move to drastically expand the scope of the case at this juncture is indicative of tactical delay as Compass's primary argument in opposing the FAC was that the addition of two defendants who were already implicated in the litigation would delay resolution of the case and discovery. *See* ECF No. 197 at 28. Compass cannot square its previous position with the addition of four new theories of liability, which would only seek to further delay discovery in this case. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 940 (4th Cir. 1995) (affirming denial of leave to amend to add new counterclaims because defendant was in possession of information concerning new counterclaims before the original answer was filed and waiting until close to the end of discovery to add new counterclaims prejudices plaintiffs as it would significantly change the nature of the litigation). As such, Compass's Counterclaims are procedurally deficient and should be struck or dismissed in their entirety.

## II.    COMPASS'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In the alternative, this Court should dismiss Compass's Counterclaims because Counts I-IV fail to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6).

### A.    Counterclaim Counts I and II Are Barred by Maryland's Three-Year Statute of Limitations.

Counterclaims Count I and Count II are subject to Maryland's three-year statute of limitations and should be dismissed because Compass had notice of its claims as early as August 2019. In Maryland, claims for fraudulent misrepresentation (Count I) and unfair competition

(Count II) must be filed "within three years from the date it accrues." *See Md. Code Ann., Cts. & Jud. Proc. § 5-101* (West 2014). In determining when the statute of limitations begins to run, "the concept of inquiry notice controls" and a party is charged with inquiry notice when the party has knowledge of circumstances which would cause a reasonable person in the position of the party "to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged wrong." *See Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 494 (D. Md. 2022) (internal quotation marks and citations omitted).

Counterclaim Count I for fraudulent misrepresentation against UMB and Thompson is untimely because Compass was on notice of any potential claim in 2019. In its Counterclaims, Compass alleges that Thompson, and UMB through Thompson, made fraudulent representations to Compass between May to November 2019, which included "requesting funding for the Ketanserin Research" and "'unequivocally confirming'" that the research had not begun. *See* ECF No. 208 ¶ 30. Specifically, Compass points to its "discover[y]" as early as August 28, 2019, that Thompson had allegedly represented in an abstract poster to be presented at the Society for Neuroscience's annual meeting that the Ketanserin Research was already underway, which allegedly contradicted representations that Thompson had made to Compass previously. *See id.* ¶¶13-14. After Compass was "surprised to discover" that the alleged research was already underway, Compass undertook to investigate whether the research was complete and scheduled a call with Thompson, where he allegedly "unequivocally confirm[ed]" that the Ketanserin Research had not started. *Id.* ¶¶ 14-15.

Compass's own allegations show it was on notice of the supposed fraud by October 2019, rendering the claims untimely. The Counterclaim's own theory is that Compass knew, at that time, of the alleged claims—even saying that "discussions in person with Professor Thompson as well

as his presentation **proved to Compass** that Professor Thompson had intentionally misrepresented the situation." *See* ECF No. 208 ¶ 16. Compass subsequently withdrew from negotiations to provide psilocybin. *Id.* Compass has pointed to no evidence that it later discovered the alleged fraud after 2019, and instead says the opposite; Compass plainly states that it believed **at the time** it had knowledge that Thompson had "intentionally misrepresented the situation" in October 2019. *See id*. That more than put Compass on inquiry notice of any potential claims. *See Herbert Core Drill, LLC v. Bros. Mech., Inc.,* No. 24-cv-169, 2024 WL 4955281, at *8 (D. Md. Dec. 3, 2024) (discussing that fraud claims premised upon conduct in 2019 would fall outside the three-year statute of limitations); *see also Bausch v. Philatelic Leasing, Ltd.,* No. 93-cv-1685, 1994 WL 446758 at *4 (4th Cir. Aug. 19, 1994) (unpublished) (affirming dismissal of misrepresentation claims as time barred because appellants could not identify another date upon which they contend that their causes of action accrued to be timely). As Count I was filed nearly six years **after** Compass says events "proved" to Compass that it had a claim, Count I is well beyond the three-year statute of limitations and should be dismissed.

Count II for unfair competition against UMB and Thompson is similarly barred, as it is predicated upon the same alleged misrepresentations that occurred in 2019. *See e.g.*, ECF No. 208 ¶¶ 9-16, 36 (alleging that Thompson and UMB acted in bad faith in 2019 by representing that the "Ketanserin Research was not yet underway," representing that they needed funding, and attempting to procure funding from Compass, and causing Compass to expend monetary and human resources negotiating a plan to collaborate on the research that was "already underway"). Compass has again failed to cite to **any** new evidence that it discovered any of these alleged representations after 2019. For all these reasons, Compass Counts I and Count II are barred by the statute of limitations and should be dismissed.

-15-

**B.      Counterclaim Counts III and IV Are Barred as a Matter of Law by the Noerr-Pennington Doctrine.**

Compass's Count III and Count IV Counterclaims for unfair competition and tortious interference, which allege that this litigation is a sham and brought in bad faith, are baseless and barred as a matter of law by the *Noerr-Pennington* doctrine. *See* ECF No. 208 ¶¶ 40, 46. "The *Noerr-Pennington* doctrine grants First Amendment immunity to those who engage in petitioning activity," which includes the pursuit of litigation. *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003). Although the doctrine initially developed in the antitrust context, the doctrine has now been applied to business torts, including unfair competition and tortious interference claims, at issue here. *See id.*

The *Noerr-Pennington* doctrine is subject to a narrow exception for "sham litigation." The "sham litigation exception" is a two-prong test which requires a showing that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." *Id.* A court may only move to the second part of the test and examine the litigant's subjective motivation if the challenged litigation is objectively meritless. *See id.* The sham litigation exception is a high bar as "litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the objective baselessness requirement." *IGEN Int'l, Inc.*, 335 F.3d at 312.

