**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

TERRAN BIOSCIENCES, INC., UNIVERSITY OF MARYLAND, BALTIMORE, and SCOTT THOMPSON,

*Plaintiffs,*

v.

COMPASS PATHFINDER LIMITED, EKATERINA MALIEVSKAIA, M.D., and GEORGE GOLDSMITH,

*Defendants.*

Civil Action No. 1:22-cv-01956-ELH

**PUBLIC REDACTED VERSION**

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANTS' EXPERT DR. BRYAN ROTH**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. DR. ROTH'S OPINIONS REGARDING WHAT IS ALLEGEDLY "KNOWN OR READILY ASCERTAINABLE" ARE BASED ON THE WRONG LAW ........ 3

II. DR. ROTH'S OPINIONS REGARDING THE '950 APPLICATION AND ITS ALLEGED OBVIOUSNESS OVER PEREZ SHOULD BE EXCLUDED AS UNRELIABLE ........ 6

III. DR. ROTH'S OPINIONS REGARDING THE PATENT OFFICE AND PATENT PROSECUTION PRACTICE SHOULD BE EXCLUDED AS UNHELPFUL AND UNRELIABLE ........ 11

IV. ROTH'S OPINIONS REGARDING LICENSING AND THE VALUE OF THE TRADE SECRETS VIS-À-VIS PEREZ SHOULD BE EXCLUDED AS UNHELPFUL AND UNRELIABLE ........ 13

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page**

## Cases

*3M v. Pribyl*,
259 F.3d 587 (7th Cir. 2001) ....................3

*AirFacts, Inc. v. de Amezaga*,
909 F.3d 84 (4th Cir. 2018) ....................3, 4, 14

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
2018 WL 514923 (N.D. Cal. Jan. 23, 2018) ....................7, 14

*Bryte ex rel. Bryte v. Am. Household, Inc.*,
429 F.3d 469 (4th Cir. 2005) ....................2

*CardioVention, Inc. v. Medtronic, Inc.,*
483 F. Supp. 2d. 830 (D. Minn. 2007) ....................10

*Carter Prods., Inc. v. Colgate-Palmolive Co.*,
130 F. Supp. 557 (D. Md. 1955) ....................9

*Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*,
823 F. Supp. 2d 334 (D. Md. 2011) ....................2

*Celeritas Techs., Ltd. v. Rockwell Intern. Corp.*,
150 F.3d 1354 (Fed. Cir. 1998) ....................9

*ClearOne Advantage, LLC v. Kersen*,
756 F. Supp. 3d 30 (D. Md. 2024) ....................8

*Curve Toys, Inc. v. PlayWood Toys, Inc.*,
342 F.3d 714 (7th Cir. 2003) ....................7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ....................2

*Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*,
393 F.3d 755 (8th Cir. 2005) ....................10

*Gart v. Logitech, Inc.,*
254 F.3d 1334 (Fed. Cir. 2001) ....................15

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928 (N.D. Cal. 2015) ....................12

*Imperial Chem. Indus. v. Nat'l Distillers*,
342 F.2d 737 (2d Cir.1965)........................................................................................3

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974)..............................................................................................7, 9

*Life Spine, Inc. v. Aegis Spine, Inc.*,
8 F.4th 531 (7th Cir. 2021) ...............................................................................10, 14

*Lowndes Products, Inc. v. Brower*,
259 S.C. 322, 191 S.E.2d 761 (1972) .......................................................................3

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995).....................................................................................15

*Nix v. Chemours Co. FC, LLC*,
No. 7:17-CV-189-D, 2025 WL 2924613 (E.D.N.C. Sept. 30, 2025) .......................13

*Oglesby v. Gen. Motors Corp.*,
190 F.3d 244 (4th Cir. 1999) .....................................................................................2

*Palantir Techs. Inc. v. Abramowitz*,
No. 19-CV-06879-BLF, 2022 WL 22913842 (N.D. Cal. Nov. 3, 2022)................2, 3, 6, 9, 10

*Raybestos-Manhattan, Inc. v. Rowland*,
460 F.2d 697 (4th Cir. 1972) .....................................................................................7

*Servo Corp. of America v. General Electric Co.*,
393 F.2d 551 (4th Cir.1968) .......................................................................................8

