**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

TERRAN BIOSCIENCES, INC., UNIVERSITY OF MARYLAND, BALTIMORE, and SCOTT THOMPSON,

*Plaintiffs,*

v.

COMPASS PATHFINDER LIMITED, EKATERINA MALIEVSKAIA, M.D., and GEORGE GOLDSMITH,

*Defendants.*

Civil Action No. 1:22-cv-01956-ELH

**PUBLIC REDACTED VERSION**

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFFS' EXPERTS DR. JOSHUA WOOLLEY AND DR. FREDERICK BARRETT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD .................................................................................................. 2

ARGUMENT ............................................................................................................. 3

I. DR. WOOLLEY'S AND DR. BARRETT'S OPINIONS CONCERNING THE INDEPENDENT VALUE OF THE ALLEGED TRADE SECRETS ARE RELIABLE AND SHOULD NOT BE EXCLUDED ........................................ 3

A. Dr. Barrett And Dr. Woolley Evaluated The Independent Economic Value of the Psilocybin Trade Secrets Based On Their Secrecy ........................ 4

B. Dr. Barrett And Dr. Woolley Properly Assessed The Value Of The Psilocybin Trade Secrets Based On What Was Publicly Known .................. 11

C. Dr. Barrett And Dr. Woolley Properly Assessed The Value Of The Psilocybin Trade Secrets As Combination Trade Secrets ........................ 15

II. DR. WOOLLEY'S AND DR. BARRETT'S OPINIONS REGARDING PEREZ SHOULD NOT BE EXCLUDED ........................................................ 19

CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## Cases

*AirFacts, Inc. v. de Amezaga*,
909 F.3d 84 (4th Cir. 2018) ....................4, 12, 17

*Apple, Inc. v. Samsung Elecs. Co.*,
2012 WL 2571332 (N.D. Cal. June 30, 2012) ....................12

*Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*,
2025 WL 2443517 (D. Del. May 1, 2025) ....................9

*BladeRoom Grp. Ltd. v. Facebook*, Inc.,
2018 WL 514923 (N.D. Cal. Jan. 23, 2018) ....................20

*Bresler v. Wilmington Tr. Co.*,
855 F.3d 178 (4th Cir. 2017) ....................3

*Brightview Grp., LP v. Teeters*,
2021 WL 1238501 (D. Md. Mar. 29, 2021) ....................4, 5, 6

*In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*,
2017 WL 6346633 (S.D.W. Va. Dec. 12, 2017) ....................6

*Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*,
680 F. Supp. 2d 830 (E.D. Mich. 2010) ....................10, 11

*Hunt Valley Baptist Church, Inc. v. Balt. Cnty., Md.*,
2018 WL 2717834 (D. Md. June 6, 2018) ....................3

*Knight v. Boehringer Ingelheim Pharms., Inc.*,
323 F. Supp. 3d 837 (S.D.W. Va. 2018) ....................6

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
342 F.3d 714 (7th Cir. 2003) ....................9, 10

*Life Spine, Inc. v. Aegis Spine, Inc.*,
8 F.4th 531 (7th Cir. 2021) ....................20, 21

*Masimo Corp. v. True Wearables Inc.*,
2021 WL 2548690 (C.D. Cal. Apr. 28, 2021),
*aff'd*, 2022 WL 205485 (Fed. Cir. Jan. 24, 2022) ....................13

*Michael's Fabrics, LLC v. Donegal Mut. Ins. Co.*,
2025 WL 2624280 (D. Md. Sept. 11, 2025) ....................23

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
122 F.4th 860 (Fed. Cir. 2024) ....................23

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
420 F. Supp. 2d 1070 (N.D. Cal. 2006),
*aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) ....................11, 15

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ....................12

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
345 F. Supp. 2d 431 (D. Del. 2004) ....................23

*Padco Advisors, Inc. v. Omdahl*,
179 F. Supp. 2d 600 (D. Md. 2002) ....................4, 5, 7

*Palantir Techs. Inc. v. Abramowitz*,
2022 WL 22913842 (N.D. Cal. Nov. 3, 2022) ....................17

*Proofpoint, Inc. v. Vade Secure, Inc.*,
2021 WL 2588974 (N.D. Cal. June 24, 2021) ....................13

*SkinMedica, Inc. v. Histogen Inc.*,
869 F. Supp. 2d 1176 (S.D. Cal. 2012) ....................5, 8, 15

*Structural Polymer Grp. v. Zoltek Corp.*,
543 F.3d 987 (8th Cir. 2008) ....................3

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
2022 WL 3005990 (E.D. Va. July 28, 2022) ....................16

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) ....................16, 18, 19

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*,
637 F.3d 604 (5th Cir. 2011) ....................9

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009) ....................20

*Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*,
2021 WL 3883597 (D. Md. Aug. 12, 2021) ....................3, 14, 15, 23

*VS Techs. LLC v. Twitter, Inc.*,
2011 WL 4744572 (E.D. Va. Oct. 5, 2011) ....................3

**Rules/Statutes**

Federal Rule of Evidence 702 .......................................................................................... 2

Plaintiffs Terran Biosciences, Inc. ("Terran"), University of Maryland, Baltimore ("UMB") and Scott Thompson ("Dr. Thompson") (collectively "Plaintiffs") respectfully submit this brief in support of their Opposition to Defendants' Motion to Exclude Certain Opinions of Dr. Joshua Woolley ("Dr. Woolley") and Dr. Frederick Barrett ("Dr. Barrett").

## INTRODUCTION

Defendants assert that two opinions of Dr. Woolley and Dr. Barrett should be excluded: (1) their opinions concerning the independent economic value of the Psilocybin Trade Secrets and (2) their assessment of whether a prior patent publication in 2019 ("Perez ") covers the Psilocybin Trade Secrets such that Terran would need a license for a combination therapeutic that encompasses the trade secrets. Defendants' Motion ("Mot.") 1. The Court should reject both arguments.

