**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

TERRAN BIOSCIENCES, INC., UNIVERSITY OF MARYLAND, BALTIMORE, and SCOTT THOMPSON,

Plaintiffs,

v.

COMPASS PATHFINDER LIMITED (an England and Wales company), EKATERINA MALIEVSKAIA, M.D., and GEORGE GOLDSMITH,

Defendants.

Case No. 1:22-cv-01956-ELH

[redacted]

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANTS' EXPERT DR. DEFOREST MCDUFF**

# TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND ........................................ 1

II. LEGAL STANDARD ........................................ 3

III. DR. MCDUFF DOES NOT OFFER TECHNICAL OPINIONS—HE PROPERLY RELIED ON DEFENDANTS' TECHNICAL EXPERT, DR. ROTH, WHO CONCLUDED THAT PLAINTIFFS' TRADE SECRETS WERE DISCLOSED PRIOR TO THE ALLEGED MISAPPROPRIATION ........................................ 3

IV. PLAINTIFFS' MOTION AGAINST DR. MCDUFF'S EVENT STUDY SHOULD BE DENIED AS MOOT. ........................................ 6

V. CONCLUSION ........................................ 7

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alexander v. City Police of Lafayette*,
No. 6:11-CV-01749, 2024 WL 5181962 (W.D. La. Dec. 18, 2024) ........................................7

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017).................................................................................................4

*Bresler v. Wilmington Tr. Co.*,
855 F.3d 178 (4th Cir. 2017) ....................................................................................................3

*Dewitt Stern Grp., Inc. v. Eisenberg*,
257 F. Supp. 3d 542 (S.D.N.Y. 2017)........................................................................................7

*Erdman v. FleetCor Techs., Inc.*,
No. 5:16-CV-903-FL, 2019 WL 1507404 (E.D.N.C. Apr. 5, 2019) ........................................7

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010)...................................................................................................5

*Sci. Applications Int'l Corp. v. United States*,
169 Fed. Cl. 346 (2024) ............................................................................................................4

*United States v. Sesay*,
No. CR MJM-21-298, 2025 WL 1148476 (D. Md. Apr. 18, 2025) .........................................3

### RULES

Fed. R. Evid. 702 ..........................................................................................................................3

## TABLE OF EXHIBITS[1]

| Exhibit | Exhibit Description |
|---|---|
| **DEFENDANT EXHIBITS (ECF 304)** | |
| 93 | Expert Report Of Gareth Macartney, Ph.D., dated August 20, 2025 (highlighting added for clarity) |
| **PLAINTIFF EXHIBITS (ECF 325)** | |
| 3 | Opening Report Of Frederick Barrett, Ph.D., dated Aug. 20, 2025 |
| 7 | Opening Report Of DeForest McDuff, Ph.D., dated Aug. 20, 2025, and exhibits thereto |
| 11 | Deposition Transcript of DeForest McDuff, Ph.D., dated Nov. 5, 2025 |
| 12 | Rebuttal Report Of DeForest McDuff, Ph.D., dated Sept. 19, 2025, and exhibits thereto |

[1] All exhibits identified with "P.Ex." are exhibits attached to ECF 325. All exhibits identified with "D.Ex." are attached to ECF 304.

Plaintiffs' motion is based on the false premise that Defendants' damages expert, Dr. McDuff, "opines that various patents and scientific publications ***disclose*** Plaintiffs' alleged trade secrets." Mot. at 1. But Dr. McDuff offered ***no such opinions***. Instead, Dr. McDuff, a professor of economics, offers the economic opinion that Plaintiffs' damages expert—Dr. Macartney—did not establish causation for his damages theories. Specifically, Dr. McDuff opines that Terran could not have suffered [redacted] of damages due to the alleged publication of its trade secrets if those trade secrets had already been disclosed by Plaintiffs themselves and by others. *See* P.Ex. 12 ¶ 70. Dr. McDuff's understanding that the alleged trade secrets were disclosed prior to Defendants' alleged misconduct is based on the opinions of Defendants' technical expert, Dr. Roth, who is a professor of pharmacology and holds a Ph.D. in biochemistry and a medical degree. ***Dr. Roth*** offers the technical opinion that certain of Plaintiffs' publications and the Perez application ***disclosed*** the alleged trade secrets prior to Defendants' alleged misconduct. And importantly, Plaintiffs do not dispute that Dr. Roth is qualified to offer those opinions—nor could they. Because Dr. McDuff offers no technical opinions and properly relies on the technical expertise of Dr. Roth, Plaintiffs' motion should be denied.

