**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

TERRAN BIOSCIENCES, INC.,
UNIVERSITY OF MARYLAND,
BALTIMORE, and SCOTT THOMPSON,

Plaintiffs,

v.

COMPASS PATHFINDER LIMITED (an England and Wales company), EKATERINA MALIEVSKAIA, M.D., and GEORGE GOLDSMITH,

Defendants.

Civil Action No. 1:22-cv-01956-ELH

[redacted]

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFFS' EXPERT DR. GARETH MACARTNEY**

# TABLE OF CONTENTS


Page

I. DR. MACARTNEY'S LOST INVESTMENT THEORY SHOULD BE EXCLUDED BECAUSE HE CANNOT ESTABLISH CAUSATION .............................1

A. Self-Interested Double Hearsay From Terran's Principals Is Not A Substitute For Evidence Of Causation. ........................................................1

B. The "Data" That Dr. Macartney Purportedly Analyzed Does Not Support His Lost Investment Theory.......................................................................3

C. Dr. Macartney's Lost Investment Theory Is Inconsistent With The Chronological Order Of Relevant Events. ..............................................................4

II. DR. MACARTNEY'S LOST PROFITS THEORY SHOULD BE EXCLUDED BECAUSE HE LACKS ANY EVIDENCE OF CAUSATION AND THE THEORY IS INCONSISTENT WITH THE RECORD......................................................5

A. Dr. Macartney Improperly Relies On Unreliable Double Hearsay To Establish Causation For His Lost Profits Theory. ..................................................5

B. Dr. Macartney's Lost Profits Theory Is Unreliable Because It Is Based On His Unqualified Assumption That [redacted] Had A 49% Chance Of Success At The FDA. ..........................................................................5

C. Dr. Macartney's Lost Profits Theory Is Based On A Speculative, Unproven Chain Of Causation.........................................................................6

III. DR. MACARTNEY'S UNJUST ENRICHMENT THEORY SHOULD BE EXCLUDED BECAUSE HE HAS NO EVIDENCE OF CAUSATION AND IT IS IMPROPER AS A MATTER OF LAW .........................................................7

A. Dr. Macartney's Unjust Enrichment Theory Relies On Double Hearsay To Prove Causation. ..........................................................................................8

B. Dr. Macartney Calculates The Present Value Of All Of Compass's Future Profits As "Unjust Enrichment."..................................................................8

C. Dr. Macartney's Unjust Enrichment Damages Are Improperly Based On Defendants' Potential Future Profits..........................................................9

D. Dr. Macartney's Unjust Enrichment Theory Adds Another Speculative Link To His Broken Chain Of Causation. ...........................................................10

**TABLE OF CONTENTS (cont'd)**

**Page**

IV. DR. MACARTNEY'S REASONABLE ROYALTY OPINION SHOULD BE EXCLUDED BECAUSE IT IS UNSUPPORTED BY LAW OR EVIDENCE AND IS NOT APPORTIONED ....10

A. Dr. Macartney Has No Reliable Basis To Assume Compass Would Agree To A Lump Sum Payment—Just Plaintiffs' Attorney Argument....10

B. Dr. Macartney Lacks Any Reliable Basis To Assume That Compass Would Have Sought An Exclusive License....12

C. Dr. Macartney Failed To Apportion His Reasonable Royalty Theory To Exclude [redacted] ....13

D. Dr. Macartney Provides No Basis For Using [redacted] For A Reasonable Royalty, Which Is A Separate Reason Why His Reasonable Royalty Opinion Should Be Excluded....13

V. DR. MACARTNEY'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE NOT APPORTIONED TO THE TIMEFRAME OF THE ALLEGED HARM....14

VI. DR. MACARTNEY'S OPINIONS REGARDING INDEPENDENT ECONOMIC VALUE ARE UNRELIABLE AND SHOULD BE EXCLUDED ....15

# TABLE OF AUTHORITIES[1]

Page(s)

## CASES

*AirFacts, Inc. v. Amezaga*,
30 F.4th 359, 368 (4th Cir. 2022) ....................9, 13

*Alcatel USA, Inc. v. Cisco Systems, Inc.*,
239 F. Supp. 2d 660 (E.D. Tex. 2002) ....................8, 11

*Burns v. Anderson*,
123 F. App'x 543 (4th Cir. 2004) ....................15

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) ....................4

*Four Seasons Software, LLC v. Icici Infotech, Inc.*,
No. 3:05cv171(SRU), 2006 WL 3791386 (D. Conn. Dec. 22, 2006) ....................7

*Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*,
146 F.4th 1098 (Fed. Cir. 2025) ....................13

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................11

*Medidata Sols., Inc. v. Veeva Sys., Inc.*,
No. 17 Civ. 589 (LGS), 2021 WL 4243309 (S.D.N.Y. Aug. 25, 2021) ....................9

*Mortg. Grp., LLC v. Home Point Fin. Corp.*,
740 F. App'x 263 (4th Cir. 2018) ....................3

*Nite Glow Indus. Inc. v. Cent. Garden & Pet Co.*,
No. 2020-1897, 2021 WL 2945556 (Fed. Cir. 2021) ....................14

