**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

TERRAN BIOSCIENCES, INC.,
UNIVERSITY OF MARYLAND,
BALTIMORE, and SCOTT THOMPSON,

Plaintiffs,

v.

COMPASS PATHFINDER LIMITED (an England and Wales company), EKATERINA MALIEVSKAIA, M.D., and GEORGE GOLDSMITH,

Defendants.

Case No. 1:22-cv-01956-ELH

[redacted]

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFFS' EXPERTS DR. JOSHUA WOOLLEY AND DR. FREDERICK BARRETT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1

II. PLAINTIFFS CANNOT SALVAGE THEIR TECHNICAL EXPERTS' OPINIONS REGARDING INDEPENDENT ECONOMIC VALUE, WHICH SHOULD BE EXCLUDED ....... 2

A. The Independent Economic Value Of A Trade Secret Must Be Derived From Its Secrecy, But Plaintiffs' Experts Failed To Apply That Standard. ....... 2

1. Plaintiffs—Like Their Experts—Ignore That There Must Be A Nexus Between Independent Economic Value And Secrecy. ....... 2

2. The Alleged Trade Secrets Purportedly Having Value To A Competitor Does Not Show Economic Value Derived From Secrecy. ....... 3

a. Even If The Alleged Trade Secrets Would Be Valuable To A Competitor, Plaintiffs' Experts Still Needed To Analyze Whether That Value Is Derived From Secrecy. ....... 4

b. Plaintiffs' Argument Conflating Value To A Competitor With Independent Economic Value Is Illogical. ....... 5

c. Plaintiffs' Experts Did Not Analyze The Value ("Competitive" Or Otherwise) Of The Allegedly Trade Secret Information, Nor Whether Such Value Derives From Secrecy. ....... 6

3. Investment And Research Into The Alleged Trade Secrets Does Not Show Economic Value Derived From Secrecy. ....... 9

B. Claiming Their Alleged Trade Secrets Are A Combination Does Not Relieve Plaintiffs' Experts Of Their Burden To Analyze Independent Economic Value. ....... 10

C. Experts Must Assess Independent Economic Value Per Trade Secret. ....... 13

III. PLAINTIFFS FAIL TO ESTABLISH THAT THEIR EXPERTS' OPINIONS REGARDING THE NECESSITY OF A PEREZ LICENSE ARE RELIABLE ....... 14

IV. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AirFacts, Inc. v. de Amezaga*,
909 F.3d 84 (4th Cir. 2018) ....3, 4, 5, 13

*Alcatel USA, Inc. v. Cisco Sys., Inc.*,
239 F. Supp. 2d 660 (E.D. Tex. 2002) ....7

*Alford v. NFL Player Disability & Survivor Benefit Plan*,
2025 WL 3274428 (D. Md. Nov. 24, 2025) ....2

*Arconic Inc. v. Novelis Inc.*,
2020 WL 7247112 (W.D. Pa. Dec. 9, 2020)....13, 14

*Big Vision Priv. Ltd. v. E.I. DuPont de Nemours & Co.*,
1 F. Supp. 3d 224 (S.D.N.Y. 2014), *aff'd*, 610 F. App'x 69 (2d Cir. 2015)....10, 13

*Brightview Grp., LP v. Teeters*,
2021 WL 1238501 (D. Md. Mar. 29, 2021)....3, 4, 5

*Buffets, Inc. v. Klinke*
73 F.3d 965 (9th Cir. 1996) ....4, 6

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) ....15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 ....12, 15

*Harley Auto. Grp., Inc. v. AP Supply, Inc.*,
2013 WL 6801221 (D. Minn. Dec. 23, 2013)....10

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
122 F.4th 860 (Fed. Cir. 2024) ....15

*Novus Grp., LLC v. Prudential Fin. Inc.*,
618 F. Supp. 3d 657 (S.D. Ohio 2022), *aff'd*, 74 F.4th 424 (6th Cir. 2023)....8

*Padco Advisors, Inc. v. Omdahl*,
179 F. Supp. 2d 600 (D. Md. 2002)....3, 4, 6

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
655 F. Supp. 3d 1002 (S.D. Cal. 2023)....3

*Providence Title Co. v. Truly Title, Inc.*,
732 F. Supp. 3d 656 (E.D. Tex. 2024)....12

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
22 F. Supp. 3d 585 (E.D. Va. 2013) ....................12

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984)....................4

*Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*,
955 F. Supp. 2d 247 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x 19 (2d Cir. 2014)....................13

*SkinMedica, Inc. v. Histogen Inc.*,
869 F. Supp. 2d 1176 (S.D. Cal. 2012)....................3, 10