Compass bears the burden of establishing that the litigation is a sham. *See id.* (discussing that "[p]rocedurally, this circuit's precedent holds that upon [ ] assertion of *Noerr-Pennington* as an affirmative defense, [defendant] has the burden of proving that its [opponent's] conduct was a

sham") (internal quotation marks and citation omitted). Compass fails to meet this burden. Compass cannot establish the first prong of the test that this lawsuit is "objectively baseless." Indeed, this Court in a thoroughly detailed opinion denied Compass's motion to dismiss based upon the same factual allegations at issue in the FAC and held that Plaintiffs' claims are plausible. *See* ECF No. 122. Courts in this Circuit dismiss counterclaims predicated upon the sham litigation exception, where like here, the Court has already determined that the plaintiff had a plausible basis for its claims. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.,* 948 F. Supp. 2d 538, 557, 564 (D. Md. 2013) (concluding that defendants counterclaim for unfair competition premised in part upon plaintiff allegedly engaging in sham litigation should be dismissed because "[i]n this case, not only did the Court deny [defendant's] Motion to Dismiss, but it also granted [plaintiff] a preliminary injunction" and holding that the lawsuit therefore cannot be deemed objectively baseless); *RE/MAX LLC v. M.L. Jones & Assocs., Ltd.*, No. 12-cv-768-D, 2013 WL 4647517, at *4 (E.D.N.C. Aug. 29, 2013) (dismissing counterclaims for unfair competition because "[t]he allegations in RE/MAX's complaint confirm that RE/MAX had probable cause to file a trademark-infringement action against [defendants]" and therefore defendants failed to plausibly allege that "no reasonable litigant could realistically expect success"); *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 488–89 (2014) (discussing that the Maryland Circuit Court dismissed a belatedly filed counterclaim for tortious interference that averred the filing of the lawsuit was brought in bad faith on the grounds that the *Noerr–Pennington* doctrine barred the counterclaim).

A district court can adjudicate the applicability of the *Noerr-Pennington* doctrine on a motion to dismiss if "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d

354, 360 (4th Cir. 2013) (internal quotation marks and citation omitted). Here, all facts necessary to asserting the *Noerr-Pennington* doctrine appear on the face of complaint because Compass does not plead any allegations that this litigation is objectively baseless as required to assert the exception. Indeed, Compass has pled Count III "on information and belief" that this litigation was not brought "with honesty and fairness," but Compass does not provide any new allegations that would undermine this Court's prior determination that Plaintiffs' claims are plausibly alleged. *See* ECF No. 208 ¶ 40. For all these reasons, Compass has failed to meet its burden that the sham litigation exception applies. As Compass cannot establish the first prong of the sham litigation exception, the *Noerr-Pennington* doctrine applies and Counts III and IV are barred as a matter of law and should be dismissed.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Strike and Dismiss Compass's Counterclaims.

Dated: August 15, 2025

/s/ Steven C. Cherny
Steven C. Cherny (*pro hac vice*)
Matthew A. Traupman (*pro hac vice*)
Nicola R. Felice (*pro hac vice*)
Abigail M. Graegin (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
stevencherny@quinnemanuel.com
matthewtraupman@quinnemanuel.com
nicolafelice@quinnemanuel.com
abbygraegin@quinnemanuel.com

/s/ Patrick D. Curran
Patrick D. Curran (*pro hac vice*)
Kathleen Marini (*pro hac vice*)
Ryan P. Gorman (*pro hac vice*)
Alexandra O. Schelle (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
patrickcurran@quinnemanuel.com
kathleenmarini@quinnemanuel.com
ryangorman@quinnemanuel.com
alexandraschelle@quinnemanuel.com

Robert S. Brennen (Fed. Bar No. 04499)
Megan J. McGinnis (Fed. Bar No. 12810)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
T/F: (410) 385-3727
rbrennen@milesstockbridge.com
mmcginnis@milesstockbridge.com

Ramsay M. Whitworth (Fed. Bar #26251)
Email: rwhitworth@silvermanthompson.com
Andrew M. Harvey (Fed. Bar #21925)
Email: aharvey@silvermanthompson.com
SILVERMAN, THOMPSON, SLUTKIN & WHITE
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432

*Attorneys for Plaintiffs Terran Biosciences,
Inc. and Professor Scott Thompson*

/s/ Steven E. Tiller
Steven E. Tiller (Bar #11085)
WHITEFORD, TAYLOR & PRESTON LLP
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9425
Facsimile: (410) 223-4325
stiller@whitefordlaw.com

*Attorney for Plaintiff
University of Maryland, Baltimore*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 15th day of August 2025, a copy of Memorandum of Law in Support of Plaintiffs' Motion to Strike and Dismiss Compass's Counterclaims was served via CM/ECF on all counsel of record.


/s/ *Megan J. McGinnis*
Megan J. McGinnis