*SkinMedica, Inc. v. Histogen Inc.*,
869 F. Supp. 2d 1176 (S.D. Cal. 2012)..................................................................4, 7, 8, 10

*The Medicines Co. v. Mylan Inc.*,
No. 11-CV-1285, 2014 WL 1516599 (N.D. Ill. Apr. 17, 2014) ..............................12

**Statutes**

Md. Code, Com. Law § 11-1201(e).................................................................................8

Uniform Trade Secrets Act ..............................................................................................7

**Other Authorities**

Restatement (First) of Torts § 757 ...............................................................................7, 8

Fed. R. Civ. P. 702 ......................................................................................................1, 2, 3

D. Md. Local Rule 805(1) ..... 15

## INTRODUCTION

Rule 702 and Daubert exist to ensure that expert testimony is both reliable and relevant. Dr. Roth's opinions in paragraphs 454-85, 595, 608-09, 612-21, 626-27, and 630 of his Supplemental Rebuttal Report satisfy neither requirement. As such, contrary to Defendants' "kitchen sink" motions to exclude every one of Plaintiffs' experts' opinions in their entirety, Plaintiffs seek exclusion of these discrete opinions that very clearly ignore the governing framework for combination trade secrets, apply the wrong legal standard, and venture far outside Dr. Roth's expertise.

***First***, Dr. Roth never analyzes the trade secrets as a unified whole. As the Court has recognized, Plaintiffs' trade secrets are not isolated facts—they are a specific, integrated method for reducing or eliminating psilocybin's hallucinatory effects while preserving its antidepressant benefits involving a combination of elements. Dkt. 161 at 26 (referring to the trade secrets as "combination trade secrets"). The law is clear that a trade secret can exist in a unique combination of known elements. Dr. Roth ignores that principle entirely, cherry-picking discrete pieces of prior art and declaring the combination "known" from those individual pieces. That is not the correct inquiry.

***Second***, Dr. Roth conflates trade secret law with patent law, treating the U.S. Patent and Trademark Office's ("PTO") obviousness rejection of the '950 application as dispositive of whether Plaintiffs' trade secrets were "known or readily ascertainable." Courts have made clear that novelty and nonobviousness are not required for trade secret protection. Dr. Roth's reliance on patent standards is legally improper and unhelpful to the jury.

***Third***, Dr. Roth offers opinions on patent prosecution practices, licensing requirements, and hypothetical PTO actions—areas in which he has no expertise. These opinions are speculative, unsupported, and will only confuse, not help, the jury.

Allowing these opinions would inject the wrong law, wrong methodology, irrelevant speculation, and unnecessary confusion into the case. The Court should thus exclude the opinions in paragraphs 454-85, 595, 608-09, 612-21, 626-27, and 630, and preclude Dr. Roth from offering these or similar opinions at trial.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." In essence, the trial court must ensure the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

For the proffered evidence to be sufficiently reliable it "must be derived using scientific or other valid methods" and not based on mere "belief or speculation." *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)); *see also Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 477 (4th Cir. 2005). And for the proffered opinion to be relevant, it "must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Casey*, 823 F. Supp. 2d at 341 (quoting *Daubert*, 509 U.S. at 591). As such, expert testimony must be based on a correct legal framework and reliably applied so that it will assist the trier of fact. Expert opinions that apply the wrong rule or that do not fit the disputed issue should be excluded under *Daubert*. *Palantir Techs. Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2022

WL 22913842, at *5 (N.D. Cal. Nov. 3, 2022) ("The Court therefore precludes Mr. Laney from offering these opinions because his analysis applies the wrong legal standard and would serve only to confuse the jury.").

## ARGUMENT

### I. DR. ROTH'S OPINIONS REGARDING WHAT IS ALLEGEDLY "KNOWN OR READILY ASCERTAINABLE" ARE BASED ON THE WRONG LAW

Dr. Roth's Section XII analysis never undertakes an integrated assessment of whether the combination of elements that make up Plaintiffs' trade secrets, as a whole, are known or readily ascertainable. Ex. 1, Roth Rebuttal Rpt. Instead, he reasons that because the literature mentions discrete aspects of the trade secrets, such as, for example, the fact that ketanserin can block the hallucinations caused by psilocybin, the trade secret combination must have been generally known. That is not the proper inquiry. As such, paragraphs 454-473 in Section XII are not helpful to the jury and should be excluded under Rule 702.