Defendants challenge to Dr. Woolley's and Dr. Barrett's independent economic value opinions represents a fundamental misunderstanding of the law, which plagues both Defendants' summary judgment and *Daubert* motion. Defendants claim that Dr. Barrett's and Dr. Woolley's independent economic value opinions should be excluded because Dr. Barrett and Dr. Woolley (1) do not assess the value of Psilocybin Trade Secrets based upon their secrecy, (2) do not assess the incremental value of the Psilocybin Trade Secrets over what was publicly known and (3) do not assess the value of the Psilocybin Trade Secrets based upon each individual trade secret. Mot. 1. As the factual predicate for these arguments, Defendants distill Plaintiffs' Psilocybin Trade Secrets into three distinct parts: "an alleged drug combination, its treatment sequencing, and dosing." *Id.* But those distinct parts are not the Psilocybin Trade Secrets. Rather, as this Court recognized, Plaintiffs have asserted ***"combination trade secrets" composed of Dr. Thompson's interrelated discoveries***. *See* Dkt. 161 at 26. By parsing Plaintiffs' trade secrets into distinct parts, Defendants fail to analyze the combination and invite this Court to commit the same legal error. Conversely,

Dr. Barrett and Dr. Woolley conduct the correct legal analysis and conclude that the combination trade secrets, as a whole, have independent economic value. Thus, under the correct law and without Defendants' improper reframing of Plaintiffs' trade secret, Defendants' challenge is nothing more than a disagreement with Drs. Woolley and Barrett's conclusions, which is not grounds for exclusion.

Defendants' challenge to Drs. Barrett's and Woolley's opinions concerning Perez is also flawed. Defendants claim that Dr. Barrett and Dr. Woolley did not apply the proper legal analysis to determine whether Terran would need a license to Perez to market "TR-02," an embodiment of the Psilocybin Trade Secrets. Mot. 2. But as a threshold matter, Defendants fail to establish that a license is even relevant to assessing the independent economic value of the Psilocybin Trade Secrets. Thus, there is no basis to assert that Dr. Barrett and Dr. Woolley were required to conduct an element-by-element claims analysis in the trade secret context. Regardless, Dr. Barrett and Dr. Woolley conducted a thorough analysis of Perez—including the claims—and concluded that it does not disclose the trade secrets. They also specifically concluded, in response to Defendants' expert's assertions, that a license to Perez was not required to market the Psilocybin Trade Secrets. That Defendants disagree with those conclusions is not a basis to exclude them.

Accordingly, Defendants have failed to identify any valid basis for excluding the testimony of either Dr. Barrett or Dr. Woolley, and its motion should be denied in its entirety.

## <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 provides for the admission of expert testimony. In *Daubert*, the Supreme Court provides five non-exhaustive factors a court may weigh in making this assessment: (1) "whether a theory or technique. . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," (4) the existence and maintenance of standards controlling the technique's

operation," and (5) whether the technique or theory has gained "general acceptance." *Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*, 2021 WL 3883597, at *5 (D. Md. Aug. 12, 2021) (internal quotation marks omitted). The "Supreme Court did not intend [a court's] gatekeeper role to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . evidence." *Hunt Valley Baptist Church, Inc. v. Balt. Cnty., Md.*, 2018 WL 2717834, at *3 (D. Md. June 6, 2018) (quotation marks and original brackets omitted). Accordingly, under *Daubert*, "'questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility' of the witness' assessment, 'not its admissibility.'" *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008)). "[T]he rejection of expert testimony is the exception rather than the rule." *VS Techs. LLC v. Twitter, Inc.*, 2011 WL 4744572, at *3 (E.D. Va. Oct. 5, 2011).

## ARGUMENT

### I. DR. WOOLLEY'S AND DR. BARRETT'S OPINIONS CONCERNING THE INDEPENDENT VALUE OF THE ALLEGED TRADE SECRETS ARE RELIABLE AND SHOULD NOT BE EXCLUDED

Defendants assert three bases for excluding Dr. Barrett's and Dr. Woolley's opinions concerning the independent economic value of the trade secrets: (1) Drs. Barrett and Woolley did not evaluate the independent value of the trade secrets based upon their secrecy, (2) Drs. Barrett and Woolley did not assess the incremental economic value of the trade secrets based upon what was already generally known in the field, and (3) Drs. Barrett and Woolley did not conduct the proper legal analysis because they did not assess the value of the Psilocybin Trade Secrets based upon each individual trade secret. Mot. 3. Defendants' arguments are legally and factually meritless.

### A. **Dr. Barrett And Dr. Woolley Evaluated The Independent Economic Value of the Psilocybin Trade Secrets Based On Their Secrecy**

The crux of Defendants' first argument is two-fold. First, they contend that Dr. Woolley "admittedly did not tether" the independent economic value of the trade secrets to the secrecy of the trade secrets because he did not personally evaluate the secrecy of the trade secrets. Mot. 3. Second, Defendants argue that because Dr. Barrett testified he was not sure if he was qualified to say what specific portions of his report opined on whether the trade secrets were valuable because of their secrecy, he "provides no opinions on the value the alleged trade secrets derive from secrecy." *Id.* at 4. These arguments misunderstand the law and mischaracterize the facts.