Plaintiffs also move to strike Dr. McDuff's opinions related to Compass's counterclaims, but since the Court has dismissed those counterclaims, it should deny Plaintiffs' motion as moot.

## I. FACTUAL BACKGROUND

To justify his opinion that Defendants owe [redacted] in damages, Plaintiffs' damages expert, Dr. Macartney, assumes that Defendants disclosed Plaintiffs' alleged trade secrets "to the world via their own patent applications." D.Ex. 93 ¶ 122. Dr. Macartney further opines that the publication led to [redacted]. D.Ex. 93 ¶¶ 129–30. But Dr. Macartney ignores the fact that Plaintiffs themselves (and others) disclosed the alleged trade secrets to the public prior to the alleged misconduct. *See* ECF 302 at 22–24.

In response, Dr. McDuff, Defendants' damages expert, opines that Dr. Macartney fails to establish causation for his damages theories in part because he did not address Plaintiffs' disclosures that pre-date the alleged misappropriation. P.Ex. 12 ¶¶ 65–66. Although Dr. McDuff notes the similarity between the language of Plaintiffs' disclosures and the words Plaintiffs use to describe their alleged trade secrets, *see*, *e.g.*, P.Ex. 12 ¶ 65 ("[T]he abstract disclosed that Dr. Thompson and his team believed that ketanserin would eliminate hallucinations caused by psilocybin while still treating depression."), he relies on Dr. Roth for the ultimate technical conclusion that any publication disclosed the alleged trade secrets, *see*, *e.g.*, P.Ex. 12 ¶ 65 ("I understand that, according to Dr. Roth, the abstract disclosed Dr. Thompson's theory that hallucinations or 5-HT2A receptor activation are not necessary for the therapeutic effects of psilocybin as well as Dr. Thompson's experimental dosage for use of psilocybin in rodents.").

Similarly, Dr. McDuff opines that Dr. Macartney fails to establish causation for his damages theories because he also does not consider that the Perez application disclosed the alleged trade secrets prior to the alleged misappropriation. P.Ex. 12 ¶¶ 67–70. And again, Dr. McDuff merely notes the similarities between the language of Perez's disclosure and the language Plaintiffs use to describe the alleged trade secrets. *See*, *e.g.*, P.Ex. 12 ¶ 68 ("[T]he Perez application states: 'The compound and the 5-HT2A receptor antagonist can be administered together or separately. The neurogenic compound can be administered to an individual who is already taking a 5-HT2A receptor antagonist, and the 5-HT2A receptor antagonist can be administered to an individual who is already taking the neurogenic compound.'"). That said, as with Plaintiffs' disclosures, Dr. McDuff relies on Dr. Roth for the ultimate technical conclusion that Perez disclosed the alleged trade secrets. *See* P.Ex. 12 ¶ 68 ("I understand from Dr. Roth that that the Perez application discloses all of the alleged Trade Secrets . . . ."). Dr. McDuff, who has reviewed thousands of

patents as part of his job as an economist who values intellectual property (P.Ex. 11 at 169:22–170:5), also notes that the USPTO denied Dr. Thompson's patent application covering the alleged trade secrets, and he relies on that fact. However, he does not purport to analyze or offer an opinion regarding the technical merits of the denial.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 allows a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise" if the proponent demonstrates that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. A district court enjoys broad latitude in determining what indicia of reliability are most relevant in a given case. *United States v. Sesay*, No. CR MJM-21-298, 2025 WL 1148476, at *8 (D. Md. Apr. 18, 2025). But "courts may not evaluate the expert witness' conclusion itself . . . only the opinion's underlying methodology. Moreover, questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility of the witness' assessment, not its admissibility." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017).[2]

## III. DR. MCDUFF DOES NOT OFFER TECHNICAL OPINIONS—HE PROPERLY RELIED ON DEFENDANTS' TECHNICAL EXPERT, DR. ROTH, WHO CONCLUDED THAT PLAINTIFFS' TRADE SECRETS WERE DISCLOSED PRIOR TO THE ALLEGED MISAPPROPRIATION.

Plaintiffs argue that Dr. McDuff improperly provided a technical opinion that "Plaintiffs' alleged trade secrets were in fact disclosed in specific patent and other scientific materials." Mot.