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
655 F. Supp. 3d 1002 (S.D. Cal. 2023) ....................15

*RLM Commc'ns, Inc. v. Tuschen*,
66 F. Supp. 3d 681 (E.D.N.C. 2014), *aff'd*, 831 F.3d 190 (4th Cir. 2016) ....................14

*Sakaria v. Trans World Airlines*,
8 F.3d 164 (4th Cir. 1993) ....................6, 7

*St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*,
566 F. Supp. 3d 327 (D. Md. 2021) ....................6, 17

[1] All emphasis added and citations omitted unless otherwise noted.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
No. 3:16-cv-545, 2018 WL 2172502, at *7 (E.D. Va. May 10, 2018) ..............................10, 11

*Synopsys, Inc. v. Risk Based Security, Inc.*,
70 F.4th 759 (4th Cir. 2023) ..........................................................................................15

*Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*,
No. 4:19-CV-03113, 2021 WL 5991744 (S.D. Tex. Dec. 16, 2021)........................................2

*United States v. Hudak*,
156 F.4th 405 (4th Cir. 2025) ..........................................................................................4

*Verisign, Inc. v. XYZ.com LLC*,
848 F.3d 292 (4th Cir. 2017) ..........................................................................................3

*Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*,
No. CV SAG-18-3298, 2021 WL 3883597 (D. Md. Aug. 12, 2021) ......................................15

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
No. CIV.A. 09-157-RGA, 2013 WL 936449 (D. Del. Mar. 11, 2013)....................................11

**STATUTES**

18 U.S.C. § 1836(b)(3)(B)(i)(II) ..........................................................................................9

## TABLE OF EXHIBITS[2]

| Exhibit | Exhibit Description |
|---|---|
| | **DEFENDANT EXHIBITS (ECF 304)** |
| 7 | Plaintiffs' Supplemental Responses and Objections to Defendant Compass Pathfinder Limited's First, Second, Third, and Fourth Sets of Interrogatories to Plaintiffs (Nos. 1–25), dated Nov. 20, 2025 |
| 9 | Excerpts of the Deposition Transcript of Joshua Woolley, M.D., Ph.D., dated Nov. 5, 2025 (highlighting added for clarity) |
| 32 | TERRAN0009202 – publication titled "Harnessing psilocybin: antidepressant-like behavioral and synaptic actions of psilocybin are independent of 5-HT2R activation in mice" by Natalie Hesselgrave et al., published Apr. 13, 2021 (highlighting added for clarity) |
| 49 | Reply Report of Joshua Woolley, M.D., Ph.D., dated Oct. 10, 2025 (highlighting added for clarity) |
| 55 | Declaration of Sandhya Deo, dated Oct. 8, 2025 ("Deo Decl.") |
| 93 | Expert Report of Gareth Macartney, Ph.D., dated August 20, 2025 (highlighting added for clarity) |
| 95 | Excerpts of the Deposition Transcript of Gareth Macartney, Ph.D., dated Nov. 19, 2025 (highlighting added for clarity) |
| 99 | TERRAN0101988 - Spreadsheet page titled "Cap Summary (2)" |
| 106 | Reply Expert Report Of Gareth Macartney, Ph.D., dated October 10, 2025 (highlighting added for clarity) |
| 109 | TERRAN0065772 – Master License Agreement Between University of Maryland, Baltimore and Terran Biosciences, Inc. |
| **PLAINTIFF EXHIBITS (ECF 325)** | |
| 17 | Declaration of Sam Clark in Support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and Cross-Motion for Summary Judgment on Compass's Counterclaims, dated Dec. 19, 2025 |
| 18 | Declaration of Dr. Dustin Tetzl in Support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and Cross-Motion for Summary Judgment on Compass's Counterclaims, dated Dec. 18, 2025 |

[2] All exhibits identified with "P.Ex." are attached to ECF 325. All exhibits identified with "D.Ex." are attached to ECF 304.

Plaintiffs' Opposition underscores why Dr. Macartney's opinions should be excluded. Each of his theories is infused with fundamental methodological issues that render them inadmissible. Plaintiffs attempt to salvage his opinions by calling each issue a "factual dispute," but *Daubert* does not permit Dr. Macartney to offer unsupported, conclusory opinions simply because he has an economics degree. Dr. Macartney's Lost Investment theory is impermissibly speculative because it depends entirely on uncorroborated, self-interested hearsay and a timing correlation that cannot prove causation. His Lost Profits and Unjust Enrichment theories compound those same defects with further speculative assumptions. His Reasonable Royalty theory is unsupported by law or evidence and fails to apportion value to the alleged trade secrets. And his opinions on independent economic value ignore the governing legal standard altogether. Accordingly, his opinions should be excluded in their entirety.