*Stromback v. New Line Cinema*,
384 F.3d 283 (6th Cir. 2004) ....................8

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) .................... *passim*

**STATUTES**

18 U.S.C. § 1839(3) ....................11

Md. Code, Com. Law § 11-1201(e)....................11

**RULES**

Fed. R. Evid. 702 ....................3, 12

**TABLE OF EXHIBITS**[1]

| Exhibit | Exhibit Description |
|---|---|
| **DEFENDANT EXHIBITS (ECF 304)** | |
| 1 | Opening Report of Frederick Barrett, Ph.D., dated Aug. 20, 2025 (highlighting added for clarity) |
| 8 | Opening Report of Joshua Woolley, Ph.D., dated Aug. 20, 2025 (highlighting added for clarity) |
| 42 | COMPASS00114409 – International Patent App. PCT/EP2018/079503 (publication no. WO 2019/081764 A1), filed Oct. 26, 2018 and published May 2, 2019 ("Perez") (highlighting added for clarity) |
| 43 | Excerpts of COMPASS00109963 – prosecution history for U.S. Patent App. No. 17/940,950 (highlighting added for clarity) |
| 46 | Corrected Reply Report of Frederick Barrett, Ph.D., dated Oct. 10, 2025 (served on Oct. 29, 2025) (highlighting added for clarity) |
| 49 | Reply Report of Joshua Woolley, M.D., Ph.D., dated Oct. 10, 2025 (highlighting added for clarity) |
| **PLAINTIFF EXHIBITS (ECF 325)** | |
| 29 | Joshua D. Woolley, M.D., Ph.D. Deposition Transcript, dated Nov. 5, 2025 |
| 74 | Frederick Streeter Barrett, Ph.D. Deposition Transcript, dated Nov. 20, 2025 |

[1] All exhibits identified with "D.Ex." are exhibits attached to ECF 304. All exhibits identified with "P.Ex." are exhibits attached to ECF 325.

## I. INTRODUCTION

Plaintiffs' technical experts, Drs. Barrett and Woolley, intend to testify that Plaintiffs' alleged trade secrets have independent economic value. But neither expert analyzed the only value that matters under trade secret law—value derived from secrecy. Both experts concede that they did not assess whether any purported value flowed from exclusive access, did not analyze whether the alleged trade secrets provided any economic advantage beyond what was already publicly known, and did not value each trade secret Plaintiffs assert. Instead, they attempted to value a hypothetical future drug product that Plaintiffs do not possess, that has never been tested, and that could only realize any value after public disclosure of the very information Plaintiffs claim was secret. That testimony is not rooted in any reliable methodology, and would do nothing to assist a jury in resolving any issues in this case.

In their Opposition, Plaintiffs argue that it was proper for their experts to shortcut the statutory standard for independent economic value because they considered "competitive value" and the amount of "investment" in the trade secrets. But those considerations do not meet the requirements of Fourth Circuit law. Information is a trade secret only if it has ***independent economic value derived from being secret***. *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 772 (4th Cir. 2023).[2] Value untethered from secrecy is insufficient. For that reason, experts like Dr. Barrett and Dr. Woolley cannot rely on speculation about future commercialization, product-level benefits, nor generalized industry interest as a substitute for analyzing whether the alleged trade secrets ***themselves*** derive value from secrecy.

Plaintiffs also downplay the fundamental flaws in their experts' opinions as "mere factual disputes," and cast Defendants' Motion as a bid for the Court to supplant the role of the jury. Not

[2] All citations omitted and all emphasis added unless otherwise indicated.

so. Defendants merely ask the Court to exercise its gatekeeping function and exclude expert testimony that omits the required analysis. Because Plaintiffs' experts failed to apply the correct legal framework, failed to assess independent economic value on a per-trade-secret basis, and failed to analyze whether any purported value derives from secrecy, their opinions on independent economic value must be excluded. Similarly, their opinions that Plaintiffs would not require a license to the Perez patent—offered without any claim-based analysis—are unreliable and inadmissible. The Court should exclude those opinions too.

## II. PLAINTIFFS CANNOT SALVAGE THEIR TECHNICAL EXPERTS' OPINIONS REGARDING INDEPENDENT ECONOMIC VALUE, WHICH SHOULD BE EXCLUDED

### A. The Independent Economic Value Of A Trade Secret Must Be Derived From Its Secrecy, But Plaintiffs' Experts Failed To Apply That Standard.

#### 1. Plaintiffs—Like Their Experts—Ignore That There Must Be A Nexus Between Independent Economic Value And Secrecy.

Plaintiffs argue that an expert can offer an opinion on independent economic value without "specifically analyz[ing] the causal connection between the secrecy and the value of the trade secrets." ECF 323 at 4. That argument fails for three reasons.