The law is clear that "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain," so long as their "unique combination[] affords a competitive advantage." *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 96 (4th Cir. 2018); *see also 3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001) (same); *see Lowndes Products, Inc. v. Brower*, 259 S.C. 322, 328, 191 S.E.2d 761 (1972) ("A trade secret can exist in the unique combination of otherwise known components; although each of its parts, by itself, may be in the public domain, the unified process, design and operation of the combination may be the essence of the secret."); *Imperial Chem. Indus. v. Nat'l Distillers*, 342 F.2d 737, 742 (2d Cir.1965) ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret."). And, as the Court

expressly recognized here***, the trade secrets in this case are properly characterized as "combination trade secrets***." Dkt. 161 at 25-26; *id.* at 20 (recognizing Plaintiffs' position that they "'have not claimed time points, dosing, frequency, or other parameters as general categories of information[,]' but have instead 'tethered' those 'parameters . . . to the sequential administration of a 5-HT2A antagonist followed by psilocybin'"). Given this, the proper analysis is whether the combination—the integrated method that Plaintiffs claim—was publicly known or readily ascertainable, not whether isolated pieces have appeared in prior art. *See SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1194 (S.D. Cal. 2012) (explaining that the relevant question was "whether the '494 patent publicly disclosed the Hair Growth Project trade secret in the correct combination"). The existence of public elements does not defeat a trade secret in the combination. *AirFacts*, 909 F.3d at 96; *SkinMedica*, 869 F. Supp. 2d at 1194 ("A trade secret may [be] comprised of partly or entirely non-secret elements and still merit protection.").

Despite this, Dr. Roth never examines whether the trade secrets, as a unified whole, were known or readily ascertainable. Rather, Dr. Roth's analysis in Section XII relies on papers (Vollenweider, Carter, Winter, Quednow, and Kometer) that examine whether a 5-HT2A antagonist reduces the psychedelic effects of psilocybin under various experimental paradigms. For example, Dr. Roth characterizes Vollenweider, Carter, Winter, and Kometer as disclosing "that psilocybin's hallucinatory, psychedelic effects were due to activation of the 5-HT2A receptor." Ex. 2, Roth Supp. Rebuttal Rpt. ¶ 462. He also states that Vollenweider, Carter, Quednow and Kometer disclose "that ketanserin blocks psilocybin's hallucinatory, psychedelic effects." *Id.* ¶ 463. And he contends that Vollenweider, Carter, Winter, Quednow, and Kometer disclose "what experimental designs regarding dosing and timing would be effective in blocking psilocybin's hallucinatory, psychedelic effects when pretreating with ketanserin." *Id.* ¶ 464. The trade secrets

are not, however, that psilocybin's hallucinatory effects are due to activation of the 5-HT2A receptor, that ketanserin can block the hallucinatory effects of psilocybin, or that certain doses and timing are effective for blocking the hallucinatory effects of psilocybin with a 5-HT2A antagonist. The trade secrets are [redacted]. Ex. 3, Barrett Opening Rep. ¶ 60. Indeed, by his own admission, Dr. Roth only analyzes whether Vollenweider, Carter, Quednow, Winter, and Kometer disclose "***aspects of the purported trade secrets***," Ex. 2 ¶ 465, not whether they disclose ***all of the aspects*** of the trade secrets together as a unified method of treatment, which is the proper analysis.

Similarly, and as explained further below, Dr. Roth also fails to analyze whether the Perez patent family discloses the same integrated configuration that are Plaintiffs' trade secrets. Rather, Dr. Roth makes clear that Perez discloses only broad concepts of combining a tryptamine with a 5-HT2A antagonist. Ex. 2 ¶ 455. For example, Dr. Roth contends that "[t]he focus of the invention" in Perez is "on a treatment that includes "(i) a compound which promotes neurogenesis but has hallucinogenic or psychedelic side effects, and (ii) a 5-HT2A receptor antagonist which prevents, alleviates and/or removes the hallucinogenic or psychedelic side effects caused by the first compound." *Id.* ¶ 455; *see also id.* ¶ 469 ("Perez discloses that '[i]n a preferred embodiment, the individual who is already being administered a 5-HT2A receptor antagonist and is then administered a compound described by formula (I) will have the compound described by formula

(I) stimulate the proliferation and/or differentiation of neural stem cells.'"). He does not (and cannot) explain how that amounts to a disclosure of the trade secrets which require [redacted] Ex. 3 ¶ 60.