Defendants' argument is premised on the notion that to offer valid opinions on the independent economic value of trade secrets, an expert must specifically analyze the causal connection between the secrecy and the value of the trade secrets. That is wrong. As Plaintiffs explain in their summary judgment opposition, Defendants conflate an ***element*** of Plaintiffs' claim—that the trade secrets derived independent economic value from their secrecy—with the ***evidence*** that might support that element. Courts have found this element satisfied where a plaintiff presents evidence that the trade secrets would be valuable to a competitor. *See, e.g.*, *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 610 (D. Md. 2002) (at summary judgment, finding "independent economic value" element met where trade secrets "would be valuable to competitors"); *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 97 (4th Cir. 2018) (affirming judgment following bench trial, finding that flowcharts satisfied "independent economic value" element because those charts "would be useful to any AirFacts competitor"); *Brightview Grp., LP v. Teeters*, 2021 WL 1238501, at *5-6 (D. Md. Mar. 29, 2021) (granting summary judgment for plaintiff where there was no dispute that the trade secrets "could be valuable if acquired by a competitor"). Courts also have found this element satisfied where there has been significant

investment and research leading to discovery of the trade secrets. *See SkinMedica, Inc. v. Histogen Inc.,* 869 F. Supp. 2d 1176, 1193 (S.D. Cal. 2012) (concluding that trade secret had independent economic value at summary judgment because investment in scientific discovery can be economically valuable). Both sources of evidence make sense. If a plaintiff's competitor would benefit from the use of plaintiff's trade secrets, logically it is because the trade secret information is not known or obtainable from another source. Similarly, if the trade secrets were already known or available from another source, there would be no incentive to invest time and money to develop them.

Drs. Barrett and Woolley have put forth substantial evidence that the trade secrets would be valuable to a competitor and that there was a significant investment of time, effort, and money to develop the trade secrets.

Dr. Woolley, based upon his expertise as a psychiatrist in the field, specifically analyzed the "competitive advantage" of the Psilocybin Trade Secrets over what was publicly known (e.g., SSRIs, SNRIs, TMS, psilocybin-only treatments) as well as the value to clinicians and patients of a therapeutic embodying the trade secrets, called "TR-02," which Terran had tried to develop. Ex. 27, Woolley Rpt. ¶¶ 17, 51-78, 83, 87, 89-94. *See Padco Advisors, Inc.*, 179 F. Supp. 2d at 610 (reasoning "independent economic value" element met where trade secrets "would be valuable to competitors"); *Brightview Grp., LP*, 2021 WL 1238501, at *5-6 (granting summary judgment for plaintiff where there was no dispute that the trade secrets "could be valuable if acquired by a competitor"). As such, Defendants are simply wrong that he "did not tether" the independent economic value of the trade secrets to the secrecy of the trade secrets—the evidence described above does just that.

Moreover, Dr. Woolley relied, in part, on Dr. Barrett who, as discussed below, specifically and extensively analyzed the secrecy of the Psilocybin Trade Secrets and their value based on that secrecy. Ex. 27 ¶ 25. There is no requirement that one expert must opine on every aspect of every element of a claim. Rather, a plaintiff, like here, can "use multiple experts to assemble the logical links needed to" show a requisite element of their claim based upon each expert's specific expertise. *Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 847 (S.D.W. Va. 2018) (rejecting argument that plaintiff's experts should be excluded because they did not opine on every aspect of the case where plaintiff used different experts to assemble the components of their case). Courts in the Fourth Circuit recognize that a "single expert's opinion cannot be analyzed in a vacuum, devoid of the meaningful context of issues presented and a party's other evidence and experts." *See id.* This is why "a single expert need not provide all the pieces of the puzzle for their testimony to be useful to the jury in determining the ultimate issues in the case." *In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2017 WL 6346633, at *3 (S.D.W. Va. Dec. 12, 2017) (denying motion to exclude expert based on contention that expert did not offer a certain component of his opinion).

As for Dr. Barrett, there can be no dispute that he spent many pages of his report addressing the competitive advantage of the Psilocybin Trade Secrets and Dr. Thompson's investment and research leading to the discoveries of the trade secrets. Although Defendants may disagree with Dr. Barrett's conclusions, that is not a basis to exclude them. *See Brightview Grp., LP*, 2021 WL 2627960, at *10 (defendant's challenges to expert testimony concerning the value of the trade secrets went to the factual underpinnings and not the expert's credibility).

Specifically, in the opening paragraph of the section, "Independent Economic Value of the Trade Secrets," Dr. Barrett explains why the trade secrets [redacted]

[redacted] Ex. 3, Barrett Rpt. ¶ 135; *see* Ex. 1, Roth Report ¶ 573. In particular, Dr. Barrett discusses the competitive advantage that the Psilocybin Trade Secrets provided, opining that the trade secrets have independent economic value because they "[redacted]" Ex. 3 ¶ 167; *See, e.g.*, *Padco Advisors, Inc.*, 179 F. Supp. 2d at 610. In further assessing the competitive advantages of the Psilocybin Trade Secrets that directly flow from the fact that they are secret, Dr. Barrett relies on the timeline of Compass's interactions with Dr. Thompson, which demonstrates that Compass engaged in numerous discussions with Dr. Thompson over six months to try to reach an agreement to develop and commercialize the Psilocybin Trade Secrets, as well as internal Compass emails that expressly recognize the clinical value of the trade secrets based on their secrecy:

- June 4, 2019 internal Compass email following the first phone call with Thompson where Compass employee concludes [redacted] *ee* Ex. 3 ¶ 169 (citing Ex. 59, COMPASS00036321).
- June 18, 2019 Compass email to Thompson and attachment stating [redacted] *See* Ex. 3 ¶ 170 (citing Ex. 107, COMPASS00036304-308).
- July 4, 2019 internal Compass email discussing whether two researchers in the field [redacted] *See* Ex. 3 ¶ 171 (citing Ex. 106, COMPASS00045580).
- November 12, 2019 internal Compass email acknowledging [redacted] *See* Ex. 3 ¶ 172 (citing Ex. 89, COMPASS00040761 at -763).

Dr. Barrett also relies upon 30(b)(6) testimony from Compass co-founder Lars Wilde that [redacted]

[redacted] Ex. 3 ¶ 175 (citing Ex. 23, Wilde Tr. at 154:16-155:11).