---

[2] All citations and internal quotations omitted and all emphasis added unless otherwise indicated.

at 12. This is incorrect. Dr. McDuff did not opine that any publication or patent disclosed the alleged trade secrets. Instead, he offered the economic opinion that Dr. Macartney failed to prove causation for his damages theories, i.e., because Dr. Macartney did not address the reality that Plaintiffs' alleged trade secrets were disclosed by others, he fails to show how the alleged misappropriation caused [redacted] in damages. *See* P.Ex. 12 ¶¶ 65–70. To support that opinion, Dr. McDuff relies on (1) Defendants' technical expert, Dr. Roth, who provided a technical opinion on what was disclosed in those publications, and (2) his own review of the plain language of those publications. For those reasons—discussed further below—Dr. McDuff offers a proper economic opinion grounded in sufficient evidence, and Plaintiffs' motion should be denied.

The foundation of Dr. McDuff's causation opinion regarding prior disclosure of the alleged trade secrets is Dr. Roth's technical opinions. *See*, *e.g.*, P.Ex. 12 ¶ 65 ("I understand that, according to Dr. Roth, the abstract disclosed Dr. Thompson's theory that hallucinations or 5-HT2A receptor activation are not necessary for the therapeutic effects of psilocybin as well as Dr. Thompson's experimental dosage for use of psilocybin in rodents.") (citing P.Ex. 3, § XIII.D.1). And Dr. McDuff's reliance on Dr. Roth's technical opinions is entirely proper. *See*, *e.g.*, *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1369–70 (Fed. Cir. 2017) (affirming denial of motion to exclude a damages expert where he "properly relied on the opinion of [a technical expert]"); *Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 346, 370 (2024) ("[I]t is undisputed that damages experts [] are permitted to rely on the opinions of technical experts [] in reaching their conclusions."). Indeed, Plaintiffs are entirely silent regarding Dr. McDuff's reliance on Dr. Roth in the motion.

Plaintiffs quibble with Dr. McDuff's review of the relevant publications, claiming he is providing unqualified technical opinions. Mot. at 14. However, as Plaintiffs acknowledge, Dr. McDuff merely compares the ***words*** of the publication with Plaintiffs' own description of the alleged trade secrets and observes that on their face, they say the same thing. *See*, *e.g.*, P.Ex. 12 ¶ 65 ("According to Dr. Barrett, the poster [redacted]").[3] Noting that a document expressly includes certain words is not a technical opinion that requires any expertise; it is a fact that Dr. McDuff considered in support of his economic opinion. That is entirely proper. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) ("[A party]'s quarrel with the facts [an expert] used go to the weight, not admissibility, of his opinion.").

Plaintiffs misrepresent Dr. McDuff's deposition testimony to cast his proper economic opinion as technical in nature. But Dr. McDuff was crystal clear that he offers only a damages opinion in response to Dr. Macartney and not a technical liability opinion:

> Q. You're not offering opinion that any of these disclosures, in fact, disclose the trade secrets. Correct?
>
> A. I would say it like this: I'm not offering an opinion on liability overall in terms of what was a trade secret and whether it was misappropriated. But I am saying clearly certain aspects of the trade secrets that are relevant to Dr. Macartney's analysis have been disclosed in these documents. So ***it's more of an issue of valuation in terms of what Dr. Macartney intending to value***.

P.Ex. 11 at 164:2–15 (emphasis added).

[3] Plaintiffs have alleged that their alleged trade secrets include Dr. Thompson's dosages. *See* ECF 199 ¶ 2 ("Professor Thompson maintained as trade secrets the . . . time points, dosing, frequency and other details of such sequential administration.").

Plaintiffs also assert that "Dr. McDuff claims that the Perez patent disclosed Plaintiffs' trade secrets because the USPTO denied Dr. Thompson's '950 patent application." Mot. at 13. That is false. Dr. McDuff expressly relies on Dr. Roth for that opinion: "I understand from Dr. Roth that that the Perez application discloses all of the alleged Trade Secrets." P.Ex. 12 ¶ 68. Dr. McDuff merely noted the fact that the USPTO denied Dr. Thompson's patent application, which on its face covers at least parts of the alleged trade secrets. *See id.* ("I further note that the USPTO denied Dr. Thompson's '950 patent application."). Dr. McDuff did not conduct any technical analysis related to this PTO finding nor was any needed. The technical analysis was conducted ***by the PTO***. Beyond that, Dr. McDuff's opinion is economic. He concludes that because the PTO denied Dr. Thompson's patent application as obvious over Perez, the alleged misconduct by Compass, which happened ***after*** Perez published, could not have caused the harm that Dr. Macartney calculates in his report and that Dr. Macartney's opinion is deficient because he failed to address that issue. *See* P.Ex. 12 ¶ 70 ("[T]he Macartney Report claims Compass disclosed the alleged Trade Secrets 'to the world' long before [redacted], and my review of the evidence and Dr. Roth's opinions indicates that Dr. Thompson and/or third parties also publicly disclosed them between November 2016 and September 2022. Therefore, ***there is no logical causal connection between the alleged misappropriation and the alleged disruption to*** [redacted].") (emphasis added).