## I. DR. MACARTNEY'S LOST INVESTMENT THEORY SHOULD BE EXCLUDED BECAUSE HE CANNOT ESTABLISH CAUSATION

Defendants demonstrated that Dr. Macartney has no reliable basis—only double hearsay—to opine that Defendants caused Plaintiffs to [redacted]. In response, Plaintiffs argue: (1) Dr. Macartney also relied on data such as the [redacted]; (2) Dr. Sam Clark and Dr. Dustin Tetzl will testify at trial to "corroborate" what they told Dr. Macartney; (3) their statements are not double hearsay; and (4) experts can rely on hearsay. Plaintiffs' arguments miss the mark. As explained in detail below, Dr. Macartney ***cannot*** reliably opine that Defendants' alleged misconduct ***caused*** [redacted] because—beyond Dr. Clark's and Dr. Tetzl's inadmissible double hearsay—there is ***zero*** evidence of that connection.

### A. Self-Interested Double Hearsay From Terran's Principals Is Not A Substitute For Evidence Of Causation.

Dr. Macartney's entire Lost Investment theory stems from Terran's principals, Dr. Clark and Dr. Tetzl, telling him that [redacted] "[redacted]

[redacted]." D.Ex. 93, ¶ 134. Apparently, Dr. Clark and Dr. Tetzl told Dr. Macartney—without ***any*** corroborating evidence—that: (1) [redacted]; (2) [redacted] ***solely*** due to the alleged misappropriation; and (3) [redacted] for the same reason. *Id.* ¶¶ 135–38. When Dr. Macartney asked for evidence to corroborate that story, [redacted]. D.Ex. 95 at 177:19–178:3. Plaintiffs have not offered "any authority . . . that an expert can reasonably rely on double hearsay relayed to him/her by an employee of a party with a vested interest in the outcome of the case." *Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 4:19-CV-03113, 2021 WL 5991744, at *1–2 (S.D. Tex. Dec. 16, 2021). Yet that is precisely what Dr. Macartney did here.

Instead, Plaintiffs argue Dr. Clark and Dr. Tetzl merely relayed the "[s]tatement[]" of [redacted] Opp. at 8. But Plaintiffs rely on the truth of the matter asserted in those statements—[redacted]. That is textbook hearsay. Plaintiffs also argue that Dr. Clark and Dr. Tetzl will testify to these facts at trial. *Id.* at 7. At most, that ***might*** eliminate one layer of hearsay, but ultimately, that does not matter. Plaintiffs did not depose [redacted] and cannot call them at trial. Accordingly, Dr. Clark's and Dr. Tetzl's renditions of those alleged conversations remain inadmissible hearsay.[3]

Further, Plaintiffs do not meaningfully address the numerous cases establishing that hearsay evidence like that at the heart of Dr. Macartney's opinion is inadmissible. *See* Mot. at 5–7. Instead, in a footnote, Plaintiffs state that unlike in those cases, Dr. Macartney corroborates his reliance on hearsay. Opp. at 7 n.3. But he provides no other evidence that even purports to explain

---

[3] Plaintiffs attempt to support causation with declarations from Dr. Clark and Dr. Tetzl, but that merely introduces ***more*** double hearsay. Opp. at 7; P.Ex. 17, ¶¶ 9–11 (declaring various [redacted]); P.Ex. 18, ¶¶ 7–11 (declaring that [redacted]). Additional self-interested double hearsay cannot save Dr. Macartney's opinions.

[redacted]. In short, Dr. Macartney relies exclusively on self-interested hearsay to establish a connection between [redacted] and Defendants' alleged conduct. That alone necessitates excluding his Lost Investment theory.

### B. The "Data" That Dr. Macartney Purportedly Analyzed Does Not Support His Lost Investment Theory.

Plaintiffs argue that Dr. Macartney also analyzed "data" that supports his Lost Investment theory. But his analysis does nothing more than correlate the timing of the supposed [redacted] to the filing of this case. That cannot support causation for three reasons.

***First***, simply correlating the timing of events is insufficient under Fourth Circuit law to establish that the alleged misappropriation caused the alleged harm. *See Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 300–01 (4th Cir. 2017) (affirming exclusion of expert report where the "analysis failed to distinguish between 'correlation' and 'causation'" and merely showed "a temporal link" between accused statements and the alleged harm); 360 *Mortg. Grp., LLC v. Home Point Fin. Corp.*, 740 F. App'x 263, 268 (4th Cir. 2018) (finding that financial reports on causation were "speculative" where they "simply set forth a correlation . . . without any evidence showing that the misappropriation caused that decline").

***Second***, Dr. Macartney's "data" does not support his conclusion. [redacted]. D.Ex. 93, ¶ 134. Then [redacted], ***the month that Terran filed this lawsuit***. *Id.* As for [redacted]—***after*** this case was filed. D.Ex. 99. In fact, that [redacted]. D.Ex. 95 at 158:21–159:11. If anything, that order of events indicates [redacted]

[redacted]. Dr. Macartney's conclusion from the data that the alleged misappropriation ***caused*** [redacted] relies on "simply too great an analytical gap between the data and the opinion proffered" and should therefore be excluded. *See United States v. Hudak*, 156 F.4th 405, 409 (4th Cir. 2025) ("It is axiomatic that a court may exclude an expert opinion when 'there is simply too great an analytical gap between the data and the opinion proffered.'").