***First***, Plaintiffs understate the problem with Dr. Barrett's and Dr. Woolley's opinions. As Plaintiffs concede, Dr. Barrett did not analyze "the causal connection between the secrecy and the value of the trade secrets" (ECF 323 at 5), but he nonetheless concludes that the purported trade secrets "derive independent economic value ***from not being generally known or readily ascertainable by those in the field***." (D.Ex. 1 ¶ 135; ECF 323 at 6–7). That sort of *ipse dixit* is "the hallmark of an unreliable opinion," that justifies exclusion. *Alford v. NFL Player Disability & Survivor Benefit Plan*, 2025 WL 3274428, at *9 (D. Md. Nov. 24, 2025). Dr. Woolley's opinions are even more problematic. Though he acknowledges in his expert report that "to prove that information qualifies as a trade secret, a Complainant is required to prove that . . . the

information had actual or potential independent economic value ***by virtue of its secrecy***" (D.Ex. 8 ¶ 23), Dr. Woolley admitted at his deposition that [redacted]. P.Ex. 29 at 125:23–24 ("[redacted]."). Dr. Woolley's opinion that the alleged trade secrets have independent economic value by virtue of their secrecy is thus wholly unsupported.

***Second***, Plaintiffs' argument is incorrect under the law. Independent economic value ***requires*** a "specific connection between value and secrecy." *Synopsys*, 70 F.4th at 772. And "[p]roof of value untethered to value derived from secrecy ***does not show an alleged trade secret's independent economic value***." *Id.* Accordingly, both of Plaintiffs' experts "failed to apply the proper legal test," and their "opinions are irrelevant, unreliable, and would mislead the jury." *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1023 (S.D. Cal. 2023).

***Third***, Plaintiffs' cases do not support their position. None of the cases they cite considered the admissibility of expert testimony, addressed Rule 702, or held that an expert may bypass the value-secrecy nexus when testifying to a jury about independent economic value. *See, e.g.*, *Brightview Grp., LP v. Teeters*, 2021 WL 1238501, at *6 (D. Md. Mar. 29, 2021) (finding that defendants failed to dispute that certain categories of trade secrets had independent economic value); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1192–93 (S.D. Cal. 2012) (rejecting defendants' argument that the alleged trade secret lacked any economic value at all); *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 610 (D. Md. 2002) (denying summary judgment); *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 96–97 (4th Cir. 2018) (vacating district court's grant of summary judgment).

### 2. The Alleged Trade Secrets Purportedly Having Value To A Competitor Does Not Show Economic Value Derived From Secrecy.

Plaintiffs argue that because there is "evidence that the trade secrets would be valuable to

a competitor," their experts' independent economic value opinions are admissible. ECF 323 at 4–8. Specifically, Plaintiffs assert—without any legal support—that their experts need not link value to secrecy because it "make[s] sense" that "[i]f a plaintiff's competitor would benefit from the use of plaintiff's trade secrets, logically it is because the trade secret information is not known or obtainable from another source." ECF 323 at 5 (citing no support). Not so.

**a. Even If The Alleged Trade Secrets Would Be Valuable To A Competitor, Plaintiffs' Experts Still Needed To Analyze Whether That Value Is Derived From Secrecy.**

As a matter of law, value to a competitor alone. Such value is only relevant when: (1) the alleged trade secret information provides value to its owner; and (2) that value ***derives from the owner's exclusive access*** to that information, such that disclosure to others would destroy the competitive advantage. Put differently, evidence of competitor interest matters only if the owner derives value from the information's secrecy in the first place. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984) (independent economic value derives from a plaintiff's "exclusive access to the [trade secret]," such that "disclosure or use by others . . . would destroy that competitive edge"); *Buffets, Inc. v. Klinke* 73 F.3d 965, 969 (9th Cir. 1996) (affirming holding that where "there was no demonstrated relationship between the lack of success of [plaintiff's] competitors and the unavailability of the recipes," a trade secret plaintiff "failed to [prove] that it necessarily derived any benefit from the recipes being kept secret").

The cases Plaintiffs cite—*Padco Advisors*, *AirFacts*, and *Brightview*—do ***not*** stand for the proposition that competitive value alone is sufficient to prove independent economic value. *See* ECF 323 at 4. In *Padco Advisors,* the court found a proprietary customer database could have independent economic value because it could be used by a direct competitor to divert specific customers from Padco, a harm that depended entirely on Padco's exclusive possession of the information. 179 F. Supp. at 610. In *AirFacts*, the trade secret flowcharts had independent

economic value because they enabled AirFacts to analyze ticket fares and perform contractual obligations more efficiently than competitors who lacked access to that information. 909 F.3d at 96–97. And in *Brightview*, the confidential financial documents were valuable because a competitor was exploring the same properties and could exploit Brightview's confidential financial data to its detriment. 2021 WL 1238501, at *6.