The analysis conducted by Dr. Roth is legally insufficient. Indeed, another court has rejected this same methodology when assessing the value of a combination trade secret. In *Palantir Techs. Inc. v. Abramowitz*, the district court excluded an expert opinion evaluating the independent economic value of combination trade secrets relating to data sources because the expert "failed to analyze whether the combinations of the data sources were well known and instead analyzed only whether the separate data sources themselves were well known." 2022 WL 22913842, at *4. The district court explained that the correct methodology was analyzing "whether the[] combinations were known." *Id.* at *5. Because Dr. Roth indisputably did not undertake an analysis of the combination trade secrets in this case, his opinions in paragraphs 454-473 must be excluded as unhelpful and unreliable.

## II. DR. ROTH'S OPINIONS REGARDING THE '950 APPLICATION AND ITS ALLEGED OBVIOUSNESS OVER PEREZ SHOULD BE EXCLUDED AS UNRELIABLE

As part of Dr. Roth's opinions that the trade secrets were generally known or readily ascertainable and thus lack value, he relies on the PTO's non-final rejection of Dr. Thompson's '950 patent application, which found the pending claims of that application obvious over WO 2019/081764 to Perez in view of WO 2018/135943 to Kucuksen. Ex. 2 ¶¶ 481-85. The fact that the '950 application was found obvious in view of Perez and Kucuksen, however, is not dispositive of whether the trade secrets were known or readily ascertainable for at least two reasons. First,

the patent laws of novelty and nonobviousness are not applicable to the determination of whether Dr. Thompson's discovery is a trade secret. Second, that ***the '950 application*** was found obvious in view of Perez says nothing of whether ***the trade secrets*** were known or reasonably ascertainable from Perez. Dr. Roth conducts no comparative analysis of the full scope of the trade secrets versus what was disclosed in the '950 application, nor does he compare the full scope of the trade secrets to what is disclosed in Perez. Rather, Dr. Roth assumes without analysis that the '950 patent discloses and claims the trade secrets and just rubber stamps the Patent Office's obviousness rejection as determinative of whether the trade secrets were known from Perez. Dr. Roth's opinions should thus be excluded as unreliable, conclusory and likely to confuse the jury given the inapplicability of patent law to claims about trade secret misappropriation.

"The determination of secrecy under the [Uniform Trade Secrets Act] is not the same as the PTO's decision whether an invention is obvious in view of the prior art, and it does not follow as a matter of law that something rejected by the PTO as obvious can never be part of a protectable trade secret." *SkinMedica*, 869 F. Supp. 2d at 1195. "Novelty and invention are not requisite for a trade secret as they are for patentability," Restatement (First) of Torts § 757 (comment b), and thus, "***a trade secret need not be novel or unobvious***." *Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 724 (7th Cir. 2003) (emphasis added); *see Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974) ("Novelty, in the patent law sense, is not required for a trade secret[.]"); *Raybestos-Manhattan, Inc. v. Rowland*, 460 F.2d 697, 700 (4th Cir. 1972) ("[U]nlike a patent, novelty and invention are not requisite for a trade secret."); *cf. BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *4, 9 (N.D. Cal. Jan. 23, 2018) ("[D]isclosures of combination trade secrets are not tested under the same novelty rubric applied in patent infringement cases."). Rather, a trade secret is any type of information, "including a formula, pattern, compilation, program,

device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Md. Code, Com. Law § 11-1201(e); *ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30, 41 (D. Md. 2024) (noting that the MUTSA and DTSA have a "functionally identical definition of the term" trade secret). Notably, trade secrets "might consist of several discrete elements, any one of which could have been discovered by study of material available to the public," *Servo Corp. of America v. General Electric Co.*, 393 F.2d 551, 554 (4th Cir.1968), and thus "[a] trade secret may be a device or process . . . which is clearly anticipated in the prior art or one which is merely a mechanical improvement that a good mechanic can make." Restatement (First) of Torts § 757 (comment b). "[R]egardless of whether a patent application is accepted or rejected, a plaintiff may certainly have a viable trade secret claim where the 'implementation details and techniques' or other elements of the trade secret go beyond what was disclosed in the patent." *SkinMedica*, 869 F. Supp. 2d at 1195; *id.* at 1194 ("A trade secret may [be] comprised of partly or entirely non-secret elements and still merit protection.").