Moreover, Dr. Barrett considered Compass's filing of the U.S. Provisional Patent Application No. 62/893,611, titled "Methods of Co-Administering 5-HT2A Antagonists/Inverse Agonists and Psilocybin," ("'611 Application") which covers the Psilocybin Trade Secrets. As Dr. Barrett explained, Compass's filing of the '611 Application itself indicates that Compass believed Dr. Thompson's discoveries were not known and that they had considerable independent economic value. *See* Ex. 3 ¶¶ 173-74. Indeed, if these discoveries were "well known," as Defendants claim, there would have been no basis for Compass to engage in six months of discussions with Dr. Thompson or rush to file a patent on his discoveries.

Defendants also ignore that Dr. Barrett devotes entire sections of his report to discussing: (1) all of Thompson's research leading to the discovery of the trade secrets, including the investment that went into the discovery; (2) Dr. Thompson's efforts to keep that information secret; and (3) and all of the ways in which the trade secrets were not known or readily ascertainable to competitors. All of this only further supports the independent economic value of the trade secrets by virtue of their secrecy. *See* Ex. 3 ¶¶ 34-59, 64-134; Ex. 25, Barrett Reply Rpt. ¶¶ 76-150; *see SkinMedica, Inc.,* 869 F. Supp. 2d at 1193 (concluding that trade secret had independent economic value at summary judgment because investment in scientific discovery can be economically valuable).

Defendants only real criticism of all of this evidence is that it does not acknowledge that "the trade secrets would necessarily be revealed the instant they are put to commercial use." Mot. 5. Yet, tellingly, Defendants cite no law for indefinite secrecy being a necessary or even relevant consideration when opining on the independent economic value of a trade secret. Indeed, courts

recognize the opposite: that the relevant inquiry is whether the information had economic value derived from secrecy at the time of the misappropriation, not whether it will remain secret indefinitely. *See, e.g.*, *Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*, 2025 WL 2443517, at *8 n.7 (D. Del. May 1, 2025) ("The Court does not see why the fact that Plaintiffs made a choice to later publicly disclose certain of the asserted trade secrets necessarily means that this material could not, prior to that time, have derived value from being kept secret."); *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 612 (5th Cir. 2011) (discussing that a plaintiff will not be deprived of their cause of action for "*unpatented* technology that was misappropriated *before* the trade secrets at issue were disclosed" publicly) (emphasis in original); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.,* 342 F.3d 714, 729 (7th Cir. 2003) ("Until disclosed by sale the trade secret should be entitled to protection") (citation omitted).

Moreover, this argument ignores the timing and result of Compass's misappropriation, which is discussed extensively in Dr. Barret's report. *See* Ex. 25 ¶ 159 [redacted]"); *id.* ¶ 176 [redacted] *id.* ¶ 245. Dr. Thompson always intended to patent his new method of treating depression so that he could obtain the collaboration and investment necessary to put the trade secrets to commercial use to help patients suffering from depression. Ex. 112, Hesselgrave Tr. at 153:7-10 [redacted]

[redacted] Thus, by the time Plaintiffs commercialized the Psilocybin Trade Secrets' method, that method would have had the benefit of patent protection.

This fact actually supports the independent economic value of the trade secrets resulting from their secrecy because, by misappropriating the trade secrets when they were still secret and putting them into the '611 Application, Defendants prevented Dr. Thompson from obtaining patent protection on his discoveries, which, in turn, prevented him and Terran from commercializing those discoveries. As such, the value stemming from the secrecy of the trade secrets is equivalent to the value Dr. Thompson and Terran would have received from patent protection: Had Compass not disclosed the Psilocybin Trade Secrets, Dr. Thompson would have been able to further validate his secret discovery with experimental data that could have then been used to prepare a robust patent application fully protecting his discoveries and ensuring adequate investment to move towards commercializing those discoveries. Dr. Barrett analyzed these facts including, critically, that Compass misappropriated the Psilocybin Trade Secrets when they were secret and robbed Plaintiffs of the ability to determine when and how those secrets were disclosed to the public. Ex. 25 ¶¶ 159, 176, 245; *see Learning Curve Toys, Inc.*, 342 F.3d at 727–28 (reasoning that ***plaintiff's invention maintained independent economic value*** "[s]ince every inventor has the right to keep his invention secret, one who has made a patentable invention has the option to maintain it in secrecy. . . ***It was up to [plaintiff]. . .to determine when and how the concept should have been disclosed to the public***") (emphasis added).[1] Accordingly, Defendants' challenge that Drs. Barrett

[1] Further, any suggestion by Defendants that trade secrets must be validated in order to have independent economic value is unsupported as a matter of law. *See* Mot. 5. *See Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 680 F. Supp. 2d 830, 844 (E.D. Mich. 2010) (rejecting defendants argument that trade secrets have no independent economic value because Plaintiffs' technology has not been "tested or proven."); *see Learning Curve Toys, Inc.*, 342 F.3d at 726 (rejecting district court's conclusion that the trade secrets had no economic value because that conclusion was based "on the fact that PlayWood's prototype did not work perfectly").

and Woolley have not considered the value of the trade secrets based upon their secrecy is not credible.

**B. Dr. Barrett And Dr. Woolley Properly Assessed The Value Of The Psilocybin Trade Secrets Based On What Was Publicly Known**

Defendants also seek to exclude Dr. Barrett's and Dr. Wooley's opinions on the basis that they failed to evaluate the incremental value of the trade secrets over what was publicly known. Mot. 5-9. Specifically, Defendants challenge that Dr. Barrett and Dr. Woolley do not consider how the Psilocybin Trade Secrets provide "marginal" value above information that was already in the public domain, namely three prior publications and Perez, which disclosed that ketanserin could block the psychedelic effects of psilocybin. *Id*. To support their argument, Defendants attempt to parse Plaintiffs' combination trade secrets in an effort to show that individual components of the trade secrets were generally known. Defendants' arguments are legally and factually meritless.