Accordingly, Plaintiffs' motion should be denied.

## IV. PLAINTIFFS' MOTION AGAINST DR. MCDUFF'S EVENT STUDY SHOULD BE DENIED AS MOOT.

Dr. McDuff conducted an event study to calculate damages based on Compass's counterclaims against Terran. P.Ex. 7 ¶ 5. The Court granted Plaintiffs' motion to strike Compass's counterclaims. Accordingly, the Court should deny Plaintiffs' motion as to Dr.

McDuff's event study as moot. *See*, *e.g.*, *Erdman v. FleetCor Techs., Inc.*, No. 5:16-CV-903-FL, 2019 WL 1507404, at *9 (E.D.N.C. Apr. 5, 2019) ("Defendant seeks to exclude the testimony of plaintiff's expert Foley. Where the court has founds plaintiff's claims fail as a matter of law, the court denies the motion as moot."); *Alexander v. City Police of Lafayette*, No. 6:11-CV-01749, 2024 WL 5181962, at *19 (W.D. La. Dec. 18, 2024) ("In light of the dismissal of all of Albert's remaining claims, Defendants' Daubert motion is moot, and is therefore denied."); *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 592 (S.D.N.Y. 2017) ("Given that DeWitt's claims have been dismissed as set forth above, the O'Neill Testimony and Report are moot and the motion is thereby dismissed.").

## V. CONCLUSION

Accordingly, Plaintiffs' motion to exclude Dr. McDuff's opinions should be denied.

Dated: January 21, 2026

John M. Desmarais (admitted *pro hac vice)*
Steven M. Balcof (admitted *pro hac vice)*
Joze Welsh (admitted *pro hac vice)*
Asim Zaidi (admitted *pro hac vice)*
Gillian Moore (admitted *pro hac vice)*
Allan E. Carlsen (admitted *pro hac vice)*
Davis A. Gonsalves-DeDobbelaere (admitted *pro hac vice)*
Peter Kotecki (admitted *pro hac vice)*
DESMARAIS LLP
230 Park Ave., 26th Fl. New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
JDesmarais@desmaraisllp.com
SBalcof@desmaraisllp.com
JWelsh@desmaraisllp.com
AZaidi@desmaraisllp.com
GMoore@desmaraisllp.com
DGgonsalves-dedobbelaere@desmaraisllp.com
PKotecki@desmaraisllp.com
ACarlsen@desmaraisllp.com

*/s/ Jean E. Lewis*
Jean E. Lewis (Bar No. 27562)
Justin A. Redd (Bar No. 18614)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, MD 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
jlewis@kg-law.com
jredd@kg-law.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Jean E. Lewis, hereby certify that on January 21, 2026, a true and correct copy of the foregoing was served by email on all counsel of record for Plaintiffs at their following addresses:

Ramsay M. Whitworth (Fed. Bar #26251)
Andrew M. Harvey (Fed. Bar #21925)
SILVERMAN, THOMPSON, SLUTKIN & WHITE
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 385-2225
rwhitworth@silvermanthompson.com
aharvey@silvermanthompson.com

Steven C. Cherny (admitted *pro hac vice*)
Matthew A. Traupman (admitted *pro hac vice*)
Nicola R. Felice (admitted *pro hac vice*)
Abigail M. Graegin (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
stevencherny@quinnemanuel.com
matthewtraupman@quinnemanuel.com
nicolafelice@quinnemanuel.com
abbygraegin@quinnemanuel.com

Patrick D. Curran (admitted *pro hac vice*)
Kathleen Marini (admitted *pro hac vice*)
Ryan P. Gorman (admitted *pro hac vice*)
Alexandra O. Schelle (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
patrickcurran@quinnemanuel.com
kathleenmarini@quinnemanuel.com
ryangorman@quinnemanuel.com
alexandraschelle@quinnemanuel.com

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

Robert S. Brennen (Fed. Bar No. 04499)
Megan J. McGinnis (Fed. Bar No. 12810)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Telephone: (410) 385-3727
rbrennen@milesstockbridge.com
mmcginnis@milesstockbridge.com

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

Steven E. Tiller (Bar #11085)
Whiteford, Taylor & Preston LLP
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9425
stiller@whitefordlaw.com

*Attorneys for Plaintiff University of Maryland, Baltimore*

*/s/ Jean E. Lewis*
Jean E. Lewis