***Third***, Dr. Macartney fails to consider alternative causes for the [redacted]. Because the [redacted] does not explain [redacted], Dr. Macartney simply assumes that the alleged misappropriation is the sole reason. He did nothing to rule out whether, for example, [redacted]. This failure renders his opinion impermissibly speculative. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202–03 (4th Cir. 2001) (affirming exclusion of expert testimony on causation where the analysis was "little more than speculation," noting that exclusion is proper where an "expert utterly fails to consider alternative causes").

**C. Dr. Macartney's Lost Investment Theory Is Inconsistent With The Chronological Order Of Relevant Events.**

In their Motion, Defendants demonstrate that Dr. Macartney's Lost Investment theory flies in the face of undisputed facts in the record. In response, Plaintiffs try to rebrand Dr. Macartney's factual inconsistencies as "factual disputes." Opp. at 9. But Dr. Macartney's causation theory is inadmissibly contrary to evidence. Specifically, Dr. Macartney claims that [redacted]. D.Ex. 95 at 118:6–15, 151:20–152:10. His conclusion that Compass caused the [redacted] despite the almost two-year gap between the alleged misappropriation and the [redacted] is an irreconcilable analytical gap, not a factual issue. Accordingly, his opinion should be excluded.

## II. DR. MACARTNEY'S LOST PROFITS THEORY SHOULD BE EXCLUDED BECAUSE HE LACKS ANY EVIDENCE OF CAUSATION AND THE THEORY IS INCONSISTENT WITH THE RECORD

### A. Dr. Macartney Improperly Relies On Unreliable Double Hearsay To Establish Causation For His Lost Profits Theory.

Plaintiffs concede that Dr. Macartney's Lost Profits theory is based on the same "facts" as his Lost Investment theory. Accordingly, his Lost Profits theory should be excluded for relying solely on double hearsay for the same reasons described in Section I.A above.

### B. Dr. Macartney's Lost Profits Theory Is Unreliable Because It Is Based On His Unqualified Assumption That [redacted] Had A 49% Chance Of Success At The FDA.

For his Lost Profits theory, Dr. Macartney opines that [redacted] had a 49% chance of receiving FDA approval. In their Motion, Defendants show that Dr. Macartney is not qualified to offer that opinion at least because he lacks the requisite clinical and regulatory qualifications. In response, Plaintiffs argue that Dr. Macartney was not offering a clinical or a regulatory opinion and instead relied on Plaintiffs' technical experts' [redacted]" Opp. at 13. But that is demonstrably false.

To start, neither Dr. Barrett nor Dr. Woolley opine on Terran's likelihood of success at the FDA—Dr. Macartney stands alone. In fact, Dr. Macartney did not cite Dr. Barrett's nor Dr. Woolley's report as support; he generically cited all three conversations he had with Dr. Barrett, Dr. Woolley, Dr. Clark, and Dr. Tetzl without explaining who told him what. *See* D.Ex. 93, ¶ 154 n.505. And Dr. Woolley could not have provided the 49% figure to Dr. Macartney because Dr. Woolley testified [redacted]. D.Ex. 9 at 129:18–130:11. Plaintiffs argue Dr. Woolley's opinion in his reply report that [redacted] would have the same likelihood of approval as Compass's COMP360—a real product currently in FDA testing—supports Dr. Macartney's 49% opinion. *See* Opp. at 13 (citing D.Ex. 49, ¶¶ 18–27).

The Court should reject that argument. To start, Dr. Woolley's reply report was served two months ***after*** the report in which Dr. Macartney first adopted the 49% number. Moreover, the portion of Dr. Woolley's reply report that Plaintiffs cite merely [redacted] and Compass's COMP360. In short, Dr. Woolley simply ***did not offer*** the opinion Plaintiffs argue Dr. Macartney relied upon.

Finally, Plaintiffs argue that the criticism of Dr. Macartney's 49% FDA approval figure goes to the weight of his opinion. Opp. at 14. Not so. "[A]n expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise." *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 355 (D. Md. 2021).

In short, Dr. Macartney is not qualified to set forth or rely upon the 49% FDA approval figure and as a result, his Lost Profits theory is unreliable and should be excluded.

### C. Dr. Macartney's Lost Profits Theory Is Based On A Speculative, Unproven Chain Of Causation.

In their Motion, Defendants laid bare the rank speculation at the heart of Dr. Macartney's Lost Profits theory. He assumes—without any support—that but for the alleged misconduct, Terran would have cleared every scientific, therapeutic, regulatory, and commercial hurdle to [redacted]. Mot. at 12–13. In their Opposition, Plaintiffs try to ignore Dr. Macartney's causation problem and argue about a different issue—whether forward-looking lost profits analyses are allowed. Opp. at 15. That argument should be set aside. ***Any*** damages theory (lost profits, forward-looking or otherwise) must be based on causation that is "'probab[le]' rather than mere[ly] 'possib[le].'" *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172–73 (4th Cir. 1993). As detailed further below, Dr. Macartney baselessly speculates that Terran would cross each hurdle, and so his Lost Profits theory should be excluded.

Dr. Macartney testified that [redacted]. D.Ex. 95 at 221:17–22, 229:2–231:9. That unsubstantiated speculation is insufficient to support causation. *Sakaria*, 8 F.3d at 172–73 (The Fourth Circuit has "emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder.").