**b. Plaintiffs' Argument Conflating Value To A Competitor With Independent Economic Value Is Illogical.**

As a threshold issue, Plaintiffs' theory that value to a competitor necessarily shows independent economic value is circular. It presumes, rather than proves, that the information qualifies as a trade secret—*i.e.*, that it has independent economic value derived from secrecy—and therefore sidesteps the analysis required here.

Plaintiffs' "logic" is also flawed. Just because a party owns information, and a competitor would benefit from the use of that information, it does not follow that the information is necessarily "not known or obtainable from another source." *See* ECF 323 at 5. A simple example illustrates the issue. Consider Restaurants A and B, which are competitors. Restaurant A uses a particular crab cake recipe. Restaurant B wants to add crab cakes to its menu, but it first needs a recipe. Could Restaurant B benefit from Restaurant A's crab cake recipe? Sure, but that does not—as Plaintiffs suggest—necessarily mean that Restaurant A's recipe is "not known or obtainable from another source." Conceivably, Restaurant B could obtain the ***same recipe from a different source***—*e.g.*, a cookbook, the internet, or another chef—and derive the same benefit as if it came from Restaurant A. That is precisely why the law requires that the independent economic value of a trade secret must be derived from its secrecy. *See Synopsys*, 70 F.4th at 772.

Now, if Restaurant A has a recipe that is ***not*** available from another source, Restaurant A's recipe is valuable in a different way. It may be valuable because Restaurant B could, for example,

claim some of the market or revenue previously only available to Restaurant A. In other words, Restaurant A's information—the secret recipe—has value ***because of Restaurant A's exclusive access*** to it. ***That*** is what can show independent economic value. *Compare Buffets, Inc.*, 73 F.3d at 968–69 (secret recipes lacked independent economic value where a plaintiff failed to "demonstrate[] [a] relationship between the lack of success of [its] competitors and the unavailability of the recipes"), *with Padco Advisors*, 179 F. Supp. 2d at 610 (Padco's proprietary customer database could have independent economic value as a competitor's access to the database would result in a diversion of Padco's customers to the competitor). And that is the critical link required by the case law, but missing from both Plaintiffs' logic and their experts' analyses.

**c. Plaintiffs' Experts Did Not Analyze The Value ("Competitive" Or Otherwise) Of The Allegedly Trade Secret Information, Nor Whether Such Value Derives From Secrecy.**

Plaintiffs argue that their experts had sufficient evidence of value and purported secrecy to offer opinions on independent economic value. That is incorrect for two reasons.

***First***, Plaintiffs have not established that their experts analyzed value of the ***trade secret information***. Plaintiffs point to their experts' opinions—not about the value of the alleged trade secrets themselves—but about a drug that they say could be (but has not been) made using the alleged trade secrets, primarily [redacted] drug. In particular, their experts opine on the competitive advantages of such a drug for clinicians and patients relative to existing antidepressants. Those opinions hold no water.

Indeed, the Fourth Circuit has already held that an expert's analysis of the value of a proxy for the trade secrets, rather than the trade secrets themselves, cannot be used to establish independent economic value, and is thus inadmissible. For example, in *Synopsys*, the court held expert testimony was inadmissible where the expert "failed to connect the dots between the collective corporate value and the seventy-five alleged trade secrets," and instead focused on the

value of a database and the market in which it operated. 70 F.4th at 774. The court emphasized that "[n]either [the plaintiff] nor its private database . . . is one of the alleged seventy-five trade secrets," and that evidence of product or business value "cannot substitute for evidence about the seventy-five alleged trade secrets' value," because it would "defeat the obligation of proving that the alleged trade secrets themselves have independent economic value" and allow the plaintiff to "circumvent its burden of proof." *Id.* at 771–72; *id.* at 774 ("[The expert's] entire analysis explaining this viewpoint focuses on the market for vulnerability databases as a whole without any discussion of why the seventy-five alleged trade secrets have particular value"); *see also, e.g.*, *Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 670–71 (E.D. Tex. 2002) (an expert's failure to isolate "its allegedly misappropriated and intangible intellectual property from the rest of Monterey's cross-connect product or Wavelength Router technology," was a maneuver that "reek[ed] of incongruity and underscore[d] the speculative nature of Alcatel's alleged damages").