Two sections of Dr. Roth's report conflate the standards for determining whether Plaintiffs' trade secrets are known or readily ascertainable with the inapplicable patent law standards for novelty and nonobviousness. In Section XII.C.2, Dr. Roth opines that the trade secrets at issue in this case were generally known and readily ascertainable because the '950 application was rejected by the patent office as obvious over Perez. Ex. 2 ¶ 485. And then, in Section XIV.C.5, Dr. Roth similarly asserts that "[b]ecause the '950 application was rejected as obvious in light of Perez, it is [his] opinion that the purported trade secrets were also obvious" and that they, thus, have no

value. Ex. 2 ¶ 621. In both cases, Dr. Roth relies on the Patent Office's obviousness rejection to conclude that the trade secrets were disclosed by Perez and thus known or readily ascertainable from Perez. This analysis is improper on its face because it contravenes the caselaw that novelty and nonobviousness are not required for a trade secret. *See Kewanee Oil*, 416 U.S. at 476 ("Novelty, in the patent law sense, is not required for a trade secret."); *Carter Prods., Inc. v. Colgate-Palmolive Co.*, 130 F. Supp. 557, 578 (D. Md. 1955) ("A trade secret need not be patentable. . . . The doctrine of 'prior art', which the defendant invokes as a shield, is of vital importance in patent cases, but it is not so significant in this case."); *see also Celeritas Techs., Ltd. v. Rockwell Intern. Corp.*, 150 F.3d 1354, 1358 (Fed. Cir. 1998) (finding that "reliance on the [patent] prosecution history and the prior art submitted to the PTO is misplaced" in upholding a jury verdict of trade secret misappropriation). Specifically, it does not follow that because the '950 patent application was rejected as obvious in view of Perez, Perez discloses the trade secrets, and thus those secrets were known as of Perez's publication date. Dr. Roth's opinions regarding the '950 application's obviousness rejection should thus be excluded for applying the wrong law. *See Palantir*, 2022 WL 22913842, at *5.

Moreover, Dr. Roth never even sets forth the standards for anticipation and obviousness, nor does he make any effort to explain how those standards differ from the standards applicable to determining if information is generally known. Ex. 2 ¶¶ 24-33. And critically, Dr. Roth fails to compare the '950 application to Dr. Barrett's articulation of the trade secrets in order to conclude that the '950 application actually discloses the trade secrets. Instead, Dr. Roth just cites to portions of the '950 application specification and then states, without explanation, that those portions disclose the trade secrets. Ex. 2 ¶¶ 479-80. Without first determining whether the '950 application discloses the entire scope of the combination trade secrets as Dr. Barrett defined them, Dr. Roth's

opinion that the PTO's obviousness rejection demonstrates that the trade secrets were known is entirely unfounded. *See SkinMedica*, 869 F. Supp. 2d at 1195 ("[A] plaintiff may certainly have a viable trade secret claim where the 'implementation details and techniques' or other elements of the trade secret go beyond what was disclosed in the patent."); *see also Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540–41 (7th Cir. 2021) ("[A] company can maintain trade secret protection in the undisclosed aspects of a product, even if it has publicly disclosed other aspects of the same product.").

And finally, Dr. Roth's opinions regarding the prosecution history of the '950 patent application should be excluded as confusing and unhelpful to the jury who will interpret the PTO's obviousness rejection as a per se determination that the trade secrets were known or readily ascertainable. *Palantir*, 2022 WL 22913842, at *5 (excluding an opinion applying the wrong law as both unhelpful and confusing to the jury); *cf. CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 843 (D. Minn. 2007) (excluding PTO rejection because "the jury may mistakenly believe that a government agency has determined" an element of the trade secret claim); *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 764 (8th Cir. 2005) ("the [PTO's] opinion had the potential to unfairly prejudice the defendants if the jury mistakenly viewed it as an official government position on the critical confusion issue that the jury had to decide."). The jury is unlikely to be able to discern the nuanced differences between patent and trade secret law, and Dr. Roth's opinions make no effort to assist the jury in that exercise. Instead, Dr. Roth's opinions make it seem as though the standards for determining whether something is "known or readily ascertainable" are equivalent to the PTO's standards for obviousness. As noted above, the standards are not equivalent. And thus, even if the '950 prosecution history had some probative value (it does not), it would be substantially outweighed by the likelihood that such evidence would