As an initial matter, there is no requirement that Plaintiffs must prove that their combination trade secrets have some quantitative "marginal" value above what was generally known and Defendants have cited no law to support this premise. *See, e.g., O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) (reasoning when trade secret consisted of combination of "interrelated and interdependent" elements "[i]t is irrelevant that all of the separate elements may have been already known in the industry"); *Giasson Aerospace Sci., Inc.,* 680 F. Supp. 2d at 841 ("Plaintiffs need not show that each component of their trade secrets are secret, or even nonobvious over what exists in the public domain.").

The relevant inquiry for combination trade secrets, like the Psilocybin Trade Secrets here, is whether the "***unique combination, affords a competitive advantage***" and has independent

economic value ***as a whole***. *AirFacts, Inc.*, 909 F.3d at 96. Thus, it is irrelevant whether certain aspects of the trade secrets were known because the focus is on whether the combination was generally known. *See id.* (recognizing that "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret") (citation omitted).[2]

Viewed through the proper analysis, there is no merit to Defendants' challenges that Dr. Barrett and Dr. Woolley do not opine on whether the Psilocybin Trade Secrets had independent economic value beyond what was known in the field. Mot. 5-9. Defendants first claim that Dr. Barrett and Dr. Woolley do not address how three prior publications—a paper by Vollenweider published in 1998, a publication by Carter in 2005, and a publication by Quednow in 2012—allegedly disclose the "ability to block the subjective psychedelic effects of psilocybin using a 5-HT2A antagonist." *Id.* at 5-7. But the fact that the effects of psilocybin could be blocked by pre-treatment with a 5-HT2A antagonist is not the trade secrets. Defendants also completely ignore that Dr. Barrett considered and addressed each of these references at length and concluded that these publications do not disclose the Psilocybin Trade Secrets, which, as noted above, are combination trade secrets. *See* Ex. 3 ¶¶107-115 (discussing Vollenweider 1998, Carter 2005,

[2] As such, none of Defendants' cases, all of which are predicated upon patent law principles of apportionment, are remotely applicable, nor do Defendants cite to any case that applies such principles to trade secrets. *See* Mot. 8-9; *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *7 (N.D. Cal. June 30, 2012) (excluding expert opinion ***on damages for patent infringement*** under lost profits theory); *Omega Pats., LLC v. CalAmp Corp*., 13 F.4th 1361, 1376 (Fed. Cir. 2021) (discussing that a patentee must apportion damages ***between patented and unpatented features*** and concluding plaintiff failed to show patented improvement drove demand for entire product). Indeed, it would make no sense to apply those principles in this specific context where the Court recognized that Plaintiffs' trade secrets are interrelated and interdependent "combination trade secrets." Dkt. No. 161 at 26. Apportioning the value of the individual components of combination trade secrets, as Defendants say Drs. Barrett and Woolley were required to have done, would vitiate the law relating to combination trade secrets, which recognizes that they can consist of components in the public domain and thus that the relevant inquiry is only whether the combination as a whole has independent economic value.

Quednow 2012 and concluding that the publications "did not disclose or contain the trade secrets"); *see also id.* ¶ 122 (pointing to other publications that illustrate that Thompson's discoveries were not publicly known at the time of Compass's misappropriation). Specifically, Dr. Barrett stated that none of these publications "[redacted] *Id.* ¶ 111. And, similarly, Defendants ignore that Dr. Woolley relied on Dr. Barrett's report and analysis in offering his own opinions, in addition to analyzing Perez and the various papers from Dr. Vollenweider's lab himself and concluding that the trade secrets were distinct from those publications. Ex. 29, Woolley Tr. 42:4-7; Ex. 27, Woolley Opening Rep. ¶ 25, 60 (citing a Vollenweider literature review summarizing the literature of psilocybin through 2020); Ex. 24, Woolley Reply Rep. ¶¶ 21 n.25 (citing Quednow), 28, 32-37.

Defendants criticize that Dr. Barrett distinguishes these publications because they were unrelated to the treatment of depression, but Defendants do not challenge Dr. Barrett's methodology in coming to his conclusions—Defendants simply disagree with them. This is an improper basis for a *Daubert* challenge. *See Proofpoint, Inc. v. Vade Secure, Inc.,* 2021 WL 2588974, at *4 (N.D. Cal. June 24, 2021) (concluding that contention that cited publications do not disclose asserted trade secrets goes to the weight, not admissibility, of expert's opinions); *Masimo Corp. v. True Wearables Inc.,* 2021 WL 2548690, at *4 (C.D. Cal. Apr. 28, 2021), *aff'd*, 2022 WL 205485 (Fed. Cir. Jan. 24, 2022) (rejecting argument that trade secrets were publicly known based upon publications in conference papers, because "this does not mean that the particular techniques described in them were 'generally known' to people who could obtain economic value from developing noninvasive blood content detectors").

Defendants have also put forth their own expert who comes to a different conclusion concerning these publications, and Dr. Barrett addresses the shortcomings in Dr. Roth's analysis. *See* Ex. 25 ¶ 88 (explaining that [redacted] Thus, this is a classic battle of the experts. As this Court has previously recognized "[w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts," and a trial court should not "exclude an expert's testimony on the ground that the court believes one version of the acts and not the other." *Vertellus Holdings LLC*, 2021 WL 3883597, at *10 (declining to exclude expert opinion where competing experts reached different conclusions based on disputed facts). This is not a proper *Daubert* challenge and there is no basis to exclude Dr. Barrett's and Dr. Woolley's opinions on this ground.