The case that Plaintiffs cite does not countenance Dr. Macartney's untethered speculation. *Four Seasons Software, LLC v. Icici Infotech, Inc.* discussed the use of future profits to support the confirmation of an arbitration award in a breach of contract dispute. No. 3:05-cv-171, 2006 WL 3791386, at *4 (D. Conn. Dec. 22, 2006). But the *Four Seasons* court recognized that, even when dealing with forward-looking lost profits, "the plaintiff cannot recover for 'the mere possibility' of making a profit." *Id.* Here, Plaintiffs' lengthy causal chain shows that Terran had, at best, a [redacted].

Plaintiffs try to hide behind the many inputs Dr. Macartney used in his calculations to show his opinion is "grounded in record evidence." Opp. at 15. But Dr. Macartney's use of many inputs in his model does not make his theory any less speculative. And Plaintiffs cannot dispute that the only "input" that Dr. Macartney used to account for the fact that [redacted] is his *ipse dixit* 49% figure.

## III. DR. MACARTNEY'S UNJUST ENRICHMENT THEORY SHOULD BE EXCLUDED BECAUSE HE HAS NO EVIDENCE OF CAUSATION AND IT IS IMPROPER AS A MATTER OF LAW

Plaintiffs paint Defendants' criticisms of Dr. Macartney's Unjust Enrichment theory as "factual disputes." That is a mischaracterization. The issues with Dr. Macartney's Unjust

Enrichment theory are fundamental and fatal to its admissibility.

**A. Dr. Macartney's Unjust Enrichment Theory Relies On Double Hearsay To Prove Causation.**

Plaintiffs concede that Dr. Macartney's Unjust Enrichment theory relies on the same factual foundation as his Lost Investment theory. Accordingly, it should be excluded for relying solely on double hearsay for the same reasons described in Section I.A above

**B. Dr. Macartney Calculates The Present Value Of All Of Compass's Future Profits As "Unjust Enrichment."**

In their Motion, Defendants demonstrated that Dr. Macartney treated all of Compass's hypothetical future sales as unjust enrichment. Mot. at 14–15. Plaintiffs' response is to clarify that Dr. Macartney calculated the present value of all of Compass's future profits, which accounts for Compass's costs. That is a distinction without a difference and does not address the fundamental issue: Dr. Macartney failed to determine what portion of Compass's future profits are attributable specifically to the alleged misappropriation. He attributes all future Compass profits to the alleged misappropriation and attributes zero value to Compass's contributions to COMP360. Dr. Macartney's opinion is similar to the one excluded in *Alcatel USA, Inc. v. Cisco Systems, Inc.*, 239 F. Supp. 2d 660, 671 (E.D. Tex. 2002). There, the company accused of misappropriation had a single product and was acquired for $560 million. *Id.* at 668–69. The expert opined that the company could not have been acquired but for the alleged misappropriation, so the entire acquisition price was unjust enrichment. *Id.* The court found that the failure to apportion this purchase price "reek[ed] of incongruity and underscore[d] the speculative nature of [the damages opinion]." *Id.* at 671. Here, Dr. Macartney assumes that COMP360 would not make any sales but for the alleged misappropriation, and then attributes ***all*** future profits as unjust enrichment. His opinion similarly reeks of incongruity and is yet another example of his speculative opinions.

Plaintiffs try to distract from Dr. Macartney's unsupported and unreasonable opinion by

arguing that apportionment is only required to isolate the value of trade secrets to a defendant's product. Opp. at 17. But Plaintiffs are only entitled to "unjust enrichment ***caused*** by the misappropriation of the trade secret." 18 U.S.C. § 1836(b)(3)(B)(i)(II). Dr. Macartney did not do that analysis. Instead, he blindly awards ***all*** of Compass's future profits to Terran as purported unjust enrichment. That is a fundamental error that renders his opinion inadmissible.

### C. Dr. Macartney's Unjust Enrichment Damages Are Improperly Based On Defendants' Potential Future Profits.

Defendants explained in their Motion that Dr. Macartney's unjust enrichment theory should be excluded because Terran cannot recover unjust enrichment damages on Compass's potential future profits. *See* Mot. at 15–16 (citing *Medidata Sols., Inc. v. Veeva Sys., Inc.*, No. 17 Civ. 589 (LGS), 2021 WL 4243309, at *4 (S.D.N.Y. Aug. 25, 2021) ("'The essence of an unjust enrichment claim is that one party *has* received money or a benefit at the expense of another.' Permitting Medidata to recover for Veeva's hypothetical future profits under an unjust enrichment theory would contravene this well-established definition.")).