That reasoning applies here. [redacted] is not an alleged trade secret; it is a hypothetical [redacted] product. And its asserted value depends on regulatory approval, commercialization, and market adoption—on top of the assumption that Dr. Thompson's untested idea would work at all. Plaintiffs' experts make no attempt to show which alleged trade secrets or which portion of the "combination" of interrelated trade secrets—if any—drive the hypothetical product's purported benefits. Indeed, at his deposition, Dr. Woolley could not even articulate the precise relationship between the trade secrets and [redacted]. P.Ex. 29 at 99:14–20 ("[redacted]"); *id.* at 99:21–100:7 (describing [redacted] as "[redacted]").

***Second,*** even if the experts' opinions on [redacted] prospective drug products could reliably

value the allegedly trade secret information, Plaintiffs cannot show that any of their identified competitive advantages derive from secrecy, because each alleged benefit depends on public disclosure of the purported trade secrets. *See, e.g.*, P.Ex. 29 at 123:13–124:6 (identifying alleged advantages of [redacted]); *id.* at 72:12–13; 82:20–25 ([redacted]). For example, Dr. Woolley opined that [redacted]. But Dr. Woolley also [redacted]. *Id.* at 126:17–127:2; 127:25–129:3. As such, the alleged benefits of [redacted] ***depend*** on FDA approval. FDA approval, in turn, necessarily requires clinical trials that publicly disclose the very dosing, timing, and sequencing parameters Plaintiffs claim are secret. In other words, the only way for [redacted] to realize the value Plaintiffs' experts posit is for the alleged trade secrets to be disclosed to the public.

Where, as here, economic value can be realized only through public dissemination, the secrecy-based value requirement is not satisfied. *See, e.g.*, *Stromback v. New Line Cinema*, 384 F.3d 283, 305 (6th Cir. 2004) (holding that a poem and screenplay, even if secret at the time of misappropriation, lacked independent economic value because their value could be realized only if "exploited publicly through broad dissemination"); *see also Novus Grp., LLC v. Prudential Fin. Inc.*, 618 F. Supp. 3d 657, 667 (S.D. Ohio 2022) (granting summary judgment because a trade secret lacked independent economic value where the purportedly trade secret information "needed to be fully exposed to the public—and thus made instantly replicable—for [the plaintiff] to derive any 'economic benefit' from [its] use"), *aff'd*, 74 F.4th 424 (6th Cir. 2023).

Dr. Barrett's opinions suffer the same flaws. For example, Plaintiffs point to Dr. Barrett's generic claims that the alleged trade secrets have value because they "[redacted]

[redacted]." ECF 323 at 7 (citing D.Ex. 46 ¶ 167). And Dr. Barrett specifically identified [redacted]. P.Ex. 74 at 210:12–18, 213:5–19. But Dr. Barrett could not answer the salient question: is that value derived from secrecy? Instead, he testified that [redacted]. *Id.* at 217:16–218:16. As with Dr. Woolley's opinions, the value Dr. Barrett identifies could materialize only after public disclosure of the information, not while it remained secret.

**3. Investment And Research Into The Alleged Trade Secrets Does Not Show Economic Value Derived From Secrecy.**

Plaintiffs also argue that showing "significant investment and research leading to discovery" of the alleged trade secrets is enough to make their experts' independent economic value opinions admissible. ECF 323 at 4–8. That is incorrect.

As they did with competitive value, Plaintiffs attempt to point to evidence of investment while sidestepping the law's requirements. They conclude that investment inherently shows value from secrecy because "if the trade secrets were already known or available from another source, there would be no incentive to invest time and money to develop them." ECF 323 at 5 (citing no support). But that is simply not true. Investment may reflect a ***belief*** that an idea is novel or unavailable elsewhere and, for example, may coincide with an intent to temporarily maintain secrecy while pursuing patent protection. But that belief may be incorrect. Indeed, in Plaintiffs' case, Dr. Thompson's belief that his research was novel ultimately proved false: his purportedly trade secret idea had already been published in a patent application—[redacted]

[redacted].[3] *See* D.Ex. 43 at -111556 (citing D.Ex. 42); *see also, e.g.*, D.Ex. 43 at -111558–59.

Plaintiffs chiefly rely on *SkinMedica*, but that case addressed a different question entirely. There, the issue was not whether the plaintiff failed to tether the purported value to secrecy, it addressed defendant's argument that the alleged trade secret lacked ***any economic value at all***. 869 F. Supp. 2d at 1192. Accordingly, *SkinMedica* does not support Plaintiffs' contention that investment alone implies secrecy-derived value.