cause confusion. The jury will be unable to properly weigh this evidence without a detailed explanation of the differences between patent and trade secret law, as well as the role of the PTO in determining patent eligibility, which Dr. Roth did not include in his report, nor is he qualified to opine on. To prevent the jury from accepting the PTO's rejection as determinative of a key element of Plaintiffs' claim for trade secret misappropriation, the Court should exclude Dr. Roth's opinions regarding the prosecution history of the '950 application.

## III. DR. ROTH'S OPINIONS REGARDING THE PATENT OFFICE AND PATENT PROSECUTION PRACTICE SHOULD BE EXCLUDED AS UNHELPFUL AND UNRELIABLE

Dr. Roth is Defendants' technical expert on trade secret misappropriation. His background is in biochemistry, pharmacology, and neurobiology. Ex. 1 at Ex A. He has no expertise in patent office practices or patent drafting, yet he offers opinions on what the patent office would have likely done when reviewing the claims of Compass's '611 application, as well as what would constitute standard practice when drafting and prosecuting applications like the '611 application. These opinions should be excluded both because they are unhelpful to the jury and outside Dr. Roth's expertise.

Specifically, Dr. Roth opines that "[t]o the extent any potential claims relating to maintaining antidepressant effects with a combination of 5-HT2A antagonist and psilocybin were recited in the '61[1] Application, the Patent Office would likely have rejected them as obvious over Perez just as they had with Thompson's '950 Application." Ex. 2 ¶ 608. The record is clear that Dr. Roth is not a patent practitioner, he has never worked at the Patent Office, and he has never personally prosecuted patents before the Patent Office. Ex. 4, Roth Tr. 275:10-12 ("Q. . . . Are you saying that you are an expert in patent prosecution? A. No."); *id*. at 272:16-21. Dr. Roth thus lacks the necessary expertise to provide an opinion on the hypothetical actions of the Patent Office. Moreover, as noted above, Dr. Roth never set out the law for obviousness, nor did he

conduct the analysis required by that law, which requires comparing the claims of the '611 application to the disclosure in Perez. Dr. Roth's opinion regarding what that Patent Office would have done if it considered the claims of the '611 application is thus complete conjecture with no evidentiary basis. And even if Dr. Roth had the necessary expertise or conducted the required analysis to offer such an opinion, courts reject similar opinions on what the Patent Office might have done in a hypothetical context. *See, e.g.*, *The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2014 WL 1516599, at *4 (N.D. Ill. Apr. 17, 2014) (excluding "[c]ertain statements of Dr. Auslander's [that] go beyond permissible opinions and speculate as to what the Examiner would have done or thought had she been given different information"); *see also Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 947 (N.D. Cal. 2015) ("Kunin also may not speculate about what the PTO would have done had specific prior art references been brought to the examiner's attention or offer legal opinions about the appropriate level of deference to be given to the PTO's determination of patentability in this case.").

Dr. Roth also testified that the '611 and '110 applications' inclusion of subject matter not disclosed in Dr. McCulloch's PhD proposal materials "is sort of standard writing of a small molecule patent, that you would cover all the bases in the patent before, during, and after. This is absolutely standard." Ex. 4, 272:11-15. But, Dr. Roth is not and does not purport to be an expert in patent drafting and prosecution practice. Ex. 4, 275:10-12 ("Q. . . . Are you saying that you are an expert in patent prosecution? A. No."). He therefore lacks the necessary knowledge to opine on what is or is not standard in that field.