Similarly, Defendants' cursory challenge that Dr. Barrett and Dr. Woolley fail to consider whether Perez discloses the Psilocybin Trade Secrets and the effect it would have on the independent economic value suffers from the same defects as their argument concerning the prior publications. Mot. 7. Defendants again ignore the extensive analysis that Dr. Barrett and Dr. Woolley provide on Perez and simply disagree with their conclusions. *See* Ex. 3 ¶¶ 129-134 (discussing why Perez does not disclose the Trade Secrets); Ex. 25 ¶¶ 89-99 (same); Ex. 24 ¶¶ 28, 32, 34 (disagreeing with Roth's opinion concerning why Perez does not disclose the Psilocybin Trade Secrets). Further, Defendants' critiques continue to ignore that Plaintiffs have asserted "combination trade secrets" and therefore whether certain elements of the trade secrets are disclosed in Perez does not render the Psilocybin Trade Secrets without any independent economic

value. *SkinMedica, Inc.*, 869 F. Supp. 2d at 1195 (rejecting defendant's argument that combination trade secret lacked value and was not protectable because certain elements of the trade secret were publicly disclosed); *O2 Micro Int'l Ltd.,* 420 F. Supp. 2d at 1089 (concluding combination trade secret composed of "interrelated and interdependent features" was protectable even though "all of the separate elements may have already been known in the industry"). Again, this is no basis for exclusion.

Finally, Defendant's criticize Drs. Barrett and Woolley's opinions that "the value of the trade secrets generally came from the removal of hallucinations as a barrier to the widespread use of psilocybin" because they allegedly "did not consider how that value was affected by virtue of the same or similar earlier disclosure in Perez." Mot. at 8-9. But, as explained above, both Dr. Woolley and Dr. Barrett expressly considered Perez, in addition to the various other publication in the psychedelics field, and found that the trade secrets, most notably the single time-sequenced sequential administration of a 5-HT2A antagonist followed by psilocybin, were not disclosed in Perez or any other publication and thus did not affect the value of the trade secrets in removing the hallucinations typically associated with psilocybin. *See* Ex. 3 ¶¶ 129-134; Ex. 25 ¶¶ 89-99; Ex. 24 ¶¶ 28, 32, 34. Defendants' disagreements with Dr. Barrett's and Dr. Woolley's conclusions go to the factual basis of each expert's opinions which can be explored on cross-examination, but are not grounds for exclusion. *Vertellus Holdings LLC*, 2021 WL 3883597, at *10-11.[3]

### C. Dr. Barrett And Dr. Woolley Properly Assessed The Value <u>Of The Psilocybin Trade Secrets As Combination Trade Secrets</u>

[3] Defendants imply in a footnote that Perez must cover the trade secrets because Terran bought Perez. Mot. 7 n.6. This is inaccurate. As Dr. Clark, Terran's CEO, explained, Terran licensed Perez believing it was [redacted]." Ex. 15, Clark Tr. 101:12-102:13. Regardless, this is a factual dispute on which both parties' experts offer competing opinions. As such, this argument cannot be the basis for exclusion of Drs. Barrett's and Woolley's opinions.

Defendants twist Dr. Barrett's opinion to incorrectly assert that there are multiple, separate trade secrets at issue in the case, divided into three distinct buckets: "an alleged drug combination, its treatment sequencing, and dosing." Mot. 1, 9-10. That is a complete mischaracterization of Dr. Barrett's definition. Again, as this Court has recognized, and as is replete in the factual record, Plaintiffs have asserted "***combination trade secrets" composed of Dr. Thompson's interrelated discoveries***. Dkt. 161 at 26; *see* Ex. 25 ¶ 37 (the [redacted]); Ex. 29, 83:24-84:2 [redacted] Thus, Defendants' attempts to parse the Psilocybin Trade Secrets into different elements to separately challenge the independent economic value of the interrelated discoveries that form the combination trade secrets is legally improper.

It is therefore of no moment that neither expert could "count" the number of trade secrets as Defendants fault them. Mot. 10-11. In the sole case Defendants rely upon, there were multiple separate and distinct trade secrets at issue—unlike the interrelated combination trade secrets at issue here. *See id.* at 11; *Synopsys, Inc. v. Risk Based Sec., Inc.*, 2022 WL 3005990, at *15 (E.D. Va. July 28, 2022) ("*Synopsys I*"), *aff'd sub nom. Synopsys, Inc v. Risk Based Sec., Inc.*, 70 F.4th 759 (4th Cir. 2023) ("*Synopsys II*") (discussing that plaintiff initially asserted 75 individual trade secrets by summary judgment and declining to "decide whether or when 'grouping' of evidence to establish a trade secret's independent economic value is ever permitted). Where there are multiple distinct trade secrets at issue related to completely different ideas, as in *Synopsys*, it makes sense that a court would require that independent economic value must be proven as to each

individual trade secret to establish that it is protectable. But that is not applicable here, where the trade secrets are a combination of Dr. Thompson's interrelated discoveries.

In determining the independent economic value of combination trade secrets, the proper analysis is whether the combination of information—not the individual pieces of information—has value. *See Palantir Techs. Inc. v. Abramowitz*, 2022 WL 22913842, at *4 (N.D. Cal. Nov. 3, 2022) (concluding that proper independent economic analysis for combination trade secret is "whether the combinations of the data sources were well known not only whether the separate data sources themselves were well known"); *AirFacts, Inc*, 909 F.3d at 96 (discussing "[c]ourts have long recognized that a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret") (internal quotation marks and citation omitted).

Indeed, another court has rejected the exact methodology that Defendants advance here when assessing the value of a combination trade secret. In *Palantir Techs. Inc. v. Abramowitz*, the district court excluded an expert opinion that evaluated the independent economic value of combination trade secrets that were based upon combinations of data sources because the expert "failed to analyze whether the combinations of the data sources were well known and instead analyzed only whether the separate data sources themselves were well known." 2022 WL 22913842, at *4. The district court concluded that the expert employed a flawed legal methodology in evaluating whether the combination trade secrets had independent economic value based on whether each individual data source was known. *Id*. at 5. Instead, the proper methodology was analyzing "whether the combinations were known." *Id.* Defendants invite this Court to commit the same legal error.