In response, Plaintiffs argue that Dr. Macartney's Unjust Enrichment theory is proper because he appraised Compass's potential future profits as the "value of the benefit Compass received by eliminating a competitor." Opp. at 18. They claim that *AirFacts, Inc. v. Amezaga* and *Steves & Sons, Inc. v. JELD-WEN, Inc.* endorse that approach. Again, not so. In *AirFacts*, the court simply held that commercial use is not required for reasonable royalty damages. 30 F.4th 359, 368 (4th Cir. 2022). The court did not address unjust enrichment in any fashion—let alone endorse the use of hypothetical future profits as a basis for unjust enrichment. In *Steves & Sons*, the court recognized that it is normally improper to allow unjust enrichment damages on "wholly speculative expectations of profits," but allowed an opinion based on a hypothetical manufacturing plant modeled on the defendant's actual, operational plants because the case did "not involve

untested products, an unknown market, or an unproven enterprise." No. 3:16-cv-545, 2018 WL 2172502, at *7 (E.D. Va. May 10, 2018). But that is entirely different from the facts here. Neither psilocybin nor any psychedelic has ever been sold commercially, and Compass has never made a sale.

Plaintiffs claim that the premise of Defendants' argument is "that it received no benefit because COMP360 has not yet generated sales," and point to evidence of Compass's benefit from lost competition. Opp. at 19. But that misses the point. It was improper for Dr. Macartney to calculate unjust enrichment damages on hypothetical sales when Compass has never made a sale.

### D. Dr. Macartney's Unjust Enrichment Theory Adds Another Speculative Link To His Broken Chain Of Causation.

Plaintiffs do not dispute that Dr. Macartney's Unjust Enrichment theory adds another unsubstantiated assumption to the causal chain for his Lost Profits theory. Accordingly, his Unjust Enrichment theory is even more speculative and should be excluded for the same reason identified in Section II.C above.

## IV. DR. MACARTNEY'S REASONABLE ROYALTY OPINION SHOULD BE EXCLUDED BECAUSE IT IS UNSUPPORTED BY LAW OR EVIDENCE AND IS NOT APPORTIONED

Dr. Macartney's opinions that Defendants would have paid a lump sum, up-front royalty and sought an exclusive license are counterfactual. Further, Dr. Macartney failed to apportion his proposed royalty calculation to account for other assets included in the comparable license.

### A. Dr. Macartney Has No Reliable Basis To Assume Compass Would Agree To A Lump Sum Payment—Just Plaintiffs' Attorney Argument.

Dr. Macartney concludes [redacted] D.Ex. 95 at 282:19–284:16. In their Motion, Defendants explain that a lump sum payment structure is not justified in Dr. Macartney's reports, is unsupported by the [redacted]—which Dr. Macartney relied on as a comparable license

in his analysis—and calls for upfront payment of more money than [redacted]. Mot. at 17–18. Plaintiffs argue that a lump sum royalty is appropriate because a running royalty was not feasible given the "nature of the misappropriation." *See* Opp. at 21–22. But Dr. Macartney ***did not provide that opinion***. Only Plaintiffs' attorney argument has justified the lump sum that way.

Plaintiffs also argue that the [redacted] supports Dr. Macartney's lump sum royalty opinion, but that makes no sense. The [redacted]; Dr. Macartney offers no explanation of [redacted]. *See* D.Ex. 93, ¶¶ 181–82. Indeed, lump sum and running royalty calculations inherently "involve[] different considerations" and have "significant differences." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009). Plaintiffs argue *Steves & Sons* supports their position, but that case is readily distinguished. There, the expert explicitly opined that the relationship between the parties as competitors justified a lump sum. *See* 2018 WL 2172502, at *10. Here, UMB, a university, and Compass were not adversaries, and even if they were, Dr. Macartney provided no opinion that the relationship between the two somehow justified a lump sum.

*XpertUniverse, Inc. v. Cisco Systems, Inc.* is instructive. No. CIV.A. 09-157-RGA, 2013 WL 936449 (D. Del. Mar. 11, 2013). In *XpertUniverse*, the court found the lump sum amount untethered to calculations for a running royalty. *Id.* at *3 ("Bratic's opinion that the parties would have realized that the appropriate royalty structure for rights to the patents in suit would have been a lump sum royalty is not based on sufficient data or information."). The same applies here: Dr. Macartney relied on a comparable license with a running royalty, but, with no basis or explanation, converted that running royalty to a lump sum when applying it to Compass. *See id.*; D.Ex. 93, ¶¶ 177, 181–82.

Plaintiffs argue that Compass's liquidity should not restrict Dr. Macartney's royalty

calculation, painting the dispute as one over Dr. Macartney's assessment of the value of the alleged trade secrets to Compass. Opp. at 22. But as explained in Defendants' motion, the issue with Dr. Macartney's lump sum royalty is ***feasibility***. Mot. at 18–19. Although a royalty payment is not necessarily constrained by liquidity, the outcome of the hypothetical negotiation must be feasible; Dr. Macartney's lump sum royalty is not. D.Ex. 93, ¶¶ 181–82.

Nonetheless, Dr. Macartney's determination that Compass would have paid [redacted] for the alleged trade secrets—regardless of how the amount is allocated—also lacks reasonable support. Plaintiffs argue that this royalty amount is tethered to facts, such as the "value to Compass" of the alleged trade secrets and "the substantial competitive advantage" obtained by Compass. Opp. at 23. But Plaintiffs have not explained why the "value" to Compass, a license to trade secrets ***it will never use***, somehow justifies that amount given Compass's financial situation.