In fact, courts addressing whether investment alone establishes independent economic value have expressly rejected that notion. *See, e.g.*, *Big Vision Priv. Ltd. v. E.I. DuPont de Nemours & Co.*, 1 F. Supp. 3d 224, 272 (S.D.N.Y. 2014) (investment may be attributable to development of machinery or other non-secret aspects), *aff'd*, 610 F. App'x 69 (2d Cir. 2015); *Harley Auto. Grp., Inc. v. AP Supply, Inc.*, 2013 WL 6801221, at *2, *8 (D. Minn. Dec. 23, 2013) (an asserted customer list "[did] not constitute a trade secret," notwithstanding Plaintiff's contention that it had "invested time and money in developing and refining its customer lists").

**B. Claiming Their Alleged Trade Secrets Are A Combination Does Not Relieve Plaintiffs' Experts Of Their Burden To Analyze Independent Economic Value.**

In their Opposition, Plaintiffs argue that Dr. Barrett's and Dr. Woolley's opinions on independent economic value are admissible because they "[p]roperly [a]ssessed" the value of the Psilocybin Trade Secrets based on what was known in the art. ECF 323 at 11. But Plaintiffs fail to substantiate that argument with any expert analysis. Instead, they wax poetic about how "combination" trade secrets can still warrant protection even if all the constituent elements were already known. *Id.* at 14. That is irrelevant.

[3] Plaintiffs' claim that independent economic value could also be inferred from the fact that Compass's alleged misappropriation "prevented Dr. Thompson from obtaining patent protection on his discoveries," ECF 323 at 10, is false for the same reason. Nothing Compass did prevented Dr. Thompson (or any other Plaintiff) from securing patent rights; the Perez patent did. D.Ex. 43 at -111556 (citing D.Ex. 42); *see also, e.g.*, D.Ex. 43 at -111558–59.

Plaintiffs' argument and case law offer that "combination trade secrets" can be protectable. But Defendants have not disputed that possibility. And that premise does not support Plaintiffs' assertion that "there is no requirement that Plaintiffs must prove that their combination trade secrets have some quantitative 'marginal' value above what was generally known." ECF 323 at 11. Like all other trade secrets, combination trade secrets must satisfy the relevant statutory requirements, which include: (1) having independent economic value; which (2) derives from the information "not being generally known" or "readily ascertainable through proper means." 18 U.S.C. § 1839(3); *see also* Md. Code, Com. Law § 11-1201(e); *cf. Synopsys*, 70 F.4th at 772–73 ("[B]ecause independent economic value is one part of the definition of a 'trade secret' . . . a basis exists in the statutory language for concluding that evidence of independent economic value must be proven as to each item that a plaintiff seeks to have identified as a distinct 'trade secret.'"). Plaintiffs have not shown that their experts have reliably opined as to either requirement.

***First***, regarding element (1), Plaintiffs have pointed to the clinical benefits of a hypothetical drug. But when Dr. Woolley was asked at his deposition "whether you can treat depression in a human using psilocybin and a 5-HT2A antagonist such that the 5-HT2A antagonist blocks the hallucinations without blocking the antidepressant effect," he [redacted]." P.Ex. 29 at 156:4–15, 158:9–14 ("[redacted]"). And for his part, Dr. Barrett admitted that, [redacted]. P.Ex. 74 at 140:14–18. Accordingly, Plaintiffs' experts' opinions that [redacted] may have proven valuable someday are not even arguably evaluations of the alleged trade secret Plaintiffs claimed to have possessed—an untested idea. They are valuing

a hypothetical drug that Plaintiffs have never possessed, and may not even be possible or functional. Those value opinions are, accordingly, little more than rank speculation—a far cry from the "the product of reliable principles and methods" that the *Daubert* standard demands. *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 593 (E.D. Va. 2013) (quoting Fed. R. Evid. 702); *see also Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 666 (E.D. Tex. 2024) (granting summary judgment of no independent economic value where the defendants' "success was not guaranteed," and was "contingent on additional factors").

***Second***, regarding element (2), Plaintiffs' experts cannot dispute that numerous elements—if not every[4] element—of Plaintiffs' alleged "combination" were already known before 2019. Plaintiffs' experts [redacted]. P.Ex. 74 at 26:12–17; D.Ex. 8 ¶ 18. They likewise [redacted]. P.Ex. 74 at 15:15–17:4, 20:18–21:2; P.Ex. 29 at 200:3–23; D.Ex. 1 ¶¶ 107–16. Plaintiffs' experts do not dispute that these were real, scientifically established, valuable, and clinically meaningful discoveries. Nor do they dispute that others thought to combine those discoveries, or that they were the critical building blocks upon which Dr. Thompson's alleged "combination" rests.