Furthermore, what is standard for drafting small molecule patents is irrelevant to the claims at issue in this case. All that is relevant is the actions and practices of the specific individuals who prepared the '611 application, which Plaintiffs allege contain their trade secrets. Dr. Roth does

not opine on those specific individuals' actions or practices. In fact, Roth never even asked them about their actions or practice with respect to the '611 application. *See* Ex. 4, 280:15-282:5 [redacted] And contrary to Dr. Roth's assumptions about the practices of the attorneys tasked with drafting the '611 application, the attorney responsible for preparing the '611 application testified that she did not know why the '611 application was broader than the inventors' documents on which the '611 patent was supposedly based, nor did she know where the additional information came from. Ex. 5, Deo Tr. 69:10-70:23, 72:25-74:2, 78:14-82:12. Dr. Roth's opinions are thus nothing more than assumptions about the state of mind of the prosecuting attorneys and should be excluded. *See Nix v. Chemours Co. FC, LLC*, No. 7:17-CV-189-D, 2025 WL 2924613, at *29 (E.D.N.C. Sept. 30, 2025) ("DeGrandchamp improperly speculates concerning defendants' state of mind. 'Testimony about intent or motive lies outside the bounds of expert testimony.'").

## IV. <u>ROTH'S OPINIONS REGARDING LICENSING AND THE VALUE OF THE TRADE SECRETS VIS-À-VIS PEREZ SHOULD BE EXCLUDED AS UNHELPFUL AND UNRELIABLE</u>

Dr. Roth opines that "[b]ecause the purported trade secrets are embodied by the Perez [sic], anyone attempting to use the purported trade secrets would need to purchase or license Perez." Ex. 2 ¶ 609; *see also id.* ¶ 630 ("[T]he purported trade secrets do not have value without a license from Perez" and thus "[t]he purported trade secrets do not have economic value, only Perez does."); *id.* ¶ 627 ("Without licensing Perez, one cannot practice the purported trade secrets . . . ."). Dr. Roth, however, is not an expert in patent licensing nor does he provide any legal or evidentiary

basis for his conclusory assertions that a license to Perez is required to practice the trade secrets. These opinions should be excluded.

Dr. Roth has a PhD in biochemistry. Ex. 2 ¶ 8. He has no training or experience that qualifies him to opine on patent licensing or the factors that inform whether a company requires a license to a patent. Ex. 2 ¶¶ 6-21. He also sets forth no law or standards relating to patent licensing and thus never explains why or how patent licensing is relevant to assessing the independent economic value of the Psilocybin Trade Secrets. Indeed, it is not.

A license to a patent is nothing more than a promise not to sue for infringement of the claims of that patent, but the patent infringement analysis—and thus the analysis to determine if a license is required—is not applicable to assessing trade secrets because "disclosures of combination trade secrets are not tested under the same novelty rubric applied in patent infringement cases." *BladeRoom Grp. Ltd. v. Facebook*, Inc., 2018 WL 514923, at *4, 9 (N.D. Cal. Jan. 23, 2018) (rejecting defendant's argument that a patent infringement analysis was necessary to show "use" of the trade secrets, because "the method of defending against patent infringement by comparing claim limitations to elements, and showing that one does not read on the other, is unsuited to showing the absence of a triable fact of trade secret misappropriation"). This is because, as is the case here, "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain," so long as their "unique combination[] affords a competitive advantage." *AirFacts*, 909 F.3d at 96. A plaintiff can therefore have a protectable trade secret despite patenting aspects of that same invention because "a company can maintain trade secret protection in the undisclosed aspects of a product, even if it has publicly disclosed other aspects of the same product" in a patent application. *Life Spine*, 8 F.4th at 540. This is true even if a plaintiff has an issued patent over the very same product—the

only relevant question remains whether the trade secret ***as a whole*** was publicly known, in light of the information in the publicly available patent. *Id*. at 540-42 (analyzing whether "the precise information" of the trade secret was publicly known and finding the trade secret protectable, despite the plaintiff owning a patent on the product that practices the trade secret). In other words, a plaintiff can have a trade secret with independent economic value even if use of a product utilizing the trade secret would require a license to a patent. *See id*. Thus, whether discrete elements of the trade secrets are encompassed within the broad scope of claim 1 of Perez, and therefore a license may be required, does not inform the pertinent inquiry regarding whether the combination trade secret as a whole has independent economic value. This alone warrants exclusion of Dr. Roth's licensing opinions.