Dr. Barrett and Dr. Woolley therefore applied the proper analysis by considering the independent economic value of the Psilocybin Trade Secrets as combination trade secrets. As for Dr. Barrett, Defendants acknowledge that he opines on the collective value of the Psilocybin Trade Secrets based on "increased drug safety, decreased costs, enhanced blinding in future clinical trials, and . . . future scalability." Mot. 10. Indeed, as discussed at 12-15 *supra*, Dr. Barrett specifically opined on the competitive advantage of the Psilocybin Trade secrets as a whole, and how public knowledge of one component standing alone will not impact the independent economic value of the combination. *See also* Ex. 3 ¶ 155 [redacted]); Ex. 25 ¶ 194 [redacted]

As for Dr. Woolley, Defendants also acknowledge that he "analyzes the independent economic value of Plaintiffs' alleged trade secrets collectively rather than individually," Mot. 10, which, as discussed, is the correct analysis. Defendants' main point of contention with Dr. Woolley's analysis is his evaluation of "the economic value of a treatment that uses the alleged trade secrets, specifically Terran's proposed TR-02 treatment." *Id.* at 11. According to Defendants, the analysis is improper because "analyzing a product that uses the trade secrets rather than the trade secrets themselves—is precisely what the *Synopsys II* court found insufficient to establish independent economic value." *Id.* As an initial matter, Defendants ignore the numerous portions of Dr. Woolley's report that analyze the independent economic value of the Psilocybin Trade Secrets, not TR-02. *See, e.g.*, Ex. 27 at ¶¶ 82-86. And even the parts that analyze the value of TR-02 are completely distinguishable from the facts in *Synopsys II*.

In *Synopsys II*, the Fourth Circuit affirmed that plaintiffs had failed to show independent economic value because they had tied the value of approximately 75 different trade secrets (down from 160 different trade secrets asserted) to the acquisition value of the company but had failed to establish a connection between the "value for the entire company on the date of its recent sale" and the value of the trade secrets. *Synopsys II*, 70 F.4th at 769-70. In particular, the Fourth Circuit faulted plaintiffs because they had not adjusted the valuation based on plaintiff narrowing the number of its trade secrets by half. *Id.* at 772-73. It also found that both of the proxies for the trade secrets used by plaintiffs in their independent economic value analysis, (1) the entire company and (2) the entire database that contained the trade secret information, indisputably contained much more than just the purported trade secrets. *Id.* at 771 n.9. Thus, *Synopsys* is distinguishable. Here, Dr. Woolley explained how TR-02 is a direct embodiment of the Psilocybin Trade Secrets. Ex. 27 ¶ 88. Unlike the entire database in *Synopsys II* that indisputably contained much more than the trade secrets at issue, TR-02 is the commercial instantiation of the Psilocybin Trade Secrets and thus an appropriate proxy for the value of those trade secrets. Ex. 29, 99:21-100:7 (explaining relationship between TR-02 and the psilocybin trade secrets as [redacted]" of the discoveries that comprise the trade secrets).

Accordingly, as Defendants' basis for exclusion rests upon a faulty factual and legal predicate, there is no basis to exclude Dr. Barrett's and Dr. Woolley's opinions as to the independent economic value of the trade secrets.

## II. DR. WOOLLEY'S AND DR. BARRETT'S OPINIONS REGARDING PEREZ SHOULD NOT BE EXCLUDED

Finally, Defendants seek to exclude Dr. Barrett's and Dr. Woolley's opinions concerning whether Plaintiffs would need to license Perez in order to market Terran's therapeutic, TR-02 which embodies the trade secrets. Mot. 11-14. Defendants' technical expert, Dr. Roth, opined

that the Psilocybin Trade Secrets lack independent economic value because Perez's claims cover the Psilocybin Trade Secrets such that Plaintiffs would require a license to market TR-02. *See id.* 12; Ex. 2, Roth Supp. Rebuttal Rpt. ¶¶ 622-30. Defendants assert that Dr. Barrett's and Dr. Woolley's rebuttal opinions on the licensing issue should be excluded because they did not apply a claim element-by-claim element patent infringement analysis in responding to Dr. Roth's assertion. Mot. 11-14. This argument lacks merit.

As an initial matter, Defendants do not establish—and cite no precedent for their claim—that the licensing question is even relevant to assessing the independent economic value of the Psilocybin Trade Secrets. A license to a patent is nothing more than a promise not to sue for infringement of the claims of that patent, and at least one court has rejected the application of a patent infringement analysis to assessing trade secrets because "disclosures of combination trade secrets are not tested under the same novelty rubric applied in patent infringement cases." *BladeRoom Grp. Ltd. v. Facebook*, Inc., 2018 WL 514923, at *4, 9 (N.D. Cal. Jan. 23, 2018) (in trade secret misappropriation context, rejecting defendant's argument that a patent infringement analysis was necessary to show "use" of the trade secrets, because "the method of defending against patent infringement by comparing claim limitations to elements, and showing that one does not read on the other, is unsuited to showing the absence of a triable fact of trade secret misappropriation"); *see also TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (explaining that a "patent license is equivalent to a covenant not to sue").

In another case, the 7th Circuit affirmed a district court's conclusion that a plaintiff had a protectable trade secret despite patenting the same invention because "a company can maintain trade secret protection in the undisclosed aspects of a product, even if it has publicly disclosed

other aspects of the same product." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021). In other words, the court held that the plaintiff had a trade secret (including that it had independent economic value) despite the fact that marketing its product that utilized the trade secret would require a license to or ownership of the patent. *Id.* at 540-42. Thus, that a license to Perez may be necessary to practice the Psilocybin Trade Secrets does not inform the pertinent inquiry regarding their independent economic value, particularly in this context where the Psilocybin Trade Secrets are combination trade secrets that can indisputably exist and have value despite aspects of them being disclosed in the prior art.