### B. Dr. Macartney Lacks Any Reliable Basis To Assume That Compass Would Have Sought An Exclusive License.

Dr. Macartney's opinion that Compass would have sought an exclusive license is contrary to the record. To start, Compass did not, as Plaintiffs allege, "rush[] to patent Dr. Thompson's ideas." *Id.* at 24; *see, e.g.*, D.Ex. 55, ¶¶ 13–28. Moreover, Dr. Thompson and UMB did not have an exclusive right to the alleged trade secrets; Dr. Thompson's own patent applications on the alleged trade secrets were rejected by the PTO as ***obvious***. D.Ex. 106, ¶ 19. Accordingly, Dr. Thompson could not have given Compass exclusivity. Dr. Macartney's opinion that Compass would—or could—have received an exclusive license is thus contrary to the indisputable evidence.

Dr. Macartney's opinion that Compass received exclusivity by filing a patent ***application*** is likewise not based in fact. *See id.*, ¶ 56. Compass did not receive a patent on any of the alleged trade secrets, nor any other ability to exclude anyone from using them. *Id.*, ¶¶ 19, 56. Compass therefore did not "assume[] for itself" any sort of exclusive right. *See* Opp. at 24.

Dr. Macartney's assumption that Compass would have sought an exclusive license and his valuation of the hypothetical license based on that assumption is yet another basis to exclude his Reasonable Royalty theory.

**C. Dr. Macartney Failed To Apportion His Reasonable Royalty Theory To Exclude [redacted].**

[redacted]. D.Ex. 109 at -815. Dr. Macartney failed to provide any explanation for his lack of apportionment to account for [redacted]. D.Ex. 93, ¶¶ 170–82; D.Ex. 106, ¶ 62. Although Dr. Macartney did not have to "painstakingly value [redacted], Opp. at 25, he was required to—but failed to—provide some explanation for his treatment of [redacted]. *Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*, 146 F.4th 1098, 1112 (Fed. Cir. 2025). Plaintiffs argue that Dr. Macartney merely used the [redacted] as a "benchmark" for his reasonable royalty calculation. Opp. at 25. But that distinction is immaterial. Because Dr. Macartney did not explain how he accounted for the [redacted] when using it as a benchmark, his Reasonable Royalty opinion should be excluded. D.Ex. 93, ¶¶ 170–82; D.Ex. 106, ¶ 62.

**D. Dr. Macartney Provides No Basis For Using [redacted] For A Reasonable Royalty, Which Is A Separate Reason Why His Reasonable Royalty Opinion Should Be Excluded.**

Dr. Macartney calculated his royalty based on his [redacted] Although recovery based on "disclosure" of alleged trade secrets is permitted, neither Dr. Macartney nor Plaintiffs cite any precedent for using [redacted] to calculate damages that Compass would owe. Opp. at 25–26; D.Ex. 93, ¶ 183. Contrary to Plaintiffs' arguments, *AirFacts* does not permit such recovery. The *AirFacts* holding is ***narrow***, "reject[ing] only the district court's dispositive ruling that *AirFacts* was *ineligible* for reasonable royalty damages

because it failed to prove Amezaga put the flowcharts to commercial use. ***That's not to say AirFacts is entitled to royalty damages*** or that the amount it requests . . . is reasonable." 30 F.4th at 368. Neither Plaintiffs nor Dr. Macartney points to ***any*** support for using [redacted] as the basis for a reasonable royalty. Opp. at 25–26; D.Ex. 93, ¶ 183. Accordingly, Dr. Macartney's Reasonable Royalty calculation on that basis is unsupported and his opinion should be excluded.

## V. DR. MACARTNEY'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE NOT APPORTIONED TO THE TIMEFRAME OF THE ALLEGED HARM

As Defendants explain in their Motion, Dr. Macartney did not account for the limited temporal nature of the alleged harm. Dr. Macartney did not "appropriately reflect[] the nature of Compass's misconduct." Opp. at 27. He made no effort to establish a causal link between Plaintiffs' alleged harm and his theories. *See Nite Glow Indus. Inc. v. Cent. Garden & Pet Co.*, No. 2020-1897, 2021 WL 2945556, at *8–9 (Fed. Cir. 2021) (vacating jury award of trade secret misappropriation damages where "plaintiffs made no effort to tie their damages case to the advantage defendants would have received from a head start resulting from the misappropriation"). Critically, Dr. Macartney did not consider that the alleged trade secrets were public before Plaintiffs' discovery of the purported misappropriation.[4] His failure to consider intervening factors is fatal to each of his theories. *See RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681, 698–99 (E.D.N.C. 2014), *aff'd*, 831 F.3d 190 (4th Cir. 2016) (finding "the record does not support an inference of causation between the asserted misappropriation of trade secrets . . . and plaintiff's asserted injury" due to "multiple intervening factors").