Plaintiffs' alleged trade secrets are categorically different. Unlike the bona fide discoveries they rely upon, the alleged trade secrets are merely a guess as to what would happen upon combining those past discoveries—in particular, a guess that psilocybin's antidepressant effects

[4] Plaintiffs' reticence in identifying the contours of its "combination trade secrets" have hindered the ability to identify their elements with precision. *See* ECF 302 § III.B; Defendants' concurrently-filed Reply in Support of Their Motion for Summary Judgment, which is incorporated herein by reference.

would persist even when hallucinations are blocked. But that "discovery" is no more than a hypothesis which even Plaintiffs' experts concede remains untested and unproven. And critically, Plaintiffs' experts never analyze how that unproven hypothesis adds any independent economic value beyond what was already known to the scientific community. *See, e.g.*, *Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247, 257–58 (S.D.N.Y. 2013) (finding an "unexecuted concept is not a trade secret as a matter of law" because "[t]he components of the system are widely known, and the concept as a whole is of limited value because it is readily ascertainable"), *aff'd*, 572 F. App'x 19 (2d Cir. 2014).

### C. Experts Must Assess Independent Economic Value Per Trade Secret.

As Defendants demonstrate in their Motion, Plaintiffs' experts also fail to address independent economic value on a per-trade-secret basis, as the law requires. In opposition, Plaintiffs argue their experts' analyses were proper because they "consider[ed] the independent economic value of the Psilocybin Trade Secrets as combination trade secrets." ECF 323 at 18. But even Plaintiffs' own cited authority recognizes that the law still requires proof that each alleged "combination" itself derives independent economic value from secrecy. *AirFacts*, 909 F.3d at 96 ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain," if that "unique combination[] ***affords a competitive advantage and is a protectable secret***."); *see also Big Vision*, 1 F. Supp. 3d at 271 (A plaintiff must demonstrate that the alleged "unique combination" of known components "***affords a competitive advantage*** and is a protectable secret."); *Arconic Inc. v. Novelis Inc.*, 2020 WL 7247112, at *4, *15 (W.D. Pa. Dec. 9, 2020) (granting summary judgment where the plaintiff failed to "specifically describe what [the] particular combination of components is; how these components are combined in a secret process, and how they operate in such combination to meet the legal requisites of a trade secret," including that they were "economically-valuable"). Indeed, this requirement naturally

follows from the Fourth Circuit's edict that, because elements such as independent economic value are inherent to the definition of a trade secret, it necessarily follows that such showings must be made "per trade secret." *Synopsys*, 70 F.4th at 773.

Plaintiffs fail to grapple with that standard, attacking a strawman instead. They contend that their experts were not required to "[a]pportion[] the value of the individual components of combination trade secrets." ECF 323 at 12 n.2. But that is not the issue, nor does it elimate the need to apportion economic value for each combination Plaintiffs claim constitutes a trade secret. *Cf. Arconic*, 2020 WL 7247112, at *5 ("Arconic failed to provide the required information . . . of each combination trade secret claimed."). Plaintiffs cannot collapse multiple alleged trade secrets into a single undifferentiated concept and thereby avoid the requirement to establish independent economic value for each protectable secret they assert.[5]

## III. PLAINTIFFS FAIL TO ESTABLISH THAT THEIR EXPERTS' OPINIONS REGARDING THE NECESSITY OF A PEREZ LICENSE ARE RELIABLE

Plaintiffs' experts opine that Plaintiffs would not practice the inventions claimed by Perez (or, in other words, would not need a license to Perez) if they were to offer their [redacted] or a product "[redacted]" the alleged trade secrets. *See, e.g.*, D.Ex. 46 ¶ 189. But as explained in Defendants' Motion, those opinions should be excluded because neither expert conducted an analysis of the Perez claims, which is the necessary legal framework to support such a conclusion. ECF 306 at 11–14; *see also* ECF 304 at 17–29. In opposition, Plaintiffs attempt to contort that legal failure into a factual "battle of the experts." ECF 323 at 14. Plaintiffs are wrong.

***First***, Plaintiffs argue that opinions on whether claims in Perez cover the trade secrets are

---

[5] Indeed, even in their Opposition, Plaintiffs continue to obscure how many trade secrets they are asserting, referring variously to "the interrelated combination trade secret<u>s</u> at issue here." ECF 323 at 17. The confusion regarding the number or nature of the alleged Psilocybin Trade Secrets is of Plaintiffs' own making and underscores their failure to identify the alleged trade secrets with the particularity the law requires. *See* ECF 302 § III.B; Defendants' concurrently-filed Reply in Support of Their Motion for Summary Judgment.

irrelevant. ECF 323 at 20. As a threshold matter, even if true, that would not help Plaintiffs. Regardless of whether such an opinion weighs on the elements of the trade secret claims, ***Plaintiffs' experts offered them***. D.Ex. 46 ¶¶ 189–92; D.Ex. 49 ¶¶ 32–37. Accordingly, Plaintiffs must establish that those opinions are reliable (and, contrary to Plaintiffs' own argument, relevant). *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of [expert] testimony must establish its admissibility by a preponderance of proof."); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (expert testimony must be both relevant and reliable).