Additionally, Dr. Roth's licensing opinions are entirely conclusory and based on incomplete or inaccurate statements of the facts. For example, Dr. Roth asserts that anyone attempting to use the trade secrets would need a license to Perez because "Perez broadly covers ***the co-administration*** of a 5-HT2A antagonist and a psychedelic." Ex. 2 ¶ 623.[1] This is inaccurate. The claims of Perez disclose a "pharmaceutical combination ***product***" comprising "a compound described by . . . formula (I)" and "a 5-HT2A receptor antagonist." Ex. 6, COMPASS00108321 at -373. By contrast, the trade secrets are Dr. Thompson's discovery of ***a***

[1] As noted above, this opinion amounts to an assertion that use of the trade secrets would infringe the claims of Perez. *See* Ex. 2 ¶ 623 ("It is my opinion that such a product [that practices the trade secrets] would practice the same invention claimed in Perez."). But even if an infringement analysis were applicable here—it is not for the reasons stated above—it still must be excluded as incomplete and unreliable because a proper infringement analysis must always begin with a proper construction of the claims. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001) ("A determination of infringement requires a two-step analysis. 'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.'") (citation omitted). Moreover, "the construction of a patent claim is a matter of law exclusively for the court" as the Local Rules of this Court recognize. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996); D. Md. Local Rule 805(1) (detailing process for claim construction). Defendants have not followed the steps outlined in the Local Rules and thus the Court has not construed the claims of the Perez patent. Dr. Roth has also made no attempt to construe the claims of the Perez patent, nor does he offer any opinions on the proper constructions of the claim terms.

***specific method*** of utilizing psilocybin to treat depression without the hallucinations typically associated with psilocybin use—specifically, the trade secrets are:

[redacted]

Ex. 3 ¶ 60. Perez indisputably does not disclose or claim a single, time-sequenced administration of a 5-HT2A antagonist followed by psilocybin to reduce or eliminate psilocybin's hallucinatory side effects while still achieving psilocybin's antidepressant effect. Ex. 6 at -321 (Abstract), -373 (Claim 1) (disclosing and claiming a "pharmaceutical combination product"). Dr. Roth never explains, or even addresses, how these differences impact the licensing determination and thus these opinions are not based on sufficient facts, nor do they reflect a reliable application of trade secret law to the facts of the case. Dr. Roth's opinions regarding patent licensing should therefore be excluded.

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court exclude Dr. Roth's opinions in paragraphs 454-85, 595, 608-09, 612-21, 626-27, and 630 of his Supplemental Rebuttal Report, and preclude Dr. Roth from offering these or similar opinions at trial.

Dated: December 19, 2025

/s/ Steven C. Cherny
Steven C. Cherny (*pro hac vice*)
Matthew A. Traupman (*pro hac vice*)
Nicola R. Felice (*pro hac vice*)
Abigail M. Graegin (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
stevencherny@quinnemanuel.com
matthewtraupman@quinnemanuel.com
nicolafelice@quinnemanuel.com
abbygraegin@quinnemanuel.com

Patrick D. Curran (*pro hac vice*)
Kathleen Marini (*pro hac vice*)
Ryan P. Gorman (*pro hac vice*)
Alexandra O. Schelle (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
patrickcurran@quinnemanuel.com
kathleenmarini@quinnemanuel.com
ryangorman@quinnemanuel.com
alexandraschelle@quinnemanuel.com

Robert S. Brennen (Fed. Bar No. 04499)
Megan J. McGinnis (Fed. Bar No. 12810)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
T/F: (410) 385-3727
rbrennen@milesstockbridge.com
mmcginnis@milesstockbridge.com

Ramsay M. Whitworth (Fed. Bar #26251)
Email: rwhitworth@silvermanthompson.com
Andrew M. Harvey (Fed. Bar #21925)
Email: aharvey@silvermanthompson.com
SILVERMAN, THOMPSON, SLUTKIN & WHITE
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

/s/ Steven E. Tiller
Steven E. Tiller (Bar #11085)
WHITEFORD, TAYLOR & PRESTON LLP
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9425
Facsimile: (410) 223-4325
stiller@whitefordlaw.com

*Attorney for Plaintiff University of Maryland, Baltimore*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 19th day of December 2025, a copy of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment on Compass's Counterclaims was served via CM/ECF on all counsel of record.

/s/ *Ryan P. Gorman*
Ryan P. Gorman