Even if Defendants could establish that a license to Perez was relevant to determining independent economic value, there is no basis to exclude Dr. Barrett's and Dr. Woolley's opinions as unreliable based on their analysis. Defendants ignore that Dr. Barrett and Dr. Woolley analyzed the entirety of Perez, including its claims, in concluding that Perez does not cover the Psilocybin Trade Secrets, and thus no license would be necessary.

Dr. Barrett opined at length that Perez is directed towards a completely different invention than Dr. Thompson's trade secrets. For example, Dr. Barrett explains that a "pharmaceutical combination product," as claimed by Perez, is a different invention than the single, time-sequenced sequential administration of the Psilocybin Trade Secrets. Ex. 3 ¶ 131; Ex. 25 ¶ 84 (explaining that [redacted] *id.* ¶¶ 90, 99, 174 [redacted]

[redacted]

Specifically, Dr. Barrett analyzed claim 1 of Perez and concluded that it would not cover the Psilocybin Trade Secrets such that a license would be required to practice the trade secrets. *See* Ex. 25 ¶ 191 [redacted] Ex. 74, Barrett Tr. at 318:3-13 [redacted]; *id.* at 320:2-12, 325:18-326:3 [redacted]

Dr. Woolley—like Dr. Barrett—reviewed the entirety of Perez, including the claims, and concluded that the invention claimed by Perez is different than the Psilocybin Trade Secrets such that no license would be required to market the trade secrets. Ex. 29, 234:18-235:3 [redacted]; Ex. 24, ¶ 32 [redacted] *id.* ¶ 34 (explaining the difference between a "combination product" as claimed in Perez and the Psilocybin Trade Secrets).

Defendants might disagree with the level of detail that Dr. Barrett and Dr. Woolley provide in analyzing whether Perez disclosed the trade secrets, but Defendants have failed to cite any case law that this type of analysis is insufficient or that would require Plaintiffs' experts to make an element-by-element claim chart to opine on this issue.[4] Indeed, Defendants' own expert Dr. Roth does not include such a chart. *See* Ex. 2 ¶¶ 622-26. Defendants' challenge is rather rooted in their fundamental disagreement with Dr. Barrett's and Dr. Woolley's conclusions that Terran would not require a license to Perez to market its proposed therapeutic. This is an improper basis for a *Daubert* motion. *Vertellus*, 2021 WL 3883597, at *10. As it is clear from the record that both Dr. Barrett and Dr. Woolley analyzed the claims of Perez in reaching their conclusions, Defendants will be free to probe whether these analyses were sufficient on cross-examination. *See Michael's Fabrics, LLC v. Donegal Mut. Ins. Co.,* 2025 WL 2624280, at *3 (D. Md. Sept. 11, 2025) (declining to exclude expert opinion based upon challenge that expert did not consider relevant factors because it was not established that any of those factors "bear heavily" on the determination of value and reasoning that defendant "certainly can cross-examine on this point, but it is not a basis for exclusion").

Accordingly, Defendants have not set forth a proper *Daubert* ground for exclusion of Dr. Barrett's and Dr. Woolley's opinions on this subject and the Court should deny the motion.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Exclude Certain Opinions of Plaintiffs' Experts Dr. Joshua Woolley and Dr. Frederick Barrett.

[4] Instead, Defendants cite *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860 (Fed. Cir. 2024), which does not discuss the admissibility of expert opinions, and *Oxford Gene Tech. Ltd. v. Mergen Ltd*., 345 F. Supp. 2d 431, 435-37 (D. Del. 2004), which discusses expert opinions on patent invalidity, not infringement. *See* Mot. 12-13.

Dated: December 19, 2025

*/s/ Steven C. Cherny*
Steven C. Cherny (*pro hac vice*)
Matthew A. Traupman (*pro hac vice*)
Nicola R. Felice (*pro hac vice*)
Abigail M. Graegin (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
stevencherny@quinnemanuel.com
matthewtraupman@quinnemanuel.com
nicolafelice@quinnemanuel.com
abbygraegin@quinnemanuel.com

Patrick D. Curran (*pro hac vice*)
Kathleen Marini (*pro hac vice*)
Ryan P. Gorman (*pro hac vice*)
Alexandra O. Schelle (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
patrickcurran@quinnemanuel.com
kathleenmarini@quinnemanuel.com
ryangorman@quinnemanuel.com
alexandraschelle@quinnemanuel.com

Robert S. Brennen (Fed. Bar No. 04499)
Megan J. McGinnis (Fed. Bar No. 12810)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
T/F: (410) 385-3727
rbrennen@milesstockbridge.com
mmcginnis@milesstockbridge.com

Ramsay M. Whitworth (Fed. Bar #26251)
Email: rwhitworth@silvermanthompson.com
Andrew M. Harvey (Fed. Bar #21925)
Email: aharvey@silvermanthompson.com
SILVERMAN, THOMPSON, SLUTKIN & WHITE
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

*/s/ Steven E. Tiller*
Steven E. Tiller (Bar #11085)
WHITEFORD, TAYLOR & PRESTON LLP
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9425
Facsimile: (410) 223-4325
stiller@whitefordlaw.com

*Attorney for Plaintiff*
*University of Maryland, Baltimore*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 19th day of December 2025, a copy of Plaintiffs' Opposition to Defendants' Motion to Exclude Certain Opinions of Plaintiffs' Experts Dr. Joshua Woolley and Dr. Frederick Barrett was served via CM/ECF on all counsel of record.

/s/ *Ryan P. Gorman*
Ryan P. Gorman