Plaintiffs suggest that Dr. Macartney's failure to apportion damages to the alleged harm is a "material factual dispute[]." Opp. at 26. That is incorrect. It is a methodological error that

---

[4] Between Defendants' purported publication of the alleged trade secrets in October 2020 and Plaintiffs' discovery of the purported misappropriation in April 2022, Plaintiffs independently disclosed the alleged trade secrets. *Compare* ECF 199 ¶ 2, *and* D.Ex. 7 at 76–82, *with* D.Ex. 32, at -205–06, -208.

makes his opinions unreliable. Plaintiffs' cases do not suggest otherwise. In *Burns v. Anderson*, the court addressed whether failure to review certain documents would render the expert's testimony inadmissible. *See* 123 F. App'x 543, 549 (4th Cir. 2004). In *Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*, the court only addressed whether documents that contradicted those relied on by the expert rendered the opinion inadmissible. *See* No. CV SAG-18-3298, 2021 WL 3883597, at *10–11 (D. Md. Aug. 12, 2021). Accordingly, all of Dr. Macartney's opinions should be excluded. *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1023 (S.D. Cal. 2023) ("Because [the expert] failed to apply the proper legal test . . . those opinions are irrelevant, unreliable, and would mislead the jury." (internal quotes omitted)).

## VI. DR. MACARTNEY'S OPINIONS REGARDING INDEPENDENT ECONOMIC VALUE ARE UNRELIABLE AND SHOULD BE EXCLUDED

Plaintiffs do not dispute that Dr. Macartney did not opine on the value that the alleged trade secrets derive from secrecy. Instead, Plaintiffs argue that he "was not . . . required to . . . quantify monetary value arising from secrecy itself." Opp. at 28. Incorrect. Proving independent economic value "requires proof not just of value, but of value specifically ***tied to secrecy***." *Synopsys, Inc. v. Risk Based Security, Inc.*, 70 F.4th 759, 771 (4th Cir. 2023) ("*Synopsys II*"). But Dr. Macartney claims [redacted] D.Ex. 95 at 70:4–21. Accordingly, to the extent he purports to opine on independent economic value, he applied the wrong standard, and his opinions must be excluded. *Synopsys II*, 70 F.4th at 771 ("A fatal disconnect" exists where the "evidence does not reflect that the alleged trade secrets had value nor prove that any such value derived from their secrecy."); *Pelican*, 655 F. Supp. 3d at 1023 ("Because [the expert] failed to apply the proper legal test . . . those opinions are irrelevant, unreliable, and would mislead the jury." (internal quotes omitted)).

Dated: January 21, 2026

John M. Desmarais (admitted *pro hac vice)*
Steven M. Balcof (admitted *pro hac vice)*
Joze Welsh (admitted *pro hac vice)*
Asim Zaidi (admitted *pro hac vice)*
Gillian Moore (admitted *pro hac vice)*
Davis A. Gonsalves-DeDobbelaere (admitted *pro hac vice)*
Peter Kotecki (admitted *pro hac vice)*
Allan E. Carlsen (admitted *pro hac vice)*
DESMARAIS LLP
230 Park Ave., 26th Fl. New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
JDesmarais@desmaraisllp.com
SBalcof@desmaraisllp.com
JWelsh@desmaraisllp.com
AZaidi@desmaraisllp.com
GMoore@desmaraisllp.com
DGonsalves-dedobbelaere@desmaraisllp.com
PKotecki@desmaraisllp.com
ACarlsen@desmaraisllp.com

*/s/ Jean E. Lewis*

Jean E. Lewis (Bar No. 27562)
Justin A. Redd (Bar No. 18614)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, MD 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
jlewis@kg-law.com
jredd@kg-law.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Jean E. Lewis, hereby certify that on January 21, 2026, a true and correct copy of the foregoing was served by email on all counsel of record for Plaintiffs at their following addresses:

Ramsay M. Whitworth (Fed. Bar #26251)
Andrew M. Harvey (Fed. Bar #21925)
SILVERMAN, THOMPSON, SLUTKIN & WHITE
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 385-2225
rwhitworth@silvermanthompson.com
aharvey@silvermanthompson.com

Steven C. Cherny (admitted *pro hac vice*)
Matthew A. Traupman (admitted *pro hac vice*)
Nicola R. Felice (admitted *pro hac vice*)
Abigail M. Graegin (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
stevencherny@quinnemanuel.com
matthewtraupman@quinnemanuel.com
nicolafelice@quinnemanuel.com
abbygraegin@quinnemanuel.com

Patrick D. Curran (admitted *pro hac vice*)
Kathleen Marini (admitted *pro hac vice*)
Ryan P. Gorman (admitted *pro hac vice*)
Alexandra O. Schelle (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
patrickcurran@quinnemanuel.com
kathleenmarini@quinnemanuel.com
ryangorman@quinnemanuel.com
alexandraschelle@quinnemanuel.com

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

Robert S. Brennen (Fed. Bar No. 04499)
Megan J. McGinnis (Fed. Bar No. 12810)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Telephone: (410) 385-3727
rbrennen@milesstockbridge.com
mmcginnis@milesstockbridge.com

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

Steven E. Tiller (Bar #11085)
Whiteford, Taylor & Preston LLP
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9425
stiller@whitefordlaw.com

*Attorneys for Plaintiff University of Maryland, Baltimore*

*/s/ Jean E. Lewis*
Jean E. Lewis