***Second***, Plaintiffs argue that their experts did, in fact, properly analyze Perez's claims to opine that Terran would not need a license to offer [redacted]. But Plaintiffs cannot identify any such analysis in their experts' reports, because ***it does not exist***. *See, e.g.*, P.Ex. 74 at 315:8–316:6, 318:14–319:19, 321:17–322:8 ([redacted]); P.Ex. 29 at 169:16–173:15, 231:18–232:24 (testifying that he "[redacted]"), 234:10–235:3. Instead, Plaintiffs merely point to their experts' opinions that Perez is insufficiently detailed or differently focused compared to the alleged trade secrets. ECF 323 at 21–23. But that is not enough. Both experts opine that Plaintiffs would not practice Perez with [redacted]—which means that they are obligated to show that the [redacted] would not meet at least one element of ***the claims*** in Perez. *See Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 868 (Fed. Cir. 2024).

## IV. CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Woolley's and Dr. Barrett's opinions that the alleged trade secrets have independent economic value (D.Ex. 1 ¶¶ 135–76; D.Ex. 46 ¶¶ 151–244; D.Ex. 8 §§ VII, VIII; D.Ex. 49 ¶¶ 29–41) and that a license to Perez would not be necessary to practice the alleged trade secrets (D.Ex. 46 ¶¶ 189–92; D.Ex. 49 ¶¶ 32–37).

Dated: January 21, 2026

John M. Desmarais (admitted *pro hac vice)*
Steven M. Balcof (admitted *pro hac vice)*
Joze Welsh (admitted *pro hac vice)*
Asim Zaidi (admitted *pro hac vice)*
Gillian Moore (admitted *pro hac vice)*
Davis A. Gonsalves-DeDobbelaere (admitted *pro hac vice)*
Peter Kotecki (admitted *pro hac vice)*
Allan E. Carlsen (admitted *pro hac vice)*
DESMARAIS LLP
230 Park Ave., 26th Fl. New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
JDesmarais@desmaraisllp.com
SBalcof@desmaraisllp.com
JWelsh@desmaraisllp.com
AZaidi@desmaraisllp.com
GMoore@desmaraisllp.com
DGgonsalves-dedobbelaere@desmaraisllp.com
PKotecki@desmaraisllp.com
ACarlsen@desmaraisllp.com

*/s/ Jean E. Lewis*

Jean E. Lewis (Bar No. 27562)
Justin A. Redd (Bar No. 18614)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, MD 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
jlewis@kg-law.com
jredd@kg-law.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Jean E. Lewis, hereby certify that on January 21, 2026, a true and correct copy of the foregoing was served by email on all counsel of record for Plaintiffs at their following addresses:

Ramsay M. Whitworth (Fed. Bar #26251)
Andrew M. Harvey (Fed. Bar #21925)
SILVERMAN, THOMPSON, SLUTKIN & WHITE
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 385-2225
rwhitworth@silvermanthompson.com
aharvey@silvermanthompson.com

Steven C. Cherny (admitted *pro hac vice*)
Matthew A. Traupman (admitted *pro hac vice*)
Nicola R. Felice (admitted *pro hac vice*)
Abigail M. Graegin (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
stevencherny@quinnemanuel.com
matthewtraupman@quinnemanuel.com
nicolafelice@quinnemanuel.com
abbygraegin@quinnemanuel.com

Patrick D. Curran (admitted *pro hac vice*)
Kathleen Marini (admitted *pro hac vice*)
Ryan P. Gorman (admitted *pro hac vice*)
Alexandra O. Schelle (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
patrickcurran@quinnemanuel.com
kathleenmarini@quinnemanuel.com
ryangorman@quinnemanuel.com
alexandraschelle@quinnemanuel.com

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

Robert S. Brennen (Fed. Bar No. 04499)
Megan J. McGinnis (Fed. Bar No. 12810)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Telephone: (410) 385-3727
rbrennen@milesstockbridge.com
mmcginnis@milesstockbridge.com

*Attorneys for Plaintiffs Terran Biosciences, Inc. and Professor Scott Thompson*

Steven E. Tiller (Bar #11085)
Whiteford, Taylor & Preston LLP
7 Saint Paul Street, Suite 1500
Baltimore, MD 21202
Telephone: (410) 347-9425
stiller@whitefordlaw.com

*Attorneys for Plaintiff University of Maryland, Baltimore*

*<u>/s/ Jean E. Lewis</u>*
Jean E. Lewis